1  LAURENCE F. PULGRAM (CSB NO. 115163)
   lpulgram@fenwick.com
2  JEDEDIAH WAKEFIELD (CSB NO. 178058)
   jwakefield@fenwick.com
3  ALBERT L. SIEBER (CSB NO. 233482)
   asieber@fenwick.com
4  FENWICK & WEST LLP
   Embarcadero Center West, Suite 1600
5  275 Battery Street
   San Francisco, CA 94111
6  Telephone: (415) 875-2300
   Facsimile:  (415) 281-1350
7
   Attorneys for Defendants
8  STORAGE TECHNOLOGY CORPORATION and
   SUN MICROSYSTEMS, INC.
9

10                     UNITED STATES DISTRICT COURT

11                    NORTHERN DISTRICT OF CALIFORNIA

12

13 | NETBULA, LLC, a Delaware limited          Case No. C06-07391 BZ
      liability company,
14 |                                           **DEFENDANTS SUN MICROSYSTEMS,
                    Plaintiff,                 INC. AND STORAGE TECHNOLOGY,
15 |                                           INC.'S OPPOSITION TO PLAINTIFF'S
              v.                               APPLICATION FOR TEMPORARY
16 |                                           RESTRAINING ORDER**
   STORAGE TECHNOLOGY
17 | CORPORATION, a Delaware corporation;      Date:   December 5, 2006
     SUN MICROSYSTEMS, INC., a Delaware        Time:   3:00 p.m.
18 | corporation; and DOES 1-100, inclusive,   Dept:   Courtroom G, 15th Floor
                                               Judge:  Hon. Bernard Zimmerman
19 |              Defendants.

20

21

22

23

24

25

26

27

28

OPP. TO APPL. FOR T.R.O.                                    CASE NO. C06-07391 BZ

# TABLE OF CONTENTS

Page(s)

INTRODUCTION ................................................................................................................. 1

ARGUMENT ......................................................................................................................... 3

I. Plaintiff Has Shown No Exigency That Justifies Entry of an Ex Parte Temporary Restraining Order ................................................................................ 3

II. Plaintiff Has Failed to Show a Probably of Success or Serious Questions Regarding the Merits of Its Copyright Claim ................................................... 5

    A. Plaintiff Has Failed to Show Ownership of a Valid Copyright ............... 5

    B. Plaintiff Has Failed to Show Infringement .............................................. 6

III. Plaintiff Has Failed to Show That It Will Suffer Irreparable injury, or that the balance of hardships tips heavily in its favor. ................................................. 7

    A. Plaintiff's Delay in Seeking a Preliminary Injunction Negates any Presumption of Irreparable Harm. ........................................................... 7

    B. Plaintiff's Contract Remedies Are Adequate .......................................... 8

    C. The Public Interest Would Not Be Served by the Issuance of a T.R.O. for a Contract Dispute ............................................................................ 10

    D. Given the Sweeping TRO Sought, a Significant Bond Should Be Required ....... 10

CONCLUSION .................................................................................................................... 11

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Adobe Systems, Inc. v. South Sun Products, Inc.*
  187 F.R.D. 636 (S.D. Cal. 1999) .......................................................................... 4

*Anderson v. United States*
  612 F.2d 1112 (9th Cir. 1979) ............................................................................. 4

*Computer Assocs. Int'l v. Altai, Inc.*
  982 F.2d 693 (2d Cir. 1992) ................................................................................ 6

*Franklin v. Cannon Films, Inc.*
  654 F. Supp. 133 (C.D. Cal. 1987) ...................................................................... 9

*Granny Goose Foods, Inc. v. Brotherhood of Teamsters*
  415 U.S. 423 (1974) ............................................................................................ 4

*Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*
  174 F.3d 411 (4th Cir. 1999) ............................................................................. 10

*Kabehie v. Zoland*
  102 Cal. App. 4th 513 (2002) ............................................................................ 10

*Lockheed Missile & Space Co. v. Hughes Aircraft Co.*
  887 F. Supp. 1320 (N.D. Cal. 1995) ................................................................... 4

