1  VONNAH M. BRILLET (SBN 226545)
   **LAW OFFICES OF VONNAH M. BRILLET**
2  2777 ALVARADO ST., SUITE E
   SAN LEANDRO, CA 94577
3  Telephone:    (510) 351-5345
   Facsimile:    (510) 351-5348
4  E-Mail:       BrilletLaw@yahoo.com
5
   Attorneys for Plaintiff
6  NETBULA, LLC

7
                    UNITED STATES DISTRICT COURT
8
                   NORTHERN DISTRICT OF CALIFORNIA
9

10 NETBULA, LLC., a Delaware limited liability        Case No. C06-07391-BZ
   company,
11                                                     FIRST AMENDED COMPLAINT FOR
                        Plaintiff,                     COMPENSATORY DAMAGES,
12                                                     DISGORGEMENT OF PROFITS,
            v.                                         INJUNCTIVE RELIEF, RESTITUTION,
13                                                     EXEMPLARY DAMAGES, AND
                                                       ATTORNEYS' FEES AND COSTS FOR:
14 STORAGE TECHNOLOGY
   CORPORATION, a Delaware corporation;               1) Direct, Contributory, and Vicarious
15 SUN MICROSYSTEMS Inc., a Delaware                  Copyright Infringement Under 17 U.S.C.
   corporation; INTERNATIONAL BUSINESS               Section 101 *et seq.*;
16 MACHINES CORPORATION, a New York
   corporation; EMC CORPORATION, a                    2) Intentional Fraud Under California Civil
17 Massachusetts Corporation; VERITAS                 Code Section 1709;
   SOFTWARE CORPORATION, a Delaware
18 corporation; DARDEN RESTAURANTS,                   3) Breach of Contract;
   INC, a Florida Corporation; and DOES 1-100,
19 inclusive,                                          4) Statutory Unfair Competition Under
                                                       California Business & Professions Code
20                                                     Section 17200 *et seq.*; and
21                      Defendants.
                                                       5) Equitable Accounting and Imposition of a
22                                                     Constructive Trust;
23
                                                       DEMAND FOR JURY TRIAL;
24
                                                       and
25
                                                       CERTIFICATION OF INTERESTED
26                                                     PARTIES OR PERSONS
27

28                                              -1-
   FIRST AMENDED COMPLAINT
   Case No. C06-07391-BZ

1

2

## COMPLAINT

3

4    Plaintiff NETBULA, LLC ("Netbula" or "Plaintiff") complains and alleges against

5    defendants STORAGE TECHNOLOGY CORPORATION ("StorageTek"), a Delaware

6    corporation; SUN MICROSYSTEMS, Inc ("SUN"), a Delaware corporation;

7    INTERNATIONAL BUSINESS MACHINES CORPORATION("IBM"), a New York

8    corporation; EMC CORPORATION ("EMC"), a Massachusetts Corporation; VERITAS

9    SOFTWARE CORPORATION ("Veritas"), a Delaware corporation; DARDEN

10   RESTAURANTS, INC, a Florida Corporation; and Does 1-100  (collectively, "Defendants") as

11   follows:

12

## INTRODUCTION

13

14

15   1.    Plaintiff Netbula develops computer software products.  The functionality of

16   Netbula's products depends upon uniquely-created and copyrighted software files (the

17   "pwrpc32.dll" file, the "pwrpc32.lib" file, the "powerrpc.h", the "rpcgen.exe" file, and other files).

18   Netbula offers licenses to software products that contain these all-important copyrighted files, in

19   exchange for the payment of royalties.  Such royalties are the heart of Netbula's business revenues.

20   Defendants have willfully infringed Netbula's copyrighted software technology by obtaining said

21   technology and including it in Defendants' own software products, without a license agreement –

22   all without paying Netbula the appropriate royalties.

23

24   2.    Defendants StorageTek and SUN have further defrauded Netbula by making

25   knowingly false representations regarding the number and scope of unauthorized copies they have

26   distributed containing Netbula's copyrighted software technology.  Defendants StorageTek and

27   SUN also breached a valid and enforceable contract with Netbula in which they agreed to pay

28

FIRST AMENDED COMPLAINT

-2-

Case No. C06-07391-BZ

1   Netbula a specific sum and annual fee for the right to distribute Netbula's software with certain

2   limitations.  All of these actions by Defendants amount to unlawful, unfair, and/or fraudulent

3   business practices, and Defendants have profited from all of their unlawful actions to the financial

4   detriment of Plaintiff Netbula.

5

6                                    **JURISDICTION**

7           3.      This Court has subject matter jurisdiction over this matter pursuant to:  (1)

8   28 U.S.C. §§ 1331 and 1338(a), as this action arises out of the laws of the United States of

9   America.  More specifically, the first claim for copyright infringement founded upon the

10  Copyright Act at 17 U.S.C. § 101 *et seq.*); (2) 28 U.S.C. 1338(b), as the fourth claim for unfair

11  competition is joined with a substantial and related copyright claim; and (3) 28 U.S.C. § 1367

12  providing for supplemental jurisdiction, because the second, third, fourth, and fifth claims are so

13  related to the first claim for relief that all of the claims form part of the same case or controversy

14  under Article III of the United States Constitution.

15

16          4.      This Court has personal jurisdiction over Defendants in this action and

17  venue is proper in this judicial district under 28 U.S.C. § 1391(b) because, as alleged below:  (a) at

18  least one of the Defendants resides in the State of California and in this judicial district; (b)

19  Defendants, and each of them, have intentionally engaged in substantial business and related

20  communications within this forum, amounting to sufficient minimum contacts - including, but not

21  limited to, the sale of their offending products and/or services into California and, on information

22  and belief, into this judicial district; (c) the harm caused to Plaintiff by the acts and omissions of

23  Defendants was targeted by Defendants at Plaintiff and designed to impact Plaintiff, which has its

24  principal place of business located in this judicial district; and (d) a substantial part of the acts or

25  omissions giving rise to the asserted claims occurred or had effects in this judicial district.

26  Furthermore, on information and belief, Defendants have infringed Plaintiff's copyrights and

27

28

1    unfairly competed with Plaintiff via the Internet and otherwise, in every jurisdiction of the United

2    States, including this judicial district.

3

4                              **INTRADISTRICT ASSIGNMENT**

5

6            5.      Because this action is an Intellectual Property Action as specified in

7    Northern District of California Civil L.R. 3-2(c), it is to be assigned on a district-wide basis.

8

9                                    **THE PARTIES**

10           6.      Plaintiff NETBULA, LLC ("Netbula" or "Plaintiff"), is a Delaware limited

11   liability company with its principal place of business located at 2777 Alvarado Street, San

12   Leandro, CA, 94577, within this judicial district.

13

14           7.      On information and belief, defendant STORAGE TECHNOLOGY

15   CORPORATION ("StorageTek") is a Delaware corporation with its principal place of business

16   located at One StorageTek Drive, Louisville, Colorado 80028, and is now wholly-owned by Sun

17   Microsystems, Inc ("SUN") effective as of the approximate date of August 31, 2005.

18

19           8.      On information and belief, defendant SUN MICROSYSTEMS, INC.

20   ("SUN") is a Delaware Corporation with its principal place of business located at 4150 Network

21   Circle, Santa Clara, CA 95054 within this judicial district, which finalized its complete acquisition

22   of StorageTek for approximately $4.1 billion on or about August 31, 2005.

23

24           9.      On information and belief, defendant INTERNATIONAL BUSINESS

25   MACHINES CORPORATION ("IBM"), is a New York Corporation with its principal place of

26   business located at New Orchard Road, Armonk, NY 10504.

27

28                                                -4-
     FIRST AMENDED COMPLAINT
     Case No. C06-07391-BZ

10.     On information and belief, defendant EMC CORPORATION ("EMC"), is a Massachusetts Corporation with its principal place of business located at 176 South Street Hopkinton, MA 01748.

11.     On information and belief, defendant VERITAS SOFTWARE CORPORATION ("Veritas") is a Delaware Corporation with its principal place of business located at 350 Ellis Street, Mountain View, California, within this judicial district.

12.     On information and belief, defendant DARDEN RESTAURANTS, INC, is a Florida Corporation with its principal place of business located at 5900 Lake Ellenor Drive, Orlando, FL 32809 and operates more than 1300 restaurants in U.S. and Canada.

13.     Plaintiff does not know the true names and capacities, whether individual, corporate, associate, or otherwise, of defendant DOES 1 through 100, inclusive.  Plaintiff is informed and believes, and based upon such information and belief alleges, that each DOE defendant was in some way responsible for, participated in, or contributed to the matters and things of which Plaintiff complains herein, and in some fashion, has legal responsibility therefore. Certain of defendant DOES 1 through 100 are customers and/or potential customers of the other named Defendants.  When the exact nature and identity of such fictitious defendants and their responsibility for participation and contribution to the matters and things herein alleged is ascertained by Plaintiff, Plaintiff will amend this Complaint to set forth the same.

