**Counsel Listed on Signature Page**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NETBULA, LLC., a Delaware limited liability company, | Case No. C06-07391-MJJ |
| Plaintiff, | **JOINT CASE MANAGEMENT STATEMENT AND PROPOSED ORDER** |
| v. | |
| STORAGE TECHNOLOGY CORPORATION, a Delaware corporation; SUN MICROSYSTEMS, INC., a Delaware corporation; INTERNATIONAL BUSINESS MACHINES CORPORATION, a New York corporation; EMC CORPORATION, a Massachusetts corporation; VERITAS SOFTWARE CORPORATION, a Delaware corporation; DARDEN RESTAURANTS, INC., a Florida corporation; and DOES 1-100, inclusive, | |
| Defendants | |

SUN MICROSYSTEMS, INC., a Delaware corporation,

        Counter-Claimant,

    v.

NETBULA, LLC, a Delaware limited liability company,

        Counterclaim Defendant,

        and

DONGXIAO YUE, an individual,

        Third-Party Counterclaim Defendant.

-1-

Plaintiff Netbula, LLC ("Netbula") and Defendants Storage Technology Corporation ("StorageTek"), Sun Microsystems Inc. ("SUN"), International Business Machines Corporation ("IBM"), EMC Corporation ("EMC"), Veritas Software Corporation ("Veritas"), and Darden Restaurants, Inc ("Darden") jointly submit this Case Management Statement and Proposed Order and request the Court to adopt those portions on which the parties agreed as its Case Management Order in this case. To the extent that the parties have not reached agreement, those portions are identified below.

## DESCRIPTION OF THE CASE

**1.    A Brief Description of Events Underlying the Action**

As the parties have not reached agreement on a description of events underlying the action, the parties submit separate descriptions of the underlying events.

**A.    Plaintiff Netbula's Contentions**

**(1)    Events about Plaintiff's copyright, contract and fraud claims**

Netbula develops software for "Remote Procedure Call" ("RPC") technology. RPC technology allows a program on a local computer to execute commands on a remote computer over a network and get results back. Netbula's most important products are its "PowerRPC" software for the C or C++ programming language. That software includes a "Software Development Kit" or "SDK" that other companies use to create new applications based on the PowerRPC technology. Further, the software contains a "pwrpc32.dll file," which allows the PowerRPC application to run. Netbula also developed and marketed a "JavaRPC" product[1] for the Java programming language.

When a firm buys the PowerRPC software, it buys a license for each computer programmer who will use the software (an "SDK license") to develop applications. It also purchases a separate license (a "runtime license) to copy the software files, including the pwrpc32.dll file. The price for "runtime license" is different for a server computer or a client

---

[1] The JavaRPC product was renamed to JRPC in June 2006.

computer. The licenses also limit copying of the software to machines with particular operating systems. A customer buys one license for each computer on which it plans to install the software. Netbula collects a royalty for each copy of its runtime license.

Netbula licensed its "pwrpc32.dll" software under two models; 1) per copy and 2) prepayment. In 2000, with the per copy model, the price was approximately $50 per copy; with the prepayment model, a customer pays for the right to make a certain number of copies at a lower average unit price, and purchases additional blocks when the licenses are expended. Netbula termed the 1,000-copy license - a "Limited Distribution License".

Defendant StorageTek develops and sells computer data storage and recovery hardware and software products. StorageTek's main products are machines that can hold very large numbers of magnetic tape cartridges to store enormous amounts of data.  These machines are called "tape libraries". A tape library (also called a tape silo or tape jukebox) contains one or more tape drives, a number of slots to hold tape cartridges, and a robotic mechanism for loading and unloading tape cartridges to and from tape drives. In August 2005, SUN acquired StorageTek.

In January 2000, StorageTek approached Netbula about the PowerRPC product.  In March 2000, StorageTek and Netbula signed a license agreement for PowerRPC. The license agreement granted StorageTek the right to develop and distribute Netbula RPC applications for Windows 95, Windows 98 and Windows NT platforms, subject to the "Limited Distribution" clause of the agreement. The agreement required StorageTek to treat the Netbula software as copyrighted material that is protected by copyright laws and international treaties. StorageTek purchased development licenses for eight (8) developers and one block of 1,000-copy runtime licenses for installation onto 1000 computers.

In June 2001, Netbula requested a license usage report from StorageTek.  StorageTek, reported that "[t]he license count you request is 107, this leaves us the rights to distribute 893." Defendant StorageTek fully understood that it only purchased the right to make 1000 copies and also understood that the Netbula's license grant was a "prepayment" license.

In September 2002, Netbula requested another license usage report from StorageTek. StorageTek stated that the product was being terminated and license usage stayed at 107. Netbula

-3-

1  re-confirmed with StorageTek that PowerRPC was no longer used by StorageTek. As a result,

2  Netbula deleted StorageTek from its list of active licensees and stopped requesting license usage

3  reports from StorageTek.

