1  LAURENCE F. PULGRAM (CSB NO. 115163)
   *lpulgram@fenwick.com*
2  JEDEDIAH WAKEFIELD (CSB NO. 178058)
   *jwakefield@fenwick.com*
3  ALBERT L. SIEBER (CSB NO. 233482)
   *asieber@fenwick.com*
4  LIWEN A. MAH (CSB NO. 239033)
   *lmah@fenwick.com*
5  FENWICK & WEST LLP
   555 California Street, Suite 1200
6  San Francisco, CA  94104
   Telephone: (415) 875-2300
7  Facsimile:  (415) 281-1350

8  Attorneys for Defendants
   STORAGE TECHNOLOGY CORPORATION,
9  SUN MICROSYSTEMS, INC., EMC CORPORATION
   VERITAS SOFTWARE CORPORATION, and
10 DARDEN RESTAURANTS, INC.

11              UNITED STATES DISTRICT COURT

12            NORTHERN DISTRICT OF CALIFORNIA

13               SAN FRANCISCO DIVISION

14

15 NETBULA, LLC, a Delaware limited          Case No.  C-06-07391-MJJ
   liability company,
16                                           **DECLARATION OF JEDEDIAH**
              Plaintiff,                      **WAKEFIELD IN SUPPORT OF**
17                                           **DEFENDANTS' MOTION FOR SUMMARY**
      v.                                     **JUDGMENT OR SUMMARY**
18                                           **ADJUDICATION OF LICENSE ISSUES**
   STORAGE TECHNOLOGY
19 CORPORATION, a Delaware corporation;      Date:      November 27, 2007
   SUN MICROSYSTEMS, INC., a Delaware        Time:      9:30 a.m.
20 corporation; INTERNATIONAL                Dept:      Courtroom 11
   BUSINESS MACHINES                         Judge:     The Honorable Martin J. Jenkins
21 CORPORATION, a New York
   corporation; EMC CORPORATION, a
22 Massachusetts corporation; VERITAS
   SOFTWARE CORPORATION, a
23 Delaware corporation; DARDEN
   RESTAURANTS, INC., a Florida
24 corporation; and DOES 1-100, inclusive,

25            Defendants.

26

27 AND RELATED COUNTERCLAIMS

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    I, Jedediah Wakefield, declare as follows:

2    1.    I am an attorney admitted to practice before this Court.  I am a partner at the law

3    firm of Fenwick & West LLP, counsel of record for Defendants Storage Technology Corporation

4    ("StorageTek"), EMC Corporation, and Darden Restaurants, Inc. and Defendant and

5    Counterclaimant Sun Microsystems, Inc. ("Sun") in this action.  I have personal knowledge of the

6    matters set forth herein and, if called upon, could and would testify competently thereto.

7    2.    On or about July 18, 2007, Netbula served its response to Sun's First Set of

8    Interrogatories, a true and correct copy of which is attached hereto as **Exhibit 1**.

9    3.    Pursuant to Federal Rule of Civil Procedure 30(b)(6), StorageTek and Sun took the

10    deposition of Plaintiff Netbula, LLC ("Netbula") in this case on September 12, 2007.  A true and

11    correct copy of the Rule 30(b)(6) deposition notice is attached hereto as **Exhibit 2**.  Attached

12    hereto as **Exhibit 3** are true and correct copies of excerpts from the deposition of Dongxiao Yue,

13    whom Netbula produced as its 30(b)(6) witness on all topics in the 30(b)(6) deposition notice.

14    4.    In the related case of *Netbula, LLC v. BindView Development Corp.*, Case No. 06-

15    0711-MJJ-WDB, Defendants took the Rule 30(b)(6) deposition of Netbula over the course of

16    three days.  A true and correct copy of the notice for that deposition is attached hereto as **Exhibit**

17    **4**.  Attached hereto as **Exhibit 5** are true and correct copies of excerpts of the deposition of Dr.

18    Yue taken on June 27, 2007, whom Netbula designated as its 30(b)(6) witness on all topics.

19    5.    Attached hereto as **Exhibit 6** is a true and correct copy of the Joint Statement

20    Undisputed Facts filed as Docket Number 257 in connection with Defendants' Motions for

21    Summary Judgment in the related case of *Netbula, LLC v. BindView Development Corp.*, Case

22    No. 06-0711-MJJ-WDB (N.D. Cal.).

23    6.    Attached hereto as **Exhibit 7** is a true and correct copy of excerpts of the transcript

24    from the December 5, 2006 hearing on Plaintiff's unsuccessful Application for a Temporary

25    Restraining Order in this case, which was heard by Magistrate Judge Zimmerman.

26    7.    Attached hereto as **Exhibit 8** is a true and correct copy of Exhibit 2 to the

27    Deposition of Don Yue, taken September 12, 2007, identified as the 2000 agreement between

28    StorageTek and Netbula0.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8.      Attached hereto as **Exhibit 9** is a true and correct copy of Exhibit 3 to the Deposition of Don Yue, taken September 12, 2007, identified as the 2004 agreement between StroageTek and Netbula.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 23rd day of October, 2007, at San Francisco, California.

                                    /s/  JEDEDIAH WAKEFIELD
                                    Jedediah Wakefield

                                    Attorneys for Defendants
                                    STORAGE TECHNOLOGY
                                    CORPORATION, SUN MICROSYSTEMS,
                                    INC., EMC CORPORATION, VERITAS
                                    SOFTWARE CORPORATION, and
                                    DARDEN RESTAURANTS, INC.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# EXHIBIT 1

VONNAH M. BRILLET (SBN 226545)
LAW OFFICES OF VONNAH M. BRILLET
2777 ALVARADO ST. , SUITE E
SAN LEANDRO, CA 94577
Telephone:       (510) 351-5345
Facsimile:       (510) 351-5348
E-Mail:          BrilletLaw@yahoo.com

Attorneys for Plaintiff
NETBULA, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NETBULA, LLC., a Delaware limited liability company,<br><br>     Plaintiff,<br><br>  v.<br><br>STORAGE TECHNOLOGY CORPORATION, a Delaware corporation; SUN MICROSYSTEMS Inc., a Delaware corporation; INTERNATIONAL BUSINESS MACHINES CORPORATION, a New York corporation; EMC CORPORATION, a Massachusetts Corporation; VERITAS SOFTWARE CORPORATION, a Delaware corporation; DARDEN RESTAURANTS, INC, a Florida Corporation; and DOES 1-100, inclusive,<br><br>     Defendants. | Case No. C06-07391-MJJ<br><br>**PLAINTIFF AND COUNTERCLAIM DEFENDANT NETBULA, LLC'S RESPONSE TO DEFENDANT AND COUNTERCLAIMANT SUN MICROSYSTEMS, INC.'S FIRST SET OF INTERROGATORIES (NOS. 1-17)** |

-1-

1       Pursuant to FRCP Rule 26 and Rule 33, PLAINTIFF and counterclaim defendant responds

2   to SUN MICROSYSTEMS ("SUN"), INC's FIRST SET OF INTERROGATORIES (NOS. 1-17)

3   as follows.

4

5                                        **PRELIMINARY STATEMENT**

6       Plaintiff submits the following responses to SUN MICROSYSTEMS ("SUN"), INC's

7   FIRST SET OF INTERROGATORIES (NOS. 1-17) on the basis of information currently

8   available and without prejudice as to the introduction at trial of information or materials

9
    subsequently discovered or omitted through good faith oversight. In submitting these responses,
10
    plaintiff has furnished such information as is presently available at this initial stage of discovery
11
12  and factual investigation.  This may include hearsay and other forms of evidence that are neither

13  reliable nor admissible. Some documents have been lost or purged or never existed.

14      In the following, the phrase "DOCUMENTS THAT ARE AVAILABLE" is defined as

15  documents that still exist, are in plaintiff's possession, control or custody and can be located after

16
    a search of reasonable scope.
17
18      In a lot of cases, the information required to answer the interrogatory is in Defendants'

19  possession, in other cases, Plaintiff does not currently have and has not been able to locate the

20  related documents to answer the interrogatories fully. Some of the documents are highly

21  confidential and should only be produced after a protective order is in place. These confidential

22  documents include information about Plaintiff's products and its business. Plaintiff has previously
23
    requested, and Defendants SUN and StorageTek agreed to draft, a protective order. Once the
24
    protective order is entered by the Court, Plaintiff will produce all the documents bearing proper
25
26  designation. Plaintiff will also amend its interrogatory answers upon proper labeling and

27  designation of documents.

28

Discovery in this matter is continuing, and plaintiff reserves the right to change or supplement these responses as additional information becomes known, should additional discovery request such supplemental responses. Plaintiff declares all source code produced as "CONFIDENTIAL-ATTORNEYS' EYES ONLY" as they contain trade secrets that defendants are seeking. Plaintiff declares all communications with third parties as CONFIDENTIAL.

Plaintiff will answer the interrogatories subject to the following general objections.

1.     Plaintiff objects to all definitions, instructions and interrogatories or document requests to the extent they seek the disclosure of information protected by the attorney-client privilege (including the joint representation and common interest privilege), the litigation privilege, the attorney work-product doctrine, or any other applicable privilege, protection, immunity or restriction on discovery as provided by any applicable law. Plaintiff does not intend to produce such privileged or protected documents or information. Plaintiff's inadvertent disclosure of any such documents or information is not to be deemed a waiver of any privilege or protection, and Plaintiff expressly reserves the right to object to the introduction at trial or any other use of such information that maybe inadvertently disclosed.

2.     Plaintiff further objects to all definitions, instructions and interrogatories to the extent they are vague, ambiguous, fail to describe the information sought with the required reasonable particularity, or are so unintelligible that Plaintiff cannot respond.

3.     Plaintiff further objects to all definitions, instructions and interrogatories to the extent they exceed the limitations set by the Federal Rules of Civil Procedure, including but not limited to FRCP Rule 26 and Rule 33.

4.     Plaintiff further objects to instructions related to the privilege logs as overly broad and seeking to discover privileged information. Plaintiff will only produce information required by FRCP and Federal Rules of Evidence.

1

2                         **OBJECTIONS TO SUN'S DEFINITIONS**

3   1.      Objections to Definition 11 (POWERRPC)

4       Plaintiff objects to definition 12 as overly broad and seeking material irrelevant to the instant

5
    action. Plaintiff construes the definition as referring to only the commercially available versions of
6
    NETBULA POWERRPC PRODUCTS offered to the public for licensing and allegedly infringed
7
8   by Defendants and does not include any beta versions or other unpublished versions.

9   2.      Objections to Definition 12 (ONC RPC)

10      Plaintiff objects to definition 12 as overly broad and seeking material irrelevant to the instant

11  action. Plaintiff construes the definition as referring to only the commercially available versions of
12
    NETBULA ONC RPC PRODUCTS offered to the public for licensing and allegedly infringed by
13
    Defendants and does not include any beta versions or other unpublished versions.
14
15  3.      Objections to Definition 13 (OTHER NETBULA PRODUCT)

16      Plaintiff objects to definition 13 as overly broad and seeking material irrelevant to the instant

17  action. Plaintiff construes the definition as referring to only the commercially available versions of

18  NETBULA PRODUCTS offered to the public for licensing and allegedly infringed by Defendants
19
    and does not include any beta versions.
20
21  4.      Objections to Definition 14 (RELEVANT NETBULA PRODUCTS)

22      Plaintiff objects to definition 14 as overly broad and seeking material irrelevant to the instant

23  action. Plaintiff construes the definition as referring to only the commercially available versions of

24  NETBULA PRODUCTS offered to the public for licensing and allegedly infringed by Defendants

25  does not include any beta versions.

26

27

28

                                            -4-

1

# RESPONSE TO INTERROGATORIES

2

3

## INTERROGATORY NO. 1

4

Describe in detail all facts CONCERNING any and all agreements, and any and all

5

discussions regarding acquiring rights to use RELEVANT NETBULA PRODUCT, between

6

YOU and each of the DEFENDANTS, including in YOUR response the identification of any

7

documents comprising or reflecting such agreements, the individuals who negotiated or agreed to

8

such agreements, and every term of any such agreements (other than those reflected in an

9

identified writing).

10

## RESPONSE TO INTERROGATORY NO. 1

11

12

Plaintiff objects to this interrogatory No.1 on the basis that it is overly burdensome as it

13

asks Plaintiff to describe large volumes of communications.

14

In January 2000, a manager at StorageTek emailed Netbula to request a full version of

15

PowerRPC. The purpose was said to replace another RPC solution called "MKS NutCracker

16

RPC" being used by StorageTek at the time. The email stated: "[t]he product we are working on is

17

for re-sale and not internal use. We are a large company and it would not be wise for us to

18

distribute this software unlicensed. We are willing to sign agreements to this affect."

19

20

In March 2000, StorageTek and Netbula signed a license agreement for PowerRPC.

21

StorageTek represented that it would use a large number of licenses, and negotiated volume

22

discount on license fees. The license agreement granted StorageTek the right to develop and

23

distribute Netbula RPC applications for Windows 95, Windows 98 and Windows NT platforms,

24

subject to the "Limited Distribution" clause of the agreement. The agreement required StorageTek

25

to treat the Netbula software as copyrighted material that is protected by copyright laws and

26

international treaties. StorageTek purchased development licenses for eight developers and one

27

block of 1000-copy runtime licenses for installation onto 1000 computers. The agreement further

28

1  required StorageTek to keep records of its license usage and purchase additional 1000-copy block

2  licenses once it used up the prepaid number of copies.

3      In June 2000, a person named Anton Vatcky from StorageTek sent an email to Netbula

4  inquiring about a PowerRPC license for Windows 2000. Mr. Vatcky knew that StorageTek only

5  had a license for Windows NT and asked for a copy for the Windows 2000 version. He asked in

6  his email: "We at StorageTek currently use the NT version of PowerRPC in our product...Would

7  it be possible to obtain a copy of the Win2K version of PowerRPC,to determine if our software

8  will port OK to Win2K." Mr. Vatcky indicated that a separate license agreement would be signed

9  for Windows 2000. Netbula immediately provided StorageTek a demo version of PowerRPC for

10 Windows 2000. However, StorageTek never returned back to sign a license agreement for

11 Windows 2000.

12      In June 2001, Netbula requested a license usage report from StorageTek. Mike Melnick, on

13 behalf of StorageTek, reported usage of 107 copies, with 893 remaining out of the 1000 licenses

14 purchased in year 2000.

15      In September 2002, Netbula requested another license usage report from StorageTek. Mr.

16 Melnick, on behalf of StorageTek, stated that the product was being terminated and license usage

17 stayed at 107. Netbula re-confirmed with StorageTek that PowerRPC was no longer used by

18 StorageTek. As a result, Netbula deleted StorageTek from its list of active licensees and stopped

19 requesting license usage reports from StorageTek.

20      In March 2004, Mr. Melnick at StorageTek contacted Netbula for an upgraded version of

21 PowerRPC for Windows Server 2003.

22      Shortly after Mr. Melnick contacted Netbula, in March 2004, StorageTek and Netbula

23 signed a new license agreement. The license covered Windows 2000, Windows XP and Windows

24 Server 2003. StorageTek purchased another block of 1000 runtime licenses.

-6-

1    In 2004, Netbula's listed price for the 1000-copy "pwrpc32.dll" license was about two

2    times higher than its price in year 2000. However, relying on StorageTek previous statement that

3    they had only consumed 107 licenses out of the 1000 they purchased in year 2000, Netbula

4    believed that StorageTek's runtime license usage would be low. To compensate StorageTek for its

5

6    previously unused 893 licenses, Netbula gave StorageTek a very low price for the new licenses in

7    the March 2004 license agreement.

8    Plaintiff had numerous communications with StorageTek and SUN on license agreements,

9    the vast majority of the communications were in the form of emails or faxes. Plaintiff will produce

10    all DOCUMENTS THAT ARE AVAILABLE related to this interrogatory.

11    **INTERROGATORY NO. 2**

12

13    Describe in detail all COMMUNICATIONS YOU have had with STORAGETEK or SUN

14    CONCERNING the RELEVANT NETBULA PRODUCTS or this dispute prior to YOUR filing

15    of this lawsuit.