*Lydo Enterprises v. City of Las Vegas*
  745 F.2d 1211 (9th Cir. 1984) ............................................................................. 7

*Malinowski v. Playboy Enterprises, Inc.*
  706 F. Supp. 611 (N.D. Ill. 1989) ....................................................................... 9

*Markowitz Jewelry Co. v. Chapal/Zenray, Inc.*
  988 F. Supp. 404 (S.D.N.Y. 1997) ................................................................... 7, 8

*Martha Graham Sch. & Dance Found., Inc. v. Martha Graham Center of Contemporary Dance*
  224 F. Supp. 2d 567 (S.D.N.Y. 2002), *rev'd in non relevant part*, 380 F.3d 624 (2d Cir. 2004) ....................................................................................................... 5

*Martin v. Int'l Olympic Comm.*
  740 F.2d 670 (9th Cir. 1984) ............................................................................... 4

*Mazurek v. Armstrong*
  520 U.S. 968 (1997) ............................................................................................ 3

*Mead Johnson Laboratories v. Abbott Lab.*
  201 F.3d 883 (7th Cir. 2000) ............................................................................. 11

*Moonrunners L.P. v. Time Warner*
  2005 U.S. Dist. LEXIS 41244 (C.D. Cal. 2005) ................................................. 7

*Nintendo of Am., Inc. v. Lewis Galoob Toys, Inc.*
  16 F.3d 1032 (9th Cir. 1994) ............................................................................. 11

*Oakland Tribune, Inc. v. Chronicle Pub. Co.*
  762 F.2d 1374 (9th Cir. 1985) ............................................................................. 7

*Richard Feiner & Co. v. Turner Entertainment Co.*
  98 F.3d 33 (2d Cir. 1996) .................................................................................... 7

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Royal v. Leading Edge Prdts., Inc.*
833 F.2d 1 (1st Cir. 1987) .......................................................................................... 9

*Sun Microsystems, Inc. v. Microsoft Corp.*
188 F.3d 1115 (9th Cir. 1999) ............................................................................ 7, 8, 10

*W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers of America*
461 U.S. 757 (1983) .................................................................................................. 11

*Wenger v. Monroe*
282 F.3d 1068 (9th Cir. 2002) .................................................................................... 4

*Wham-O, Inc. v. Paramount Pictures Corp.*
286 F. Supp. 2d 1254 (N.D. Cal. 2003) ..................................................................... 3

*Wolfe v. United Artists Corp.*
583 F. Supp. 52 (E.D. Pa. 1983) ................................................................................ 8

**STATUTES**

17 U.S.C. § 410(c) ............................................................................................................ 5

**RULES**

FRCP 65(c) ..................................................................................................................... 10

**TREATISES**

3-12 Nimmer on Copyright § 12.01 ................................................................................. 9

4-13 Nimmer on Copyright § 13.03[F] ............................................................................ 6

4-13 Nimmer on Copyright § 13.03[F][3] ....................................................................... 6

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## INTRODUCTION

Plaintiff Netbula, LLC's ("Netbula") request for a TRO finds no support either in the evidence or in equity: Plaintiff has offered no proof that Defendants Sun Microsystems, Inc. or its subsidiary, Storage Technology Corporation (collectively "Sun"), are infringing any valid copyright of Netbula, nor has it substantiated any urgency that justifies proceeding by *ex parte* application rather than by noticed motion.

This action is an attempt by Netbula to extract money from a licensee that Netbula claims owes more royalties than the licensee has paid for. Netbula claims rights in the "pwrpc32.dll" software file that it widely licenses to assist in remote computing procedures. Netbula acknowledges that it licensed the file to Sun for use in products it distributed. Netbula first concluded that its rights were violated in July of 2005, and since at least December, 2005, Netbula and Sun have held sporadic discussions – punctuated by months of silence – over license payments. Complaint, ¶¶ 38-39, 42-43, 51-52; Melnick Decl. ¶¶ 4-11. Meanwhile, Sun has long since stopped using Netbula's file in Sun's product offerings, substituting a different file offered for free by another provider. Abramovitz Decl. In September, 2006, Sun sent Netbula a check for the amounts believed due for the prior use. Melnick Decl. ¶ 3. It heard little more from Netbula until this application. *Id.*