## FACTUAL DETAILS

14.     Plaintiff Netbula develops premium quality computer software products. Netbula is an industry leader in the development of innovations in "Remote Procedure Call" ("RPC") technology.  RPC technology allows a program on a local computer to execute a command on a remote computer over a network.  Netbula's main product line is its "PowerRPC"

-5-

FIRST AMENDED COMPLAINT

Case No. C06-07391-BZ

1    echelon, which is available for use in both Microsoft Windows and UNIX operating system

2    environments.

3

4            15.    Netbula's business is founded largely upon its sophisticated ability to create

5    new software products featuring advancements and solutions in RPC technology, and to license

6    those products for profit.  Numerous Fortune 500® companies are Netbula customers who make

7    use of, and benefit from, Netbula's "PowerRPC" products in connection with critical financial,

8    healthcare, and telecommunications services.

9

10           16.    Netbula's RPC software is based on the ONC RPC *de facto* industry

11   standard (ONC stands for "Open Network Computing").  ONC RPC is the basis of the Network

12   Filesystem ("NFS") technology. The source code for the original ONC RPC is in the public

13   domain. It was written in so-called K&R style C programming language, which is considered

14   obsolete. Moreover, the original ONC RPC does not support the Microsoft Windows operating

15   system, which is the most popular platform for personal and enterprise computing alike.  For this

16   reason, several vendors, including Plaintiff Netbula, LLC, have adapted ONC RPC found in the

17   public domain, each in their own way, and offered commercial ONC RPC products for Microsoft

18   Windows.

19

20           17.    In its own way, Netbula's PowerRPC for Windows extends the

21   functionality of ONC RPC and adapts it to the Windows platform, which uses Winsock

22   technology for communications over a computer network. Netbula designs additional

23   functionalities, adds new programming source code files and modifies the source code found in

24   ONC RPC, and then, based on Netbula's professional discretion, arranges, configures and builds

25   the source code into executable programs and modules unique to Netbula. Netbula advertises

26   PowerRPC as the "most powerful ONC RPC development tool that exists today" on its web site.

27   Besides Microsoft Windows for the 32-bit x86 architecture, Netbula also develops and markets

28

PowerRPC for Windows CE and PocketPC for the ARM architecture, 64-bit Windows for the AMD64 architecture, 32-bit and 64-bit Solaris OS for the SPARC architecture, HP-UX, Linux and many other operating systems and architectures. Netbula also develops and offers an interoperable RPC product for the Java platform. Netbula thus offers a complete spectrum of interoperable RPC solutions for different operating systems and architectures.

18.     Netbula's RPC software product for Microsoft Windows contains two parts: (1) the "Software Development Kit" ("SDK") that consists of the software tools which allow programmers to create applications based on Netbula RPC technology, for which the "powerrpc.h", "pwrpc32.lib", "pwrpc32.dll", "powerrpc.exe" and "rpcgen.exe" files are the most important; and (2) the "Runtime Library" that consists of files providing the core RPC functionality, for which the "pwrpc32.dll" file is most important. The pwrpc32.dll is a binary file that contains the computer instructions for Netbula's RPC technology. The "pwrpc" in "pwrpc32.dll" is an abbreviation of "PowerRPC", and the 32 indicates that it's for 32-bit computers (for 64-bit computers, the filename is "pwrpc64.dll"). The "pwrpc32.dll" file is a unique and original copyrighted creation of Netbula, and without the "pwrpc32.dll" file, Netbula RPC applications cannot run.  The "pwrpc32.dll" file is therefore a closely-guarded intellectual property right of Netbula.

19.     To develop a program using Netbula RPC ("a Netbula RPC program"), a programmer first writes a functional description file conforming to an interface description language ("IDL"), this description file specifies the commands the RPC program will provide and use. Then the programmer uses a program called an IDL compiler to translate the description into programming source code. Netbula developed its own interface description language (IDL) and its own IDL compiler called "powerrpc.exe". Netbula also modified and extended the "rpcgen" IDL compiler originally in ONC RPC. Software source code generated by Netbula's "rpcgen.exe" incorporates Netbula's extensions that are original to Netbula. To build the Netbula RPC program,

FIRST AMENDED COMPLAINT
Case No. C06-07391-BZ

1   a programmer incorporates the source code generated by the "Netbula powerrpc" or "Netbula

2   rpcgen" IDL compiler, the "powerrpc.h" file and other source code files to create object code with

3   a C or C++ compiler, such as the Microsoft Visual C++ compiler or Borland C++ Builder. Then

4   the object code is linked with Netbula's "pwrpc32.lib" file to create an executable Netbula RPC

5   program.

6

7          20.    While the Netbula RPC application runs, it copies the whole "pwrpc32.dll"

8   file into computer random access memory and inserts the entire "pwrpc32.dll" file into the

9   program's own memory space. Afterwards, the entire "pwrpc32.dll" file becomes part of the

10  program and the program can execute instructions in "pwrpc32.dll" for essential Netbula RPC

11  functionalities. If the "pwrpc32.dll" file cannot be found, the Netbula RPC program will report an

12  error and abort its execution.

13

14         21.    Netbula holds a federal copyright registration for its main product,

15  "PowerRPC" (Registration No. TX 6-211-063, registered October 18, 2005), a copy of which is

16  attached hereto as Exhibit A. As deposit material for "PowerRPC" copyright registration, Netbula

17  deposited 50 pages of identifying program source code for "pwrpc32.dll", "rpcgen.exe" and other

18  software files.  "PowerRPC" contains the key "pwrpc32.dll" file developed by Netbula.

19

20         22.    A Netbula product purchaser must buy one type of license (an "SDK"

21  license) for each computer programmer who will use the "powerrpc.h", "rpcgen.exe",

22  "pwrpc32.lib", "pwrpc32.dll" and other PowerRPC files to develop RPC applications.  A Netbula

23  product purchaser must also buy a separate license for the right to copy Netbula's Runtime Library

24  files, also including the all-important "pwrpc32.dll" file.  The license for the right to copy the

25  Runtime Library to a single computer is called a "runtime license."  Each SDK license and

26  runtime license is only granted for a single computer and might only be granted for use in one

27

28

1  specific operating system environment, for example, Windows 2000 but not Windows XP,

2  depending upon the specific agreement between Netbula and the licensee.

3

4       23.    When Netbula licenses its RPC SDK or runtime library to a customer, it

5  creates a copy specific to that customer by embedding the customer's name and license type into

6  the software files. The copy of PowerRPC software a customer receives from Netbula is thus

7  unique to that customer. For instance, in the "pwrpc32.dll" file, there is the text string "pwrpc-

8  netbula,llc" and additional information specific to a customer. Netbula does this for the purpose of

9  recording the license information of the customer and protecting Netbula's copyright. In case of

10 unauthorized copying, Netbula could trace the origin back to the customer by just looking at the

11 copied files.

12

13      24.    Netbula collects a royalty for each copy of its SDK license and each copy of

14 its runtime license.  Both the SDK and runtime licenses include the right to use Netbula's key

15 "pwrpc32.dll" file.  These licenses may be purchased in two ways.  First, licenses may be

16 purchased as a block of individual units that are each usable on a single computer under a

17 particular operating system (a "Limited Distribution License").  Under this first licensing model,

18 Netbula customers purchase a fixed number of licenses and must replenish them when the pool of

19 licenses is used up. In other words, this license is a prepayment license. Second, a customer can

20 copy and distribute Netbula's licenses on its own.  Under this second licensing model, the

21 customer must agree to provide Netbula with quarterly reports detailing the number of individual

22 licenses distributed, and to pay Netbula a royalty for each license.  Both licensing models are

23 standard in the software industry, and both depend upon the good faith of Netbula's customers

24 (*i.e.*, licensees). Since Netbula's RPC technology is mostly used as a component in enterprise

25 computing environment, it is near impossible for Netbula to determine how its software is being

26 used and how many copies have been distributed by its licensees. Accurate reporting is crucial

27 because Netbula's business and profitability depend largely upon the royalties it receives from

28

-9-

1  licensing copies of its RPC software technologies that make use of the all-important "pwrpc32.dll"

2  file.  Further, Netbula's licenses are not transferable.

3

4          25.    Defendant StorageTek develops and sells computer data storage and

5  recovery hardware and software products. StorageTek's main products are machines that can hold

6  very large numbers of magnetic tape cartridges to store enormous amounts of data. These

7  machines are called "tape libraries". A tape library (also called a tape silo or tape jukebox)

8  contains one or more tape drives, a number of slots to hold tape cartridges, and a robotic

9  mechanism for loading and unloading tape cartridges to and from tape drives.