4      In March 2004, StorageTek contacted Netbula for an upgraded version of PowerRPC for

5  Windows Server 2003. Since StorageTek stated previously that their product using PowerRPC

6  was terminated and they had stopped using PowerRPC, and StorageTek did not change its

7  previous position that it had stopped using PowerRPC, Netbula assumed that the new PowerRPC

8  license StorageTek requested in March 2004 was for a new product or new project. In March 2004,

9  StorageTek and Netbula signed a new license agreement. The license covered Windows 2000,

10 Windows XP and Windows Server 2003.  StorageTek purchased another block of 1000 runtime

11 licenses under this new agreement.

12     In 2004, Netbula's listed price for the 1000-copy "pwrpc32.dll" license was approximately

13 two times higher than its price in year 2000. However, relying on StorageTek previous statement

14 that they had only consumed 107 licenses out of the 1,000 they purchased in 2000, Netbula

15 believed that StorageTek's runtime license usage would be low. To compensate StorageTek for its

16 previously unused 893 licenses, Netbula gave StorageTek a discounted price for the new licenses

17 in the March 2004 license agreement.

18     In October 2004, Netbula requested a license usage report from StorageTek. StorageTek

19 stated: "[I]t took 2 years to go through the first 1,000 licenses I doubt we have gone through the

20 1000 we just purchased in March." Netbula did not get a report.

21     In June 2005, Netbula again requested StorageTek to provide a license usage report. After

22 some exchanges and failure to get a report, Netbula then concluded that StorageTek had been

23 using PowerRPC from 2001 to 2004 but concealed this fact from Netbula. In July 2005, Netbula

24 requested StorageTek to provide a royalty report as soon as possible. StorageTek suggested

25 modifying the license agreement to change the royalty payment scheme going forward from

26 prepayment to quarterly royalty reporting and payment based on actual usage under the per-copy

27 model.  However, Netbula wanted to have the issue of past usage resolved first before talking

28 about any changes to the agreement.

-4-

1      At approximately the same time, Netbula noticed that StorageTek was being acquired by

2  SUN Microsystems. Netbula indicated that it would contact SUN directly if it could not get the

3  issue resolved with StorageTek. Netbula also pointed out that if StorageTek used and distributed

4  PowerRPC on Windows 2000 before 2004, such use and distribution were without a license or

5  authorization.

6      On August 18, 2005, approximately two weeks before the completion of the SUN-

7  StorageTek merger, StorageTek provided a usage report in a set of Microsoft Excel files which

8  showed a usage of 7,455 runtime licenses, with certain order information. According to this report,

9  Netbula's "pwrpc32.dll" was used for multiple versions of software products called REELS and

10  another called "Library Attach" ("LibAttach"). According to StorageTek's product literature,

11  LibAttach enables a computer running Microsoft Windows operating system to interact with

12  StorageTek's tape library management software such as ACSLS. Prior to receiving StorageTek's

13  August 2005 report, Netbula had no knowledge about StorageTek's LibAttach and no knowledge

14  that LibAttach used "pwrpc32.dll".

15      After performing some statistics on the data StorageTek provided, Netbula found several

16  issues with the data. In particular, there was many fold increase of licenses since Q4 2004.

17  Netbula immediately raised the issues with StorageTek. After SUN and StorageTek merged on

18  August 31, 2005, the PowerRPC license matter was handled by SUN.

19      Unable to reconcile the differences after many rounds of communication with

20  SUN/StorageTek, Netbula requested SUN/StorageTek to provide one final report on PowerRPC

21  license usage. Netbula obtained a limited set of information on StorageTek's usage, and would

22  like to check against SUN/StorageTek's report. In December 2005, SUN/StorageTek provided a

23  purported final report and a letter explaining the situation, but it refused to identify the two

24  customers on its report. Thus, Netbula was unable to get a license usage report with minimum

25  verifiable information.

26      After December 2005, Netbula continued its attempt to enforce its licensing terms through

27  discussions with SUN, to no avail. The licensing discussion finally broke down in October 2006.

28      On information and belief, LibAttach versions 1.1 to 1.4 were developed with PowerRPC.

-5-

The PowerRPC generated source code was incorporated into the LibAttach software, the "pwrpc32.dll" was also bundled with the LibAttach software. LibAttach is thus based on Netbula PowerRPC. SUN/StorageTek sells LibAttach licenses to end users under the "1191NLC" main product code. According to StorageTek's pricing list, it sells the single LibAttach license under the code 1191NLC-S001, 500 licenses under the code 1191NLC-S500, or 1,000 licenses under the code 1191NLC-S1K0. As Netbula later discovered, StorageTek also sells unlimited LibAttach licenses under the code 1191NLC-SENT.

StorageTek also sells software called "LibAttach Integrator's Kit" under the product code "1191NLI" to software developers who develop data backup software for StorageTek tape libraries. On information and belief, the 1991NLI product also includes Netbula's "pwrpc32.dll" and PowerRPC generated code.

On information and belief, Defendant IBM acquired various versions of the "LibAttach" and/or "LibAttach Integrators' Kit" from StorageTek and copied these products (which included the "pwrpc32.dll" file) in its development of the Tivoli Storage Manager ("TSM") software and in their use of StorageTek tape libraries.