16    **RESPONSE TO INTERROGATORY NO. 2**

17    Plaintiff objects to this interrogatory No.2 on the basis that it is overly burdensome as it

18    asks Plaintiff to describe all COMMUNICATIONS Plaintiff have had with STORAGETEK or

19    SUN CONCERNING the RELEVANT NETBULA PRODUCTS or this dispute.

20

21    Plaintiff had numerous communications with StorageTek and SUN CONCERNING the

22    RELEVANT NETBULA PRODUCTS of this dispute prior to YOUR filing of this lawsuit. The

23    vast majority of the communications were in the form of emails, faxes and other correspondence.

24    Plaintiff will produce all DOCUMENTS THAT ARE AVAILABLE related to this interrogatory

25    once a protective order is in place.

26

27

28

**INTERROGATORY NO. 3**

Describe any facts extrinsic to the language contained in the license agreements described in Paragraphs 32 or 39 of the First Amended Complaint that you contend bears on the construction or interpretation of those agreements.

**RESPONSE TO INTERROGATORY NO. 3**

Plaintiff objects to interrogatory No.3 on the basis that it is vague. Plaintiff had numerous communications with StorageTek on revising the license agreements, the vast majority of the communications were in the form of emails or faxes. Plaintiff will produce all DOCUMENTS THAT ARE AVAILABLE related to this interrogatory.

**INTERROGATORY NO. 4**

For each license agreement described in Paragraphs 32 or 39 and the demo version of PowerRPC described in Paragraph 34 of the First Amended Complaint, describe each use by each DEFENDANT you contend was outside the scope of the license agreement or terms of use, and the basis for such contention.

**RESPONSE TO INTERROGATORY NO. 4**

1) Defendant StorageTek developed and distributed "LibAttach" and "REEL" products (which are based on PowerRPC) on Windows 2000 before March 2004, without a PowerRPC license (StorageTek knew it did not have a license for Windows 2000).

2) Defendant StorageTek developed and distributed "LibAttach Integrator's Kit" (which uses PowerRPC) for Windows 2000, knowing that they did not have a PowerRPC license;

3) Defendants StorageTek and SUN distributed LibAttach (which includes "pwrpc32.dll") under "1191NLC-SENT" product code for unlimited copying by their customers without Netbula's knowledge and authorization and in intentional violation of Netbula's licensing restrictions (Limited Distribution);

4)    Before March 2004, Defendant StorageTek distributed copies of "pwrpc32.dll" in excess of the 1000 copy license purchased in year 2000;

5)    After March 2004, Defendants StorageTek and SUN distributed copies of "pwrpc32.dll" in excess of the 1000-copy license purchased in March 2004.

6)    Defendants IBM, EMC, Veritas, Symantec and Darden Restaurants copied the "LibAttach" and/or "LibAttach Integrator's Kit" software (which are derivative work of PowerRPC and also include "pwrpc32.dll") for unauthorized platforms or without a license and thus directly infringed Netbula's copyright.

**INTERROGATORY NO. 5**

IDENTIFY and describe YOUR earliest use of the term "prepayment license" (i) within the terms of any license agreement for RELEVANT NETBULA PRODUCTS and (ii) while referring to or enforcing any license agreement for RELEVANT NETBULA PRODUCTS.

**RESPONSE TO INTERROGATORY NO. 5**

Plaintiff objects to interrogatory No.5 on the basis that it is not relevant to the instant suit.

The term "prepayment license" or "pre-paid" license was used in communications with StorageTek while referring to or enforcing any license agreement for RELEVANT NETBULA PRODUCTS.

**INTERROGATORY NO. 6**

IDENTIFY and describe all instances when YOU have offered, sold, or distributed, or authorized for sale and distribution, a number of multiple licenses that were not "prepayment licenses," as YOU describe in Paragraph 24 of the First Amended Complaint, or "Limited Distribution Licenses" as YOU describe in Paragraph 3 1 of the First Amended Complaint.

**RESPONSE TO INTERROGATORY NO. 6**

Plaintiff objects to interrogatory No.6 on the basis that it is overly broad and vague.

All license agreements for Netbula ONC RPC and POWERRPC are licenses based on purchases. A customer pays a specific amount for the right to make specific number of copies of NETBULA software, such as the "pwrpc32.dll" runtime library.

**INTERROGATORY NO. 7**

Describe in detail all facts CONCERNING YOUR claim that "Netbula gave StorageTek a discounted price for the new licenses in the March 2004 license agreement," as alleged in paragraph 40 of the First Amended Complaint.

**RESPONSE TO INTERROGATORY NO. 7**

Before March 2004, StorageTek, through Michael Melnick, stated to Netbula that it only used 107 units out of the 1000-copy license it purchased in 2000 and that StorageTek stopped using Netbula RPC. Mr. Melnick at one point indicated that StorageTek paid a higher average price for those 101 units because it did not use up the full quantity allowed, which was 1000. Relying on StorageTek's representations and to compensate StorageTek for the unused licenses it purchased in 2000, Netbula offered StorageTek discounted prices, which were the same as the 2000 prices, despite the fact the price for the 1000-pak runtime was about twice as high in 2004.

Plaintiff will produce documents for the related communications subject to a protective order.

**INTERROGATORY NO. 8**

Describe in detail any differences in content or functionality between the RELEVANT NETBULA PRODUCTS licensed by the agreement described in Paragraph 32 of the First Amended Complaint and the RELEVANT NETBULA PRODUCTS licensed by the agreement described in Paragraph 39 of the First Amended Complaint.

**RESPONSE TO INTERROGATORY NO. 8**

Plaintiff objects to interrogatory No.8 on the basis that it is overly burdensome and vague.

1    The RELEVANT NETBULA PRODUCTS licensed by the year 2000 agreement was only

2    certified for Windows NT/95 and licensed for Windows NT/95. The NETBULA PRODUCTS

3    licensed by the year 2004 agreement was certified and licensed for Windows 2000, Windows XP

4    and Windows 2003.

5    Plaintiff will make a comparison of the content by examining the two versions of the

6    software StorageTek received.

7

8    **INTERROGATORY NO. 9**

9    Describe in detail any differences in content or functionality between the pwrpc32.dll

10    YOU distributed or included with ONC RPC SDK, the pwrpc32.dll YOU distributed or included

11    with POWERRPC SDK, and the pwrpc32.dll YOU distributed or included with OTHER

12    NETBULA PRODUCT, including but not limited to OTHER NETBULA PRODUCT that

13    comprises or is part of the "Runtime Library" described in paragraph 18 of the First Amended

14    Complaint.

15

16    **RESPONSE TO INTERROGATORY NO. 9**

17    Plaintiff objects to this interrogatory No.9 on the basis that it is overly burdensome and

18    vague, as it seeks to discover information unrelated to the instant case. Furthermore, the

19    interrogatory lacks specificity as to time and version number. Plaintiff will construe the

20    interrogatory as only referring to the particular versions of Netbula software StorageTek received.

21    Plaintiff will make a comparison of the content by examining the SDK version of

22    "pwrpc32.dll" and the "pwrpc32.dll" software granted for distribution that StorageTek received in

23    2000 and 2004.

24

25

26

27

28

**INTERROGATORY NO. 10**

Describe in detail all facts CONCERNING YOUR claim that "Defendant StorageTek fully understood that it only purchased the right to make 1000 copies and also understood that YOUR license grant was a 'prepayment' license."

**RESPONSE TO INTERROGATORY NO. 10**

Plaintiff refers to the emails and documents sent by Michael Melnick, Maria Woods, Carmel Gill, Julie DeCecco and other StorageTek or SUN employees. Defendants used words such as "pre-paid" in describing the Netbula-StorageTek licenses, and sought to change to license agreements to a royalty reporting arrangement. Julie DeCecco authorized to purchase additional licenses in 1000-paks. Plaintiff will produce these emails in its document production and will amend this interrogatory answer with specific references to documents.

**INTERROGATORY NO. 11**

Describe in detail all facts CONCERNING any instance(s) in which any NETBULA customer exceeded the NETBULA license or terms of use, including but not limited to the amount of usage afforded by a "prepayment license" as YOU use that term in paragraph 24 of the First Amended Complaint or use on a platform not permitted by license, and describe all actions YOU took upon learning that limits or restrictions in any NETBULA license were exceeded, including but not limited to settling disputes or establishing a royalty for the excessive usage.

**RESPONSE TO INTERROGATORY NO. 11**

Plaintiff objects to interrogatory No.11 on the basis that it is overly broad and seeking information unrelated to the instant case. Plaintiff construes this interrogatory as limited to NETBULA ONC RPC and NETBULA POWERRPC only.

Plaintiff had identified three instances in which a customer made more copies of Netbula software than the number of licenses purchased. The three customers are BindView Development

1   Corp, SUN/StorageTek and Greenwich Capital Markets, Inc. Detailed information on these three

2   cases are publicly available.

3   **INTERROGATORY NO. 12**

4        Describe **in** detail the ways-including but not limited to click-through agreements, click-

5   wrap agreements, shrink-wrap agreements, invoices, signed written agreements, e-mail or other

6   correspondence, and/or verbal agreements-in which YOU have entered into agreements for the

7   sale or licensing of the RELEVANT NETBULA PRODUCTS, including ways in which the terms

8   of such agreements have been communicated to and/or acknowledged or agreed to by customers

9   or licensees, the terms of particular agreements with particular customers or licensees, and the

10  ways in which YOU have recorded such terms.

11  **RESPONSE TO INTERROGATORY NO. 12**

12       Plaintiff objects to this interrogatory No.6 on the basis that it is overly broad and

13

14  burdensome and seeking information unrelated to the instant case, where StorageTek executed a

15

16  signed license agreement.

17  **INTERROGATORY NO. 13**

18       IDENTIFY each instance in which you have granted licenses for any RELEVANT

19  NETBULA PRODUCTS that were not limited as to platform or operating system.

20  **RESPONSE TO INTERROGATORY NO. 13**

21       Plaintiff objects to this interrogatory No.6 on the basis that it is overly broad and seeking

22

23  information unrelated to the instant case.

24       Plaintiff is unaware of licenses granted by Netbula for any RELEVANT NETBULA

25  PRODUCTS that were not limited as to platform or operating system.

26  **INTERROGATORY NO. 14**

27       IDENTIFY each instance in which you have granted licenses for any RELEVANT

28

-13-

1  NETBULA PRODUCTS that expressly contained limitations as to platform or operating systems.

2  **RESPONSE TO INTERROGATORY NO. 14**

3       Plaintiff objects to interrogatory No.14 on the basis that it is overly broad and seeking

4  information unrelated to the instant case. Plaintiff construes this interrogatory as limited to the

5  licenses for the allegedly infringed software in this action.

6

7       All licenses for any NETBULA ONC RPC and POWERRPC PRODUCTS granted by

8  Plaintiff expressly contained limitations as to platform or operating systems.

9  **INTERROGATORY NO. 15**

10      Describe in detail when, how, or under what circumstances you contend that any

11  NETBULA license agreements with ANY PERSON for any RELEVANT NETBULA PRODUCT

12  (including but not limited to those described in Paragraphs 32 and 39 of the First Amended

13  Complaint) may be terminated, or have in fact been terminated, by NETBULA, including without

14  limitation all COMMUNICATIONS with any PERSON about such potential or actual termination.

15

16  **RESPONSE TO INTERROGATORY NO. 15**

17      Plaintiff objects to this interrogatory No.15 on the basis that it is overly broad and seeking

18  information unrelated to the instant case. Plaintiff construes this interrogatory as limited to the

19  licenses for the allegedly infringed software in this action.

20      Plaintiff terminated its agreements with StorageTek on the basis that StorageTek exceeded

21  the scope of the licenses and infringed Plaintiff's copyright. Plaintiff will produce related

22  communications.

23

24  **INTERROGATORY NO. 16**

25      Identify all PowerRPC generated source code that YOU claim was incorporated into the

26  LibAttach software, as alleged in Paragraph 59 of the First Amended Complaint.

27  **RESPONSE TO INTERROGATORY NO. 16**

28

-14-

1    Plaintiff will fully answer this interrogatory once StorageTek produces its source code for

2  the LibAttach software requested in Plaintiff's document requests.

3  **INTERROGATORY NO. 17**

4    Describe in detail all facts CONCERNING any instance(s) in which any NETBULA

5  customer did not provide what YOU considered a timely or accurate royalty report, and describe

6  all actions YOU took in response, including but not limited to conducting audits, threatening

7  litigation, or settling disputes and the terms thereof.

8

9  **RESPONSE TO INTERROGATORY NO. 17**

10    Plaintiff objects to interrogatory No.17 on the basis that it is overly broad, vague,

11  compounded and seeking information unrelated to the instant case. Plaintiff construes this

12  interrogatory as limited to the actions related the allegedly infringed software in this action.  Even

13  with this limitation, it is impossible to summarize _all_ actions taken by Plaintiff in an interrogatory

14  answer. As with many of the earlier interrogatories, the information sought is

15

16    Plaintiff will produce all documents concerning communications related to the allegedly

17  infringed software in the instant action.

18

19  Dated:   July 18, 2007                    LAW OFFICES OF VONNAH M. BRILLET

20

21

22                            By:    VONNAH M. BRILLET

23                                   Attorneys for Plaintiff NETBULA, LLC

24

25

26

27

28

# CERTIFICATE OF SERVICE

I declare that I am a citizen of the United States, over the age of 18 years, and not a party to the within entitled action. My business address is 2777 Alvarado Street, Suite E, San Leandro, CA 94577.

On July 18, 2007, I served a copy of the foregoing documents described as:

PLAINTIFF AND COUNTERCLAIM DEFENDANT NETBULA, LLC'S RESPONSE TO DEFENDANT AND COUNTERCLAIMANT SUN MICROSYSTEMS, INC.'S FIRST SET OF INTERROGATORIES (NOS. 1-17)

On all interested parties in said cause, by delivering a true copy as follows:

__X__  **(By E-Mail)**  By transmitting via email the document(s) listed above to the e-mail address(es) set forth below on this date.

> jwakefield@fenwick.com
> lpulgram@fenwick.com
> asieber@fenwick.com
> davideiseman@quinnemanuel.com
> rachelsmith@quinnemanuel.com

__X__  **(By Mail)**  By placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Leandro, California addressed as set forth below.

> Jedediah Wakefield, Esq
> Albert L. Sieber, Esq.
> Laurence F. Pulgram, Esq.
> Fenwick & West, LLP
> 555 California Street, Suite 1200
> San Francisco, CA 94104

> David Eiseman
> Quinn Emanuel Urquhart Oliver & Hedges
> 50 California Street, 22nd Floor
> San Francisco, CA 94111

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on July 18, 2007, at San Leandro, California.