Now, after failing to seek judicial relief for over a year, Netbula requests that the Court issue an *ex parte* order based on alleged use of pwrpc32.dll, when such use has long since been discontinued. Moreover, Netbula seeks that relief without having given even the minimal advance notice described in its moving papers. Plaintiff's Certificate of Counsel Regarding Notice represents that the Application for TRO was faxed "on the afternoon of December 1, 2006." To the contrary, only a partial fax of the moving papers arrived on December 1, with the full filing not received by Sun until December 5; and both the voicemail and the partial fax occurred well after the close of business on a Friday. DeCecco Decl. ¶¶ 4-6 and Exhs. A-C. In all events, there is no emergency justifying an *ex parte* hearing in these circumstances. Absolutely nothing justifies a sudden rush to a ruling instead of a noticed motion and submission

OPP. TO APPL. FOR T.R.O.              -1-                    CASE NO. C06-07391 BZ

on the merits.

Moreover, Netbula's application fails on the merits, for four independent reasons. The first two are that Plaintiff has not substantiated either of the two elements necessary to show copyright infringement – (i) ownership of a valid copyright, and (ii) infringing use. For the first element, Netbula relies entirely on the presumption of validity created by a copyright registration. Plaintiffs' Application ("App.") at 3-4. But it is well settled that the presumption does not apply here, where the registration postdated the first publication of the work by more than five years. See App. at 1:20, 4:3 (admitting that the work was licensed to Sun in March 2000 but registered more than five years later in October, 2005). Furthermore, the file in question is a simple implementation for the Windows environment of a preexisting file that Sun itself had written.[1] Abramovitz Decl., ¶ 5. Plaintiff has submitted no evidence that it owns anything sufficiently original to qualify for copyright protection – particularly as against the original creator of the software.

As to the second element, Netbula has provided no evidence that Sun is presently using the purportedly copyrighted work in any way. To the contrary, the evidence submitted shows that Sun removed the code in question into 2005, and there is no evidence suggesting otherwise. Abramovitz Decl. ¶ 3. Plaintiff's overblown rhetoric about the "necessity" of an injunction to prevent "piracy" and "irreparable harm" is just that: there is no evidence that any copying or use of this file is now occurring.

Third, even if it owned something copyrightable that Sun was using, Netbula's claim here would at most allege a breach of contract, not copyright infringement. It is well settled that a dispute over payment under a license agreement gives rise to only contract remedies, not a claim

---

[1] Since its founding in 1982, Sun has been instrumental in helping to create standards for network computing. In the 1980s, Sun developed the Sun Open Network Computing Remote Procedure Call, or "Sun ONC RPC" – a protocol that allows a computer program running on one computer to use code on another computer. Abramovitz Decl. ¶ 4. Today, Plaintiff's "PowerRPC is one of several third party implementations of Sun's copyrighted ONC RPC product  Plaintiff's copyright registration makes clear that Plaintiff's PowerRPC code is derivative of Sun products, and in its Complaint, Plaintiff admits that its PowerRPC software is "based on the ONC RPC *de facto* industry standard." Complaint ¶12.

OPP. TO APPL. FOR T.R.O.　　　　　　　-2-　　　　　　　CASE NO. C06-07391 BZ

for copyright infringement. The licenses in question specify the price at which Sun may distribute the file in question in unlimited volumes, including calling for a price of $4796 for units 3000 and above. Melnick Decl. ¶ 2 & Exh. B (at internal Exhibit C). In September, Sun already sent Plaintiff a check for the $22,480 in past due royalty amounts. *Id.* at ¶ 10. Even if there were some alleged payment still outstanding, that would not give rise to irreparable injury, but rather to recovery of the contractual royalty.

Fourth, because all that is alleged here is the use by a customer of a file that Netbula customarily licenses for a fee (*see e.g.*, Complaint ¶ 11), there would be no irreparable injury even if a copyright violation could be proven. This case – unlike the use of a file by a competitor or by a black marketeer who never had a license – is easily remediable by damages. It thus cannot justify a preliminary injunction, much less on an *ex parte* basis.