10

11          26.    In a typical StorageTek tape library system, a separate computer controls

12  the tape library's operation, such as the loading/unloading of the tapes. According to its product

13  literature, StorageTek has several software products for controlling tape libraries, including

14  "Automated Cartridge System Library Software"( "ACSLS"), "Library Manager" and

15  "LibraryStation". ACSLS appears to be the most comprehensive and most commonly used. When

16  a user utilizes a StorageTek tape library to store or retrieve data, that user must ensure, among

17  other things, that the right tape cartridge is in the right tape drive, before transferring the data. This

18  control is usually done by interacting with one of the tape library management software, such as

19  ACSLS, via a program on the user's computer over a computer network.

20

21          27.    On information and belief, StorageTek's ACSLS, Library Manager and

22  LibryStation software use RPC as the communication mechanism. These programs are RPC

23  services waiting for a user's computer to issue commands for the tape library. Therefore, to

24  execute the tape library control commands from a user's computer, RPC technology must be

25  installed on that user's computer. On the user's computer, the data storage program first uses RPC

26  technology to communicate with the tape library manager software such as ACSLS and execute

27  control commands to load and wind tapes. StorageTek calls this communication channel the

28

-10-

"control path". Once the proper control commands are successfully executed via the control path, a remote computer can then transfer the data to and from the StorageTek tape library via the "data path", such as a SAN (Storage Area Network). Therefore, RPC technology is indispensable for the utilization of StorageTek tape libraries in situations where "ACSLS" and other software are used for controlling them. StorageTek's software which enables communication with "ACSLS" on Microsoft Windows is called "Library Attach software" or "LibAttach".

28.     Defendant SUN develops and sells computer systems for the enterprise market.  In 1982, SUN provided a customized version of 4.1 BSD Unix operating system called SunOS. BSD (Berkeley Software Distribution) is the Unix derivative distributed by University of California, Berkeley, under permissive free software licenses called BSD licenses. The software distributed under a BSD license is considered public domain and may be modified without restriction and for commercial use. With its commercial operating system (SunOS) built on the free BSD software and its workstations built with commodity hardware (such as the Motorola 68K CPUs, the same used in Commodore Amiga and Atari ST), SUN was able to market workstation computers at much lower prices. In 1984, SUN released the NFS technology (including ONC RPC as a component to the industry for free and in source code form. According to SUN's own executives and industry analysts, the opening of NFS software, which includes ONC RPC, propelled SUN from a startup into one of the leading vendors in the computer workstation and server business by creating a SUN-based open standard. In an article written by Jonathan Schwartz, now President and CEO of SUN, he stated "Sun founded itself on open source using BSD… we've built our company on the premise (remember NFS)".

29.     In August 2005, SUN acquired StorageTek. According to their SEC filings, SUN acquired StorageTek in an attempt to combine the force of its own storage technologies with StorageTek's technologies, and to access StorageTek's customers to sell other SUN products, such as enterprise servers, workstations and software.  On information and belief, SUN, as the acquirer

-11-

and successor-in-interest of StorageTek, is fully responsible for legal claims brought against StorageTek.

30.     In January 2000, a manager at StorageTek emailed Netbula to request a full version of PowerRPC. The manager said it was to replace another RPC solution named "MKS NutCracker RPC" being used by StorageTek at the time. The email stated that "[t]he product we are working on is for re-sale and not internal use. We are a large company and it would not be wise for us to distribute this software unlicensed. We are willing to sign agreements to this affect."

31.     Netbula licensed its "pwrpc32.dll" software under two models; 1) per copy and 2) prepayment. In 2000, with the per copy model, the price was approximately $50 per copy; with the prepayment model, a customer pays for the right to make a certain number of copies at a lower average unit price, and purchases additional blocks when the licenses are expended. Netbula termed the 1,000-copy license - a "Limited Distribution License".

32.     In March 2000, StorageTek and Netbula signed a license agreement for PowerRPC. StorageTek represented that it would use a large number of licenses, and negotiated volume discount on license fees. The license agreement granted StorageTek the right to develop and distribute Netbula RPC applications for Windows 95, Windows 98 and Windows NT platforms, subject to the "Limited Distribution" clause of the agreement. The agreement required StorageTek to treat the Netbula software as copyrighted material that is protected by copyright laws and international treaties. StorageTek purchased development licenses for eight (8) developers and one block of 1,000-copy runtime licenses for installation onto 1000 computers. The agreement further required StorageTek to keep records of its license usage and purchase additional 1,000-copy block licenses once it expended the prepaid number of copies.

33.    Subsequently, Netbula provided technical support for StorageTek. For instance, on March 14, 2000, a StorageTek developer named Keith Oliver emailed Netbula saying they purchased Netbula RPC "software development toolkit for Windows NT/95/98" but found a problem when running the Netbula "rpcgen.exe" program under certain conditions. On the same day, Netbula fixed the problem for StorageTek.

34.    In June 2000, a person named Anton Vatcky from StorageTek sent an email to Netbula inquiring about a PowerRPC license for Windows 2000. Mr. Vatcky knew that StorageTek only had a license for Windows NT and asked for a copy for the Windows 2000 version. He asked in his email: "We at StorageTek currently use the NT version of PowerRPC in our product…Would it be possible to obtain a copy of the Win2K version of PowerRPC,to determine if our software will port OK to Win2K." Mr. Vatcky indicated that a separate license agreement would be signed for Windows 2000. Netbula immediately provided StorageTek a demo version of PowerRPC for Windows 2000. However, StorageTek never responded to Netbula to sign a license agreement for Windows 2000.

35.    In June 2001, Netbula requested a license usage report from StorageTek. Mike Melnick, on behalf of StorageTek, reported that "[t]he license count you request is 107, this leaves us the rights to distribute 893."

36.    In September 2002, Netbula requested another license usage report from StorageTek. Mr. Melnick, on behalf of StorageTek, stated that the product was being terminated and license usage stayed at 107. Netbula re-confirmed with StorageTek that PowerRPC was no longer used by StorageTek. As a result, Netbula deleted StorageTek from its list of active licensees and stopped requesting license usage reports from StorageTek.

FIRST AMENDED COMPLAINT
Case No. C06-07391-BZ

37.    In March 2004, Mr. Melnick at StorageTek contacted Netbula for an upgraded version of PowerRPC for Windows Server 2003.

38.    Since StorageTek stated previously that their product using PowerRPC was terminated and they had stopped using PowerRPC, and StorageTek did not change its previous position that it had stopped using PowerRPC, Netbula assumed that the new PowerRPC license StorageTek requested in March 2004 was for a new product or new project.

39.    Shortly after Mr. Melnick contacted Netbula, in March 2004, StorageTek and Netbula signed a new license agreement. The license covered Windows 2000, Windows XP and Windows Server 2003. StorageTek purchased another block of 1000 runtime licenses.

40.    In 2004, Netbula's listed price for the 1000-copy "pwrpc32.dll" license was approximately two times higher than its price in year 2000. However, relying on StorageTek previous statement that they had only consumed 107 licenses out of the 1,000 they purchased in 2000, Netbula believed that StorageTek's runtime license usage would be low. To compensate StorageTek for its previously unused 893 licenses, Netbula gave StorageTek a discounted price for the new licenses in the March 2004 license agreement.

41.    In October 2004, Netbula requested a license usage report from StorageTek. The answer Netbula got from Mr. Melnick at StorageTek was: "[I]t took 2 years to go through the first 1,000 licenses I doubt we have gone through the 1000 we just purchased in March." Netbula did not get a report.

42.    In June 2005, Netbula again requested StorageTek to provide a license usage report. After some exchanges and failure to get a report, Netbula reviewed the records and noticed that there were inconsistencies in StorageTek's statements. StorageTek stated that it

-14-

FIRST AMENDED COMPLAINT

Case No. C06-07391-BZ

stopped using PowerRPC after consuming 107 units on or before June 2001, and then it stated that it took two years to go through the first 1000 licenses. Netbula then concluded that StorageTek had been using PowerRPC from 2001 to 2004 but concealed this fact from Netbula.

43.     In July 2005, Netbula pointed out the inconsistencies in the previous statements by StorageTek and requested an audit of StorageTek's license usage. Netbula requested StorageTek to provide a royalty report as soon as possible, and requested to perform an on-site audit of StorageTek by an external audit firm.

44.     StorageTek was reluctant to provide a royalty report. StorageTek stated that the license agreement did not mention on-site audit by third parties. StorageTek suggested modifying the license agreement to change the royalty payment scheme going forward from prepayment to quarterly royalty reporting and payment based on actual usage under the per-copy model. However, Netbula wanted to have the issue of past usage resolved first before talking about any changes to the agreement.