On information and belief, Defendant EMC Corporation acquired various versions of the "LibAttach" and/or "LibAttach Integrators' Kit" from StorageTek and copied these products (which included the "pwrpc32.dll" file) in its development of its Legato NetWorker software, and potentially other storage management software it develops.

On information and belief, Defendant Veritas Software acquired the various versions of the "LibAttach" and/or "LibAttach Integrators' Kit" from StorageTek and copied these products (which included the "pwrpc32.dll" file) in its development of its Veritas NetBackup and Media Server software, and potentially other storage management software it develops.

On information and belief, Defendant Darden Restaurants acquired the infringing "LibAttach" software (which included Netbula's "pwrpc32.dll") from StorageTek in about 2002 and copied the software in their operation of their StorageTek tape libraries.

(2)     **Events Underlying SUN's Counterclaims Regarding Java and SUN Marks**

Java is the name of a programming language developed by Defendant SUN Microsystems, Inc. According to SUN, JAVA has become a global standard. In 1999, Netbula developed a product called JavaRPC which supports the SUN RPC (later named ONC RPC[2]) technology in Java programming.

In May 2000, Netbula sent an email to SUN Microsystems, Inc. regarding its JavaRPC product.  In July 2000, SUN emailed back to Netbula, stating that "[a]fter reviewing the information, we have concluded that it does not appear to fit the objectives of Sun's strategic investment fund." SUN raised no issues with Netbula on using "JavaRPC" as product name and using the Java word in Netbula's web address.

In early 2003, after finding that a competitor of Netbula was using the term JavaRPC, Netbula filed a trademark registration for JavaRPC with the U.S. Patent and Trademark Office. In August 2003, the Offices of Fenwick & West LLP sent a letter to Netbula on behalf of SUN. The letter asked Netbula to abandon its application for the JavaRPC trademark. In this letter, SUN's lawyer also described how to use the Java word and asked Netbula to make changes to the web pages on java-rpc.com and netbula.com. This letter stated nothing to object Netbula's ownership and use of the java-rpc.com domain. In October 2003, SUN's outside counsel, the Offices of Fenwick & West LLP sent another letter to Netbula. That letter offered Netbula to continue to use the JavaRPC name for a phase-out period if Netbula abandoned the trademark application. Netbula then abandoned the JavaRPC trademark application, and continued to use the JavaRPC name.  Thereafter, Netbula received no further communication from SUN's outside counsel, Fenwick & West LLP. Since SUN did not specify the length of a phase out period, Netbula assumed it was an indefinite period until further clarified by SUN.

(3)     **Events Regarding Plaintiff's TRO Application**

Netbula filed an Application for Temporary Restraining Order and Motion for Preliminary

---

[2] ONC RPC was originally developed in the C programming language.

1  Injunction along with its complaint. At the TRO hearing, the Court was reluctant to grant the TRO,

2  and Plaintiff's counsel withdrew the TRO application. Plaintiff believes that the Court's reluctance

3  in granting the TRO was in part due to Defense counsel's representation that they only came to

4  know the dispute after the Complaint was filed. Evidence shows that Defense counsel had access

5  to the related documents no later than October 2006. Plaintiff plans to re-files its Motion for

6  Preliminary Injunction.

7      **B.    Defendants' Contentions**

8      While Plaintiff characterizes this action as a copyright case involving claims against

9  numerous defendants, it is in fact a straightforward royalty dispute under two software license

10 agreements, involving only StorageTek and Netbula.  Defendants believe that, at the outset,

11 Plaintiff's copyright claims should be disposed of by summary judgment, and StorageTek

12 customers IBM, EMC, Veritas, and Darden should be dismissed, to properly narrow discovery and

13 litigation to the proper scope of a royalty dispute under the applicable agreements.

14      **(1)    Overview of the Governing License Agreements**

15     In 2000 and 2004, Netbula and StorageTek entered into two, highly similar agreements

16 pursuant to which StorageTek was expressly granted the distribution rights that Netbula now

17 claims were violated (the "2000 agreement" and the "2004 agreement," attached hereto as Exhs. A

18 and B, respectively).  Under both the 2000 and 2004 agreements, StorageTek received two

19 independent licenses for Netbula software.  First, StorageTek received a license to use Netbula's

20 PowerRPC SDK product (the "SDK license")[3].  Second, StorageTek received a perpetual,

21 irrevocable license to *distribute* Netbula software with StorageTek products to StorageTek

22 customers (the "Distribution License," referred to by Plaintiff as the "runtime license").

23     In the 2000 agreement, the SDK License was for use under the Windows NT and 95/98

24 platforms, while the 2004 SDK License was for use under "Windows Server 2003, NT/2K/XP and

25 95/98/ME platforms."  However, the *Distribution Licenses* contained *no platform restriction* or

26 even a mention of the operating systems or platforms under which the distributed code could be

27 _____

28 [3] SDK stands for "Software Developer's Kit."

1   used.  Thus, StorageTek was permitted to distribute Netbula software along with StorageTek

2   products for use by StorageTek customers on any sort of computer system.