_____
Vonnah M. Brillet

# EXHIBIT 2

1    LAURENCE F. PULGRAM (CSB NO. 115163)
     *lpulgram@fenwick.com*
2    JEDEDIAH WAKEFIELD (CSB NO. 178058)
     *jwakefield@fenwick.com*
3    LIWEN A. MAH (CSB NO. 239033)
     *lmah@fenwick.com*
4    MARY E. MILIONIS (CSB NO. 238827)
     *mmilionis@fenwick.com*
5    FENWICK & WEST LLP
     555 California Street
6    12th Floor
     San Francisco, CA  94104
7    Telephone: (415) 875-2300
     Facsimile:  (415) 281-1350
8
     Attorneys for Defendants
9    BINDVIEW DEVELOPMENT CORPORATION,
     SYMANTEC CORPORATION, and
10   ERIC J. PULASKI

11                    UNITED STATES DISTRICT COURT

12                  NORTHERN DISTRICT OF CALIFORNIA

13                      SAN FRANCISCO DIVISION

14

15   NETBULA, LLC, a Delaware limited        Case No.  C-06-07391-MJJ
     liability company,
16                                           **NOTICE OF DEPOSITION OF PLAINTIFF**
                    Plaintiff,               **NETBULA, LLC PURSUANT TO**
17                                           **FEDERAL RULE OF CIVIL PROCEDURE**
          v.                                 **30(b)(6)**
18
     STORAGE TECHNOLOGY
19   CORPORATION, a Delaware corporation;
     SUN MICROSYSTEMS, INC., a Delaware
20   corporation; INTERNATIONAL
     BUSINESS MACHINES
21   CORPORATION, a New York
     corporation; EMC CORPORATION, a
22   Massachusetts corporation; VERITAS
     SOFTWARE CORPORATION, a
23   Delaware corporation; DARDEN
     RESTAURANTS, INC., a Florida
24   corporation; and DOES 1-100, inclusive,

25                    Defendants.

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  TO PLAINTIFF NETBULA, LLC AND ITS ATTORNEY OF RECORD HEREIN:

2       PLEASE TAKE NOTICE that, pursuant to Rules 26 and 30(b)(6) of the Federal Rules of

3  Civil Procedure, and the order of the court sequencing discovery in this action, Defendants

4  Storage Technology Corporation and Sun Microsystems, Inc., by and through their attorneys of

5  record, will take the deposition upon oral examination of NETBULA, LLC, by and through the

6  person(s) designated by NETBULA, LLC to testify on its behalf regarding the topics set forth in

7  Exhibit A. Pursuant to Rule 30(b)(6), NETBULA, LLC will designate one or more of its

8  employees, officers, directors, managing agents, or other persons to testify on its behalf as to

9  matters known or reasonably available concerning the subjects identified in the attached Exhibit

10  A.

11  **Deponent:**             Netbula, LLC
   **Deponent's Address:**    c/o Law Offices of Vonnah M. Brillet
12                         2777 Alvarado Street, Suite E
                          San Leandro, CA 94577
13

14  **Location of Deposition:**  Fenwick & West, LLP
                          555 California Street, 12th Floor
15                         San Francisco, CA 94104

16  **Date and Time:**         August 27, 2007 at 9:00 a.m.

17  Unless otherwise agreed by the parties, the deposition will take place at the time and place

18  indicated above, and will continue thereafter from day to day until completed.  The deposition

19  shall be taken before a notary public or other officer authorized by law to administer oaths, and

20  will be recorded by stenographic and videographic means and real-time transcription, *e.g.,*

21  LiveNote.
   Dated: August 13, 2007             FENWICK & WEST LLP
22

23

24                         By: _____
                                 Liwen Mah

25                         Attorneys for Defendants
                          Storage Technology Corporation, Sun
26                         Microsystems, Inc., EMC Corporation, Veritas
                          Software Corporation, and
27                         Darden Restaurants, Inc.

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**EXHIBIT A**

**DEFINITIONS**

1.    "YOU," "YOUR," or "NETBULA" means third party Netbula, LLC and shall include its divisions, parents, subsidiaries, affiliates, predecessor or successor companies, if any, and its past and present officers, directors, employees, attorneys, authorized agents, sales representatives, distributors, consultants, dealers and other persons acting or purporting to act on its behalf.

2.    "DEFENDANTS" means collectively defendants Storage Technology Corporation ("StorageTek"), Sun Microsystems, Inc., EMC Corporation, Veritas Software Corporation, and Darden Restaurants, Inc., and shall include corporate divisions, parents, subsidiaries, affiliates, predecessor or successor companies, if any, and their past and present officers, directors, employees, attorneys, authorized agents, sales representatives, distributors, consultants, dealers and other persons acting or purporting to act on their behalf.

3.    "PLAINTIFF" means plaintiff NETBULA and shall include its parent companies; subsidiaries, affiliates, or divisions thereof; predecessor or successor companies, if any; and its past and present officers, directors, employees, consultants, attorneys, authorized agents, sales representatives, distributors, dealers or other persons acting or purporting to act on its behalf.

4.    The term "COMMUNICATIONS" shall refer to all written, oral, telephonic or other inquiries, dialogues, discussions, conversations, interviews, correspondence, consultations, negotiations, agreements, understandings, meetings, letters, notes, telegrams, advertisements, computer mail, e-mail and all other documents evidencing any verbal or nonverbal interaction between persons and entities.

6.    "RELEVANT NETBULA SOFTWARE" means POWERRPC, ONC RPC, and OTHER NETBULA SOFTWARE.

7.    "POWERRPC" means the entire Netbula POWERRPC product line, and all versions and releases, including without limitation all beta versions, portions, options, and components thereof, all associated documentation and user manuals, and all versions thereof.

8.     "ONC RPC" means the entire Netbula ONC RPC product line, and all versions and releases, including without limitation all beta versions, portions, options, and components thereof, all associated documentation and user manuals, and all versions thereof.

9.     "OTHER NETBULA SOFTWARE" means any Netbula product other than POWERRPC or ONC RPC that contains or comprises the "pwrpc32.3ll" file or any other file or code that YOU contend has been copied, misappropriated or infringed by any defendant in this action, including without limitation all beta versions, portions, options, and components thereof, all associated documentation and user manuals, and all versions thereof.

10.    The words "ALL" and "EACH" shall be construed as "ALL AND EACH."

11.    The words "OR" and "AND" shall be read in the conjunctive and in the disjunctive wherever they appear, and neither of these words shall be interpreted to limit the scope of these discovery requests.

12.    The use of a verb in any tense shall be construed as the use of the verb in all other tenses.

13.    The singular form of any word shall be deemed to include the plural. The plural form of any word shall be deemed to include the singular.

### 30(b)(6) DEPOSITION TOPICS

1.    Features, functions, purposes, uses, limitations, and restrictions on the use or distribution of the RELEVANT NETBULA SOFTWARE.

2.    Licensing of RELEVANT NETBULA PRODUCTS, including the ways in which Netbula has entered into licenses for the RELEVANT NETBULA SOFTWARE, and the scope and interpretation of NETBULA licenses for any RELEVANT NETBULA SOFTWARE.

3.    Methods by which users may obtain RELEVANT NETBULA SOFTWARE, and the rights to use, copy, modify or distribute any RELEVANT NETBULA SOFTWARE, including but not limited to the provision of free or evaluation copies.

4.    NETBULA's efforts to enforce its licensing or intellectual property rights with respect to the RELEVANT NETBULA SOFTWARE, including but not limited to audits of licensees or other customers, communications with such licensees or other customers, and

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    the responses to those efforts.

2    5.    Any and all agreements, and any and all COMMUNICATIONS regarding acquiring rights

3    to use RELEVANT NETBULA PRODUCT, between YOU and each of the

4    DEFENDANTS, including who negotiated or agreed to such agreements, every term of

5    any such agreements, and their interpretation.

6    6.    Use(s) by each DEFENDANT you contend was outside the scope of the license agreement

7    or terms of use.

8    7.    YOUR use of the term "prepayment license" or the concept of necessity of prepayment (i)

9    within the terms of any license agreement for RELEVANT NETBULA PRODUCTS and

10   (ii) while referring to or enforcing any license agreement for RELEVANT NETBULA

11   PRODUCTS.

12   8.    All instances when YOU have offered, sold, or distributed, or authorized for sale and

13   distribution, a number of multiple licenses that were not "prepayment licenses," as YOU

14   describe in Paragraph 24 of the First Amended Complaint, or "Limited Distribution

15   Licenses" as YOU describe in Paragraph 31 of the First Amended Complaint.

16   9.    YOUR claim that "Netbula gave StorageTek a discounted price for the new licenses in the

17   March 2004 license agreement," as alleged in paragraph 40 of the First Amended

18   Complaint.

19   10.   Differences in content or functionality between the RELEVANT NETBULA PRODUCTS

20   licensed by the agreement described in Paragraph 32 of the First Amended Complaint and

21   the RELEVANT NETBULA PRODUCTS licensed by the agreement described in

22   Paragraph 39 of the First Amended Complaint.

23   11.   YOUR claim that "Defendant StorageTek fully understood that it only purchased the right

24   to make 1000 copies and also understood that YOUR license grant was a 'prepayment'

25   license."

26   12.   Instances in which any NETBULA customer exceeded the NETBULA license or terms of

27   use, including but not limited to the amount of usage afforded by a "prepayment license"

28   as YOU use that term in paragraph 24 of the First Amended Complaint or use on a

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    platform not permitted by license, and all actions YOU took upon learning that limits or

2    restrictions in any NETBULA license were exceeded, including but not limited to settling

3    disputes or establishing a royalty for the excessive usage.

4    13.    Ways in which YOU have entered into agreements for the sale or licensing of the

5    RELEVANT NETBULA PRODUCTS, including ways in which the terms of such

6    agreements have been communicated to and/or acknowledged or agreed to by customers

7    or licensees, the terms of particular agreements with particular customers or licensees, and

8    the ways in which YOU have recorded such terms.

9    14.    Instances in which you have granted licenses for any RELEVANT NETBULA

10    PRODUCTS that were not limited as to platform or operating system.

11    15.    Instances in which you have granted licenses for any RELEVANT NETBULA

12    PRODUCTS that expressly contained limitations as to platform or operating systems.

13    16.    When, how, or under what circumstances you contend that any NETBULA license

14    agreements with ANY PERSON for any RELEVANT NETBULA PRODUCT (including

15    but not limited to those described in Paragraphs 32 and 39 of the First Amended

16    Complaint) may be terminated, or have in fact been terminated, by NETBULA, including

17    without limitation all COMMUNICATIONS with any PERSON about such potential or

18    actual termination.

19    17.    Any instance(s) in which any NETBULA customer did not provide what YOU considered

20    a timely or accurate royalty report, and all actions YOU took in response, including but

21    not limited to conducting audits, threatening litigation, or settling disputes and the terms

22    thereof.

23    18.    Prospective or actual licenses or contracts or COMMUNICATIONS with DEFENDANTS

24    other than STORAGETEK.

25    19.    License or contract disputes with DEFENDANTS leading up to or during this lawsuit.

26    20.    NETBULA'S requests for a license usage report and STORAGETEK'S responses to those

27    requests.

28    21.    COMMUNICATIONS with Defendants.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## PROOF OF SERVICE

The undersigned declares as follows:

I am a citizen of the United States and employed in San Francisco County, California.  I am over the age of eighteen years and not a party to the within-entitled action.  My business address is Fenwick & West LLP, 555 California Street, 12th Floor, San Francisco, CA  94104.  On the date set forth below, I served a copy of the following document(s):  **NOTICE OF DEPOSITION OF PLAINTIFF NETBULA, LLC PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6)** on the interested parties in the subject action by placing a true copy thereof as indicated below, addressed as follows:

> Law Offices of Vonnah M. Brillet
> 2777 Alvarado Street, Suite E
> San Leandro, CA  94577

☒ **BY US MAIL:**  by placing the document(s) listed above in a sealed envelope for collection and mailing following our ordinary business practices.  I am readily familiar with our ordinary business practices for collecting and processing mail for the United States Postal Service, and mail that I place for collection and processing is regularly deposited with the United States Postal Service that same day with postage prepaid.

☐ **BY FACSIMILE:**  by causing to be transmitted via facsimile the document(s) listed above to the addressee(s) at the facsimile number(s) set forth above.

☒ **BY E-MAIL:**  by causing to be transmitted via e-mail the document(s) listed above to the addressee(s) at the e-mail address(es) listed above.

☐ **BY PERSONAL DELIVERY:**  by causing to be personally delivered the document(s) listed above to the addressee(s) at the address(es) set forth above.

I declare under penalty of perjury under the laws of the state of California and the United States of America that the above is true and correct.

Date:  August 13, 2007

_____
Liwen Mah

# EXHIBIT 3

Page 1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

NETBULA, LLC, a Delaware
limited liability company,

         Plaintiff,

vs.                                    No. C-06-07391-MJJ

STORAGE TECHNOLOGY CORPORATION, A DELAWARE
CORPORATION; SUN MICROSYSTEMS, INC., A
DELAWARE CORPORATION; INTERNATIONAL BUSINESS
MACHINES CORPORATION, A NEW YORK CORPORATION;
EMC CORPORATION, A MASSACHUSETTS CORPORATION,
VERITAS SOFTWARE CORPORATION, A DELAWARE
CORPORATION; DARDEN RESTAURANTS, INC., A
FLORIDA CORPORATION; AND DOES 1-100,
inclusive,

         Defendants.
_____
AND RELATED COUNTER-CLAIMS.
_____

CONFIDENTIAL TESTIMONY

VIDEOTAPED 30(b)(6) DEPOSITION OF DONGXIAO YUE

San Francisco, California

Wednesday, September 12, 2007

Volume 1

REPORTED BY:
KELLI COMBS
CSR No. 7705

Job No. 3-72940

DONGXIAO YUE                    09/12/07
CONFIDENTIAL

Page 66

| | | |
|---|---|---|
| 12:30:27 | 1 | conditions are in the agreement, in the purchase order, |
| | 2 | and in the invoice. |
| | 3 | StorageTek paid this invoice, complete the |
| | 4 | transaction, and it was granted rights referenced in the |
| 12:30:44 | 5 | purchase order. |
| | 6 | Q    Those included certain distribution rights, |
| | 7 | correct? |
| | 8 | A    Yes.  Those are in the purchase order. |
| | 9 | Q    Okay. |
| 12:30:56 | 10 | A    The purchase order number was CCOL122576, |
| | 11 | which has been produced in our production of documents. |
| | 12 | Q    In your response to Interrogatory Number 1, |
| | 13 | you state that the right to develop and distribute was |
| | 14 | for Windows 95, 98, and Windows NT platforms. |
| 12:31:22 | 15 | Do you see that?  This is referring to |
| | 16 | Exhibit 6. |
| | 17 | A    Yes. |
| | 18 | Q    All right. |
| | 19 | And if you could turn back to Exhibit 2, could |
| 12:31:35 | 20 | you point out for me where the limitation on |
| | 21 | distribution to Windows 95, 98, and NT platforms can be |
| | 22 | found? |
| | 23 | A    Could you ask the question again? |
| | 24 | Q    Yeah. |
| 12:33:00 | 25 | Could you point out for me where in Exhibit 2 |

DONGXIAO YUE                    09/12/07
CONFIDENTIAL

Page 67

| | | |
|---|---|---|
| 12:33:02 | 1 | the limitation on distribution to Windows 95, 98, and NT |
| | 2 | platforms can be found? |
| | 3 | A    The -- as I read this document, under the |
| | 4 | distribution license, it -- it -- it didn't specifically |
| 12:33:37 | 5 | list those platforms. |
| | 6 | But in the SDK license, it specifically |
| | 7 | limited the development of the application to those |
| | 8 | platforms. |
| | 9 | MR. WAKEFIELD:  Okay.  We have to change the |
| 12:33:53 | 10 | tape or disk. |
| | 11 | THE VIDEOGRAPHER:  The time is 12:34.  We're |
| | 12 | going off the record, and this will be the completion of |
| | 13 | Media Number 1. |
| | 14 | (Lunch recess taken.) |
| 12:34:04 | 15 | THE VIDEOGRAPHER:  Good afternoon.  The time |
| | 16 | is 1:26 p.m.  We're back on the record.  This will be |
| | 17 | the beginning of Media Number 2 in the deposition of |
| | 18 | Dr. Yue. |
| | 19 | MR. WAKEFIELD:  Counsel, before we go back to |
| 13:26:58 | 20 | questioning, we were talking earlier about some exhibits |
| | 21 | pertaining to pricing and prices charged.  I think we |
| | 22 | could avoid that subject if we had a stipulation that |
| | 23 | price would not be relevant -- the price is not relevant |
| | 24 | to the existence or scope or validity of or |
| 13:27:19 | 25 | enforceability of the agreements in 2000, 2004. |