For all these reasons, the Court should reject Netbula's request for a TRO as being without merit. Indeed, based on the deficiency of the moving papers, the Court may dispose today of the request for a preliminary injunction as well, for nothing in the moving papers, even if true, provides prima facie support for ownership, infringement, a copyright cause of action, or hardship not compensable by damages.

## ARGUMENT

### I. PLAINTIFF HAS SHOWN NO EXIGENCY THAT JUSTIFIES ENTRY OF AN EX PARTE TEMPORARY RESTRAINING ORDER.

A temporary restraining order is an "extraordinary and drastic remedy, one that should not be granted unless the movant, by a <u>clear showing, carries the burden of persuasion</u>." *Wham-O, Inc. v. Paramount Pictures Corp.*, 286 F. Supp. 2d 1254, 1259 (N.D. Cal. 2003) (emphasis added)(denying issuance of a TRO in a trademark infringement case); *quoting Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). To satisfy this heavy burden, Plaintiff must show (1) probable success on the merits or serious questions regarding the merits, and (2) that it will suffer irreparable injury, or that the balance of hardships tips heavily in its favor. *See Wham-O*, 286 F.Supp.2d at 1259-60. The Ninth Circuit applies a sliding scale analysis in considering the moving party's showing on these elements: the weaker one element is, the stronger the other must

1  be. *See, e.g., Wenger v. Monroe*, 282 F.3d 1068, 1077-78 (9th Cir. 2002) (affirming denial of
2  motion for TRO and preliminary injunction).

3  Where the moving party seeks expedited relief that goes well beyond the status quo as it
4  exists during the litigation – as Plaintiff does here by, *inter alia*, asking the Court to impound
5  software and equipment – courts should be "extremely cautious." *Lockheed Missile & Space Co.*
6  *v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995) (denying motion for TRO that
7  would have forced supplier to change its conduct), *quoting Martin v. Int'l Olympic Comm.*, 740
8  F.2d 670, 675 (9th Cir. 1984) (affirming denial of preliminary injunction where plaintiff did not
9  show probability of success). "Such relief is disfavored and should be granted <u>only if the facts</u>
10 <u>and law clearly favor the moving party</u>." *Lockheed*, 887 F. Supp. at 1323, *citing Anderson v.*
11 *United States*, 612 F.2d 1112, 1115 (9th Cir. 1979) (reversing trial court's issuance of TRO)
12 (emphasis added).

13 Further, temporary restraining orders are particularly disfavored when they are sought *ex*
14 *parte* and without adequate notice, as Plaintiff has done here. *See, e.g., Adobe Systems, Inc. v.*
15 *South Sun Products, Inc.*, 187 F.R.D. 636 (S.D. Cal. 1999) (denying *ex parte* application for TRO
16 in copyright infringement action). In *Adobe Systems*, plaintiff copyright holders sought a TRO
17 against an alleged infringer that would have required the immediate seizure and inspection of the
18 allegedly infringing software products in defendant's possession. Plaintiffs claimed that without
19 this extraordinary relief, defendant was likely to destroy evidence of its infringement. *Id.* at 638.
20 Even under those exigent circumstances – the imminent destruction of evidence – the court
21 denied plaintiffs' motion, recognizing the accepted tenet that "our entire jurisprudence runs
22 counter to the notion of court action taken before reasonable notice and an opportunity to be
23 heard has been granted both sides of a dispute." *Id.* at 639, *quoting Granny Goose Foods, Inc. v.*
24 *Brotherhood of Teamsters*, 415 U.S. 423, 438-39 (1974). The court further noted that any TRO
25 application must be met with "intense judicial scrutiny" to prevent a party's ability to ambush an
26 unprepared opponent, and should only be granted where plaintiff is unable to locate the defendant
27 or where a TRO is the only way to preserve the status quo. *Id.*
28 Here, Plaintiff has shown no exigent circumstances that justify injunctive relief even with

full notice, let alone on the *ex parte* basis that it has sought. Additionally, Plaintiff has not alleged any threatened harm so serious that a TRO is warranted. The only harm that Plaintiff has alleged is the commercial distribution of software products containing plaintiff's allegedly copyrighted code – the precise use for which Plaintiff agreed to accept contractual royalty payments. As explained in more detail below, even if it had asserted legally cognizable and well-supported claims, which it does not, Plaintiff has made no showing to justify the drastic remedy that it seeks.