45.     At approximately the same time, Netbula noticed that StorageTek was being acquired by SUN Microsystems. Netbula indicated that it would contact SUN directly if it could not get the issue resolved with StorageTek. Netbula also pointed out that if StorageTek used and distributed PowerRPC on Windows 2000 before 2004, such use and distribution were without a license or authorization.

46.     On August 18, 2005, approximately two weeks before the completion of the SUN-StorageTek merger, StorageTek provided a usage report in a set of Microsoft Excel files which showed a usage of 7,455 runtime licenses, with certain order information. According to this report, Netbula's "pwrpc32.dll" was used for multiple versions of software products called REELS and another called "Library Attach" ("LibAttach"). According to StorageTek's product

FIRST AMENDED COMPLAINT

Case No. C06-07391-BZ

literature, LibAttach enables a computer running Microsoft Windows operating system to interact with StorageTek's tape library management software such as ACSLS. Prior to receiving StorageTek's August 2005 report,  Netbula had no knowledge about StorageTek's LibAttach and no knowledge that LibAttach used "pwrpc32.dll".

47.    After performing some statistics on the data StorageTek provided, Netbula found several issues with the August 2005 report.

48.    First, the number of LibAttach licenses had a sudden increase in the fourth quarter of 2004. From 2000 to November 18, 2004, all orders had only one LibAttach license. Afterwards, each order showed multiple licenses. Before the fourth quarter of 2004 (Q4 2004), average quarterly license usage was about 100 copies; afterwards, the average quarterly license usage was over 1000 copies. Since StorageTek's tape library products and revenue were quite stable during the period, this sudden 10-fold increase in license usage raised a red flag for Netbula.

49.    Second, StorageTek's report showed zero (0) orders for the REELS software after February 2001, but Netbula discovered that the REELS software was terminated in December 2001 – ten (10) months later.

50.    Finally, StorageTek used PowerRPC on Windows 2000 before March 2004 without a license. The original license was only for Windows NT. Netbula never licensed PowerRPC for StorageTek to use on Windows 2000 before 2004.

51.    Netbula immediately raised the above issues with StorageTek. Both sides then arranged a set of conference calls, trying to resolve the discrepancies, especially the many fold increase of licenses in Q4 2004, which Netbula believed StorageTek was simply under

1  reporting before Q4 2004. LibAttach is a key software technology for using StorageTek's tape

2  products on Windows. Most of StorageTek's revenue comes from tape products.

3

4          52.    According to StorageTek's 10-K annual filings with the U.S. Securities and

5  Exchange Commission ("SEC"), in year 2000, StorageTek had revenue of $2.06 billion, $1.109

6  billion was from its tape products, $648 million was from services; in 2001, it had revenue of

7  $2.045 billion, $1.099 billion was from tape products, $686 million was from services; in 2002, it

8  had revenue of $2.039 billion, $989.8 million was from tape products, $763 million was from

9  services; in 2003, StorageTek had revenue of $2.282 billion, $1.031 billion was from tape

10 products, $846 million was from services; in 2004, StorageTek had revenue of $2.224 billion,

11 $1.012 billion was from tape products, $916.9 million was from services; in the first six months of

12 2005, StorageTek had revenue of $1.08 billion, $454 million was from tape products, $476 million

13 was from services. After SUN completed its acquisition of StorageTek in August 2005,

14 StorageTek's financial results were consolidated into SUN's report and were not separately

15 available.  For each of the years above, the remainder of StorageTek's income for the respective

16 years was from various other activities.

17

18          53.    From StorageTek's financial reports, its revenue was quite stable over the

19 years, averaging approximately $2 billion per year from products and services. Tape products

20 generated about 77% of StorageTek's product revenue, totaling approximately $1 billion per year.

21 There were no major fluctuations that could explain the 10-fold increase in LibAttach license

22 usages since the fourth quarter of 2004.

23

24          54.    After SUN and StorageTek merged on August 31, 2005, the PowerRPC

25 license matter was handled by SUN.

26

27

28

55.    Unable to reconcile the differences after many rounds of communication with SUN/StorageTek, Netbula requested SUN/StorageTek to provide one final report on PowerRPC license usage. Netbula obtained a limited set of information on StorageTek's usage, and would like to check against SUN/StorageTek's report. Specifically, from StorageTek's customer testimonials on the internet, Netbula learned that there were customers with hundreds of Windows servers before 2004. Netbula chose two such customers and requested SUN/StorageTek to identify which lines in its royalty report corresponded to these two customers and perform verification of the number of copies.

56.    In December 2005, SUN/StorageTek provided a purported final report and a letter explaining the situation, but it refused to identify the two customers on its report. Thus, Netbula was unable to get a license usage report with minimum verifiable information.

57.    After December 2005, Netbula continued its attempt to enforce its licensing terms through discussions with SUN, to no avail. During one telephone conference call held in June 2006 between Netbula and SUN, SUN threatened various actions if Netbula pursued legal action.  Julie DeCecco, SUN's Associated General Counsel told Netbula during the conference call, "We will open your books".  In October 2006, the license discussions between Netbula and SUN finally broke down.

58.    On information and belief, the LibAttach software is a crucial technology for SUN/StorageTek's tape products. LibAttach allows a Windows application to control a tape library by executing RPC commands on an ACSLS server over a network, which is essential for utilizing the StorageTek tape libraries from Windows.

59.    On further information and belief, LibAttach versions 1.1 to 1.4 were developed with PowerRPC. The PowerRPC generated source code was incorporated into the

FIRST AMENDED COMPLAINT                                    -18-

Case No. C06-07391-BZ

1   LibAttach software, the "pwrpc32.dll" was also bundled with the LibAttach software. LibAttach is

2   thus based on Netbula PowerRPC.

3

4          60.     SUN/StorageTek sells LibAttach licenses to end users under the

5   "1191NLC" main product code. According to StorageTek's pricing list, it sells the single

6   LibAttach license under the code 1191NLC-S001, 500 licenses under the code 1191NLC-S500, or

7   1,000 licenses under the code 1191NLC-S1K0. As Netbula later discovered, StorageTek also sells

8   unlimited LibAttach licenses under the code 1191NLC-SENT.

9

10         61.     StorageTek also sells software called "LibAttach Integrator's Kit" under the

11  product code "1191NLI" to software developers who develop data backup software for

12  StorageTek tape libraries. On information and belief, the 1991NLI product also includes Netbula's

13  "pwrpc32.dll" and PowerRPC generated code.

14

15         62.     On information and belief, Defendant IBM acquired various versions of the

16  "LibAttach" and/or "LibAttach Integrators' Kit" from StorageTek and copied these products

17  (which included the "pwrpc32.dll" file) in its development of the Tivoli Storage Manager

18  ("TSM") software and in their use of StorageTek tape libraries. According to industry reports by

19  IDC, IBM's storage management software generated about $311 million gross revenue in the

20  second quarter of 2006.

21

22         63.     On information and belief, Defendant EMC Corporation acquired various

23  versions of the "LibAttach" and/or "LibAttach Integrators' Kit" from StorageTek and copied these

24  products (which included the "pwrpc32.dll" file) in its development of its Legato NetWorker

25  software, and potentially other storage management software it develops. According to industry

26  report by IDC, EMC Corporation generated about $645 million gross revenue from its storage

27  management software in the second quarter of 2006.

28
FIRST AMENDED COMPLAINT

Case No. C06-07391-BZ

64. On information and belief, Defendant Veritas Software acquired the various versions of the "LibAttach" and/or "LibAttach Integrators' Kit" from StorageTek and copied these products (which included the "pwrpc32.dll" file) in its development of its Veritas NetBackup and Media Server software, and potentially other storage management software it develops. Veritas Software had annual revenue of about $2 billion.

65. On information and belief, Defendant Darden Restaurants acquired the infringing "LibAttach" software (which included Netbula's "pwrpc32.dll") from StorageTek in about 2002 and copied the software in their operation of their StorageTek tape libraries. Darden Restaurants has annual revenue of about $5 billion.

## FIRST CLAIM FOR RELIEF

### COPYRIGHT INFRINGEMENT (DIRECT, CONTRIBUTORY, AND VICARIOUS) (17 U.S.C. § 101 et seq.)

### (Against All Defendants.  For Damages and Profits, and Injunctive Relief)

66. Plaintiff re-alleges and incorporates herein by reference the allegations of paragraphs 1 through 65, inclusive, of this Complaint.

67. Plaintiff has complied in all respects with the Copyright Act, 17 U.S.C. § 101 et seq., and all other laws governing copyright, with respect to its RPC technology software and products.  The content, selection, coordination, and arrangement of the information in Netbula's RPC technology and products have resulted in works which, in each individual instance, and as a whole, constitute original works of authorship.