3       While Netbula now claims to have terminated its license agreements at the outset of this

4   litigation, by their own terms, the Distribution Licenses were nonexclusive, perpetual, and

5   *irrevocable*.  And if this were not enough, the 2000 and 2004 agreements further provide that the

6   licenses to StorageTek customers would survive termination of the Netbula-StorageTek

7   agreements: "Any termination of this Agreement will not affect any sublicenses granted by

8   STORAGETEK to their customers, *such licenses will remain in full force and effect*."  (Emphasis

9   added).

10      Under both the 2000 and 2004 agreements, StorageTek paid Netbula $895 for each copy of

11  the SDK product that it licensed.  For the distribution agreements, StorageTek pre-paid Netbula's

12  list price of $5995 for the right to distribute the first 1000 distribution copies.  The agreements

13  specifically envisioned that StorageTek could distribute additional copies, stating: "[y]ou agree to

14  maintain reasonable records of the number of copies of the Supporting Programs distributed

15  hereunder and to pay Netbula as set forth in Exhibit C for such copies."  Schedule C then provided

16  discounted prices for additional copies distributed (e.g., 15% off the list price for the next

17  thousand copies distributed).  Under the Agreements, Netbula could request StorageTek to

18  conduct an internal audit – as often as once per year – to count the number of copies distributed.

19      Despite this license grant, Netbula now argues that its licenses did not allow StorageTek to

20  distribute any copies beyond the first 1000 for which it had pre-paid, and that further distributions

21  are not only a breach of contract, but also copyright infringement – both by StorageTek, and by its

22  customers.  At the hearing on Plaintiff's unsuccessful application for a temporary restraining

23  order, Magistrate Judge Zimmerman was puzzled by Netbula's position, stating "I don't quite

24  understand you.  This agreement says that they can go up *to any number of copies* as long as

25  they're willing to pay."  December 5 TRO Hearing Transcript, Page 25: line 6-8 (emphasis

26  added).

27      While Netbula seeks a sweeping array of damages in this case, both license agreements

28  prohibit recovery of such damages.  Both the 2000 and 2004 agreements contain limitation of

-9-

liability provisions, which provide:

> IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER FOR ANY SPECIAL, INCIDENTAL, INDIRECT, OR CONSEQUENTIAL DAMAGES WHATSOEVER, INCLUDING, BUT NOT LIMITED TO, ANY LOST PROFITS, LOST SAVINGS, LOST INFORMATION OR ANY OTHER LOSS ARISING OUT OF THE USE OR INABILITY TO USE . . . THE SOFTWARE"

Under the Agreements, the only exception to this limitation of liability provision is a section "Section 4, Infringement " – which deals exclusively with *Netbula's obligation to indemnify StorageTek* for claims of infringement.  Thus, Netbula's damages in this case, if any, are limited to its "direct damages" – that is, the royalties that StorageTek was required to pay under the 2000 and 2004 Agreements.

### (2)    Royalty Discussions Between Sun, StorageTek and Netbula

Pursuant to its licenses with Netbula, StorageTek distributed Netbula code with StorageTek's "Reels" and "LibAttach" products.  StorageTek has long since discontinued the Reels product and, in November 2005, StorageTek replaced the licensed Netbula code in LibAttach with a free, publicly available drop-in replacement.  That code, like the Netbula code, was based on Sun's open source RPC code.

In or about August 2005, StorageTek produced a preliminary report to Netbula setting forth information about StorageTek's distribution of the licensed Netbula code with its products.  StorageTek provided Netbula with additional information on December 16, 2005.  Neither Sun nor StorageTek received any response to StorageTek's December 16 letter until March 13, 2006, nearly three months later, when Netbula raised concerns about the information contained in the letter and stated that it "believes it has a basis to bring an action against both [StorageTek] and [StorageTek] customers who copied pwrpc32.dll."  After learning of Sun's plans to acquire StorageTek, Netbula's owner, Don Yue, sent an email to Sun's CEO, Jonathan Schwartz, threatening Sun with litigation.[4]  In subsequent discussions, the parties were unable to reach

---

[4] Sun acquired StorageTek in a reverse triangular merger effective on or about August 31, 2005.

1  agreement regarding the royalties owed.

2  **(3)**    **Plaintiff's Complaint and Unsuccessful TRO Application**

3      Despite its apparent belief that it had a basis for bringing its claims in March 2006, Netbula

4  did not file its complaint in this action until December 4, 2006.  Netbula's copyright registration

5  for PowerRPC – the software product allegedly infringed by StorageTek – reveals that it was not

6  signed by Netbula's representative until December 7, 2005 – almost ten years after the date of first

7  publication.  The registration also reveals that Netbula's allegedly copyrighted software was

8  derived from pre-existing works *originally created by Sun Microsystems*, raising substantial

9  questions about Netbula's authorship of any code allegedly infringed by Defendants and the

10  code's originality.  In essence, Netbula has built its business using technology developed and

11  freely distributed *by Sun*, and has now turned around and sued Sun, its subsidiary, and the

12  subsidiary's customers for valid, licensed use of that technology.