DONGXIAO YUE                    09/12/07
CONFIDENTIAL

Page 91

| 14:24:58 | 1 | E-mail sent from Netbula to Michael Melnick at |
| | 2 | StorageTek in 2004? |
| | 3 | A    This is a StorageTek document with Bates |
| | 4 | Number STK378, highly confidential, attorneys' eyes |
| 14:25:30 | 5 | only.  It appears to be a E-mail exchange between |
| | 6 | Netbula and StorageTek. |
| | 7 | MR. WAKEFIELD:  For the record, I will |
| | 8 | redesignate this document right now on the record as |
| | 9 | confidential.  We can produce a new one, but I think the |
| 14:25:51 | 10 | appropriate designation under the protective order would |
| | 11 | just be confidential. |
| | 12 | BY MR. WAKEFIELD: |
| | 13 | Q    With that said, do you recognize the -- the |
| | 14 | E-mail in Exhibit 10 as an E-mail that Netbula sent? |
| 14:26:13 | 15 | A    It appears to be an E-mail Netbula sent, but I |
| | 16 | cannot authenticate this E-mail because I believe we |
| | 17 | should have produced the same E-mail. |
| | 18 | Q    You might have. |
| | 19 | So you can't tell, by having reviewed the |
| 14:26:26 | 20 | documents recently and being familiar with the issues, |
| | 21 | whether this is actually an E-mail that you sent? |
| | 22 | A    It appears to be. |
| | 23 | Q    Appears to be.  Okay. |
| | 24 | It's signed by John Young.  You testified |
| 14:26:42 | 25 | previously that you've used various aliases. |

DONGXIAO YUE                          09/12/07
CONFIDENTIAL

Page 92

| | | |
|---|---|---|
| 14:26:49 | 1 | Is John Young an alias you were using when you |
| | 2 | sent this E-mail to Michael Melnick? |
| | 3 | A    Netbula used -- assigned different aliases for |
| | 4 | different roles in its business, and we signed the alias |
| 14:27:08 | 5 | John Young for the sales function of Netbula, LLC. |
| | 6 | Q    So were all sales functions -- all |
| | 7 | sales-related E-mails signed by the alias John Young? |
| | 8 | A    That's correct. |
| | 9 | Q    In 2000, you -- you signed E-mails with your |
| 14:27:31 | 10 | real name when communicating with Mr. Melnick, didn't |
| | 11 | you, your name, Don Yue? |
| | 12 | A    That was when I was using my personal E-mail |
| | 13 | address, ydx. |
| | 14 | Q    Okay. |
| 14:28:10 | 15 | So if you used your personal E-mail address at |
| | 16 | Netbula.com you used your real name, but sometimes you |
| | 17 | used the Sales@Netbula.com and then you used the name |
| | 18 | John Young? |
| | 19 | A    In 2000, it was -- as I see from this E-mail |
| 14:28:35 | 20 | between Sales@Netbula.com and StorageTek, it just |
| | 21 | says -- signed as "Sales, Netbula" in 2000, and in this |
| | 22 | 2004 E-mail, the alias John Young was used for the sales |
| | 23 | function at Netbula. |
| | 24 | Q    And who other than you sent E-mails from the |
| 14:29:06 | 25 | Sales@Netbula.com E-mail? |

DONGXIAO YUE                        09/12/07
CONFIDENTIAL

Page 200

| | | |
|---|---|---|
| 18:32:25 | 1 | Do you see that? |
| | 2 | A    Yes. |
| | 3 | Q    You refer to E-mails and documents in your |
| | 4 | response. |
| 18:32:36 | 5 | A    Yes. |
| | 6 | Q    Okay. |
| | 7 | Other than E-mails and other documents, are |
| | 8 | you aware of any facts that support your claim that |
| | 9 | StorageTek fully understood that it only purchased the |
| 18:32:50 | 10 | right to make 1,000 copies or that it understood that |
| | 11 | the licensed grant was a prepayment license? |
| | 12 | A    Besides documents? |
| | 13 | Q    Yeah.  In other words, they told you on the |
| | 14 | phone, came and met with you and told you this? |
| 18:33:20 | 15 | A    I don't recall any conversation on the phone. |
| | 16 | Maybe initially between me and Melnick, but I -- |
| | 17 | afterwards, after signing of the agreement, I don't |
| | 18 | think there was oral communication regarding the |
| | 19 | 1,000-copy limit. |
| 18:33:44 | 20 | Q    Do you recall any oral conversations at any |
| | 21 | time with anyone at StorageTek or Sun about the 1,000 |
| | 22 | copy limit or the prepayment requirement? |
| | 23 | A    I recall such communications, but it was after |
| | 24 | the dispute -- |
| 18:34:02 | 25 | Q    Okay. |

DONGXIAO YUE                    09/12/07
CONFIDENTIAL

Page 201

| | | |
|---|---|---|
| 18:34:03 | 1 | A    -- in the audit process. |
| | 2 | Q    Were they oral or written? |
| | 3 | A    They were telephone conferences between |
| | 4 | Netbula and StorageTek on that. |
| 18:34:21 | 5 | Q    Those telephone conversations or conferences |
| | 6 | were in connection with the settlement discussions |
| | 7 | between Sun and Netbula, correct? |
| | 8 | A    I don't believe we considered that settlement |
| | 9 | communications.  At that point, what we were trying to |
| 18:34:41 | 10 | do is just to ascertain the number of copies, and so I |
| | 11 | don't know whether legally that was settlement |
| | 12 | communications. |
| | 13 |      We didn't -- certainly, we didn't -- I don't |
| | 14 | believe it was threatened litigation at that point. |
| 18:35:05 | 15 | Q    Okay. |
| | 16 |      So when did these alleged oral communications |
| | 17 | where there was discussion of the 1,000 copy limit and |
| | 18 | the -- and/or the prepayment license a restriction? |
| | 19 | A    I believe that was in August of 2005. |
| 18:35:36 | 20 | Q    Were there any oral communications on those |
| | 21 | subjects between you and anyone at StorageTek or Sun |
| | 22 | before August of 2005? |
| | 23 | A    I don't recall. |
| | 24 |           (Defendants' Exhibit 21 marked |
| 18:36:11 | 25 |            for identification.) |

# EXHIBIT 4

1  LAURENCE F. PULGRAM (CSB NO. 115163)
   *lpulgram@fenwick.com*
2  JEDEDIAH WAKEFIELD (CSB NO. 178058)
   *jwakefield@fenwick.com*
3  LIWEN A. MAH (CSB NO. 239033)
   *lmah@fenwick.com*
4  MARY E. MILIONIS (CSB NO. 238827)
   *mmilionis@fenwick.com*
5  FENWICK & WEST LLP
   555 California Street
6  12th Floor
   San Francisco, CA  94104
7  Telephone: (415) 875-2300
   Facsimile:  (415) 281-1350
8
   Attorneys for Defendants
9  BINDVIEW DEVELOPMENT CORPORATION,
   SYMANTEC CORPORATION, and
10 ERIC J. PULASKI

11                 UNITED STATES DISTRICT COURT

12              NORTHERN DISTRICT OF CALIFORNIA

13                  SAN FRANCISCO DIVISION

14

15  NETBULA, LLC, a Delaware limited          Case No.  C-06-0711-MJJ-WDB
    liability company,
16                                            **AMENDED NOTICE OF DEPOSITION OF
                   Plaintiff,                 PLAINTIFF NETBULA, LLC PURSUANT
17                                            TO FEDERAL RULE OF CIVIL
          v.                                  PROCEDURE 30(b)(6)**
18
    BINDVIEW DEVELOPMENT
19  CORPORATION, a Texas corporation;
    SYMANTEC CORPORATION, a
20  Delaware corporation; ERIC J. PULASKI,
    an individual; and DOES 1-10, inclusive,
21
                   Defendants.
22

23

24  TO PLAINTIFF NETBULA, LLC AND ITS ATTORNEY OF RECORD HEREIN:

25          PLEASE TAKE NOTICE that, pursuant to the Court's guidance at the June 22, 2007

26  Discovery Hearing and Rules 26 and 30(b)(6) of the Federal Rules of Civil Procedure,

27  Defendants Symantec Corporation, BindView Development Corporation, and Eric J. Pulaski, by

28  and through their attorneys of record, will take the deposition upon oral examination of

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   NETBULA, LLC, by and through the person(s) designated by NETBULA, LLC to testify on its

2   behalf regarding the topics set forth in Exhibit A. Pursuant to Rule 30(b)(6), NETBULA, LLC

3   will designate one or more of its employees, officers, directors, managing agents, or other persons

4   to testify on its behalf as to matters known or reasonably available concerning the subjects

5   identified in the attached Exhibit A.

6   **Deponent:**                    Netbula, LLC

7   **Deponent's Address:**          c/o Law Offices of Vonnah M. Brillet
8                                    2777 Alvarado Street, Suite E
                                     San Leandro, CA  94577

9   **Location of Deposition:**      Fenwick & West, LLP
10                                   555 California Street, 12th Floor
                                     San Francisco, CA 94104

11  **Date and Time:**               June 27, 2007 at 9:00 a.m.

12  As agreed by the parties and authorized by the Court, the deposition will take place at the time

13  and place indicated above, and will continue thereafter from day to day until completed.  The

14  deposition shall be taken before a notary public or other officer authorized by law to administer

15  oaths, and will be recorded by stenographic and videographic means and real-time transcription,

16  *e.g.*, LiveNote.

17

18

19

20

21

22  Dated: June 26, 2007                    FENWICK & WEST LLP

23

24  By: _Jedediah Wem_____
                                            Jedediah Wakefield

25                                          Attorneys for Defendants
26                                          BINDVIEW DEVELOPMENT
                                            CORPORATION, SYMANTEC
27                                          CORPORATION, and ERIC J. PULASKI

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**EXHIBIT A**

**DEFINITIONS**

1.      "YOU," "YOUR," or "NETBULA" means third party Netbula, LLC and shall include its divisions, parents, subsidiaries, affiliates, predecessor or successor companies, if any, and its past and present officers, directors, employees, attorneys, authorized agents, sales representatives, distributors, consultants, dealers and other persons acting or purporting to act on its behalf.

2.      "DEFENDANTS" means collectively defendants Eric J. Pulaski, an individual, Symantec Corporation, and BindView Development Corporation, and shall include corporate divisions, parents, subsidiaries, affiliates, predecessor or successor companies, if any, and their past and present officers, directors, employees, attorneys, authorized agents, sales representatives, distributors, consultants, dealers and other persons acting or purporting to act on their behalf.

3.      "PLAINTIFF" means plaintiff NETBULA and shall include its parent companies; subsidiaries, affiliates, or divisions thereof; predecessor or successor companies, if any; and its past and present officers, directors, employees, consultants, attorneys, authorized agents, sales representatives, distributors, dealers or other persons acting or purporting to act on its behalf.

4.      NETECT means Netect, Ltd., and shall include its divisions, parents, subsidiaries, affiliates, predecessor or successor companies, if any, and its past and present officers, directors, employees, attorneys, authorized agents, sales representatives, distributors, consultants, dealers and other persons acting or purporting to act on its behalf.

5.      The term "COMMUNICATIONS" shall refer to all written, oral, telephonic or other inquiries, dialogues, discussions, conversations, interviews, correspondence, consultations, negotiations, agreements, understandings, meetings, letters, notes, telegrams, advertisements, computer mail, e-mail and all other documents evidencing any verbal or nonverbal interaction between persons and entities.

6.      "RELEVANT NETBULA SOFTWARE" means POWERRPC, ONC RPC, and OTHER NETBULA SOFTWARE.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    7.    "POWERRPC" means the entire Netbula POWERRPC product line, and all

2    versions and releases, including without limitation all beta versions, portions, options, and

3    components thereof, all associated documentation and user manuals, and all versions thereof.

4    8.    "ONC RPC" means the entire Netbula ONC RPC product line, and all versions

5    and releases, including without limitation all beta versions, portions, options, and components

6    thereof, all associated documentation and user manuals, and all versions thereof.

7    9.    "OTHER NETBULA SOFTWARE" means any Netbula product other than

8    POWERRPC or ONC RPC that contains or comprises the "pwrpc32.3ll" file or any other file or

9    code that YOU contend has been copied, misappropriated or infringed by any defendant in this

10    action, including without limitation all beta versions, portions, options, and components thereof,

11    all associated documentation and user manuals, and all versions thereof.

12    10.    The words "ALL" and "EACH" shall be construed as "ALL AND EACH."

13    11.    The words "OR" and "AND" shall be read in the conjunctive and in the

14    disjunctive wherever they appear, and neither of these words shall be interpreted to limit the

15    scope of these discovery requests.

16    12.    The use of a verb in any tense shall be construed as the use of the verb in all other

17    tenses.

18    13.    The singular form of any word shall be deemed to include the plural.  The plural

19    form of any word shall be deemed to include the singular.

## 30(b)(6) DEPOSITION TOPICS

21    1.    Features, functions, purposes, uses, limitations, and restrictions of the RELEVANT

22    NETBULA SOFTWARE.

23    2.    The design, development, and improvements to the RELEVANT NETBULA

24    SOFTWARE, including but not limited to the time and resources spent.

25    3.    The use of third party code or other content, development tools, or other intellectual

26    property in the RELEVANT NETBULA SOFTWARE.

27    4.    Licensing of RELEVANT NETBULA PRODUCTS, including the ways in which Netbula

28    has entered into licenses for the RELEVANT NETBULA SOFTWARE, and the  scope

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1       and interpretation of NETBULA licenses for any RELEVANT NETBULA SOFTWARE.

2   5.  Methods by which users may obtain RELEVANT NETBULA SOFTWARE, and the

3       rights to use, copy, modify or distribute any RELEVANT NETBULA SOFTWARE,

4       including but not limited the provision of free or evaluation copies.

5   6.  NETBULA's licensing of software to NETECT, including (a) the way in which software

6       was provided to NETECT, (b) the terms of any applicable agreements with NETECT and

7       how such terms were communicated and/or agreed to by NETECT, and (c) whether the

8       files produced in this litigation by NETBULA entitled *ntt-oncrpc.zip* and *ntt_dis.zip* are

9       the NETBULA software originally provided to Netect and if not, what code in Netbula's

10      production was licensed to NETECT.

11  7.  NETBULA's efforts to obtain intellectual property rights in the RELEVANT NETBULA

12      SOFTWARE, including but not limited to efforts to obtain a copyright registration and all

13      COMMUNICATIONS regarding same.

14  8.  NETBULA's efforts to enforce its licensing or intellectual property rights with respect to

15      the RELEVANT NETBULA SOFTWARE, including but not limited to audits of

16      licensees or other customers, and the responses to those efforts.

17  9.  Prices charged for and revenue received from the RELEVANT NETBULA SOFTWARE

18      from all NETBULA customers.

19  10. COMMUNICATIONS forming the basis of the fraud alleged in NETBULA's First

20      Amended Complaint, and all activities taken and damages incurred in reliance on such

21      COMMUNICATIONS.

22  11. COMMUNICATIONS forming the basis of the contract alleged in NETBULA's First

23      Amended Complaint, and all damages incurred as a result of the alleged breach of

24      contract.

25  12. The nature, extent, and timing of any COMMUNICATIONS or work performed by

26      Wolinsky, Becker & Hurewitz LLP, Neil Smith, and/or Sheppard Mullin Richter &

27      Hampton LLP performed as a result of Netbula's alleged reliance on Defendants'

28      allegedly false statements.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1 13. COMMUNICATIONS with Defendants.

2 14. Damages incurred by NETBULA as a result of Defendants' alleged infringement of

3   copyright.

1                                    **PROOF OF SERVICE**

2       The undersigned declares as follows:

3       I am a citizen of the United States and employed in San Francisco County, California.  I

4 am over the age of eighteen years and not a party to the within-entitled action.  My business

5 address is Fenwick & West LLP, 555 California Street, 12th Floor, San Francisco, CA 94104.

6 On the date set forth below, I served a copy of the following document(s):  **AMENDED**

7 **NOTICE OF DEPOSITION OF PLAINTIFF NETBULA, LLC PURSUANT TO**

8 **FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6)** on the interested parties in the subject

9 action by placing a true copy thereof as indicated below, addressed as follows:

10                             Law Offices of Vonnah M. Brillet
                            2777 Alvarado Street, Suite E
11                             San Leandro, CA  94577

12

13

14 ☒  **BY US MAIL:**  by placing the document(s) listed above in a sealed envelope for
collection and mailing following our ordinary business practices.  I am readily familiar
15     with our ordinary business practices for collecting and processing mail for the United
States Postal Service, and mail that I place for collection and processing is regularly
16     deposited with the United States Postal Service that same day with postage prepaid.