## II. PLAINTIFF HAS FAILED TO SHOW A PROBABLY OF SUCCESS OR SERIOUS QUESTIONS REGARDING THE MERITS OF ITS COPYRIGHT CLAIM.

### A. Plaintiff Has Failed to Show Ownership of a Valid Copyright

In its TRO Application, Plaintiff makes no effort to make the critical showing that it owns a valid copyright in the allegedly infringed software. Rather, Plaintiff rests entirely on a copyright registration attached to its complaint. Yet the face of that registration establishes that Netbula failed to register its PowerRPC product until October of 2005, nearly 10 years after its first publication in 1996.[2] Because Netbula failed to register PowerRPC within five years of first publication, its registration does <u>not</u> constitute *prima facie* evidence of the validity of the copyright. *See* 17 U.S.C. § 410(c); ("In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate."); *see also, e.g., Martha Graham Sch. & Dance Found., Inc. v. Martha Graham Center of Contemporary Dance*, 224 F. Supp. 2d 567, 586 (S.D.N.Y. 2002 (declining to assume copyright validity copyright "because [the works] were published more than five years prior to registration"), *rev'd in non relevant part,* 380 F.3d 624 (2d Cir. 2004). Accordingly, Plaintiff bears the burden of proof as to ownership and originality. Plaintiff does not even pretend to address this burden.

In fact, the origin of Plaintiff's product raises significant questions about whether it has any rights against Sun. To prove infringement of copyrighted software, a plaintiff must

---

[2] For reasons that are unexplained, the registration application is dated in December 2005, but the effective date is in October 2005.

OPP. TO APPL. FOR T.R.O.    -5-    CASE NO. C06-07391 BZ

demonstrate a "substantial similarity of *protectible expression*, not just an overall similarity between the works. Thus, before evaluating substantial similarity, it is necessary to eliminate from consideration those elements of a program that are not protected by copyright." 4-13 Nimmer on Copyright § 13.03[F] (emphasis in original); *see also id.* § 13.03[F][3] ("[A] court should examine the allegedly infringed computer program after eliminating from consideration elements that are not original, or that flow naturally from considerations external to the author's creativity."); *see also Computer Assocs. Int'l v. Altai, Inc.*, 982 F.2d 693, 710 (2d Cir. 1992) (infringement of copyrighted software can only be determined after a court "has sifted out all elements of the allegedly infringed program which are 'ideas' or are dictated by efficiency or external factors, or taken from the public domain").

Plaintiff wholly fails to address its burden in this regard. As Plaintiff admits, its PowerRPC product is derived from Sun code. Complaint ¶ 12 (admitting that Netbula derived its RPC software from Sun's Open Network Computing (ONC) RPC). Plaintiff has come forward with no evidence that its code is sufficiently original to qualify for copyright protection. On the contrary, as set forth in the declaration of Michael Abramovitz, a review of Plaintiff's PowerRPC product indicates that the majority of functionality of that product is derived from Sun code, and that changes plaintiff made to that code are the product of adapting Sun's ONC RPC to the Windows environment. Abramovitz Decl. ¶¶ 4-5. In view of this failure to show ownership of a valid copyright, Plaintiff's application for a temporary restraining order must be denied.

**B.   Plaintiff Has Failed to Show Infringement.**

Plaintiff's showing of alleged infringement is equally unavailing. First, Netbula has failed to come forward with competent evidence that any Sun products actually contain the allegedly infringed code in question.[3] In contrast, Sun has presented evidence that the licensed code was removed and replaced with free, publicly available code (also derived from Sun's ONC RPC) in November 2005 . Abramovitz Decl, ¶ 3. This point has been made clear to Netbula, but is conspicuously absent from Plaintiff's Application.