68.    All of the original creations of content in Netbula's RPC technology (including its "pwrpc32.dll", "pwrpc32.lib", "rpcgen.exe", "powerrpc.h" and "powerrpc.exe" files) and the works making use of it (including Plaintiff's "PowerRPC" products) constitute original works of authorship fixed in a tangible medium of expression and are copyrightable under the Copyright Act.  Plaintiff has obtained a federal copyright registration for its Netbula "PowerRPC" software product (Registration No. TX 6-211-063, registered October 18, 2005, attached as Exhibit A to this Complaint).  Plaintiff also has common law copyright rights in its original published works.

69.    At all times relevant hereto, Plaintiff has been and still is the holder of the exclusive rights under the Copyright Act to reproduce, adapt, perform, distribute, display, exhibit, and license the reproduction, adaptation, performance, distribution, display, exhibition, and other use of its RPC technology and products, including its "pwrpc32.dll" file.

70.    Plaintiff has invested substantial time, effort, and money in the creation and public distribution of its RPC technology and products, based in part upon the opportunity to recover its investment from its copyrighted content, and to obtain the revenues and business advantages the copyrighted content provides in connection with Netbula's offering of computer software programs and licenses to the public.

71.    Plaintiff's RPC technology (including its SDK and runtime files) contains the "pwrpc32.dll" file necessary to the functionality of RPC software products developed with "PowerRPC."  Plaintiff's "rpcgen.exe" generates source code which is also copyrighted by Plaintiff. On information and belief, Defendants' LibAttach and REELS products contain copies of significant material portions of the content of Plaintiff's technology and products, including Plaintiff's "pwrpc32.dll" file and the code generated by "rpcgen.exe".  Defendants have repeatedly copied or made use of Netbula's RPC technology containing its important "pwrpc32.dll" file.

FIRST AMENDED COMPLAINT
Case No. C06-07391-BZ

Since the LibAttach software incorporates the source code generated by Plaintiff's "rpcgen.exe" program and includes the "pwrpc32.dl" and "powerrpc.h" files, it is a derivative work of Netbula's PowerRPC.

72.     Defendants had access to the content of Plaintiff's RPC technology and "pwrpc32.dll" file as alleged hereinabove and acquired possession of the content of said technology by directly and/or substantially copying that information from products originating from Netbula, and intentionally reproduced, displayed, adapted, exhibited, and/or publicly distributed the content of Plaintiff's RPC technology and software products in Defendants' "LibAttach" and "REELS" products out of the scope of licenses, or without Plaintiff's authorization, consent, or license. Defendants SUN/StorageTek infringing acts include the acts in paragraphs 65 through 69, inclusive.

73.     Defendant StorageTek developed and distributed LibAttach and REELS products (which are based on PowerRPC) on Windows 2000 before March 2004 without a PowerRPC license.  StorageTek knew it did not have a license for Windows 2000.

74.      Defendant StorageTek developed and distributed "LibAttach Integrator's Kit" (which uses PowerRPC) for Windows 2000 knowingly, without a PowerRPC license;

75.     Defendants StorageTek and SUN distributed LibAttach (which includes "pwrpc32.dll") under "1191NLC-SENT" product code for unlimited copying by their customers without Netbula's knowledge and authorization and in intentional violation of Netbula's licensing restrictions (Limited Distribution);

76.     Prior to March 2004, Defendant StorageTek distributed copies of "pwrpc32.dll" in excess of the 1,000-copy license purchased in year 2000;

1    77.    After March 2004, Defendants StorageTek and SUN distributed copies of

2    "pwrpc32.dll" (newer version) in excess of the 1,000-copy license purchased in March 2004.

3

4    78.    Defendants IBM, EMC, Veritas and Darden Restaurants copied the

5    "LibAttach" and/or "LibAttach Integrator's Kit" software (which are derivative work of

6    PowerRPC and also include "pwrpc32.dll") for unauthorized platforms or without a license and

7    thus directly infringed Netbula's copyright.

8

9    79.    Defendants' unauthorized use and copying of Netbula's copyrighted RPC

10    technology and "pwrpc32.dll" file and distribution of same to third parties as part of StorageTek's

11    software products has resulted in the infringement of Netbula's copyrighted RPC technology and

12    "pwrpc32.dll" file by numerous third parties who have come into possession of said technology

13    through StorageTek's products and have potentially copied and distributed it further.

14

15    80.    By intentionally copying, reproducing, displaying, adapting, exhibiting,

16    and/or distributing the above-identified content of Plaintiff's RPC technology and products as

17    described hereinabove, Defendants have directly, contributorily, and vicariously infringed

18    Plaintiff's exclusive rights in its copyrighted works, both in connection with the use and copying

19    by each other and with the use and copying by third parties.  By means of the unlawful conduct

20    alleged herein, Defendants have infringed and will continue to infringe Plaintiff's valuable

21    copyrights in the content of its RPC technology and products described herein.

22

23    81.    On information and belief, Defendants StorageTek and SUN have each

24    knowingly and systematically participated in, facilitated, supported, materially contributed to,

25    and/or encouraged the unauthorized copying, reproducing, displaying, adapting, exhibiting, and/or

26    public distributing of Plaintiff's copyrighted RPC technology content and products, and each of the

27    Defendants has actual and constructive knowledge of the infringements committed by and through

28

FIRST AMENDED COMPLAINT

-23-

Case No. C06-07391-BZ

StorageTek and its LibAttach, LibAttach Integrator's Kit and REELS products, and has had (and continues to have) the ability to control or halt such conduct at all relevant times, be it conduct of the Defendants or of third parties.

82.     On further information and belief, Defendants have also each knowingly and systematically participated in, facilitated, supported, materially contributed to, and/or encouraged the unauthorized copying, reproducing, displaying, adapting, exhibiting, and/or public distributing of Plaintiff's copyrighted RPC technology content and products by each other and by third parties, with actual and constructive knowledge of the infringements committed by and through each other and the third parties.  On further information and belief, at all relevant times, each of the Defendants had the right, ability, and opportunity to halt and/or control the unlawful conduct of each of the other Defendants and third parties as alleged herein.

83.     On further information and belief, SUN was on notice of the dispute between Netbula and StorageTek and, as the acquirer of StorageTek, is responsible for the infringements committed by and through StorageTek and its managing agents.

84.     On information and belief, each of the Defendants, through: (a) their active participation in the infringing conduct of each other and of third parties; (b) their assistance of and material contribution to each other and third parties in the infringing conduct; (c) their supervision of and ability to control or halt the infringing conduct of each other and third parties; and (d) the substantial, direct financial benefits that each of the Defendants has derived and continues to derive from all of the aforesaid acts, all with full knowledge of their unlawfulness, is contributorily and vicariously liable for the unlawful infringing conduct of each of the other Defendants and each third party as alleged hereinabove.

85.     Plaintiff is informed and believes, and on that basis alleges, that StorageTek's and SUN's acts of infringements as alleged herein were committed knowingly, intentionally, maliciously, willfully, and in blatant disregard of, and indifference to, the rights and property of Plaintiff.

86.     As a direct and proximate result of Defendants' unlawful acts as described herein, Plaintiff has suffered and will continue to suffer injury to its business, goodwill, and property.  By means of the unauthorized conduct alleged herein, Defendants have deprived and will continue to deprive Plaintiff of gains, revenues, royalties, business advantages, and/or the opportunity to recover its investment in its RPC technology and products, both direct and indirect. As such, Defendants have created and continue to create a disincentive for similar investments in the arts.  On information and belief, Defendants have also derived substantial financial benefit from their unlawful conduct with respect to Plaintiff's copyrighted materials, as well as from the unlawful and infringing conduct of each other and of third parties.

87.     Each infringing act of copying, reproducing, displaying, adapting, exhibiting, and/or distributing the content of Plaintiff's RPC technology (including Netbula's "pwrpc32.dll" file), as well as the continuing threat of the same, constitutes a separate claim against Defendants, and each of them, under the Copyright Act.

88.     Each post, copy, reproduction, adaptation, exhibition, display, and/or distribution of Plaintiff's copyrighted materials on and through Defendants' products, or by any other means, constitutes a separate and distinct act of infringement, whether committed by individual Defendants or combinations of them, and including acts of third parties for which Defendants are contributorily and/or vicariously liable.

89.     Plaintiff has sustained, and will continue to sustain, substantial damage to the value of its business, in that the activities of Defendants described in this Complaint have diminished and will continue to diminish the gains, revenues, royalties, and business advantages which Plaintiff would otherwise receive from the use of its copyrighted works.