13      On the day it filed its Complaint, Netbula also filed an application for temporary

14  restraining order against Sun and StorageTek.  In response to that Motion, Sun and StorageTek

15  pointed out, among other things, that Netbula had failed to show that its work was protected by

16  copyright, or that Defendants had engaged in any infringing use.  Sun and StorageTek also pointed

17  out that Netbula's claim would at most allege a breach of contract, not copyright infringement.  At

18  the hearing, Netbula withdrew its TRO application after a few questions from the Court indicating

19  skepticism about the basis for Plaintiff's claims.

20  **(4)**    **Events Concerning Netbula Claims Against StorageTek Customers**

21      After its unsuccessful TRO application, Plaintiff next filed an amended complaint on

22  December 18, 2006, this time naming not only Sun and StorageTek, but several StorageTek

23  customers: IBM, EMC Corporation, Veritas Software Corporation, and Darden Restaurants, Inc.

24  (collectively, the "Customer Defendants").  Netbula apparently intends to sue numerous other

25  customers as well, having named "DOES 1-100" in its First Amended Complaint [Docket 15].

26      Plaintiff's claims against the Customer Defendants are premised on the allegation that the

27  customers licensed and used StorageTek's LibAttach products, certain versions of which included

28  the licensed Netbula code.  Ignoring the fact that Netbula granted StorageTek a "perpetual,

-11-

1  irrevocable license to copy, sublicense, transfer and distribute" Netbula software "along with

2  STORAGETEK'S product to STORAGETEK's resellers and customers" and that the licenses to

3  StorageTek customers "remain in full force and effect" even if the agreements are terminated,

4  Netbula now seeks to argue that such distributions, and the ensuing licensed use of the products by

5  StorageTek customers – is somehow a copyright infringement.  Regardless of the merits of any

6  royalty dispute between StorageTek and Netbula, the Customer Defendants believe Netbula's

7  claims against them are wholly without merit, and should be disposed of by summary judgment.

8              **(5)    Events Underlying Sun's Trademark Claims**

9          Netbula has not only built products using Sun technology, it has also unlawfully sought to

10  get a free ride on the goodwill in Sun's well-known, federally registered trademarks.  Despite its

11  clear knowledge of Sun and its technology, Netbula offered at least two of its products under

12  names that infringe Sun's JAVA and SUN marks.

13          Sun was incorporated in 1982 and since that date has continuously used the name and mark

14  SUN MICROSYSTEMS.  On March 4, 1986, Sun was issued a federal registration for the mark

15  SUN in class 9 for "Computer hardware . . . and Computer software . . . ." On June 15, 1993, Sun

16  was issued a federal registration for the mark SUN in Class 9 for "[c]omputers[] and computer

17  operating systems software and computer software for use in the field of computer networking . . .

18  ."  In addition to its exclusive rights to the name and mark SUN, Sun owns federal trademark and

19  service mark registrations and/or common law rights on a host of SUN-denominated marks

20  including, for example, SUN MICROSYSTEMS, SUNLINK, SUN SITE, SUN RAY, and

21  SUNTONE.

22          Sun adopted and began using the mark JAVA in 1996 in connection with, among other

23  things, computer software and related services enabling computers with previously incompatible

24  operating systems to communicate with each other.  On August 4, 1998, Sun was issued a federal

25  registration for the mark JAVA in Class 9 for "[c]omputer programs for use in developing and

26  executing other computer programs on computers, computer networks, and global communication

27  networks [and] computer programs for use in navigating, browsing, transferring information, and

28  distributing and viewing other computer programs on computers, computer networks and global

communications networks . . . ."  In addition to its exclusive rights to the name and mark JAVA, Sun owns federal trademark and service mark registrations and/or common law rights on a multitude of JAVA-denominated marks (collectively, the "JAVA marks"), including (for example) HOTJAVA, JAVA COMPATIBLE, JAVAONE, and JAVAOS.  Sun promotes its JAVA-related goods and services via the Internet from its website at *www.java.com*, among other websites.

However, Despite Sun's federally protected, exclusive trademark rights, Netbula has used and continues to use the name and mark JAVA-RPC in connection with its software products and services.  After Sun learned of Netbula's use of the infringing JAVA-RPC mark on Plaintiff's *netbula.com* website, it contacted Netbula to convince Netbula informally to discontinue its infringing activities.  After several rounds of discussions, Netbula agreed to discontinue its use of the JAVA-RPC mark, and by all appearances on the *www.netbula.com* site, Plaintiff did so – changing the name of its product to JRPC.  Accordingly, Sun considered the matter resolved.

However, Sun has learned that despite Netbula's acknowledgement of Sun's trademark rights in the JAVA mark, Netbula and Don Yue, were operating a separate website at the URL *www.java-rpc.com*, and were continuing to market their product under the JAVA-RPC name. Netbula even displayed Sun's distinctive Java "coffee cup" logo on its java-rpc website, which in turn provided links to the *www.netbula.com* site.  Moreover, Netbula began using the name SUN RPC in connection with another Netbula product.  Given Netbula and Mr. Yue's undisputed familiarity with Sun and its trademarks, and Netbula's prior agreement to cease use of the Java-RPC mark, Netbula and Mr. Yue's infringement was willful and deliberate, and intended to capitalize on the hard-earned goodwill in Sun's valuable trademarks.