17 ☐  **BY FACSIMILE:**  by causing to be transmitted via facsimile the document(s) listed
above to the addressee(s) at the facsimile number(s) set forth above.

18

19 ☒  **BY E-MAIL:**  by causing to be transmitted via e-mail the document(s) listed above to the
addressee(s) at the e-mail address(es) listed above.

20 ☐  **BY PERSONAL DELIVERY:**  by causing to be personally delivered the document(s)
listed above to the addressee(s) at the address(es) set forth above.
21

22       I declare under penalty of perjury under the laws of the state of California and the United

23 States of America that the above is true and correct.

24

25 Date:  June 26, 2007                                _Reba Williams-Jones_
                                    Reba Williams-Jones
26

27  12290/00448/LIT/1267553.3

28

FENWICK & WEST LLP
ATTORNEY AT LAW
SAN FRANCISCO

# EXHIBIT 5

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION


NETBULA, LLC, a Delaware
limited liability company,

      Plaintiff,

vs.                                    No. C-06-0711-MJJ-WDB

BINDVIEW DEVELOPMENT CORPORATION,
a Texas corporation; SYMANTEC CORPORATION,
a Delaware corporation; ERIC J. PULASKI,
an individual; and DOES 1-10, inclusive,

      Defendants.

**CERTIFIED
COPY**

_____


30(b)(6) VIDEOTAPE DEPOSITION OF DONGXIAO YUE

VOLUME 1

San Francisco, California

Wednesday, June 27, 2007



Reported by:
KELLI COMBS
CSR No. 7705

Job No. 3-68374

DONGXIAO YUE                                06/27/07

| | | |
|---|---|---|
| 11:06:27 | 1 | A     No. |
| | 2 | Q     Okay. |
| | 3 | And there is an E-mail or there is some |
| | 4 | documents that refer to a John Young -- |
| 11:06:36 | 5 | A     Uh-huh. |
| | 6 | Q     -- in the documents you have produced. |
| | 7 | A     Okay. |
| | 8 | Q     Who is John Young? |
| | 9 | A     That's just a alias I used for sales. |
| 11:06:46 | 10 | Q     Okay. |
| | 11 | Why did you use an alias for sales? |
| | 12 | A     At the beginning, I was just saying, you know, |
| | 13 | "Netbula Sales." |
| | 14 | Then to add a human touch, you know, and |
| 11:07:01 | 15 | for -- easier for people to communicate, so I put a |
| | 16 | alias there. |
| | 17 | Q     Why didn't you use your own name? |
| | 18 | A     I only use my own name when I -- I'm signing |
| | 19 | documents. |
| 11:07:26 | 20 | Q     Don't you use your own name in some customer |
| | 21 | communications, too? |
| | 22 | A     Yes, yes, yes.  For generic -- you know, |
| | 23 | generic communication, I use alias at one point, |
| | 24 | starting from certain point. |
| 11:07:41 | 25 | Q     Do you remember when that was? |

52

11:07:46  1          A    I don't remember, but we can check the -- you

2    know, the documents, yeah.

3          Q    Did you stop using an alias at a certain

4    point, too?

11:07:57  5          A    Nope.

6          Q    Okay.

7          A    For sales, I always used the, you know, John

8    Young.

9          Q    Other than John Young, did you use any other

11:08:07 10    aliases?

11          A    For sales?

12          Q    For any role at Netbula.

13          A    For tech support, I use another alias I

14    occasionally use.

11:08:20 15          Q    What was the alias you used for tech support?

16          A    Dave King.

17          Q    Last name spelling?

18          A    King.

19          Q    K-I-M?

11:08:30 20          A    Uh-huh -- K-I-N-G.

21          Q    Oh, K-I-N-G, Dave King.

22               Other than John Young and Dave King, did you

23    use any other aliases at Netbula?

24          A    Nope.

11:08:50 25          Q    You also set up a variety of E-mail domains,

53

11:08:53  1    Sales@Netbula.com, Support@Netbula.com, I think you had

2    Legal@Netbula.com; is that right?

3         A    That's correct.

4         Q    All of those went to you?

11:09:05  5    A    Legal, I don't -- I'm not sure about legal.

6         Q    Did you have an in-house lawyer who worked for

7    you?

8         A    Nope.

9         Q    Okay.

11:09:13 10        So if it didn't go to you, who did that --

11        A    Those were -- probably got forward to another

12   E-mail address I have, not -- but not to any Netbula

13   E-mail address.

14        Q    Okay.

11:09:22 15   A    Yeah.

16        Q    And then --

17             But it --

18             Ultimately, that's an E-mail that you had

19   control of?

11:09:30 20   A    That's correct.

21        Q    And no one else --

22             There wasn't a person in legal who would

23   respond to those --

24        A    That's correct.

11:09:35 25   Q    Let me finish my question.

14:46:08   1    license terms were from the Netect code -- the zip file

           2    of the Netect code that you provided?

           3         A    Yes.   They -- I -- I opened the Pwrpc32.dll

           4    file and I was able to find a string saying something

14:46:40   5    like "One developer -- one user development license."

           6         Q    So you --

           7              Does that indicate to you you custom -- you

           8    went in and custom wrote in the software you provided to

           9    Netect, "One user development license"?

14:47:02  10         A    Yes.

          11         Q    And do you do that for all your SDKs?

          12         A    Yes.

          13         Q    And can you find out also from that what the

          14    terms were for the distribution agreement?

14:47:17  15         A    The copy have -- doesn't have a -- the copy I

          16    saw was only for the developer license.

          17              Oh, yeah, it has the language saying not

          18    distributable.

          19         Q    Right.

14:47:35  20              And don't your licenses allow distribution of

          21    DLLs that say they are not for distribution?

          22         A    The SDK version, the version used by

          23    developers, are always not distributable.  Our license

          24    terms will say, "The SDK version is for development only

14:48:02  25    and it's marked internally as for development only and

14:48:07   1    cannot be used in a bundle with your products and cannot

2    be used out of the development environment."

3        Q    Doesn't it also then say, "If you want to

4    distribute that copy, you need to have a license"?

14:48:22   5        A    Yeah, you need to purchase a license.

6        Q    So then you have a license and you can

7    distribute it, right?

8        A    The customer will get another file, a

9    specifically-made runtime library file.

14:48:35  10        Q    What's the difference between the

11    specifically-made runtime library for distribution and

12    the one that you say is not for distribution?

13        A    The difference is it's licensed differently.

14    Internally, it's labeled as either distributable or

14:48:52  15    nondistributable.

16        Q    Other than that, what's the difference?

17        A    In 1998, there wasn't any other difference.

18    But later, they have a -- they actually -- they are

19    different.

14:49:12  20        Q    So in the version that you believe was

21    provided to Netect, there was a copy you provided to

22    Netect for distribution -- for not -- strike.  Let me

23    start that question over.

24            For the version of the DLL that you provided

14:49:34  25    to Netect, it was labeled "Not for Distribution."

DONGXIAO YUE                                                    06/27/07

16:52:33  1        A    As I said previously, they have to maintain

          2   a -- a record.  Otherwise, how they -- how -- they have

          3   no way to know they -- they are about to exceed the

          4   limit.

16:52:45  5        Q    But they don't have to pay you any more.

          6             In fact, under your reading of the agreement,

          7   they would never have to pay you any more; isn't that

          8   true?

          9        A    Untrue.  When they -- when they exceeded the

16:52:59 10   limit, that's we -- what we call copyright infringement.

         11        Q    So they agree in the contract to pay you

         12   copyright infringement damages?

         13        A    Oh, yeah.

         14        Q    Okay.

16:53:25 15             So you were asked to produce copies of your

         16   websites and we went through several that you did

         17   produce.

         18             You also maintained a website called

         19   WindowsRPC.com, didn't you?

16:53:39 20        A    Yes.

         21        Q    That was one of the websites that we asked you

         22   to produce materials from?

         23        A    Yes.

         24        Q    Do you know if you included any WindowsRPC.com

16:53:49 25   web pages in your production?

1

2

3          I, the undersigned, a Certified Shorthand

4    Reporter of the State of California, do hereby certify:

5          That the foregoing proceedings were taken

6    before me at the time and place herein set forth; that

7    any witnesses in the foregoing proceedings, prior to

8    testifying, were placed under oath; that a verbatim

9    record of the proceedings was made by me using machine

10   shorthand which was thereafter transcribed under my

11   direction; further, that the foregoing is an accurate

12   transcription thereof.

13          I further certify that I am neither

14   financially interested in the action nor a relative or

15   employee of any attorney of any of the parties.

16          IN WITNESS WHEREOF, I have this date

17   subscribed my name.

18

19   Dated: _____ JUL 0 5 2007 _____

20

21

22

          KELLI COMBS
23        CSR NO. 7705

24

25

# EXHIBIT 6



1   LAURENCE F. PULGRAM (CSB NO. 115163)
    *lpulgram@fenwick.com*
2   JEDEDIAH WAKEFIELD (CSB NO. 178058)
    *jwakefield@fenwick.com*
3   MARY E. MILIONIS (CSB NO. 238827)
    *mmilionis@fenwick.com*
4   LIWEN A. MAH (CSB NO. 239033)
    *lmah@fenwick.com*
5   FENWICK & WEST LLP
    555 California Street, 12th Floor
6   San Francisco, CA 94104
    Telephone: (415) 875-2300
7   Facsimile: (415) 281-1350

8   Attorneys for Defendants
    BINDVIEW DEVELOPMENT CORPORATION,
9   SYMANTEC CORPORATION, and
    ERIC J. PULASKI

10

    VONNAH M. BRILLET (SBN 226545)
11  **LAW OFFICES OF VONNAH M. BRILLET**
    2777 Alvarado Street, Suite E
12  San Leandro, CA 94577
    Telephone: (510) 351-5345
13  Facsimile: (510) 351-5348

14  Attorney for Plaintiff
    NETBULA, LLC
15

16              UNITED STATES DISTRICT COURT

17            NORTHERN DISTRICT OF CALIFORNIA

18

19  NETBULA, LLC, a Delaware limited        Case No. C-06-0711-MJJ-WDB
    liability company,
20                                          **JOINT STATEMENT OF UNDISPUTED
                Plaintiff,                   FACTS FOR DEFENDANTS' MOTIONS
21                                           FOR SUMMARY JUDGMENT**
         v.
22
    BINDVIEW DEVELOPMENT
23  CORPORATION, a Texas corporation;
    SYMANTEC CORPORATION, a              Date:    August 21, 2007
24  Delaware corporation; ERIC J. PULASKI, Time:   9:30 A.M.
    an individual; and DOES 1-10, inclusive, Dept.: Courtroom 11
25                                          Judge:   The Honorable Martin J. Jenkins
                Defendants.
26

27

28

    JOINT STATEMENT OF UNDISPUTED                          C-06-0711-MJJ-WDB
    FACTS

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    Defendants BindView Development Corporation ("BindView"), Symantec

2    Corporation ("Symantec") and Eric J. Pulaski ("Pulaski") (collectively "Defendants")

3    and Plaintiff Netbula, LLC ("Netbula") respectfully submit, pursuant to the Court's

4    Standing Order No. 3 and Civil Local Rule 56-2, this Joint Statement of Undisputed

5    Facts for Defendants' Motion for Summary Judgment as to Copyright Infringement,

6    BindView's Motion for Summary Judgment as to Breach of Contract and Fraud, and

7    Eric J. Pulaski's Motion for Summary Judgment.

8    In this joint statement, the parties have stipulated that certain documents or

9    communications were sent or transmitted. By doing so, the parties make no admissions

10    concerning the accuracy or admissibility of the contents of any such documents or

11    communications. The parties do not concede the relevance or admissibility of the facts

12    identified below, and reserve their respective objections to their use or introduction in

13    this and any other matter.

14    Defendants and Plaintiff respectfully inform this Court as follows:

15    1.    Netbula, LLC was formed in July 1996. Mr. Dongxiao Yue is

16    the owner and only employee of Netbula. At various times he has used the

17    following titles: President, Chief Officer of Sales and Marketing, Vice President of

18    Sales.

19    2.    Netbula's ONC RPC and Power RPC software facilitates the use

20    of "Remote Procedure Call" or "RPC" technology. RPC allows a program on a

21    local computer to execute a command on a remote computer over a network. Mr.

22    Yue developed Netbula ONC RPC and Netbula PowerRPC beginning in 1994.

23    3.    Sun Microsystems developed and distributed a software called

24    Sun ONC RPC. Plaintiff has identified its code a derivative work of Sun ONC RPC

25    SRC 4.0, RFC1831, RFC1832 for use in the Microsoft Windows environment.

26    4.    Netbula offers software developer kit ("SDK") licenses for

27    computer programmers who will use the SDK to develop applications and

28    distribution licenses that give the licensee the right to distribute Netbula RPC

1    supporting programs and components.  Plaintiff contends that it imposes restrictions

2    of these licenses.

3            5.            Throughout the history of Netbula, it only executed a few signed

4    license agreements with its customers.  During 1998-1999, Netbula's customers

5    could purchase licenses for Netbula RPC SDK and distribution licenses by

6    submitting requests over the internet, by fax, or by calling Mr. Yue.  During 1998-

7    1999, Netbula delivered software to customers by floppy disk, e-mail or download.

8            6.            Mr. Yue has no recollection of the event of Netect's acquisition

9    of licenses.  Defendants have no documentation of the event of Netect's acquisition

10   of licenses.

11           7.            Netect Ltd. was incorporated in July 1996, under the laws of

12   Israel.  In July 1998, Netect, Inc. purchased one user development license for

13   Netbula ONC RPC SDK and one distribution license (both of which Plaintiff

14   contends were non-exclusive and subject to limitations) for Netbula's runtime

15   library.  No actual written license agreements between Netect and Netbula have

16   been found, and none have been produced by any party in this litigation.

17           8.            No record has been found of an e-mail being sent to Netect.

18   Netbula has found two backup copies of software that include the name Netect in

19   the software.  Netbula has found two references to Netect in Boston on what it

20   claims is a customer list for Netbula RPC software.

21           9.            There are no known copies of Plaintiff's website as it existed in

22   1998.  There are no known copies of communications between Netect and Netbula

23   in 1998, however, there is a match between the backup copy of the software in

24   Netbula's possession with the name Netect and the software used in BindView's

25   HackerShield and bv-CIS product.  Unlike other Netbula backup copies of software

26   provided to other customers, these files do not include Plaintiff's form license

27   agreement or any license agreement.

28           10.            A file formerly distributed with BindView's HackerShield and

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    bv-CIS product contains a reference to "Netect LTD. Dev License, Non-

2    Distributable" along with pages of other text (including error messages such as

3    "corrupted software" and "out of memory," and unintelligible characters).   The text

4    was not visible in the ordinary use of the program.  To see it, a user would have to

5    view the executable code with a text editor or notepad.  In addition, the code for

6    Netbula's rpcgen.exe file contains the text "Netect LTD.  One user ONC RPC Dev

7    License." The rpcgen.exe file was not distributed with the bv-CIS product.

8            11.       Netect developed a software product called HackerShield, which

9    was Netect's only product.

10           12.       BindView, a Texas corporation, was founded by Eric J. Pulaski in

11   May 1990.  In 1998, BindView became a publicly traded company.  BindView's

12   principal place of business and Mr. Pualski's residence are in Houston, Texas.

13           13.       BindView acquired Netect by a share purchase, purchasing all

14   outstanding equity interests in Netect with BindView Common Stock.  The Share

15   Purchase Agreement specified that it "will be governed by the laws of the State of

16   Texas without regard to conflicts of laws principles."  The agreement is dated

17   January 29, 1999 and the deal closed on March 1, 1999.

18           14.       In January 1999, Netect provided a disclosure letter to BindView

19   pursuant to their acquisition agreement.  The Share Purchase Agreement and

20   Disclosure are attached as Exhibit 1 to the Declaration of Eric J. Pulaski.

21           15.       BindView continued to develop and sell HackerShield after its

22   acquisition of Netect, and sold the product as bv-Control for Internet Security or

23   "bv-CIS."  Netect's offices were closed after the BindView acquisition.