---

[3] The partial copy of a "runtime usage report" attached to Mr. Yue's declaration as Exhibit F is dated August, 2005, fails to show any unauthorized copying of anything, and Plaintiff offers no other competent evidence of any infringement by Sun.

OPP. TO APPL. FOR T.R.O.                    -6-                    CASE NO. C06-07391 BZ

Second, even if there were some continued distribution, Plaintiff admits that StorageTek purchased valid and enforceable licenses to the Netbula file in question. Nevertheless, Plaintiff argues that the royalty payments under those agreements have been inadequate. From there, Plaintiff leaps to wild allegations of "willful" copyright infringement, "fraud" and "piracy." But the agreements in question tell a differently story. Netbula has granted a "nonexclusive, perpetual, irrevocable license" to Sun allowing distribution of <u>unlimited units</u> of software products containing Netbula code, and specifying the royalties to be paid. See, e.g., Yue Decl. Ex. A, ¶ , and Exhibit C thereto (showing price of $4796 for quantities of "3001 and above.") While Netbula apparently contends that the royalty payments have been inadequate, this hardly eviscerates an irrevocable license, and cannot establish copyright infringement.

### III. PLAINTIFF HAS FAILED TO SHOW THAT IT WILL SUFFER IRREPARABLE INJURY, OR THAT THE BALANCE OF HARDSHIPS TIPS HEAVILY IN ITS FAVOR.

#### A. Plaintiff's Delay in Seeking a Preliminary Injunction Negates any Presumption of Irreparable Harm.

A plaintiff that demonstrates a likelihood of success on the merits of a copyright claim – something plaintiff has <u>not</u> done here – is entitled to a presumption of irreparable harm." *Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115, 1119 (9th Cir. 1999). However, a plaintiff who unduly delays in protecting its copyright may lose the benefit of the presumption , even where it has shown likely success on the merits. *Moonrunners L.P. v. Time Warner*, 2005 U.S. Dist. LEXIS 41244 (C.D. Cal. 2005); *Markowitz Jewelry Co. v. Chapal/Zenray, Inc.*, 988 F. Supp. 404, 406 (S.D.N.Y. 1997) (undue delay in seeking a preliminary injunction may rebut the presumption of irreparable harm). "An unreasonable delay suggests that the plaintiff may have acquiesced in the infringing activity, or that any harm suffered by the plaintiff is not so severe as to be 'irreparable.'" *Richard Feiner & Co. v. Turner Entertainment Co.*, 98 F.3d 33, 34 (2d Cir. 1996). "Plaintiff's long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm." *Oakland Tribune, Inc. v. Chronicle Pub. Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985); *Lydo Enterprises v. City of Las Vegas*, 745 F.2d 1211, 1213-14 (9th Cir. 1984).

In *Markowitz*, plaintiff waited thirteen months from first learning of the infringement of

its copyrights before seeking a preliminary injunction. *Markowitz Jewelry Co.*, 988 F. Supp. at 407. The court held that the plaintiff bore the burden of coming forward with evidence to excuse its delay or to independently establish irreparable injury. *Id.* Having done neither, the court held plaintiff was not threatened with immediate or irreparable injury, which it held were prerequisites to the issuance of a preliminary injunction. *Id.* at 408.

According to the Complaint, Netbula suspected infringement of its alleged copyright as early as July 2005 and believed it was confirmed by August 2005. Complaint ¶¶38-39, 42-43. Plaintiff cannot and does not argue that good faith negotiations delayed its pursuit of this drastic remedy, because plaintiff's complaint also acknowledges that Sun's final report on this matter was provided in December 2005. Complaint ¶¶52-53. Now, sixteen months after Netbula believed its alleged copyrights were being infringed and two months after all discussions of the matter ceased, it inexplicably claims that immediate and irreparable harm looms. Having failed to meet its burden of coming forward with evidence to excuse this extensive delay, Plaintiff has failed to show irreparable injury.

### B.  Plaintiff's Contract Remedies Are Adequate.

Notwithstanding overblown assertions of "piracy," Netbula points to no harm beyond the alleged loss of contractually negotiated royalties. Netbula does not allege that the parties are competitors or that it has lost any customers or opportunities, and it offers no evidence of an inability to calculate damages even assuming, contrary to fact, that additional sales including its files were occurring.