90.     Defendants have realized unlawful and unjust profits from the unauthorized and illegal copying, reproduction, adaptation, exhibition, and/or displaying of the above-referenced content of Plaintiff's copyrighted works.  As a result of Defendants' acts of intentional direct, contributory, and/or vicarious infringement, Plaintiff is without an adequate remedy at law, in that actual damages are difficult to ascertain.  Accordingly, Plaintiff requests that this Court grant the injunctive relief prayed for herein.

91.     Plaintiff is entitled to recover from Defendants the damages, including attorneys' fees, it has sustained and will sustain, and any gains, profits, and advantages obtained by Defendants as a result of Defendants' acts of infringement alleged above, be they direct or indirect. At present, the amount of such damages to Plaintiff and the gains, profits, and advantages Defendants have obtained by reason of the unlawful conduct described herein cannot be fully ascertained by Plaintiff, but are likely to exceed $10,000,000.

92.     Furthermore, Plaintiff has no adequate remedy at law.  Unless Defendants are preliminarily and permanently enjoined from committing the unlawful acts described herein, Plaintiff will continue to suffer irreparable harm.  Plaintiff's harm is irreparable because it is extremely difficult to ascertain the amount of compensation which will afford Plaintiff adequate relief if Defendants are not enjoined at this time, in part because of the nature of intellectual property.  Plaintiff is entitled, pursuant to 17 U.S.C. § 502, to injunctive relief in the form of a temporary restraining order, a preliminary injunction, and/or a permanent injunction restraining Defendants and all persons acting in concert with them, from engaging in any further such acts in

-26-

FIRST AMENDED COMPLAINT

Case No. C06-07391-BZ

1  violation of the Copyright Act and from distributing Defendants' products which are the unlawful

2  fruits of their unlawful conduct.

3

4                        **SECOND CLAIM FOR RELIEF**

5

6                *INTENTIONAL FRAUD (California Civil Code § 1709)*

7

8      *(Against Defendants StorageTek and SUN only. For Damages and Exemplary Damages)*

9

10              93.    Plaintiff realleges and incorporates herein by reference the allegations of

11  paragraphs 1 through 92, inclusive, of this Complaint.

12

13              94.    In September 2002, in response to Netbula's royalty audit request,

14  StorageTek informed Netbula that it stopped using Netbula's PowerRPC technology and stopped

15  reporting and paying royalties. In fact, StorageTek used "PowerRPC" to develop StorageTek's

16  LibAttach software and "pwrpc32.dll" was included in it LibAttach software. LibAttach has been

17  a key product for StorageTek's tape products, which accounted for about 77% of its product

18  revenue.

19

20              95.    In March 2004, when StorageTek approached Netbula for an upgraded

21  version of PowerRPC, StorageTek again concealed the fact that it had been using PowerRPC over

22  the years in its key products and on unauthorized Windows platforms.

23

24              96.    In October 2004, when Netbula requested another royalty report,

25  StorageTek again misrepresented its usage of PowerRPC. Furthermore, StorageTek concealed the

26  fact that it has been selling product "1191NLC-SENT" for unlimited copies of software that

27  contained Netbula's "pwrpc32.dll".

28

-27-

97.     The representations StorageTek made to Netbula as alleged above, as well as the related representations by StorageTek, were knowingly false when made and were made with the intent to deceive Plaintiff and to induce Plaintiff to rely upon the false and/or incomplete reports and representations.  Defendants' acts of intentional concealment and misrepresentation were calculated attempts to induce Netbula into accepting lower royalty payments and forgoing its intellectual property rights.

98.     The representations that were made by Defendants to Plaintiff were, in fact, false.  As described above, Plaintiff has demonstrated that the reports it was given by StorageTek left out certain key information and statistics, proving the prior and concurrent representations regarding the completeness and accuracy of its reports to be false. Each of the representations was knowingly false when made and designed to mislead and deceive Plaintiff.

99.     Netbula, with its trust of large public companies such as StorageTek, justifiably relied on Defendants' representations made in 2002 and 2004. As a proximate result of Defendants' fraud and deceit as alleged herein, Plaintiff has been damaged by Defendants' conduct and fraud. Relying on Defendants' false representations in September 2002 that it stopped using PowerRPC, Netbula lost significant royalty revenue. Relying on StorageTek's false representations in September 2002 and March 2004, Netbula was induced into signing the second license agreement which gave StorageTek substantially lower prices than its listed price at the time. But for StorageTek's misrepresentations regarding its usage of PowerRPC, Netbula would have insisted on its listed price in 2004. Netbula was also damaged by Defendants' infringement due to the fraud. Besides actual damages Netbula suffered from Defendants' infringement during the period relying on Defendants' false representations, Netbula also suffered additional irreparable harm from such infringement. The harm was irreparable because Defendants had

possession of Netbula's software and was actively distributing such software to indefinite number of unknown third parties without authorization, Defendants' scope of infringing actions were out of Netbula's control and impossible to determine without incurring additional and great amount of resources and monies. Defendants' false representations as discussed herein were a substantial factor in causing, and indeed the proximate cause of, Plaintiff's harm.

100.    On information and belief, the conduct of Defendants was intentional and amounted to fraud and deceit, with the intention on the part of Defendants to deprive Plaintiff of its legal rights and/or to otherwise cause injury to Plaintiff, and subjected Plaintiff to unjust hardships in total disregard of Plaintiff's rights.  In connection with the matters alleged above, Defendants, through the actions of StorageTek's managing agents, are guilty of oppression, fraud, and malice pursuant to California Civil Code Section 3294 because they made intentionally false representations to Plaintiff in a manner designed specifically and intentionally to induce Plaintiff's reliance and to damage Plaintiff in connection therewith.  Plaintiff is therefore also entitled to exemplary damages in an amount appropriate to punish and make an example of Defendants to the community and to deter Defendants and others from committing similar acts in the future.

101.    Defendant SUN ratified StorageTek's fraud after acquiring StorageTek and made attempts to intimidate Netbula into forgoing its legal rights.  As the successor-in-interest of StorageTek, SUN is responsible for the fraud committed by and through StorageTek and its managing agents.

## THIRD CLAIM FOR RELIEF

-29-

FIRST AMENDED COMPLAINT
Case No. C06-07391-BZ

1

### ***BREACH OF CONTRACT***

2

3

### ***(Against Defendants StorageTek and SUN Only) (For Damages)***

4

5      102.    Plaintiff realleges and incorporates herein by reference the allegations of

6    paragraphs 1 through 101, inclusive, of this Complaint.

7

8      103.    In March 2000, StorageTek (now acquired by SUN) and Netbula signed a

9    license agreement for PowerRPC software, stating that StorageTek would report license usage to

10   Netbula upon request.  However, StorageTek failed to provide an accurate royalty report upon

11   Netbula's request in 2002.

12

13     104.    In March 2004, StorageTek (now acquired by SUN) and Netbula signed a

14   second license agreement for PowerRPC software, that StorageTek would report license usage to

15   Netbula upon request. The license agreement also required StorageTek to pay 20% of the license

16   fees per year for a support and maintenance contract. However, StorageTek breached its contract

17   with Netbula by failing or refusing to provide an accurate royalty report or to pay support and

18   maintenance fees (20% of the royalties per year).

19

20     105.    The actions of StorageTek have deprived Plaintiff of its contractual rights to

21   payment of fees guaranteed in the contract between StorageTek and Netbula, to which Plaintiff is

22   legally entitled.  On information and belief, SUN was on notice of the contract between Netbula

23   and StorageTek and, through its managing agents, engaged in, ratified, or authorized the breaches

24   alleged herein and, as the acquirer of StorageTek, is responsible for the breaches committed by

25   and through StorageTek.

26

27

28
FIRST AMENDED COMPLAINT

Case No. C06-07391-BZ

106.    Netbula has performed all of the obligations on its part to be performed under the contract alleged herein, including providing product support and specifically requesting the information and payments due under the contract on multiple occasions.

107.    As a legal and proximate cause of StorageTek's breach of contract, Plaintiff has sustained and will continue to sustain substantial economic damages in the form of unpaid fees and interest.  Each unlimited license StorageTek and SUN sold for software that contains Netbula PowerRPC runtime granted third parties the right to make an infinite number of copies. The precise nature and amount of such accrued and continuing damages is not presently known to Plaintiff, and cannot be ascertained with any definitiveness at this time due to Defendants' active concealment of complete and accurate license usage information, but Plaintiff's actual and continuing damages will be proven at trial.

### FOURTH CLAIM FOR RELIEF

### *STATUTORY UNFAIR COMPETITION (Cal. Bus. & Prof. Code § 17200 et seq.)*

### *(Against StorageTek and SUN) (For Restitution and Injunctive Relief)*

108.    Plaintiff realleges and incorporates herein by reference the allegations of paragraphs 1 through 107, inclusive, of this Complaint.