**2.    The principal factual issues which the parties dispute:**

As the parties have not reached agreement on the principal factual issues in dispute, the parties submit separate statements thereof.

**A.    Plaintiff Netbula**

- The number of copies Defendants made or authorized others to make of Netbula software since 2000;

- How Defendants distributed their software to others;
- The identities of the DOE defendants;
- The kind of computers (hardware and operating system) onto which Netbula software was copied;
- How many software developers of the defendants made use of Netbula software in developing programs ;
- Defendants' general policy and control regarding software licenses;
- What operating systems Defendants developed applications for using Netbula software at various times;
- Which Defendants' applications used Netbula software;
- What's the functionalities of these applications and how they are used in business;
- Whether Defendants' applications contain source code from or generated by Netbula software;
- What actions StorageTek and SUN took after receiving Netbula's requests for usage reports;
- What actions Defendants took after becoming aware of the potential disputes;

**B.    Defendants:**

- What portions of Netbula's RPC software are contained, or were contained, in any StorageTek product(s);
- What portions of Netbula's RPC software are original to Netbula;
- The content of the oral and written communications between Netbula and StorageTek that form the basis of Netbula's fraud claim;
- The nature and extent of actions taken by Netbula in reliance on the alleged representations forming the basis of Netbula's claims for fraud;
- The nature and extent of any expenditures, losses or other claimed damages that Netbula asserts it incurred in reliance on the alleged representations forming the basis of Netbula's fraud claim;

- The prices charged by Netbula for its software, the basis for its claim that the price it charged in 2004 was *twice* the price charged in 2000, and the changes, if any, to Netbula's software that warranted the alleged doubling of its price;

- Amounts paid or owed to Netbula for any software containing the allegedly infringed code.

3.    **The principal legal issues which the parties dispute:**

As the parties have not reached agreement on the principal factual issues in dispute, the parties submit separate statements thereof.

A.    **Plaintiff**

- Whether Defendants exceeded the scope of Netbula's license grant in allowed number of copies, allowed platforms and violated the "Limited Distribution" clause of the license agreements.

- Whether Defendant StorageTek is estopped from challenging the copyright of Netbula software because of their signing of the license agreements which required StorageTek to agree that Netbula software was protected by copyright laws.

- Whether Defendant StorageTek committed fraud and what's the proper multiplier in computing punitive damages.

- Whether Defendants should be preliminarily and permanently enjoined from infringing Plaintiff's copyrights despite their contention that they had stopped using Netbula software.

- What the proper amount of bond is for enjoining Defendants from infringement and impounding the infringing copies.

- What Defendants' profits can be attributed directly to Netbula software.

- What Defendants' profits can be attributed indirectly to Netbula software.

- What interest rate should be applied to Netbula's damages.

- Whether SUN's trademark infringement claims are barred by the doctrine of laches.

- Whether SUN's trademark infringement claims are barred by other equitable principles listed in Counterclaim defendants' affirmative defenses.

- Whether SUN's intent to establish JAVA as a global standard yet prevent others from using the JAVA mark is an attempt to violate the anti-trust laws of the United States;
- Whether Netbula is entitled to attorneys' fees under the Lanham Act if SUN's counterclaims are barred by the doctrine of laches or there was an implicit license for Counterclaim defendants to use the JAVA marks.

**B.     Defendants**

- Whether Netbula's claims for copyright infringement are barred by its licenses to StorageTek, which expressly provide StorageTek with an *irrevocable* license to distribute Netbula software with its products, and further provides that StorageTek's licenses to its customers of Netbula code survive termination of the agreement;
- Whether Netbula is the "author," within the meaning ascribed to that term under copyright law, of the portions of Netbula's "RPC technology" that are contained, or were contained, in any StorageTek product(s);
- Whether those portions of Netbula's "RPC technology" that are contained, or were contained, in any StorageTek products are "original" within the meaning ascribed to that term under copyright law;
- Whether those portions of Netbula's "RPC technology" that are contained, or were contained, in any StorageTek products are otherwise unprotectable under copyright law;
- Whether Netbula is entitled to pursue a copyright infringement claim for StorageTek's use of portions of Netbula's "RPC technology" or whether it is confined to its contract remedies;
- Whether all or a portion of Netbula's alleged damages for copyright infringement are barred by the statute of limitations and/or laches;
- Whether Netbula is entitled to recover "indirect profits" or any indirect damages;
- Whether any of StorageTek's communications with Netbula constituted an intentional misrepresentation;
- Whether Netbula reasonably relied upon any alleged misrepresentations;

-16-

- Whether Netbula suffered cognizable damages as a result of any alleged misrepresentations;
- Whether the acts of Defendants constitute unfair competition;
- Whether an accounting and imposition of a constructive trust is appropriate under the circumstances of this matter;
- Whether Netbula is entitled to punitive damages under any theory; and
- Whether Netbula is entitled to attorneys' fees under any theory.
- In the event that IBM is found liable on Netbula's copyright infringement claim, to what extent IBM is entitled to indemnification from StorageTek and/or Sun.