24           16.       In September of 2005, defendant Symantec Corporation

25   ("Symantec") was conducting due diligence, in connection with the acquisition of

26   BindView and discovered software possibly belonging to Netbula in bv-CIS.

27           17.       BindView could not locate a license agreement from Netbula in

28   its records. On September 28, 2005, David Gayler of BindView sent an email to

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    Netbula with a subject line "need to purchase ASAP".

2        18.        On September 29, 2005, Don Yue emailed David Gayler a copy

3    of what it stated was its then-current license agreement template.

4        19.        David Gayler asked Don Yue on September 29, 2005 at 5:03 p.m.

5    CST in an email, to check and see if he had any records under a company named

6    Netect.

7        20.        On September 29, 2005 at 6:23 p.m. PST, Mr. Yue responded by

8    email, which stated, "I found it in our customer database. It was purchased in July

9    1998. One limited client distribution license for Windows NT/95 and one ONC

10   RPC developer license for NT/95. But I couldn't find other details."

11       21.        On October 2, 2005, Symantec and BindView signed a merger

12   agreement, and BindView also provided Symantec with a disclosure letter, an

13   excerpt of which is attached as Ex. B, BV00691 to Declaration of Vonnah Brillet.

14       22.        On October 3, 2005, Mr. Yue sent an email to Mr. Gayler stating

15   that he noticed Symantec was buying BindView, and asking for a royalty report "on

16   the Netbula RPC usage ASAP."

17       23.        The parties engaged in ongoing correspondence for several weeks

18   regarding a royalty report from BindView, copies of which have been submitted

19   with declarations in this action.

20       24.        On October 10, 2005, Yue sent a letter to Pulaski, asking

21   BindView to provide a royalty report with the following information: (1) date of

22   deployment; (2) platform type; (3) Netbula RPC runtime usage type; and (4) the

23   number of machines onto which Netbula RPC runtime component was copied.

24       25.        On about October 11, 2005, Mr. Yue mailed a copyright

25   application for PowerRPC and a check for the $30 application fee to the Copyright

26   Office.

27       26.        On October 13, 2005, Yue sent a letter to Pulaski stating "we

28   have the following concerns with royalty reports" and listing several, including

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

JOINT STATEMENT OF UNDISPUTED
FACTS                                    -4-                    C-06-0711-MJJ-WDB

1    "[w]hether a sale was made for multiple or even unlimited licenses." Yue wrote that

2    "Netbula RPC license are counted by the number of machines". Yue asked

3    BindView to provide additional information.

4        27.      On or about October 15, 2005, Mr. Margolis telephoned Yue

5    again and informed Yue that BindView would provide a report before the October

6    29, 2005 deadline set by Netbula. On October 18, 2005, Yue sent Mr. Margolis

7    another email. Yue stated that he presumed that the relevant BindView product was

8    "bv-Control."

9        28.      On October 17, 2005, BindView filed a preliminary proxy

10   statement with the SEC, a copy of which is attached to as Exhibit 19 to the

11   Declaration of Eric Pulaski.

12       29.      Netbula has been granted a copyright TX6-211-063 bearing an

13   effective date of registration of October 18, 2005 for the 1996 version of software

14   with the Copyright Title of Netbula Power RPC.

15       30.      On October 25, 2005, Jeff Margolis of BindView sent an email to

16   Mr. Yue containing the following chart:

| | 2005 (1H) | 2004 | 2003 | 2,002 | 2001 | 2000 | 1999 |
|---|---|---|---|---|---|---|---|
| Units | 70 | 240 | 145 | 123 | 107 | 437 | 559 |
| Total 1999 - 2005 (1H) | 1,881 | | | | | | |
| July 1998 Purchase | 1,000 | | | | | | |
| Net | 681 | | | | | | |

BindView advised Plaintiff that it would need approximately 680 additional licenses

to accommodate any overrun beyond the 1,000 Plaintiff believed were originally

purchased, and that BindView would be willing to simply buy another thousand-pack.

25       31.      On the same day, Mr. Yue sent an email to Margolis objecting

26   that the chart that had been sent did not reflect "site licenses." Mr. Yue threatened

27   to file a lawsuit against BindView unless Netbula received the requested information

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

JOINT STATEMENT OF UNDISPUTED FACTS     -5-     C-06-0711-MJJ-WDB

by October 29, 2005. Yue further indicated that Symantec should be notified about the situation, since it was acquiring BindView's intellectual property.

32.    On the afternoon of October 26, 2005, D.C. Toedt, BindView's general counsel, sent an email to Yue written in numbered paragraphs. In paragraph 5, Mr. Toedt stated: "Even erring much on the side of generosity, our rough estimate is that Netbula's monetary recovery would amount, to about $24,000." In paragraph 6, Mr. Toedt wrote: "Please confirm which way Netbula wants to proceed with this matter – as a litigation matter, or on a business basis as described above. If the latter, BindView will provide you with the information you requested, to the extent practicable, once we have put an NDA in place." In paragraph 7, Mr. Toedt wrote: "we hope you were not hinting that Netbula might try to tortiously interfere with the merger agreement."

33.    On November 1, 2005, Mr. Yue sent an e-mail to Michael Painter with the law firm Isaacman, Kaufman & Painter with a copy to Wolinsky Becker & Hurewitz, LLP, a Texas royalty consulting. Mr. Yue wrote, "This involves infringement of Netbula RPC software by a Texas company named BindView" asking how soon a lawsuit can be filed against BindView. Michael Painter replied on that day he needed more information.

34.    On November 2, 2005 Mr. Yue emailed Mr. Painter again regarding copyright registration and Mr. Painter responded.

35.    Chuck Hurewitz of Wolinsky Becker & Hurewitz noted in an email on November 2, 2005 e-mail stated that "The initial matter which you referred to us related to a Colorado company," and that BindView was a different matter.

36.    On November 2, 2005, Mr. Yue sent a letter to Eric Pulaski, BindView's CEO, with a copy addressed to John Thompson, CEO of Symantec,

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    stating that Netbula had concluded that BindView's October 25, 2005 report was

2    untrue and that BindView had issued site licenses that were not identified in the

3    report.

4         37.        On November 3, 2005, BindView filed its quarterly report with

5    the SEC.

6         38.        On November 7, 2005, Mr. Pulaski telephoned Mr. Yue at

7    Netbula.   D.C. Toedt claims he was with Pulaski and claims that he took notes of

8    the telephone conversation. Toedt claims his notes were one and one-half pages.

9    These notes state, among other things, (1) Pulaski told Yue: "We want to reach a

10   reasonable solution – pay the full amount we owed you"; (2) on the issue of site

11   licenses:  Mr. Toedt's notes read:  "Eric summary:  We'll check on site licenses -

12   work out some kind of average # of admins"; (3) on pricing:  Toedt's notes read

13   "99- $50 for runtime license", "prepay – different price"; (4) on evaluation

14   downloads:  "Evals: that's a lot harder" "We'll see what we can do w/ download

15   reports."  During the November 7 call, Mr. Pulaski did not agree that downloaded

16   evaluation copies should be counted in determining a settlement amount.

17        39.        After the November 7, 2005 call, Mr. Yue sent an email to M.

18   Toedt in which he stated: "Dear Neil,

19        "Eric Pulaski, CEO of BindView called me and we talked for about 45 minutes

20   on the phone. Eric said he would address the questions we raised, including site licenses,

21   free downloads, give aways, developer licenses (the product development have been

22   moved from places to places, now it's in India), and would provide supporting data for

23   the number of copies. I took the definition of copy as moving the copyrighted material

24   from permanent storage to computer memory. Eric told me that it was Symantec

25   discovered the PowerRPC license issue by running some audit software. Eric admitted

26   that programmers must have known about the use of PowerRPC, but the info never got

27   propagated to management. Mr. Margolis told me before that bv-Admin was selling

28   better than bv-Control (which we found to be untrue), Eric corrected that. Netbula is

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    extremely distrurbed by the fact that there was a way for people to get a copy of a fully

2    functional pwrpc32.dll runtime library off the web. As we discussed, there are two

3    approaches to resolve this dispute. One is for BindView to provide a complete, accurate

4    and verifiable usage report, then we move to a phase of computing fees and interests. In

5    my first two letters to BindView, I was talking about the first approach. The other way is

6    to go through the Court. Netbula won't sleep on its rights. If we will have to fight

7    Symantec as Eric indicated to me, we will make the charge. In fact, Netbula is dealing

8    with a multi-billion dollar company on very similar issues -- but they are far more

9    cooperative -- they provide order line item info without any hassle. I will be out of town

10   for a couple of days. Mr. Toedt, please let Eric know in case he wants to contact me

11   directly. I have Neil briefed on the newest development, and BindView can contact Neil

12   on the case matter. Regards, Don."

13          40.      On November 8, 2005, BindView filed a definitive proxy

14   statement with the SEC attaching the merger agreement but not the disclosure

15   schedules. A copy of the Definitive Proxy is attached as Exhibit 20 to the

16   Declaration of Eric Pulaski.

17          41.      On November 9, 2007, the copyright office received a request

18   dated November 7, 2005 from Netbula's counsel at Sheppard Mullins in

19   Washington D.C. to expedite the prior filed copyright application because "the

20   registration certificate is now urgently needed in connection with a copyright

21   infringement action against Bindview Corp. to be filed in the USDC for ND Cal."

22          42.      On November 11, 2005, Toedt sent an email to Yue, stating that

23   (1) BindView compiled a list of downloads; and (2) BindView was pulling together

24   site license information. Toedt indicated that BindView hoped to be able to provide

25   a reasonably complete report the next week.

26          43.      In a November 12, 2005 email to various BindView

27   representatives, Mr. Yue expressed a "renewed hope that we can resolve this dispute

28   in a fair and good faithed [sic] manner without going to Court."

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

44.     On November 15, 2005, Mr. Yue e-mailed Mr. Hurewitz stating, "Due to the uncertainty of jurisdiction with your firm and the urgency with the case, we found another law firm in San Francisco to handle the case, which can file suit in the Northern District, where Netbula is."

45.     On November 17, 2005, Mr. Yue wrote to Mr. Pulaski that "Netbula certainly hope [sic] that Symantec will continue to use PowerRPC." On November 18, 2005, Mr. Pulaski advised Mr. Yue that BindView was in the process of removing the call to Netbula's PowerRPC library from its bv-CIS product because it had not been able to resolve the royalty issue with Netbula. Pulaski Dec. ¶ 26, Ex. 11. Mr. Yue wrote back the same day, expressing his anticipation of the royalty report and stating that: "Once we have the report, it will be a major step towards resolving the license issue with PowerRPC."

46.     On November 21, 2005, D.C. Toedt emailed Mr. Yue a summary of HackerShield/bv-CIS licenses granted by BindView and supporting details. The report indicated 54 site licenses were issued, with 1627 non-site licenses. The email also attached a list of downloads from December 2000 to August 2005.

47.     Mr. Yue responded the same day by email stating:
"D.C. and Eric,

Thanks for the report. We now see where the 1681 came from. I looked at the download records, it did not show anything prior to Dec 2000. Do you have any records on that? ( see http://www.nmrc.org/pub/advise/19990910.txt ) As for the site licenses, we need to assess the number of copies. My suggestion is to take the numbers of employees of the customer companies and divide it by a factor of 12. Eric's assistant just called and set up a call at 2:00PM central time Nov 23, 2005. Regards, Don"
BindView did not accept Mr. Yue's suggestion.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

48.     On November 23, 2005, Mr. Yue telephoned Mr. Hurewitz, the royalty consultant, and allegedly consulted him regarding interest rates on royalty payments.  The consultant billed Netbula $81.25 for this call.

49.     Also on November 23, Mr. Yue telephoned Mr. Pulaski.  Toedt claims he took notes during the November 23, 2005 conference call, and claims those notes for the call were one page in length.  Mr. Pulaski said BindView should not have to pay royalties for downloads and evaluation copies and Mr. Yue disagreed.

50.     During the November 23rd phone call, Mr. Pulaski offered to settle the parties' dispute for $50,000, and told Mr. Yue to "take the money and run" or he would end up in court with Symantec for years.  Mr. Yue did not accept that offer, and the parties concluded that further direct talk would not be productive.

51.     Following the November 23rd conversation, Mr. Yue sent another email to Mr. Toedt purporting to summarize his conversation with Mr. Pulaski.  Mr. Toedt responded, and added, "This email isn't intended as a complete factual response to your summary of your conversation with Eric."  Mr. Yue sent an email in response to Mr. Toedt's email on November 24, 2005.  A true and accurate copy of this email exchange is attached to the Declaration of Vonnah Brillet at NB0001014-16.

52.     Mr. Yue wrote on November 25, 2005 that he believed that Bindview's first report on October 25, 2005 "was an act, expression, omission and concealment calculated to deceive Netbula" as to which he might "take actions base on relevant state laws."  Mr. Yue wrote further that "Netbula believes that it is no longer appropriate for Netbula's counsel to discuss the matter directly with anyone who are stake holders or officers of BindView.

53.     Mr. Pulaski sent an email to Mr. Yue on November 26, 2005, to

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   which Mr. Yue responded on November 28, 2005.  A true and accurate copy of

2   these communications is attached to the Declaration of Vonnah Brillet at Ex. A,

3   NB0001020, NB 1029-35.

4       54.      On January 6, 2006, Symantec acquired BindView through a

5   reverse triangular merger, by which Symantec created a wholly-owned corporation,

6   Buena Vista Acquisition Corp., to effect a reverse merger with BindView, leaving

7   BindView as the surviving company as a wholly owned subsidiary of Symantec.

8   The Plan of Merger specified that the Texas Business Corporations Act would

9   govern the effects of the merger. On January 6, 2006, Symantec announced the

10  completion of its merger with BindView.

11      55.      Mr. Pulaski is a lifelong resident of Houston, Texas.  He owns

12  property in Texas, is registered to vote there, and carries a Texas driver's license.

13      56.      Mr. Pulaski has never lived or worked in California.  He also (1)

14  has never had an address or phone number in California; (2) has never registered to

15  vote in California; (3) has never owned any real property in California; (4) has never

16  maintained a bank or other financial accounts in California; (5) has never been

17  employed by a California company; (6) has never had any offices in California; (7)

18  has never had any employees or agent for service of process in California; (8) has

19  never paid a California income tax; (9) has never maintained any bank or financial

20  accounts in California; (10) has never been licensed by a California governmental

21  agency; (11) has never been personally involved in any legal proceedings governed

22  by California law or within the state of California (besides the present action); and

23  (12) was not personally served in California with a copy of the summons and

24  complaint in this action.

25      57.      Mr. Pulaski's compensation, including salary, potential bonuses,

26  and options, was set by the Compensation Committee of BindView's Board of

27  Directors.  As of October 2005, Mr. Pulaski owned 18.6% of the total shares of

28  BindView.

JOINT STATEMENT OF UNDISPUTED
FACTS                                    -11-                    C-06-0711-MJJ-WDB

1    58.    Mr. Pulaski resigned from his positions with BindView as of the

2    date of the Symantec merger.  He was never an employee of Symantec.