As stated in *Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115 (9th Cir. 1999), "before [a plaintiff] can gain the benefits of copyright enforcement," including any presumption about the threat of irreparable harm arising from alleged copyright infringement, "it must <u>definitively establish</u> that the rights it claims were violated are copyright, not contractual, rights." *Id.* at 1122 (emphasis added).

Federal courts have drawn a clear line that the "nonpayment of royalties [and] failure to pay plaintiff [his] share of revenue derived from sales . . . are not Copyright Act claims." *Wolfe v. United Artists Corp.*, 583 F. Supp. 52, 56 (E.D. Pa. 1983); *see also Malinowski v. Playboy*

*Enterprises, Inc.*, 706 F. Supp. 611, 615 (N.D. Ill. 1989) ("[T]he case law that has developed since adoption of the Copyright Act very specifically states that nonpayment of royalties do not constitute claims arising out of the Copyright Act."); 3-12 Nimmer on Copyright § 12.01 ("State and not federal courts have jurisdiction in contract actions for nonpayment of royalties arising out of the exploitation of copyrighted works."). Where there is no other basis for federal jurisdiction, "courts have not been reluctant to dismiss for jurisdictional reasons cases masquerading as copyright infringements that are actually collection cases." *Malinowski*, 706 F. Supp. at 615 (N.D. Ill. 1989) (citing *Royal v. Leading Edge Prdts., Inc.*, 833 F.2d 1 (1st Cir. 1987)). A federal "[c]ourt does not have jurisdiction over an action merely because it involves in some way a copyright, or simply because a copyright is the subject matter of [a] contract." *Franklin v. Cannon Films, Inc.*, 654 F. Supp. 133, 134 (C.D. Cal. 1987) (citation omitted).[4]

As noted above, the gist of this action is the alleged failure to pay appropriate royalties as provided under the license agreements between the parties. Netbula and StorageTek entered into two separate software license agreements, one dated March 2000 and the second in March 2004. *See* Complaint ¶¶ 28, 35; Melkin Decl. ¶¶ 2-3, Exhs. A-B.[5] Thereafter, Netbula alleges, for example, that "[p]rior to March 2004, Defendants StorageTek and SUN distributed copies of 'pwrrpc32.dll' in excess of the 1,000-copy license purchased in the year 2000," and that "[a]fter March 2004, Defendants StorageTek and SUN distributed copies of 'pwrrpc32.dll' (newer version) in excess of the 1,000-copy license purchased in March 2004." Complaint ¶¶ 68-69; *see also id.* ¶ 53 ("After December 2005, Netbula continued its attempt to enforce its licensing terms through discussions with SUN, to no avail."). Throughout the Complaint Netbula claims to have sought a count of products StorageTek distributed containing its allegedly infringed code and contractual royalty reports based on same. *See, e.g., id.* ¶ 39 "In July 2005 . . . Netbula requested StorageTek to provide a royalty report as soon as possible . . . ."); *id.* ¶ 43 ("Netbula found

---

[4] Thus, Netbula's failure to establish a non-contractual basis for its claims also calls into question the subject-matter jurisdiction of this Court. Netbula's only basis for bringing this action in federal court rests on federal question jurisdiction, "[m]ore specifically, the first claim for copyright infringement founded under the Copyright Act . . . ." Complaint ¶ 3.

[5] The Declaration of Michael Melnick filed in support of this Opposition attaches the full copies of both the 2000 and the 2004 agreements. Melnick Decl. ¶¶ 2-3, Exhs. A-B.

OPP. TO APPL. FOR T.R.O.                    -9-                    CASE NO. C06-07391 BZ

several issues with the August 2005 [usage] report."). Whether it is entitled to any additional royalties under the agreements is a question of state contract law, not a basis of federal jurisdiction, and certainly not a basis for finding "irreparable harm" for purposes of this application.[6]

### C. The Public Interest Would Not Be Served by the Issuance of a T.R.O. for a Contract Dispute

The public interest is not served by the issuance of the sweeping injunction – including the impounding of computer software and equipment – on the less than flimsy record Netbula has submitted. Enjoining the sale or distribution of any Sun products would reward an ill-conceived and unjustified motion with a victory – an inequitable result to impose on a company where there is no competent evidence indicating such extraordinary relief is warranted.