109.    Plaintiff is informed and believes, and on that basis alleges, that Defendants' conduct as alleged in this Complaint involving the willful and intentional unlawful infringement of Plaintiff's own copyrighted materials, intentional fraud, and breach of contract all to the benefit of Defendants and Defendants' business endeavors and computer software products, and to the great detriment of Plaintiff and Plaintiff's business endeavors and RPC technology and products,

constitutes unlawful, unfair, and/or fraudulent business acts or practices in violation of California Business & Professions Code § 17200 *et seq.* that has a substantial effect on commerce, resulting in Defendants' unjust enrichment.  On information and belief, Defendants willfully intended to trade on the business goodwill of Plaintiff, Plaintiff's RPC technology and products, and Plaintiff's intellectual property, and to cause injury to Plaintiff and its business through their unlawful, unfair, and/or fraudulent business practices as described herein.

110.    On information and belief, the actions of Defendants as described in this Complaint had the effect of gaining for Defendants substantial revenues and business goodwill for which Plaintiff should rightfully have been compensated.  Instead, on further information and belief, Defendants have retained all revenues and business goodwill for themselves without providing any compensation to Plaintiff in return for their use of Plaintiff's intellectual property, which was essential to the acquisition of Defendants' revenues and goodwill.

111.    On information and belief, Defendants perpetuated their wrongful conduct by engaging in a fraud that concealed from Plaintiff the true amounts of use and copying of Plaintiff's software which Defendants had proximately caused, and that further concealed the true amount of compensation rightfully owed to Plaintiff and prevented Plaintiff from recovering its rightful compensation.

112.    On information and belief, Defendants breached a contract with Plaintiff through which Plaintiff and Defendants had agreed upon appropriate compensation to Plaintiff for Defendants' wrongful acts, further compounding Defendants' misdeeds and denying Plaintiff the compensation it is rightfully owed.

113.    On information and belief, all of these actions had the further effect of preventing Plaintiff from recovering monies which would aid the perpetuation of Plaintiff's

-32-

business and related endeavors, as well as the effect of delaying Plaintiff's vindication of its rights, and therefore, amount to unlawful, unfair, and/or fraudulent business acts or practices in violation of California Business & Professions Code § 17200 *et seq.*

114.    On information and belief, Plaintiff alleges that Defendants are continuing to engage in one or more acts of unlawful, unfair, and/or fraudulent business acts or practices involving the conduct alleged in this Complaint (and related conduct) to Plaintiff's substantial economic detriment, including willful and intentional unlawful direct, contributory, and vicarious infringement of Plaintiff's copyrighted materials for Defendants' own business advantage without providing the rightful compensation to Plaintiff, all with the knowledge, aid, encouragement, and support of each other.

115.    On further information and belief, after August 2005, SUN was on notice of the dispute between Netbula and StorageTek, through its managing agents, and engaged in, ratified, or authorized each of the unlawful, unfair, and/or fraudulent business acts or practices alleged herein and, as the acquirer of StorageTek, is responsible for those acts committed by and through StorageTek and its managing agents.

116.    As a direct and proximate result of Defendants' unlawful, unfair, and/or fraudulent business acts or practices as described herein, Plaintiff has suffered and will continue to suffer injury to its business, goodwill, and property for which it is entitled to restitution pursuant to California Business & Professions Code § 17203.

117.    Plaintiff has no adequate remedy at law to compel Defendants to cease their wrongful acts, and therefore seeks injunctive relief.  Unless the Court grants an injunction, Plaintiff will be compelled to prosecute a multiplicity of actions to remedy this continuing unfair, unlawful, and/or fraudulent conduct.  Unless Defendants are preliminarily and permanently

1   enjoined from committing the unlawful acts described herein, Plaintiff will continue to suffer

2   irreparable harm.  Plaintiff's damages are irreparable because it is extremely difficult to ascertain

3   the amount of compensation which will afford Plaintiff adequate relief if Defendants are not

4   enjoined at this time, in part because of the nature of intellectual property and the concealment of

5   information by Defendants as alleged in this Complaint.  Plaintiff is entitled, pursuant to

6   California Business & Professions Code §§ 17203 and 17535, to injunctive relief in the form of a

7   temporary restraining order, a preliminary injunction, and/or a permanent injunction restraining

8   Defendants, their officers, agents and employees, and all persons acting in concert with them,

9   from engaging in any further such acts of unfair competition.

10

11                          **_FIFTH CAUSE OF ACTION_**

12

13   **_EQUITABLE ACCOUNTING AND IMPOSITION OF A CONSTRUCTIVE TRUST_**

14

15                          **_(Against All Defendants)_**

16

17          118.    Plaintiff realleges and incorporates herein by reference the allegations of

18   paragraphs 1 through 117, inclusive, of this Complaint.

19

20          119.    As a result of Defendants' unlawful and tortious conduct as alleged in this

21   Complaint, Defendants are now in possession of a substantial amount of gains, revenues, profits,

22   and advantages to which Plaintiff is entitled under the claims stated in this Complaint and general

23   principals of equity.

24

25          120.    By reason of the wrongful and unlawful manner in which Defendants have

26   obtained such gains, revenues, profits, and advantages, Defendants are now acting as involuntary

27

28   FIRST AMENDED COMPLAINT
     Case No. C06-07391-BZ

                                        -34-

1  trustees holding such gains, revenues, profits, and advantages in constructive trust for Plaintiff,

2  with a duty to convey them to Plaintiff forthwith.

3

4         121.    Plaintiff has been, and will be, unable to ascertain the precise amount of

5  gains, revenues, profits, and advantages held by Defendants as constructive trustees, without a full

6  and complete accounting by Defendants.  Plaintiff is entitled to an order imposing a constructive

7  trust on all gains, revenues, profits, and advantages obtained by Defendants from the wrongful,

8  unlawful, and tortious acts alleged in this Complaint, and requiring a full and complete accounting

9  by Defendants to Plaintiff of all gains, revenues, profits, and advantages so held.

10

11                          **PRAYER FOR RELIEF**

12         WHEREFORE, Plaintiff prays for judgment to be entered against Defendants as

13  follows:

14

15         1.    That Defendants, and each of them, be held liable for direct, contributory,

16  and/or vicarious infringement of Plaintiff's copyrights in violation of the federal Copyright Act, 17

17  U.S.C. § 501 *et seq.*, as alleged herein;

18

19         2.    That Defendants StorageTek and SUN, and each of them, be held liable for

20  intentional fraud in violation of California Civil Code Section 1709, as alleged herein;

21

22         3.    That Defendants StorageTek and SUN, and each of them, be held liable for

23  breach of contract, as alleged herein;

24

25         4.    That Defendants StorageTek and SUN, and each of them, be held liable for

26  unfair competition in violation of California Business & Professions Code § 17200 *et seq.*, as

27  alleged herein;

28

-35-

FIRST AMENDED COMPLAINT

Case No. C06-07391-BZ

5.      That Defendants, and each of them, be liable for an equitable accounting to Plaintiff through the imposition of a constructive trust, as alleged herein;

6.      That the Court find a substantial likelihood that Defendants will continue to infringe, or contribute to or vicariously support the infringement of, Plaintiff's copyrights in the content of Plaintiff's RPC technology and products, unless enjoined from doing so;

7.      That Defendants and their officers, employees, agents, servants, attorneys, and representatives, and all other persons, firms, or corporations in active concert or privity or in participation with them, be preliminarily, and thereafter permanently, enjoined and restrained in the form of a temporary restraining order, a preliminary injunction, and/or a permanent injunction, pursuant to the Court's inherent equitable powers and pursuant to 15 U.S.C. § 1116, 17 U.S.C. § 502, from:

(a)      directly or indirectly engaging in any manner in the unauthorized copying, reproduction, adaptation, exhibition, distribution, display, or other infringement of Plaintiff's protected works and/or exclusive copyright rights (whether now in existence or hereafter created), including, without limitation, those involving the original content of and works on and in Plaintiff's RPC technology and products and from continuing to market, offer, sell, dispose of, license, lease, transfer, display, advertise, reproduce, develop, or manufacture any works derived or copied from the content of Plaintiff's copyrighted works, all as described in this Complaint;

(b)      causing, contributing to, enabling, facilitating, supporting, aiding, or participating in any manner in the infringement of Plaintiff's protected works and/or exclusive copyright rights (whether now in existence or hereafter created),

including, without limitation, the content of Plaintiff's RPC technology and products, all as described in this Complaint; and

(c)    otherwise engaging in any conduct that unlawfully, unfairly, and/or fraudulently competes with Plaintiff and Plaintiff's RPC technology and products (including, without limitation, through the unauthorized use and infringement of Plaintiff's original works of authorship), all as described in this Complaint;