4.  **Other factual issues [e.g. service of process, personal jurisdiction, subject matter jurisdiction or venue].**

Defendants believe that summary judgment on Plaintiff's copyright claims may eliminate subject matter jurisdiction, as the only remaining claim will be a state law causes of action between non-diverse parities.

Plaintiff believes that SUN's Lanham Act claims may be summarily dismissed after some discovery and SUN's pendant state law counterclaims may be also summarily dismissed under doctrine of *res judicata* or due to lack of subject matter jurisdiction.

5.  **The Parties Which Have Not Been Served and the Reasons**

All named parties have been served.

6.  **The additional parties which the below-specified parties intend to join and the intended time frame for such joinder**:

After it completes its initial round of discovery, Netbula may seek to add as defendants those who are liable for infringement, or if the protected software has been distributed to third parties, add such third parties as defendants.

7.  **The Following Parties Consent to Assignment of This Case to a United States Magistrate Judge for Trial:**

The parties do not consent to assignment of this case to a United States Magistrate Judge.

**ALTERNATIVE DISPUTE RESOLUTION**

8.  **ADR PROCESS**

-17-

Plaintiffs have requested that the matter be referred to private mediation.  Defendants believe that the case should be referred to a judicial settlement conference before Magistrate Judge Spero, who is scheduled to conduct a settlement conference in the related *Netbula v. BindView* matter on July 30, 2007.  Alternatively, if the Court is not inclined to refer the case to Judge Spero, for a settlement conference, Defendants would agree to private mediation before a retired federal district court or magistrate judge.

**9.    Please indicate any other information regarding ADR process or deadline**.

Plaintiff believes that ADR process should happen after the parties have conducted substantial amount of fact discovery.  The parties have agreed to complete the ADR process on or before October 15, 2007.

## DISCLOSURES

**10.    The parties certify that they have made the following disclosures:**

The parties have held their Rule 26(f) conference and have agreed to complete their respective initial disclosures on or before May 1, 2007.

## DISCOVERY

**11.    The parties agree to the following discovery plan:**

- October 15, 2007: Last day for parties to complete mediation
- November 15, 2007: last day to conduct fact discovery.
- January 31, 2008:  last day for each party to serve expert reports supporting its case in chief.
- March 3, 2008: last day for each party to serve rebuttal expert reports.
- March 31, 2008:  Last day take expert depositions.
- April 29, 2008:  Last day to file dispositive motions for hearing no later than June 3, 2008.
- July 23, 2008: Trial Date

Defendants believe that judicial economy and the interests of the parties will be served by conducting discovery in phases.  Given the strong license defenses to all of Plaintiff's claims against the Customer Defendants, and to the copyright claims against Sun and StorageTek, Plaintiff should not be permitted to burden defendants with sweeping, wide ranging discovery

1  before adjudication of a straightforward question of contract interpretation.[5]  Accordingly,

2  Defendants request that the Court initially limit fact discovery to the interpretation of the 2000 and

3  2004 license agreements between StorageTek and Sun, stay discovery as to the Customer

4  Defendants, and set an early briefing schedule for a motion for summary judgment on the issue of

5  whether Plaintiff's copyright claims are barred by its license agreements.

6  　　　　As the Ninth Circuit has observed, "[g]enerally, a copyright owner who grants a

7  nonexclusive license to use his copyrighted material waives his right to sue the licensee for

8  copyright infringement and can sue only for breach of contract.  If, however, a license is limited in

9  scope and the licensee acts outside the scope, the licensor can bring an action for copyright

10  infringement."  *Sun Microsystems, Inc. v. Microsoft Corp.,* 188 F.3d 1115, 1121-22 (9th Cir.

11  1999) (internal quotations marks and citations omitted) (vacating preliminary injunction, noting

12  that before copyright holder can "gain benefits of copyright enforcement, it must definitively

13  establish that the rights it claims were violated are copyright, not contractual, rights").  Where a

14  copyright licensee breaches a *covenant* in the agreement, the licensor's remedy is limited to an

15  action on the contract; on the other hand, if the licensee violates a *condition* of the license

16  agreement, the licensor may sue for infringement.  *See, e.g.*, *Sun Microsystems, Inc. v. Microsoft

17  Corp.*, 188 F.3d 1115, 1122 (9th Cir. 1999) (*Sun I*); *Graham v. Night Owl Publisher, Inc.*, 144

18  F.3d 229, 236-37 (2d Cir. 1998).

19  　　　　Here, the Distribution Licenses under both the 2000 and 2004 Agreements contain no

20  license restrictions.  While Plaintiff argues that the platform limitation set forth in the *SDK

21  License* also applies to the Distribution Licenses, the Distribution Licenses contain no platform

22  restriction whatsoever.  Plaintiff's claim of underpayment of royalties is also insufficient to

23  convert its contract claim into a copyright action.  *See Madison River Management Co. v. Business*

---

24  [5]　　Plaintiff has served extremely broad and burdensome discovery on certain Customer

25  Defendants, including requests for source and executable code for any product developed *using* StorageTek's accused products, and all sale records concerning such products.