3    59.    Mr. Pulaski served at all times as either Chairman of the Board of

4    Directors and/or Chief Executive Officer.  He did not program or develop either

5    HackerShield or bv-CIS.

6

7                                        Respectfully submitted,

     Dated:    August 8, 2007            FENWICK & WEST LLP
8

9
                                         By:_____/S/_____
10                                                   Jedediah Wakefield

11                                       Attorneys for Defendants
                                         BINDVIEW DEVELOPMENT CORPORATION,
12                                       SYMANTEC CORPORATION, and
                                         ERIC J. PULASKI
13

14

15

16   Dated:    August 8, 2007            LAW OFFICES OF VONNAH M. BRILLET

17

18                                       By:_____/S/_____
                                                     Vonnah M. Brillet
19
                                         Attorney for Plaintiff
20                                       NETBULA, LLC

21

22

23

24

25

26

27

28

     JOINT STATEMENT OF UNDISPUTED
     FACTS                              -12-                C-06-0711-MJJ-WDB

# EXHIBIT 7

PAGES 1 - 32

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE BERNARD ZIMMERMAN, MAGISTRATE JUDGE

NETBULA, LLC,                    )
                                 )
          PLAINTIFF,             )
                                 )
  VS.                            )          NO. C 06-7391 BZ
                                 )
STORAGE TECHNOLOGY               )
CORPORATION,                     )
                                 )
          DEFENDANT.             )
_____)

                          SAN FRANCISCO, CALIFORNIA
                          TUESDAY, DECEMBER 5, 2006

                    **TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

FOR PLAINTIFF:            LAW OFFICE OF
                         VONNAH M. BRILLET
                         2777 ALVARADO STREET
                         SUITE E
                         SAN LEANDRO, CA  94577
                    BY:  **VONNAH BRILLET, ESQ.**


FOR DEFENDANT:           FENWICK & WEST LLP
                         275 BATTERY STREET
                         SUITE 1500
                         SAN FRANCISCO, CA  94111
                    BY:  **JEDEDIAH WAKEFIELD, ESQ.**
                         **LAWRENCE PULGRUM, ESQ.**


REPORTED BY:             JAMES YEOMANS, CSR 4039, RPR
                         OFFICIAL REPORTER

             COMPUTERIZED TRANSCRIPTION BY ECLIPSE

1          **THE COURT:**  YOU SAID THERE WERE TWO.  IT'S NOT PART OF

2      YOUR CASE?

3          **MS. BRILLET:**  RIGHT.

4          **THE COURT:**  GO AHEAD.

5          **MS. BRILLET:**  IN THIS AGREEMENT, ACTUALLY, ON NUMBER

6      TWO, IT SAYS COPYRIGHT, YOU MUST TREAT THE SOFTWARE AS

7      COPYRIGHTED MATERIAL, AND IT TELLS THEM EXACTLY WHAT THE TERMS

8      ARE.

9          **THE COURT:**  OKAY.

10          **MS. BRILLET:**  AND IT GIVES THEM A PRICE FOR -- FOR UP

11      TO 1000 COPIES FOR $5,995 ON EXHIBIT C.

12          **THE COURT:**  NOW, THIS IS EXHIBIT C TO EXHIBIT A, THIS

13      IS NOT YOUR EXHIBIT C?

14          **MS. BRILLET:**  YES, EXHIBIT C IS ACTUALLY PART OF THE

15      AGREEMENT BETWEEN NETBULA AND STORAGE TECH.

16          **THE COURT:**  SO THE FIRST THOUSAND COPIES ARE FIFTY

17      NINE NINETY FIVE, SECOND NOW COPIES ARE LITTLE BIT LESS AND SO

18      ON?

19          **MS. BRILLET:**  WHAT HAPPENS, YOUR HONOR, HERE SAYS ONE

20      TIME FEE 5,595 FOR DISTRIBUTION, RIGHT TO DISTRIBUTE UP TO 1000

21      UNITS.

22          **THE COURT:**  CORRECT.

23          **MS. BRILLET:**  WE'RE SAYING THERE WAS NO ACTUAL

24      SUBSEQUENT AGREEMENT OTHER THAN THE 2004 WHERE THEY ACTUALLY

25      PURCHASED ANOTHER THOUSAND COPIES.

1          THE COURT:  WHERE IS THE EVIDENCE OF THAT?  WHERE IS

2     THAT INFORMATION IN THE RECORD?

3          MS. BRILLET:  THEY DON'T -- HERE'S THE THING.  WE ONLY

4     HAVE THE TWO AGREEMENTS.  THERE TWO AGREEMENTS FOR 1000 COPIES

5     EACH, SO WE'RE SAYING THEY ONLY HAVE LICENSES FOR 2000 COPIES.

6          THE COURT:  I DON'T QUITE UNDERSTAND YOU.  THIS

7     AGREEMENT SAYS THAT THEY CAN GO UP TO ANY NUMBER OF COPIES AS

8     LONG AS THEY'RE WILLING TO PAY.  YOU THINK -- YOUR CONSTRUING

9     THIS AS BEING AN AGREEMENT THAT'S LIMITED TO 1000 COPIES?

10          MS. BRILLET:  IN THE CONTRACT SAYS ONE TIME THE 5,595.

11          THE COURT:  WHERE ARE YOU READING FROM?

12          MS. BRILLET:  THIRD LINE DOWN ON --

13          THE COURT:  FROM WHICH DOCUMENT?

14          MS. BRILLET:  EXHIBIT C TO EXHIBIT A.

15          THE COURT:  ALL RIGHT.

16          MS. BRILLET:  WHICH IS THE AGREEMENT BETWEEN STORAGE

17     TECH, WHERE IT SAYS THE FIRST SENTENCE, THE THIRD LINE DOWN

18     SAYS, OF THE 5,995 FOR THE RIGHT TO DISTRIBUTE UP TO ONE

19     THOUSAND UNITS OF SOFTWARE CONTAINING THE SUPPORTING PROGRAMS

20     30 DAYS AFTER RECEIPT OF INVOICE VALID PURCHASE ORDER NUMBER.

21     THERE WERE ONLY TWO VALID PURCHASE ORDER NUMBERS.

22          THE COURT:  WHERE IS THAT INFORMATION?

23          MS. BRILLET:  THAT CAME WITH EXHIBIT B TO DON YUE'S

24     DECLARATION.

25          THE COURT:  THAT'S ONE.

# EXHIBIT 8

## NETBULA SOFTWARE LICENSE AGREEMENT

BY SIGNING BELOW, THE PARTIES INDICATE THEIR ACCEPTANCE OF THE FOLLOWING
AGREEMENT BETWEEN STORAGE TECHNOLOGY CORPORATION ("STORAGETEK") AND NETBULA LLC.
("NETBULA")

NETBULA ONC RPC SDK AND POWERRPC SDK PRODUCT LICENSE
The NETBULA ONC RPC SDK and PowerRPC SDK as further described on Exhibit A (the
SDK PRODUCT) is protected by copyright laws and international copyright
treaties, as well as other intellectual property laws and treaties.

1.    LICENSE

NETBULA grants STORAGETEK, a non-exclusive, perpetual, irrevocable license for
use by STORAGETEK's employees, consultants and subsidiaries for up to ONE
user(s), for each of the licenses purchased, to use the PowerRPC SDK Product
under Windows NT and 95/98 platforms; each user can only use the software on one
computer. You have the right to make additional copies of the SDK Product solely
for backup or archival use.

The license is not transferable without written permission of Nabula.  Such
permission will not be unreasonably withheld.

2.    Copyright  -

You must treat the software as copyrighted material. You may not copy and
redistribute the software except as permitted under this Agreement.

The SDK Product (including runtime DLLs and supporting programs) of the SDK
contains CODE that identify themselves as for development only and is not for
distribution/deployment except as permitted under this Agreement. TO DISTRIBUTE
THE SUPPORTING COMPONENTS (DLLs/Programs) TO ANY MACHINE OUTSIDE OF YOUR
ORGANIZATION, YOU MUST PURCHASE A DISTRIBUTION LICENSE FROM NETBULA.

3.    Other restrictions

a.    You may not disassemble, decompile or reverse engineer the software.
b.    You may not rent or lease the software.

4.    Limited SDK Warranty

If STORAGETEK reports in writing a software defect that prevents STORAGETEK from
using the SDK Product within  (30) days after STORAGETEK has paid for the
software, and NETBULA LLC, is unable to correct, repair or replace the SDK
Product within thirty (30) more days. , NETBULA LLC. will refund all
STORAGETEK's license fees fully.

NETBULA ONC RPC AND POWERRPC DISTRIBUTION LICENSE

NETBULA grants to STORAGETEK, a non-exclusive, perpetual, irrevocable license to
copy, sublicense, transfer and distribute the NETBULA RPC Supporting Programs
and components set forth on Exhibit B (the "Supporting Programs") along with
STORAGETEK's product to STORAGETEK's resellers and customers.

1.    Limited Distribution. You agree to maintain reasonable records of the
number of copies of the Supporting Programs distributed hereunder and to pay

1



NETBULA as set forth in Exhibit C for such copies. NETBULA may, with reasonable notice, and at times that do not interfere with STORAGETEK's business, request STORAGETEK to conduct an internal audit to count the number of copies distributed. However, Nebula may not request more than one audit in a twelve (12) month period.

3.    Limited Warranty. NETBULA warrants that the Supporting Programs will, for sixty (60) days, perform substantially in accordance with their published documentation and with generally accepted programming standards. NETBULA shall use its best efforts to correct any error or defect STORAGETEK reports in the Supporting Programs and re-deliver to STORAGETEK corrected versions as well as any other fixes or enhancements. If NETBULA is unable to correct, replace or repair the Supporting Programs, NETBULA will refund all license fees paid in full.

GENERAL TERMS

1.    Payment. You agree to pay NETBULA the amounts set forth in Exhibit C in full payment for the rights and licenses granted herein, thirty (30) days after receipt of an invoice referencing a valid purchase order number.

2.    Limitation of Liability. IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER FOR ANY SPECIAL, INCIDENTAL, INDIRECT, OR CONSEQUENTIAL DAMAGES WHATSOEVER, INCLUDING, BUT NOT LIMITED TO, ANY LOST PROFITS, LOST SAVINGS, LOST INFORMATION OR ANY OTHER LOSS ARISING OUT OF THE USE OR INABILITY TO USE (EXCEPT AS PROVIDED FOR BELOW, IN SECTION 4, INFRINGEMENT), THE SOFTWARE EVEN IF SUCH PARTY OR AN AUTHORIZED REPRESENTATIVE HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, OR FOR ANY CLAIM BY ANY OTHER PARTY.

3.    Year 2000 Warranty. NETBULA warrants that SDK Products and Supporting Programs ordered which have the capability to process, receive and/or render date data will maintain such capability when data includes dates involving the 20th and 21st centuries, i.e. SDK Products and Supporting Programs are Y2K compliant.

Your nonexclusive remedy for failure of SDK Products and Supporting Programs under this warranty shall be repair, replacement or refund, provided SDK Products and Supporting Programs are used in accordance with applicable documentation and are not dependent upon products which do not properly exchange date data with SDK Products and Supporting Programs.

4.    INDEMNITY. NETBULA will, at its expense, defend STORAGETEK against any claim that the SDK Product and Supporting Programs supplied hereunder or any part thereof (i) infringes a patent, copyright, trademark or similar proprietary right or (ii) constitutes a misuse or misappropriation of a trade secret, and NETBULA will indemnify STORAGETEK against all costs, damages and attorneys' fees finally awarded, whether by judgment, settlement, or otherwise. STORAGETEK agrees to give NETBULA prompt written notice of any such claim. NETBULA agrees that in the event of any claim of infringement, or in NETBULA's judgment such a claim is likely to occur, NETBULA will procure the right for STORAGETEK to continue using the SDK Product and Supporting Programs or NETBULA will replace or modify the SDK Product and Supporting Programs so that they perform the same but becomes non-infringing. If none of the foregoing options are available on terms which are reasonable in NETBULA's judgment, upon written request STORAGETEK will return the SDK Product and Supporting Programs to NETBULA, and STORAGETEK will receive a refund of the license fee paid. NETBULA shall have no

2

NB-0000847

obligation with respect to any such claim based upon STORAGETEK's unauthorized
modification of the SDK Product and Supporting Programs.

5.    PUBLIC RELEASE OF INFORMATION

NETBULA must have the prior written approval of STORAGETEK's authorized
purchasing agent prior to use or publication of STORAGETEK's company name, logo
or trademarks even on customer lists in promotion of NETBULA's business,
services or products.

6.    Scope of Tech Support for the SDK Products and Supporting Programs include
the following:

Problems and questions related to the installation, setup and usage (options,
environment settings) of the NETBULA SDK Products and Supporting Programs.

Problems and questions related to the usage of the R SDK Products and Supporting
Programs.

General consultation on SDK Products and Supporting Programs.

Bug reports and fixes.

Additional Conditions & Exclusions

NETBULA will provide pseudo-code type of code for illustration, but can not
write complete programs or functions for the customer.

Support is for SDK Products and Supporting Programs on the specific platforms
only, and not for other NETBULA or third party products unless licenses and
support fees have been paid for.

The support contract is for one year from receipt of SDK Product in duration,
but may be extended for one year periods by STORAGETEK. Such annual support
renewal fees will not increase more than three percent (3%) over the previous
year's fees on an annual basis.

Normal response time is <1 hour to 3 business days, depending on the complexity
of the problem.

Method of Tech Support

E-mail.  Due to the nature of the RPC product, most technical questions require
some investigation by both the customer developer and the support staff. E-mail
support is the preferred method of solving problems. By formulating the problems
clearly in e-mail messages with detailed information, such as source code
segments, error messages, system settings, etc, both the customer and the
support staff can find solutions and identify problems more efficiently.

Phone.  Phone support is available on request, and should be limited to issues
related to installation and setup, for which the support staff can provide "off-
the-shelf" solutions and instructions, or in a case where e-mail communication
is inadequate. When phone support is required, please email the support staff
and request for a phone number. The support staff on duty will answer the call
or call the customer back.

NETBULA will provide a FAQ list that has been compiled from our NETBULA's
customers, which will answer commonly asked questions.

3

NB-0000848

MAR. 2.2000  4:58PM    STK PURCHASE CONFIDENTIAL              NO.390   P.5/8

NETBULA Tech Support

Support@netbula.com

http://www.netbula.com/

NETBULA LLC.
P. O. Box 99335
Emeryville, CA 94602

7.    Governing Law. THIS AGREEMENT WILL BE GOVERNED BY THE LAWS OF THE STATE OF
CALIFORNIA, as those laws are applied to contracts entered into and to be
performed entirely in California by California residents and without regard to
conflicts of laws principles.

8.    General. The parties hereto are independent contractors and no employment,
agency, or joint venture is created hereunder. All notices, requests and other
communications under this Agreement must be in writing, and may be sent via e-
mail or facsimile or delivered by hand to the party to whom such notice is
required or permitted to be given. This Agreement may not be assigned by either
party or amended without the written consent of both parties, which shall not be
unreasonably withheld. Any purported assignment or amendment in derogation of
the foregoing shall be void. If any provision of this Agreement is held by a
court of competent jurisdiction to be unenforceable for any reason, the
remaining provisions hereof shall be unaffected and remain in full force and
effect. This Agreement is the final, complete and exclusive agreement between
the parties relating to the subject matter hereof, and supersedes all prior or
contemporaneous understandings and agreements relating to such subject matter,
whether oral or written. Any termination of this Agreement will not affect any
sublicenses granted by STORAGETEK to their customers, such licenses will remain
in full force and effect.

Each signatory by its execution of this Agreement represents that it has
appropriate corporate authority to enter into this Agreement.

ACCEPTED AND AGREED,

STORAGETEK                          NETBULA:
By: _Mike Melnick_                  By: _____

Print Name: _Mike Melnck_           Print Name: _____

Title: _Sch Contract Admin_         Title: _____

Date: _3/1/00_                      Date: _____

4

EXHIBIT A

NETBULA ONC RPC SDK AND POWERRPC SDK
PRODUCT DESCRIPTION

ONC RPC SDK CONTAINS

* Rpcgen.exe      the rpcgen IDL compiler which compile *.x files to RPC stubs
* Portmap.exe     portmapper for Win32
* Pmapsvc.exe     portmapper service for Windows NT
* Rpcinfo.exe     program that displays registered RPC services
* Pwrpc32.dll     runtime library for NETBULA ONC RPC
* C header files and import library

PowerRPC SDK (WIN32 Version) CONTAINS

* PowerRPC.exe                     the PowerRPC IDL compiler
* Pwrpc32.lib and pwrpc32.dll      the runtime library for PowerRPC
* Portmap.exe and Pmapsvc.exe
* Rpcinfo.exe
* C header files
* Samples programs

5

NB-0000850

EXHIBIT B

NETBULA COMPONENTS PERMITTED TO BE DISTRIBUTED

One or more of the following components are distributed along with NETBULA ONC RPC applications.