### D. Given the Sweeping TRO Sought, a Significant Bond Should Be Required

If the Court orders a preliminary injunction, Sun respectfully requests that the Court also require plaintiff to provide a security bond sufficient to cover the costs and damages that will be incurred by the defendants if it is subsequently found that defendants have been wrongfully enjoined. FRCP 65(c) provides that "[n]o restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." Failure to require a bond upon issuing injunctive relief has been held to be reversible error. *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 (4th Cir. 1999).

A party has been "wrongfully enjoined" under FRCP 65(c) "when it turns out the party enjoined had the right all along to do what it was enjoined from doing." *Nintendo of Am., Inc. v.*

---

[6] In *Sun Microsystems*, the Ninth Circuit stated that an infringement action—and the possible presumptions flowing therefrom—may lie under circumstances in which the copyright owner "definitively establish[es]" that an alleged infringer has exceeded the scope of a license, but *not* where there is merely a breach of a covenant. See 188 F.3d at 1121-22. Such "preliminary contractual issues . . . must be resolved," by application of state contract law, "before the copyright presumption of irreparable harm applies." *Id.* at 1122. Plaintiff's pending application does not even begin to address these issues, and indeed does not even attach the underlying agreements for the court's review. In any event, California law clearly establishes that an obligation to pay royalties is not a limitation on the scope of a license. *See Kabehie v. Zoland*, 102 Cal. App. 4th 513, 528 (2002) (promise to pay, including promise to pay royalties under copyright license, is an independent covenant).

OPP. TO APPL. FOR T.R.O.   -10-   CASE NO. C06-07391 BZ

*Lewis Galoob Toys, Inc.*, 16 F.3d 1032, 1036 (9th Cir. 1994) (affirming execution of $15 million bond in favor of defendants). When setting the amount of the security bond, courts have been advised to "err on the high side." *Mead Johnson Laboratories v. Abbott Lab.*, 201 F.3d 883, 888 (7th Cir. 2000). This advice is based upon a recognition that "[A]n error in the other direction produces irreparable injury, because the damages for an erroneous preliminary injunction cannot exceed the amount of the bond." *Id*; *see W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers of America*, 461 U.S. 757, 770 (1983) ("party injured by the issuance of an injunction later determined to be erroneous has no action for damages in the absence of a bond").

Here, Netbula requests, *inter alia*, not only an injunction on the distribution of certain software, but the impoundment of "all means of making" supposedly "illegal" copies. App. at 8. Such a vague and sweeping request requires the imposition of a significant bond. Even a more narrowly tailored injunction would present difficulties, since Netbula requests and injunction against and impoundment of all "illegal" copies of The Netbula Software. App. For TRO at 8. The parties agree that Netbula granted StorageTek irrevocable licenses to use and distribute the software at issue. This dispute centers on whether Sun has unjustifiably exceeded the scope of those licenses. Until a determination of that fact-intensive issue is made, something which cannot be done upon the current record before the Court, determining which copies, if any, are "illegal" copies, is not possible. Thus, the risk to Sun of an erroneously entered injunction is real, and Sun respectfully requests that if any injunction is to issue here, the Court set a bond of at least $200,000.

## **CONCLUSION**

For all the foregoing reasons, Netbula's application for a temporary restraining order should be denied. Indeed, given the absence of essential support for it's request for a preliminary injunction, that relief could also be denied at this time, but if it is not, the Court should schedule that motion for briefing and hearing in the ordinary course.

Dated: December 5, 2006                    FENWICK & WEST LLP


By: _____/s/ Jedediah Wakefield_____
            Jedediah Wakefield

Attorneys for Defendants
STORAGE TECHNOLOGY CORPORATION
and SUN MICROSYSTEMS, INC.

H9000/01176/LIT/1259341.5