8.    That Defendants and their officers, employees, agents, servants, attorneys, and representatives, and all other persons, firms, or corporations in active concert or privity or in participation with them, be ordered to immediately deliver to the Court for impoundment (and destruction upon entry of final judgment against Defendants) all illegal, unlicensed copies of the Netbula software in their possession, custody or control together with an accounting, to be provided to Netbula, of:  (1)  the number of such copies in Defendants' possession, custody or control; (2)  where each copy was found; (3)  the identity of the individual or individuals having possession, custody or control of each copy at the time it was found; and (4)  a sworn explanation of how each copy was obtained, duplicated or distributed, including the identity of all persons involved in such activity for each such copy;

9.    That Defendants' unlawful conduct as alleged herein be deemed a willful violation of Plaintiff's intellectual property rights;

10.    That Plaintiff be awarded its actual compensatory damages according to proof for Defendants' acts of copyright infringement, fraud, and breach of contract;

11.    That Defendants be ordered to disgorge any direct or indirect profits or gains in Defendants' possession attributable to the infringement of Plaintiff's copyrights;

-37-

FIRST AMENDED COMPLAINT

Case No. C06-07391-BZ

12.    That Plaintiff be awarded statutory damages pursuant to 17 U.S.C. § 504(c) when statutory damages are appropriate and desirable;

13.    That Plaintiff be awarded restitution in connection with Defendants StorageTek and SUN 's acts of unfair competition;

14.    That Plaintiff be awarded exemplary damages from Defendants StorageTek and SUN for violations of California Civil Code Section 1709;

15.    That the Court order an accounting of all gains, profits, and advantages realized by Defendants, or others acting in concert or participation with them, from their unlawful conduct (including an accounting of all usages and copies of Netbula's RPC technology and "pwrpc32.dll" file and Defendants' revenues and profits related thereto), and that all such gains, profits, and advantages be deemed to be in constructive trust for the benefit of Plaintiff, at the sole cost and expense of Defendants, by means of an independent accountant;

16.    That the Court order an accounting of licenses of Netbula's RPC technology distributed by Defendants and of all related license usages and/or copies by StorageTek and SUN customers, as well as the disclosure of the identities of all such customers, and allow Netbula to amend this Complaint to name such customers in this action for their infringement of Netbula's copyright rights as may be necessary or desirable;

17.    That the Court order Defendants StorageTek and SUN to notify each of their customers and potential customers who received infringing software technology identified in this Complaint from said Defendants that the software was and is infringing, and that the customers and others should return the infringing software for credit, and that StorageTek and SUN should refund the amounts received, and report to the Court all returns and refunds;

-38-

FIRST AMENDED COMPLAINT

Case No. C06-07391-BZ

1     18.    That Plaintiff recover its reasonable attorneys' fees pursuant to any
2  applicable laws and/or rules;

4     19.    That Plaintiff recover its costs of this suit, including expert witness costs,
5  pursuant to 17 U.S.C. § 505 and any other applicable laws and/or rules; and

7     20.    That Plaintiff be granted such other and further relief as this Court deems
8  just and proper.

Dated:   December 18, 2006          LAW OFFICES OF VONNAH M. BRILLET


                                     By:    VONNAH M. BRILLET
                                            Attorneys for Plaintiff NETBULA, LLC

### DEMAND FOR JURY TRIAL

     Plaintiff NETBULA, LLC demands a jury trial in this action.

Dated:   December 18, 2006  LAW OFFICES OF VONNAH M. BRILLET


                                     By:    VONNAH M. BRILLET
                                            Attorneys for Plaintiff NETBULA, LLC

FIRST AMENDED COMPLAINT
Case No. C06-07391-BZ

**CERTIFICATION OF INTERESTED ENTITIES OR PERSONS**

Pursuant to Northern District Civil L.R. 3-16, the undersigned certifies that the following listed persons, associations of persons, forms, partnerships, corporations (including parent corporations) or other entities (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding:

1) Don Yue

2) Netbula, LLC

Dated: December 18, 2006          LAW OFFICES OF VONNAH M. BRILLET

_____
VONNAH M. BRILLET
Attorneys for Plaintiff

FIRST AMENDED COMPLAINT

Case No. C06-07391-BZ

-40-

# Exhibit A

Netbula's Copyright Registration

## Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Form TX**
For a Nondramatic Literary Work
UNITED STATES COPYRIGHT OFFICE

**TX 6-211-863**

**EFFECTIVE DATE OF REGISTRATION**

| 10 | 18 | 05 |
|---|---|---|
| Month | Day | Year |

---

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**1**

**TITLE OF THIS WORK ▼**
NETBULA POWERRPC

**PREVIOUS OR ALTERNATIVE TITLES ▼**

**PUBLICATION AS A CONTRIBUTION** If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared.    **Title of Collective Work ▼**

If published in a periodical or serial give: Volume ▼    Number ▼    Issue Date ▼    On Pages ▼

**2**

**a**

**NAME OF AUTHOR ▼**
NETBULA, LLC

**DATES OF BIRTH AND DEATH**
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☑ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶ U.S.A.
Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?    ☐ Yes ☑ No    If the answer to either of these questions is "Yes," see detailed instructions.
Pseudonymous?    ☐ Yes ☑ No

**NOTE**
Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼
Computer program

**b**

**NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶
Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?    ☐ Yes ☐ No    If the answer to either of these questions is "Yes," see detailed instructions.
Pseudonymous?    ☐ Yes ☐ No

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼

**c**

**NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶
Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?    ☐ Yes ☐ No    If the answer to either of these questions is "Yes," see detailed instructions.
Pseudonymous?    ☐ Yes ☐ No

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼

**3**

**a** **YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED** This information must be given in all cases.
1996 ◀ Year

**b** **DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK** Complete this information ONLY if this work has been published.
Month ▶ September    Day ▶ 1    Year ▶ 1996
Nation ▶ U.S.A. ◀ Nation

**4**

See instructions before completing this space.

**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2. ▼
NETBULA, LLC
2777 Alvarado Street, Suite C, San Leandro, CA 94577

**APPLICATION RECEIVED**
OCT. 18 2005
**ONE DEPOSIT RECEIVED**
OCT. 18 2005
**TWO DEPOSITS RECEIVED**

**TRANSFER** If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

**FUNDS RECEIVED**

---

**MORE ON BACK ▶** • Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
• See detailed instructions.    • Sign the form at line 8.

**DO NOT WRITE HERE**
Page 1 of 2 pages

EXAMINED BY

CHECKED BY

☑ CORRESPONDENCE
   Yes

FORM TX

FOR
COPYRIGHT
OFFICE
USE
ONLY

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?
☐ Yes  ☑ No  If your answer is "Yes," why is another registration being sought? (Check appropriate box.) ▼
a. ☐ This is the first published edition of a work previously registered in unpublished form.
b. ☐ This is the first application submitted by this author as copyright claimant.
c. ☐ This is a changed version of the work, as shown by space 6 on this application.
If your answer is "Yes," give: Previous Registration Number ▶          Year of Registration ▶

**5**

**DERIVATIVE WORK OR COMPILATION**
Preexisting Material Identify any preexisting work or works that this work is based on or incorporates. ▼

SUN RPCSRC 4.0 1984, RFC 1831, RFC 1832

**a**  **6**

Material Added to This Work Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

New programming text, revisions and additional text of computer program.

**b**

See instructions
before completing
this space.

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.
Name ▼                                           Account Number ▼

Sheppard Mullin Richter & Hampton LLP                    DA: 92924

**a**  **7**

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent.   Name/Address/Apt/City/State/ZIP ▼

Edwin Komen - Sheppard Mullin Richter & Hampton LLP
1300 I Street, NW - 11th Floor East
Washington, DC 20005-3314

**b**

Area code and daytime telephone number ▶ 202-218-0000          Fax number ▶ 202-218-0020
Email ▶  ckomen@sheppardmullin.com

**CERTIFICATION*** I, the undersigned, hereby certify that I am the
                                                    Check only one ▶
☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☑ authorized agent of  NETBULA, LLC
of the work identified in this application and that the statements made
by me in this application are correct to the best of my knowledge.

Name of author or other copyright claimant, or owner of exclusive right(s) ▲

**8**

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.

Edwin Komen                                               Date▶ December 7, 2005

Handwritten signature (X) ▼

X _____

Certificate
will be
mailed in
window
envelope
to this
address:

Name ▼
Edwin Komen - Sheppard Mullin Richter & Hampton LLP

Number/Street/Apt ▼
1300 I Street NW - 11th Floor East

City/State/ZIP ▼
Washington, DC 20005-3314

**9**

*17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.