26  Under such requests, if a StorageTek customer used LibAttach software for digital tape management when developing their own software products, they would be required to

27  produce all sales records for those products, and all proprietary, highly confidential source code for their products, even though such products are not accused of infringing any rights,

28  and even though those customers are valid licensees of the StorageTek products.

1  *Management Software Corporation*, 387 F. Supp. 2d 521, 533 (M.D.N.C. 2005)(where defendant

2  failed to pay additional license fees after exceeding 15 it had originally purchased for an initial

3  fee, court found that payment requirement was a covenant, not a condition.); *Graham*, 144 F. 3d at

4  236-37 (both bases of plaintiff's copyright claim – defendant's nonpayment of royalties and

5  failure to credit the plaintiff's authorship of the licensed work – were breaches of covenants, not

6  conditions).  Accordingly, Defendants believe they are highly likely to prevail on a motion for

7  summary judgment based on the 2000 and 2004 license agreements.

8  **11-1.    Pursuant to Rule 26(f)(3) the parties provide the following additional information:**

9      a.  Netbula has requested Defendants to produce all electronically stored information in

10  their native format along with all metadata and embedded data. Defendants have generally

11  declined to produce electronic documents in their native format. Plaintiff may seek to compel

12  Defendants to produce electronically stored information such as emails, word processing files,

13  spreadsheets, databases pursuant to FRCP Rule 34 and 37.  Defendants believe that documents

14  should be produce in TIFF format to preserve bates number and confidentiality designations, and

15  to allow easy review with commonly available document review databases.

16      b.  A preliminary agreement was made on the protection of software source code, the

17  parties expect to work out the details.

18

19

20

21

22

23

24

25

26

27

28

1                          **TRIAL SCHEDULE**

2   **12.**    **The parties request a trial date as follows:**  July 23, 2008.

3   **13.**    **The parties expect that the trial will last for the following number of days:**  15 days

4          Respectfully,

5   Dated: April 30, 2007                    LAW OFFICES OF VONNAH M. BRILLET

6

7                                           By:_____/S/_____
                                                       Vonnah M. Brillet
8
                                            LAW OFFICES OF VONNAH M. BRILLET
9                                           Vonnah M. Brillet (CSB No. 226545)
                                              *BrilletLaw@yahoo.com*
10                                          2777 Alvarado Street, Suite E
                                            San Leandro, CA  941577
11                                          Telephone:  (510) 351-5345
                                            Facsimile:   (510) 351-5348
12
                                            Attorneys for Plaintiff/Counterclaim Defendant
13                                          NETBULA, LLC and Counterclaim Defendant
                                            Dongxiao YUE
14

15  Dated: April 30, 2007                    FENWICK & WEST LLP

16

17                                          By:_____/S/_____
                                                       Jedediah Wakefield
18
                                            FENWICK & WEST LLP
19                                          Laurence F. Pulgram (CSB No. 115163)
                                              *lpulgram@fenwick.com*
20                                          Jedediah Wakefield (CSB No. 178058)
                                              *jwakefield@fenwick.com*
21                                          Liwen Mah (CSB No. 239033)
                                              *lmah@fenwick.com*
22                                          555 California Street, 12th Floor
                                            San Francisco, CA  94104
23                                          Telephone: (415) 875-2300
                                            Facsimile:  (415) 281-1350
24

25                                          Attorneys for Defendant and Counterclaimant
                                            SUN MICROSYSTEMS, INC. and Defendants
26                                          STORAGE TECHNOLOGY CORPORATION,
                                            EMC CORPORATION, VERITAS
27                                          SOFTWARE CORPORATION, and DARDEN
                                            RESTAURANTS, INC.
28
                                           -21-

Dated: April 30, 2007

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


By:_____/S/_____
                David Eiseman

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
David Eiseman (CSB No. 114758)
  *davideiseman@quinnemanuel.com*
50 California Street, 22nd Floor
San Francisco, CA  94111
Telephone:  (415) 875-6600
Facsimile:  (415) 876-6700

Attorneys for Defendant INTERNATIONAL BUSINESS MACHINES CORPORATION


**CASE MANAGEMENT ORDER**

The Case Management Statement and Proposed Order is hereby adopted by the Court as the Case Management Order for the case and the parties are ordered to comply with this Order.  In addition the Court orders:


Dated:  _____          _____
                                                        UNITED STATES DISTRICT JUDGE

-22-

1

**ATTESTATION PURSUANT TO GENERAL ORDER 45**

2

I, Jedediah Wakefield, attest that concurrence in the filing of this document has been

3

obtained from any signatories indicated by a "conformed" signature (/S/) within this e-filed

4

document.

5

I declare under penalty of perjury under the laws of the United States of America that the

6

foregoing is true and correct.  Executed this 30th day of April, 2007 at San Francisco, California.

7

8

Dated:    April 30, 2007                                FENWICK & WEST LLP

9

10

By:_____/S/_____
                                                                Jedediah Wakefield

11

12

Attorneys for Defendant and Counterclaimant
SUN MICROSYSTEMS, INC. and Defendants
STORAGE TECHNOLOGY CORPORATION,
EMC CORPORATION, VERITAS
SOFTWARE CORPORATION, and DARDEN
RESTAURANTS, INC.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-23-