* Pwrpc32.dll            The runtime library for NETBULA ONC RPC
* Portmap.exe            The portmapper program for Win32
* Pmapsvc.exe            The portmapper service for Windows NT

6

NB-0000851

## EXHIBIT C

### PAYMENT

STORAGETEK shall pay NETBULA a one-time fee of $895 per license for all rights granted under this Agreement with respect to the SDK Product, and one-time fee of $5,995 for the right to distribute up to 1000_ units of software containing the Supporting Programs, thirty (30) days after receipt of an invoice referencing a valid purchase order number. NETBULA agrees that future SDK license purchases will be at a mutually agreed to price. NETBULA agrees to offer STORAGETEK additional units of Supporting Program licenses for the limited distribution license, at the cumulative license purchased prices as provided listed below. Pricing is based on cumulative purchases, not single purchase events. Additional licenses purchased are subject to the terms and conditions of this Agreement.

List Price is $5995 per 1000.

| Quantity | Discount | Net Price |
|----------|----------|-----------|
| 1-1000 | 0% | $5995 |
| 1001-2000 | 15% | $5096 |
| 2001-3000 | 25% | $4796 |
| 3001 and above | 25% | $4796 |

7

NB-0000852

# EXHIBIT 9

3036734945        storage tech                              11 50 23 a m    03-17-2004        2/11

2004-3-12 12:51 FROM Fax Netbula LLC TO  1 303 673-4945   PAGE 002 OF 009

## NETBULA SOFTWARE LICENSE AGREEMENT

BY SIGNING BELOW, THE PARTIES INDICATE THEIR ACCEPTANCE OF THE FOLLOWING AGREEMENT BETWEEN Storage Technology Corporation("STORAGETEK ") having a principal place of business at One StorageTek Drive, Louisville Colorado 80028, AND NETBULA LLC. ("NETBULA")

NETBULA ONC RPC SDK AND POWERRPC SDK PRODUCT LICENSE
The NETBULA ONC RPC SDK and PowerRPC SDK as further described on Exhibit A (the SDK PRODUCT) is protected by copyright laws and international copyright treaties, as well as other intellectual property laws and treaties.

1.    LICENSE

NETBULA grants STORAGETEK, a non-exclusive, perpetual, worldwide, irrevocable license, for use by STORAGETEK's employees, consultants and subsidiaries for up to ONE user(s) for each of the licenses purchased, to use, copy, display and prepare derivative works of the ONC RPC or PowerRPC SDK Product under Windows Server 2003, NT/2K/XP and 95/98/ME platforms; each user can only use the software on one computer. The license is not transferable without written permission of Nebula. Such permission will not be unreasonably withheld. You are granted the rights to make copies of the Product for backup or archival purposes only.

2.    Copyright

You must treat the software as copyrighted material. You may not copy and redistribute the software except as permitted under this Agreement.

The SDK Product (including runtime DLLs and supporting programs) of the SDK contains CODE that identify themselves as for development only and is not for distribution/deployment except as permitted under this Agreement. TO DISTRIBUTE THE SUPPORTING COMPONENTS (DLLs/Programs) TO ANY MACHINE OUTSIDE OF YOUR DEVELOPMENT ENVIRONMENT OR YOUR ORGANIZATION, YOU MUST PURCHASE A DISTRIBUTION LICENSE FROM NETBULA.

3.    Other restrictions

a.    You may not disassemble, decompile or reverse engineer the software.
b.    You may not rent or lease the software.

4.    Limited SDK Warranty

NETBULA warrants that the SDK Product will perform in accordance with its documentation. If STORAGETEK reports in writing a software defect that prevents STORAGETEK from using the SDK Product in accordance with its documentation within ninety (90) days after STORAGETEK has paid for the software, and NETBULA is unable to correct, repair or replace the SDK Product within thirty (30) more days. , NETBULA will refund all STORAGETEK's license fees fully, and support and distribution fees on a pro-rated basis.

NETBULA ONC RPC AND POWERRPC DISTRIBUTION LICENSE



EXHIBIT
3

CONFIDENTIAL

3036734945          storage tech                    11 50 51 a m    03-17-2004    3/11

2004-3-12 12:51 FROM Fax Netbula LLC TO 1 303 673-4945 PAGE 003 OF 009

NETBULA grants to STORAGETEK, a non-exclusive, perpetual, worldwide, irrevocable license to copy, sublicense, transfer, demonstrate and distribute the NETBULA RPC Supporting Programs and components (including, but not limited to, all documentation and supporting materials therefor) set forth on Exhibit B (the "Supporting Programs") along with STORAGETEK's product to STORAGETEK's resellers, business partners and customers.

1.      Limited Distribution. You agree to maintain reasonable records of the number of copies of the Supporting Programs distributed hereunder and to pay NETBULA as set forth in Exhibit C for such copies. NETBULA may, with reasonable notice, and at times that do not interfere with STORAGETEK's business, request STORAGETEK to conduct an internal audit to count the number of copies distributed. However, Nebula may not request more than one audit in a twelve (12) month period.

2.      Limited Warranty. NETBULA warrants that the Supporting Programs will, for ninety (90) days following distribution or sublicense thereof, perform substantially in accordance with their published documentation and with generally accepted programming standards. NETBULA shall use its best efforts to correct any error or defect STORAGETEK reports in the Supporting Programs and re-deliver to STORAGETEK corrected versions as well as any other fixes or enhancements. If NETBULA is unable to correct, replace or repair the Supporting Programs, NETBULA will refund all license fees paid in full, and support and distribution fees on a pro-rated basis.

3. Source code escrow

NETBULA uses a third party agent to provide source code escrow. To become a beneficiary of the escrow, STORAGETEK must sign a separate Escrow Agreement. The terms of the escrow such as release conditions will be defined in the Escrow Agreement among the Escrow Agent, NETBULA and STORAGETEK. STORAGETEK must also pay for all cost for setting up STORAGETEK as a beneficiary, and must pay for the annual maintenance fee to maintain its beneficiary status.

GENERAL TERMS

1.      Payment. You agree to pay NETBULA the amounts set forth in Exhibit C in full payment for the rights and licenses granted herein, thirty (30) days after receipt of an invoice referencing a valid purchase order number.

2.      Limitation of Liability. IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER FOR ANY SPECIAL, INCIDENTAL, INDIRECT, OR CONSEQUENTIAL DAMAGES WHATSOEVER, INCLUDING, BUT NOT LIMITED TO, ANY LOST PROFITS, LOST SAVINGS, LOST INFORMATION OR ANY OTHER LOSS ARISING OUT OF THE USE OR INABILITY TO USE (EXCEPT AS PROVIDED FOR BELOW, IN SECTION 4, INFRINGEMENT), THE SOFTWARE EVEN IF SUCH PARTY OR AN AUTHORIZED REPRESENTATIVE HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, OR FOR ANY CLAIM BY ANY OTHER PARTY.

3.      Year 2000/ Virus Warranty. NETBULA warrants that SDK Products and Supporting Programs ordered which have the capability to process, receive and/or render date data will maintain such capability when data includes dates involving the 20th and 21st centuries, i.e. SDK Products and Supporting Programs are Y2K complaint.

Your nonexclusive remedy for failure of SDK Products and Supporting Programs under this warranty shall be repair, replacement or refund, provided SDK Products and Supporting Programs are used in accordance

2

3036734945    storage tech                                       11 51.24 a m    03-17-2004    4/11

2004-3-12 12:51 FROM Fax Kensa LLC TO  1 303 673-4945  PAGE 004 OF 009

with applicable documentation and are not dependent upon products which do not properly exchange date data with SDK Products and Supporting Programs.

NETBULA warrants that SDK Products and Supporting Programs shall be virus-free.

4.    INDEMNITY.  NETBULA will, at its expense, defend STORAGETEK and its successors and assigns against any claim that the SDK Product and Supporting Programs supplied hereunder or any part thereof (i) infringes a patent, copyright, trademark or similar proprietary right or (ii) constitutes a misuse or misappropriation of a trade secret, and NETBULA will indemnify STORAGETEK against all costs, damages and attorneys' fees incurred, whether by judgment, settlement, or otherwise.  STORAGETEK agrees to give NETBULA prompt written notice of any such claim. NETBULA agrees that in the event of any claim of infringement, or in NETBULA's judgement such a claim is likely to occur, NETBULA will procure the right for STORAGETEK to continue using the SDK Product and Supporting Programs or NETBULA will replace or modify the SDK Product and Supporting Programs so that they perform the same but becomes non-infringing.  If none of the foregoing options are available on terms which are reasonable in NETBULA's judgment, upon written request STORAGETEK will return the SDK Product and Supporting Programs to NETBULA, and STORAGETEK will receive a full refund of the license fee, and support and distribution fees on a pro-rated basis paid.  NETBULA shall have no obligation with respect to any such claim based upon STORAGETEK's unauthorized modification of the SDK Product and Supporting Programs.

5.    Scope of Tech Support for the SDK Products and Supporting Programs include the following:

Problems and questions related to the installation, setup and usage (options, environment settings) of the NETBULA SDK Products and Supporting Programs.

Problems and questions related to the usage of the SDK Products and Supporting Programs.

General consultation on SDK Products and Supporting Programs.

Bug reports and fixes.

Additional Conditions & Exclusions

NETBULA will provide pseudo-code type of code for illustration, but can not write complete programs or functions for the customer.

Support is for SDK Products and Supporting Programs on the specific platforms only, and not for other NETBULA or third party products unless licenses and support fees have been paid for.

The support contract is for one year from receipt of SDK Product in duration, but may be extended for one year periods by STORAGETEK. Such annual support renewal fees will not increase more than three percent (3%) over the previous year's fees on an annual basis.

Normal response time is <1 hour to 3 business days, depending on the severity of the problem. NETBULA will provide its documented escalation procedures to STORAGETEK in the case wherein normal responses are not adequate.

Method of Tech Support

3

CONFIDENTIAL

E-mail. Due to the nature of the RPC product, most technical questions require some investigation by both the customer developer and the support staff. E-mail support is the preferred method of solving problems. By formulating the problems clearly in e-mail messages with detailed information, such as source code segments, error messages, system settings, etc, both the customer and the support staff can find solutions and identify problems more efficiently.

Phone. Phone support is available on request, and should be limited to issues related to installation and setup, for which the support staff can provide "off-the-shelf" solutions and instructions, or in a case where e-mail communication is inadequate. When phone support is required, please email the support staff and request for a phone number. The support staff on duty will answer the call or call the customer back.

NETBULA will provide a FAQ list that has been compiled from our NETBULA's customers, which will answer commonly asked questions.
NETBULA Tech Support

Support@netbula.com

http://www.netbula.com/

NETBULA LLC.
P. O. Box 99335
Emeryville, CA 94662

7.      Governing Law/Arbitration. THIS AGREEMENT WILL BE GOVERNED BY THE LAWS OF THE STATE OF CALIFORNIA, as those laws are applied to contracts entered into and to be performed entirely in California by California residents and without regard to conflicts of laws principles. All disputes involving this Agreement, except actions arising under the patent and copyright provisions of the U.S. Code, shall be submitted to a panel of three (3) arbitrators appointed and operating under the Uniform Arbitration Act and the procedural rules of the American Arbitration Association. Such panel shall include only persons with experience in the area of information technology or computer software licensing, installation and implementation. Each party shall choose one (1) arbitrator, and the third (3rd) arbitrator shall be chosen by the two (2) arbitrators thus selected by the parties. The location of the arbitration hearing will be chosen by the party not initiating the arbitration or action.

8.      General. The parties hereto are independent contractors and no employment, agency, or joint venture is created hereunder. All notices, requests and other communications under this Agreement must be in writing, and may be sent via e-mail or facsimile or delivered by hand to the party to whom such notice is required or permitted to be given. This Agreement may not be assigned by either party or amended without the written consent of both parties, which shall not be unreasonably withheld. Any purported assignment or amendment in derogation of the foregoing shall be void. If any provision of this Agreement is held by a court of competent jurisdiction to be unenforceable for any reason, the remaining provisions hereof shall be unaffected and remain in full force and effect. This Agreement is the final, complete and exclusive agreement between the parties relating to the subject matter hereof, and supersedes all prior or contemporaneous understandings and agreements relating to such subject matter, whether oral or written. Any termination of this Agreement will not affect any sublicenses granted by STORAGETEK to their customers, such licenses will remain in full force and effect.

4

9.    Public Release of Information. NETBULA must have the prior written approval of
      STORAGETEK's authorized purchasing agent prior to use or publication of StorageTek's
      company name, logo or trademarks in promotion of NETBULA's business, services or products.

Each signatory by its execution of this Agreement represents that it has appropriate corporate authority to
enter into this Agreement.

ACCEPTED AND AGREED,

STORAGETEK                                          NETBULA:
By: _____                         By: _____
Print Name: _____Mike Melnick____                   Print Name:_____DON YUE____
Title: _Contract Admin & Consultant_                Title: _VP SALES_
Date: _3/17/04_                                      Date: _2004/03/12_

5

NB-0000929

3036734945          storage tech                                11 53 11 a.m.    03-17-2004      7/11

2004-3-12 12:51 FROM Fox Nebula LLC TO  1 303 673-4945  PAGE 007 OF 009

EXHIBIT A

NETBULA ONC RPC SDK AND POWERRPC SDK
PRODUCT DESCRIPTION

ONC RPC SDK CONTAINS

* Rpcgen.exe    the rpcgen IDL compiler which compile *.x files to RPC stubs
* Portmap.exe    portmapper for Win32
* Pmapsvc.exe   portmapper service for Windows NT
* Rpcinfo.exe    program that displays registered RPC services
* Pwrpc32.dll    runtime library for NETBULA ONC RPC
* C header files and import library

PowerRPC SDK (WIN32 Version) CONTAINS

* PowerRPC.exe                        the PowerRPC IDL compiler
* Pwrpc32.lib and pwrpc32.dll          the runtime library for PowerRPC
* Portmap.exe and Pmapsvc.exe
* Rpcinfo.exe
* C header files
* Samples programs

6

2004-3-12 12:51 FROM: Fax Netbula LLC TO  1 303 673-4945  PAGE-008 OF 009

EXHIBIT B

**NETBULA COMPONENTS PERMITTED TO BE DISTRIBUTED**

One or more of the following components are distributed along with NETBULA ONC RPC applications.

* Pwrpc32.dll          The runtime library for NETBULA ONC RPC
* Portmap.exe          The portmapper program for Win32
* Pmapsvc.exe          The portmapper service for Windows NT

7

3036734945    storage tech                                    11 53.35 a.m.    03-17-2004        9/11

2004-3-12 12:51 FROM Fax Netbula LLC TO: 1 303 673-4945  PAGE 009 OF 006

## EXHIBIT C

## PAYMENT

STORAGETEK shall pay NETBULA a one-time fee of $ 895 per developer license for all rights granted under this Agreement with respect to the NETBULA ONC RPC SDK Product, a one-time fee of $5,096 for the right to distribute up to 1000 units of ONC RPC client/server runtime license, thirty (30) days after receipt of an invoice referencing a valid purchase order number. A unit of ONC RPC client runtime license shall be defined as the right to install NETBULA ONC RPC runtime library on up to 1 client machine at the end-user site. A unit of ONC RPC server runtime license shall be defined as the right to install NETBULA ONC RPC runtime library on up to 1 server machine at the end-user site. Additional licenses purchased are subject to the terms and conditions of this Agreement.

Limited distribution licenses will be priced as follows:

| Quantity | Discount | Net price |
|----------|----------|-----------|
| 1000 | 0% | $5,995 |
| 1001-2000 | 15% | $5,096 |
| 2001+ | 25% | $4,496 |

Prices will be based on cumulative purchases and not single purchase events.

## PAYMENT – SUPPORT & MAINTENANCE

This Support Contract shall be for one (1) year from shipment of SDK Products and Supporting Programs from NETBULA to STORAGETEK. This Support Contract will automatically be extended and renewed for additional terms of one year unless STORAGETEK provides written notice to NETBULA, of its intention not to renew support, within thirty (30) days of support's expiration date. Support & Maintenance payment will be 20% of SDK and Product/Supporting Programs license purchase price, and shall be first due at the time of license purchase, and one year thereafter if STORAGETEK so chooses to continue Support & Maintenance on such licenses.

8