LAURENCE F. PULGRAM (CSB NO. 115163)
*lpulgram@fenwick.com*
JEDEDIAH WAKEFIELD (CSB NO. 178058)
*jwakefield@fenwick.com*
ALBERT L. SIEBER (CSB NO. 233482)
*asieber@fenwick.com*
LIWEN A. MAH (CSB NO. 239033)
*lmah@fenwick.com*
FENWICK & WEST LLP
555 California Street, Suite 1200
San Francisco, CA  94104
Telephone: (415) 875-2300
Facsimile:  (415) 281-1350

Attorneys for STORAGE TECHNOLOGY CORPORATION,
SUN MICROSYSTEMS, INC., EMC CORPORATION, and
DARDEN RESTAURANTS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NETBULA, LLC, a Delaware limited liability company,<br><br>    Plaintiff,<br><br>  v.<br><br>BINDVIEW DEVELOPMENT CORPORATION SYMANTEC CORPORATION, et al.,<br><br>    Defendants. | Case Nos.  C-06-0711-MJJ-WDB,<br>        C-06-07391-MJJ<br><br>**CONSOLIDATED OPPOSITION TO PLAINTIFF NETBULA, LLC'S MOTIONS TO SUBSTITUTE PARTIES AND FOR WITHDRAWAL OF COUNSEL, AND TO NON-PARTY DONGXIAO YUE'S MOTION TO INTERVENE AND ENFORCE PROTECTIVE ORDER** |
| NETBULA, LLC, a Delaware limited liability company,<br><br>    Plaintiff,<br><br>  v.<br><br>STORAGE TECHNOLOGY CORPORATION, SUN MICROSYSTEMS, INC., et al.,<br><br>    Defendants. | Date:    November 20, 2007<br>Time:    9:30 a.m.<br>Dept:    Courtroom 11<br>Judge:    The Honorable Martin J. Jenkins |
| AND RELATED COUNTERCLAIMS. | |

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

OPPOSITION TO MOTIONS TO SUBSTITUTE,
FOR WITHDRAWAL, INTERVENTION, AND
ENFORCE

CASE NOS.  C-06-0711-MJJ-WDB,
C-06-07391-MJJ

1

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF CONTENTS

**Page**

ISSUES PRESENTED ........................................................................................................... 1

INTRODUCTION ................................................................................................................. 1

STATEMENT OF FACTS .................................................................................................... 4

    A.    Procedural Background in the *Sun* Case ....................................................... 4

    B.    Netbula's Motion for Substitution of Parties ................................................ 4

    C.    Netbula's Motion for Withdrawal of Counsel ............................................. 6

    D.    Defendants' Motion to Intervene and Modify the Protective Order and
        Dr. Yue's Response ........................................................................................ 7

ARGUMENT ........................................................................................................................ 7

I.    THE COURT SHOULD DENY NETBULA'S MOTION TO SUBSTITUTE
    DR. YUE AS PLAINTIFF IN THE *SUN* CASE ................................................. 7

    A.    The Court Has Ample Discretion to Deny Substitution That Would Not
        Facilitate Conduct of the Litigation .............................................................. 7

    B.    Netbula's Motion to Substitute Parties Should Be Denied Because It
        Attempts an End-Run Around Well-Established Federal Law Requiring
        Business Entities to Be Represented by Counsel ......................................... 8

    C.    Opening the Door to Allowing Dr. Yue to Appear *Pro Se* in This Action
        Would Not Facilitate the Conduct of This Litigation ................................ 11

    D.    Even if Dr. Yue Did Not Intend to Proceed on a *Pro Se* Basis, the Motion
        to Substitute Should be Denied .................................................................. 12

II.    THE COURT SHOULD NOT PERMIT WITHDRAWAL OF COUNSEL PRIOR
    TO DETERMINATION OF THE PENDING DISPOSITIVE MOTIONS, NOR
    PRIOR TO SUCH TIME AS NETBULA HAS DESIGNATED SUBSTITUTE
    COUNSEL ............................................................................................................. 13

III.    DR. YUE'S MOTION TO INTERVENE AND ENFORCE PROTECTIVE
    ORDER SHOULD BE DENIED IN THE *SYMANTEC* CASE ....................... 15

    A.    Dr. Yue's Motion Ignores the Clear Stipulation of Netbula's Counsel
        Permitting Use in the *Sun* Case of Previously Produced Materials ..... 16

    B.    Dr. Yue's Motion Essentially Ignores the Relevant Authority Cited in the
        Opening Brief in Support of Modification of the Protective Order to
        Promote Efficiency in Subsequent Litigation .......................................... 19

    C.    Dr. Yue's Purported Confidentiality Concerns Do Not Change the Result ......... 21

CONCLUSION ................................................................................................................... 24

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

4    **CASES**

5    *Barbour v. Medlantic Mgmt. Corp.*,
      952 F. Supp. 857 (D.D.C. 1997) ........................................................................................... 19

6    *Barker v. Jackson National Life Ins. Co.*,
      163 F.R.D. 364 (M.D. Fla. 1995) .............................................................................. 8, 10, 13
7

8    *Beckman Indus. v. International Ins. Co.*,
      966 F.2d 470 (9th Cir. 1992) .......................................................................................... 20, 22

9    *Britesmile, Inc. v. Discus Dental, Inc.*,
      Case No. 02-03220-JSW, 2005 U.S. Dist. LEXIS 30871
10    (N.D. Cal. Nov. 15, 2005) ...................................................................................................... 15

11   *D-Beam, Ltd. P'ship v. Roller Derby Skates, Inc.*,
      366 F.3d 972 (9th Cir. 2004) ................................................................................................... 9

12   *Eagle Comtronics, Inc. v. Arrow Communication Laboratories, Inc.*,
      305 F.3d 1303 (Fed. Cir. 2002) ............................................................................................. 17
13

      *Educational Credit Management Corp. v. Bernal (In re Bernal)*,
14    207 F.3d 595 (9th Cir. 2000) ................................................................................................... 8

15   *Effects Associates, Inc. v. Cohen*,
      908 F.2d 555 (9th Cir. 1990) ................................................................................................. 22
16
      *HomeBingo Network, Inc. v. Cadillac Jack, Inc.*,
      Case No. 05-0701-WS-B, 2006 U.S. Dist. LEXIS 87502
17    (S.D. Ala. Nov. 29, 2006) ...................................................................................................... 10

18   *Irwin v. Mascott*,
      Case No. C-97-4737-JL, 2004 U.S. Dist. LEXIS 28264
      (N.D. Cal. Dec. 1, 2004) ................................................................................................. 13, 14
19
      *Jacobs v. Patent Enforcement Fund, Inc.*,
20    230 F.3d 565 (2nd Cir. 2000) ................................................................................................ 10

21   *Jones v. Niagara Frontier Transp. Authority*,
      722 F.2d 20 (2nd Cir. 1983) ............................................................................................ 10, 11
22
      *Lattanzio v. COMTA*,
      481 F.3d 137 (2nd Cir. 2007) ............................................................................................. 9, 10
23
      *Luxliner P.L. Export Co. v. RDI/Luxliner, Inc.*,
24    13 F.3d 69 (3rd Cir. 1993) ................................................................................................. 8, 12

25   *Martinez v. Bally's La., Inc.*,
      244 F.3d 474 (5th Cir. 2001) ................................................................................................. 19
26
      *Minn. Mining & Mfg. Co. v. Eco Chem, Inc.*,
      757 F.2d 1256 (Fed. Cir. 1985) ............................................................................................. 12
27
      *Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A.*,
      20 F.3d 987 (9th Cir. 1994) ..................................................................................................... 9

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page(s)**

3
*On Command Video Corp. v. Lodgenet Entertainment Corp.*,
    976 F. Supp. 917 (N.D. Cal. 1997) ....................................................................... 17

4
*Rowland v. California Men's Colony*,
    506 U.S. 194 (1993) ............................................................................................... 9

5

6
*Schueneman v. 1st Credit of Am., LLC*,
    Case No. 05-04505-MHP, 2007 U.S. Dist. LEXIS 48981
    (N.D. Cal. July 6, 2007) ....................................................................................... 15

7

*Television Reception Corp. v. Dunbar*,
    426 F.2d 174 (6th Cir. 1970) .................................................................................. 8

8

9
*U.S. ex rel. King v. Hilton*,
    503 F. Supp. 303 (D.N.J. 1979) ........................................................................... 19

10
*United States ex rel. Schwartz v. TRW Inc.*,
    118 F. Supp. 2d 991 (C.D. Cal. 2000) .................................................................. 11

11
*United States v. High Country Broadcasting Co.*,
    3 F.3d 1244 (9th Cir. 1993) ....................................................................... 9, 10, 15

12

*Washington v. Sherwin Real Estate, Inc.*,
    694 F.2d 1081 (7th Cir. 1982),
    *aff'd*, 2006 U.S. App. LEXIS 18984
    (9th Cir. July 27, 2006) ........................................................................................ 13

13

14

15
**STATUTES**

16
17 U.S.C. § 106 .......................................................................................................... 22

17
28 U.S.C. § 1359 ........................................................................................................... 9

18
**RULES**

19
Civil Local Rule 3.9(b) ................................................................................................. 9

20
Federal Rule of Civil Procedure 1 .............................................................................. 10

21
Federal Rule of Civil Procedure 25(c) ..................................................... 1, 5, 7, 8, 10, 11, 12

22
Federal Rule of Evidence 1001 ................................................................................... 18

23
**OTHER AUTHORITIES**

24
6-25 *Moore's Federal Practice,* § 25.34[1], at 25-47 (3d ed. 2007) ............................. 8

25
4-13 *Nimmer on Copyright,* § 13.03[A][2][b], at 13-62 (rev. 2006) ........................... 22

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

OPPOSITION TO MOTIONS TO SUBSTITUTE,
FOR WITHDRAWAL, INTERVENTION, AND
ENFORCE

-iii-

CASE NOS.  C-06-0711-MJJ-WDB
C-06-07391-MJJ

1    For the Court's convenience and to avoid repetition, Sun Microsystems, Inc. ("Sun"),

2  EMC Corporation ("EMC"), and Darden Restaurants, Inc. ("Darden") (all intervenors in the

3  *Symantec* case and defendants in the *Sun* case, collectively "Defendants"), submit this

4  consolidated memorandum to address the various issues pending before the Court for hearing on

5  November 20, 2007 in the *Symantec* and *Sun* cases brought by Plaintiff Netbula, LLC.

6                            **ISSUES PRESENTED**

7    1.    Whether the Court should exercise its discretion under Federal Rule of Civil

8  Procedure 25(c) to allow substitution of parties in the *Sun* case, when (1) the purpose of the

9  substitution is to circumvent federal law requiring business entities to appear through counsel,

10  and (2) when the substitution would not facilitate the conduct of the case or otherwise serve the

11  interests of justice.

12    2.    Whether the Court should exercise its discretion to permit Netbula's only counsel

13  of record to withdraw one week before hearing on Defendants' summary judgment motion in the

14  *Sun* case, thereby requiring the Court to vacate its long-standing Case Management Order and

15  further delaying resolution of this matter.

16    3.    Whether Netbula's principal, Dr. Yue, should be permitted to intervene in the

17  *Symantec* case on the basis of a transfer entered into for the purpose of circumventing federal law.

18    4.    Whether Dr. Yue should be permitted to renege on stipulations by Netbula's

19  counsel in order to "enforce" the protective order in the *Symantec* case, and whether, in any event,

20  the protective order should be modified to facilitate efficiency in the subsequent *Sun* litigation.

21                            **INTRODUCTION**

22    On the eve of deadlines for filing dispositive motions set by the Court almost six months

23  ago, Netbula, LLC ("Netbula")[1] filed two motions in the *Sun* case (a Motion to Substitute Parties

24  and a Motion for Withdrawal of Counsel) that seek to install Donxiao Yue as a *pro se* plaintiff, in

25  contravention of established federal law precluding a corporate entity from appearing without

26

27  _____

[1] Netbula is the only plaintiff in the now-dismissed case of *Netbula, LLC v. BindView Development Corp.*, Case. No. 06-0711-MJJ-WDB (N.D. Cal.) (the "*Symantec* case"), and is both

28  a counterclaim defendant and the only plaintiff in the related case of *Netbula, LLC v. Storage Technology Corp.*, Case No. 06-07391-MJJ (N.D. Cal.) (the "*Sun* case").

OPPOSITION TO MOTIONS TO SUBSTITUTE,
FOR WITHDRAWAL, INTERVENTION, AND          -1-          CASE NOS.  C-06-0711-MJJ-WDB,
ENFORCE                                                          C-06-07391-MJJ

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   counsel.  Further, even before resolution of those motions, Dr. Yue has decided unilaterally that

2   he is entitled to replace Netbula as the party-plaintiff and to make appearances in both the *Sun*

3   and *Symantec* cases on a *pro se* basis.  Dr. Yue has filed both a "Motion to Intervene and to

4   Enforce Protective Order" in the *Symantec* case, and a "Motion to Intervene and Join as Plaintiff

5   for Injunctive Relief and Copyright Impoundment" in the *Sun* case.

6       All of these motions are without merit.[2]  For the reasons set forth below, Defendants

7   respectfully request that the Court (i) *deny* the Motion to Substitute filed in the *Sun* case, (ii) *deny*

8   the Motion to Intervene and to Enforce the Protective Order in the *Symantec* case, (iii) consider

9   granting the Motion for Withdrawal only after decision of Defendants' pending dispositive

10  motions, and (iv) order such further relief as necessary to prevent further abuses by Netbula and

11  Dr. Yue.

12      Netbula is the Plaintiff in a series of lawsuits that allege that Netbula's licensed customers

13  are liable for copyright infringement (and purportedly millions of dollars in damages) because

14  they did not pay for all of the uses they made of Netbula's code. Netbula's actions against

15  Symantec and against Greenwich Capital Markets, Inc.[3] were dismissed by stipulation following

16  this Court's entry of a summary judgment order as to most claims in the *Symantec* case.  *See*

17  *Symantec* Docket No. 288 [Order Granting Summary Judgment].  The *Sun* case remains pending.

18  However, in *Sun,* Netbula is not only pursuing its customer StorageTek (which Sun acquired), but

19  also has joined StorageTek's downstream customers Darden, EMC and IBM, asserting that their

20  use of software for which StorageTek allegedly paid insufficient royalties subjects them, too, to

21  claims for copyright infringement.  Dispositive motions on the license defense in the *Sun* case,

22  which would dispose of all copyright claims (and all claims against the customer Defendants) are

23  ────────────────
    [2] This consolidated opposition does not respond directly to Dr. Yue's Motion to Intervene and
24  Join as Plaintiff for Injunctive Relief and Copyright Impoundment" (the "Yue Motion"), hearing
    on which is currently scheduled for November 27, 2007.  Defendants have filed an administrative
    motion requesting that they not be required to prepare a full response to that motion pending
25  determination of Dr. Yue's entitlement to press Netbula's claims in his individual capacity. *See*
    *Sun* Docket No. 80.  Defendants intend to file a separate opposition to the Yue motion as
26  necessary according to the briefing schedule, but note that much of the legal authority provided in
    this consolidated opposition applies equally to the Yue Motion.
27  [3] *See Netbula, LLC v. Greenwich Capital Markets, Inc.,* Case No. 06-07143-MJJ (N.D. Cal.),
    Docket No. 1 [Complaint ¶¶ 19-20 (alleging license agreement between Netbula and Greenwich
28  Capital Markets)].

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    set to be heard on November 27, 2007.

2            On September 26, 2007, ten months after commencing the *Sun* case, Netbula purported to

3    assign its copyrights, including the copyright registration underlying Netbula's infringement

4    claims, to its principal, Dr. Yue.  Each of the motions set for hearing on November 20 is based on

5    that purported transfer.  The Assignment was effected after close of the initial phase of discovery

6    in *Sun* case, less than one month before the deadline for filing of summary judgment motions, and

7    only four business days before Netbula filed its Motion to Substitute of Dr. Yue as plaintiff.  On

8    its face, this purported transfer lacks any legitimate business purpose.  Indeed, Netbula's counsel

9    has confirmed that the purpose of the transfer was to enable Dr. Yue to appear in the *Sun* case

10   *pro se* something he cannot do if Netbula is the party-in-interest.  Shortly thereafter, on

11   October 11, Netbula filed its Motion for Withdrawal of Counsel.  That motion would leave

12   Netbula without representation notwithstanding that Netbula must continue in this action as

13   Plaintiff as to the fraud and contract claims (which, unlike the copyright claims, were not

14   assigned to Dr. Yue) and as to Sun's trademark counterclaims, regardless of whether the Court

15   permits Dr. Yue to substitute.

16           Netbula's motions and the transfer underlying them attempt an end-run around the well-

17   established principle that artificial entities such as Netbula cannot appear in federal court except

18   through counsel.  In similar circumstances, courts (including the Ninth Circuit) have refused to

19   grant relief to individuals attempting to circumvent the counsel requirement, and this Court

20   should do so here.  Netbula's and Dr. Yue's motions should be denied.  Counsel should be

21   directed to continue in place at least through resolution of the pending summary judgment

22   motions and until additional counsel is secured by Netbula.  Further, Dr. Yue should be ordered to

23   cease filing pleadings that rightfully must be brought only by Netbula.

24           Indeed, the disruptive effect of allowing Dr. Yue to litigate personally when he has no

25   right to do so is evident from his Motion to Intervene and Enforce the Protective Order in the

26   *Symantec* case.  There, he has ignored the authorities contained in Defendants' opening brief

27   supporting modification of a protective order to allow access to relevant materials in related

28   actions.  He also ignores the on-the-record stipulation made during Netbula's 30(b)(6) deposition

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    by Netbula's then-and-current counsel, Vonnah Brillet.  Instead, he attempts an after-the-fact

2    withdrawal of Netbula's stipulation and otherwise relies on misguided arguments that lead

3    nowhere.  Dr. Yue's opposition to modification presents a transparent attempt not only to drive up

4    Defendants' costs of discovery in the *Sun* case, but also to shield highly relevant documents and

5    testimony just because Dr. Yue now believes they damage "his" case.  These are simply not

6    adequate bases on which to either deny the Motion to Modify the Protective Order or to grant

7    Dr. Yue the relief he seeks.

8                          **STATEMENT OF FACTS**

9         **A.    Procedural Background in the *Sun* Case**

10            In the *Sun* case, Netbula filed an Application for a Temporary Restraining Order (TRO)

11   along with its original complaint on December 4, 2006.  *See Sun* Docket Nos. 1-3.  The TRO was

12   heard the next day before Magistrate Judge Zimmerman.  *See Sun* Docket No. 18 [Reporter's

13   Transcript].  Netbula ultimately withdrew its motion in the face of the court's skepticism

14   regarding the merits of the Application.  *See id.* at pp. 30:25-31:4.

15            Netbula filed its First Amended Complaint on December 18, 2006, joining Sun's

16   customers as Defendants.  *See Sun* Docket No. 15 [First Amended Complaint ("*Sun* FAC")].  One

17   month later, Netbula successfully moved to have the *Sun* and *Symantec* cases related.  *See*

18   *BindView* Docket No. 66 [Administrative Motion to Consider Whether Cases Should Be Related].

19   In that motion, Netbula stated that the two actions concern "the same intellectual property," and

20   listed among the common questions of law or fact the need to determine "a per copy license fee

21   for Netbula's RPC runtime license from the year 2000 to 2006."  *Id.* at pp. 2:23-3:8.

22            At the Initial Case Management Conference held May 8, 2007, this Court ordered phased

23   resolution of this dispute.  It set a cutoff of August 31, 2007 for discovery on the license defense

24   to copyright claims and a November 27, 2007 deadline for hearing dispositive motions in this first

25   phase (the "Initial Phase").  *See Sun* Docket No. 50 [Minute Entry re Initial Case Management

26   Conference Held May 8, 2007].

27        **B.    Netbula's Motion for Substitution of Parties**

28            On October 1, 2007, Netbula filed in the *Sun* case a Motion to Substitute Parties pursuant

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   to Federal Rule of Civil Procedure 25(c), on the basis of a purported assignment of several

2   copyrighted works from Netbula to its President, Dongxiao Yue, dated September 26, 2007.  *See*

3   *Sun* Docket No. 56 [Netbula's Motion for Substitution of Party as to the Copyright Infringement

4   Claim ("Motion to Substitute") at p. 2:15-22]; *Sun* Docket No. 57 [Declaration of Vonnah M.

5   Brillet in Support of Motion to Substitute ("Brillet Decl.") ¶ 2 & Ex. A (attaching "Copyright

6   Assignment," or the "Assignment")].[4]  Specifically, the Copyright Assignment purported to

7   transfer five works registered with the Copyright Office, including the copyright at issue in this

8   litigation, "and all Netbula PowerRPC and Netbula ONC RPC software created before January 1,

9   2007."  *See* Copyright Assignment (identifying PowerRPC, Registration No. TX 6-211-063, as

10  among the assigned works); *see also Sun* FAC ¶ 21 & Ex. A (basis for Netbula's infringement

11  claim is PowerRPC, registered as TX 6-211-063)].

12          Under the Assignment, Netbula also assigned to Dr. Yue the right to collect "payment for

13  any past, current and future use" of the assigned properties, as well as "all claims assertable under

14  copyright against any of infringement" of such properties.  *See* Copyright Assignment at p. 1.

15  The Assignment did not purport to assign rights under pendent state law claims, and Netbula

16  acknowledges that it "remains as plaintiff as to other claims."  *See* Motion to Substitute p. 3:1-2.

17  Hearing on the motion was noticed for November 20, one week before the Court-ordered deadline

18  for hearing on dispositive motions, set almost six months ago.  *See Sun* Docket No. 50 [Minute

19  Entry re Initial Case Management Conference Held May 8, 2007].

20          On its face, the assignment is suspicious, purporting to assign away what Netbula

21  describes as its "main product," and the software that generates "the heart of Netbula's business

22  revenues."  *See Sun* FAC ¶¶ 1, 14.  Nor does Netbula's Motion to Substitute offer any explanation

23  or justification of this abrupt transfer of its most valuable assets.  *See generally* Motion to

24  Substitute.  The obvious reason for the purported transfer was confirmed soon enough:  in a

25  _____

26  [4] Although for the purposes of the Copyright Assignment Dr. Yue identified himself as Netbula's
    "President," Dr. Yue's relationship with Netbula is a fluid concept.  For example, in his
    declaration in support of Netbula's unsuccessful Application for a Temporary Restraining Order,

27  he identified himself as Netbula's "Chief Sales and Marketing Officer."  *See* Docket No. 3
    [Declaration of Don Yue in Support of Netbula's Application for Temporary Restraining Order

28  ¶ 1].

conversation with Defendants' counsel occurring on or about October 9, 2007, Netbula's counsel

stated that the transfer was motivated by Dr. Yue's desire to represent himself in the *Sun* action,

on a *pro se* basis.  *See Sun* Docket No. 76 [Declaration of Jedediah Wakefield in Support of

Opposition to Motion to Enlarge Time to File Opposition ("Wakefield Decl. ISO Opp. to Enlarge

Time") ¶ 2].  Netbula's counsel filed the motion to withdraw two days later.  *See Sun* Docket No.

59 [Motion to Withdraw as Attorney ("Motion to Withdraw")].  And indeed, Dr. Yue has since

filed two motions in his individual capacity and on a *pro se* basis, both based on this purported

transfer.  *See Symantec* Docket Nos. 307-08 ["Third Party [sic] Dongxiao Yue's Motion to

Intervene and Enforce Protective Order" at pp. 8:1-3, 8:23-9:8; Yue Declaration in Support ¶ 1];

*Sun* Docket Nos. 68-71 ["Motion by Dongxiao Yue to Intervene and Join as Plaintiff and for

Injunctive Relief and Copyright Impoundment" at pp. 10:8-12, 16:19-20, 17:27-28:1; Yue

Declaration in Support ¶ 3].

Although Dr. Yue clearly enjoys the litigation process, he is not a lawyer.  *See* Yue

Declaration in Support of Motion to Intervene and Enforce Protective Order ("Yue Decl.") ¶ 16.

His personal conduct over the course of the related cases pending before this Court demonstrates

that his presence would be particularly unhelpful in facilitating a just and expedient resolution of

this matter.  As detailed below, Dr. Yue has publicly questioned the integrity of the Court in

response to rulings unfavorable to Netbula.  *See Symantec* Docket No. 250 [Declaration of

Jedediah Wakefield in Support of Defendants' Replies re Motions for Summary Judgment ¶ 7 &

Ex. 5].  He has already attempted, through his Motion to Intervene and Enforce the Protective

Order, to renege on a stipulation made on the record by Netbula's counsel, advancing a position

that would require massive and duplicative re-discovery in the *Sun* case.  *Symantec* Docket No.

307 [Third Party Dongxiao Yue's Motion to Intervene and Enforce Protective Order]. One can

only imagine the mischief that can be expected if Dr. Yue is allowed a *pro se* "do over" of all that

Netbula, through counsel, has done to date.

**C.    Netbula's Motion for Withdrawal of Counsel**

Soon after Netbula filed its Motion for Substitution, Netbula's only counsel of record,

Vonnah M. Brillet, moved to withdraw.  *See* Motion to Withdraw.  On behalf of Netbula, Dr. Yue

FENWICK & WEST LLP / ATTORNEYS AT LAW / SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  consented to the request for withdrawal, apparently hoping that he would be permitted to pursue

2  Netbula's claims individually.  *See Sun* Docket No. 60 [Consent to Withdraw[al] of Vonnah M.

3  Brillet as Netbula LLC's Counsel of Record].  Hearing on this motion also will occur on

4  November 20, one week before hearing on Defendants' summary judgment motion.  Netbula's

5  counsel has indicated that Dr. Yue proposes to litigate Netbula's copyright claims personally, *see*

6  Wakefield Decl. ISO Opp. to Enlarge Time ¶ 2, and Dr. Yue has now in fact filed a brief seeking

7  copyright-related relief, designated as a "Motion to Intervene and (1) Join as Plaintiff; (2) for

8  Injunctive Relief; (3) for Copyright Impoundment," originally noticed for hearing November 27.

9  *See Sun* Docket No. 68.  Dr. Yue filed this motion for preliminary relief even though this Court

10  has not yet considered the Motion to Substitute and the Motion for Withdrawal, and thus the only

11  plaintiff in *Sun* action remains Netbula.  Netbula has not filed a notice of substitute counsel, even

12  though under the purported transfer, Netbula must still be represented by counsel for the purposes

13  of the state law claims it asserts in the *Sun* case, and as counterdefendant on Sun's counterclaims

14  for trademark infringement.

15      **D.    Defendants' Motion to Intervene and Modify the Protective Order and
           Dr. Yue's Response**

16

17      Defendants filed their Motion to Intervene and to Modify the Protective Order in the

18  *Symantec* case on October 9, 2007.  *See Symantec* Docket Nos. 303-04.  On October 15, Dr. Yue

19  (again in his individual capacity and on a *pro se* basis) filed his motion purporting to seek

20  enforcement of the protective order and to oppose Defendants' Motion to Modify.  Dr. Yue's

21  motion is an improper end-run around counsel requirements and should be denied on that basis

22  alone.  But as also discussed below, Dr. Yue's motion fails even if considered on its merits.

23                          **ARGUMENT**

24  **I.    THE COURT SHOULD DENY NETBULA'S MOTION TO SUBSTITUTE
        DR. YUE AS PLAINTIFF IN THE *SUN* CASE**

25

26      **A.    The Court Has Ample Discretion to Deny Substitution That Would Not
              Facilitate Conduct of the Litigation**

27      Federal Rule of Civil Procedure 25(c), which permits substitution of parties upon a

28  transfer of interest, is wholly discretionary.  As explained in *Barker v. Jackson National Life Ins.*

OPPOSITION TO MOTIONS TO SUBSTITUTE,
FOR WITHDRAWAL, INTERVENTION, AND
ENFORCE                                -7-        CASE NOS.  C-06-0711-MJJ-WDB,
                                                            C-06-07391-MJJ

1    *Co.*, 163 F.R.D. 364 (M.D. Fla. 1995),

2            The disposition of a motion under Rule 25(c) is committed to the sound discretion
             of the trial court. The court may in its discretion order that the original party
3            continue the action alone, that the transferee be substituted for the original party,
             or that the transferee be joined as an additional party. Even if not named,
4            successors in interest are always bound by the judgment[.]

5    *Id.* at 366 (internal citations omitted) (refusing to substitute parties after transfer of claim); *see*

6    *also Educational Credit Management Corp. v. Bernal (In re Bernal)*, 207 F.3d 595, 598 (9th Cir.

7    2000) (substitution decision within the sound discretion of the trial court); 6-25 *Moore's Federal*

8    *Practice,* § 25.34[1], at 25-47 (3d ed. 2007) (choice among the three options presented by Rule

9    25(c) is within the discretion of the trial court, and such decisions are reviewed under an abuse of

10   discretion standard).

11           Whether a court should exercise its discretion and permit substitution of parties is

12   determined by whether the substitution "would facilitate the conduct of the case" and otherwise

13   serves the interests of justice. *See Luxliner P.L. Export Co. v. RDI/Luxliner, Inc.*, 13 F.3d 69, 71-

14   72 (3rd Cir. 1993); *Barker*, 163 F.R.D. at 366 ("The interests of justice can best be served by

15   having the original party continue as the plaintiff in this case."); *see also Television Reception*

16   *Corp. v. Dunbar*, 426 F.2d 174, 178 (6th Cir. 1970) (joinder under Rule 25(c) represented district

17   court judge's determination that presence of assignee "would facilitate his conduct of the

18   litigation").

19       **B.      Netbula's Motion to Substitute Parties Should Be Denied Because It Attempts
                   an End-Run Around Well-Established Federal Law Requiring Business
20                 Entities to Be Represented by Counsel**

21           In this case, it is abundantly clear that an order naming Dr. Yue as substitute plaintiff

22   would neither facilitate the conduct of this case nor serve the interests of justice. The sole

23   apparent purpose of the Assignment is to avoid the requirement that Netbula's copyright claim be

24   pursued by an enterprise represented by counsel. The purported Assignment was executed on

25   September 26, 2007, *after* the close of the initial phase of discovery in this matter, less than one

26   month before the deadline for filing of summary judgment motions, and only four business days

27   before Netbula filed its motion for substitution. *See* Motion for Substitution p. 2:15-19; Brillet

28   Decl. ¶ 2 & Ex. A (attaching "Copyright Assignment"). It is hard to fathom, any legitimate

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    business purpose for this copyright transfer, which deprives Netbula of ownership its "main

2    product" and the software that generates "the heart of Netbula's business revenues." *See Sun* FAC

3    ¶¶ 1, 14.  Netbula's argument in support of its motion offers no legitimate explanation for this

4    abrupt transfer of its most significant assets on the eve of summary judgment.  *See generally*

5    Motion to Substitute.[5]  To the contrary, as explained by Netbula's current counsel, this transfer

6    was entered into in order to allow Dr. Yue to appear in this action in his personal capacity and on

7    a *pro se* basis.  *See* Wakefield Decl. ISO Opp. to Enlarge Time ¶ 2.

8         The transfer is therefore nothing more than a calculated effort to circumvent well-

9    established federal law requiring business entities to appear only through counsel.  *See D-Beam,*

10   *Ltd. P'ship v. Roller Derby Skates, Inc.*, 366 F.3d 972, 973-74 (9th Cir. 2004) ("It is a

11   longstanding rule that corporations and other unincorporated associations must appear in court

12   through an attorney."); *Lattanzio v. COMTA*, 481 F.3d 137, 140 (2nd Cir. 2007) (rejecting

13   attempt of sole member of LLC to appear on behalf of LLC); *see also Rowland v. California*

14   *Men's Colony*, 506 U.S. 194, 201-02 (1993) (rationale for the rule requiring corporations to

15   "appear in the federal courts only through licensed counsel . . . applies equally to all artificial

16   entities"); Civ. L.R. 3.9(b) ("A corporation, unincorporated association, partnership, or other such

17   entity may only appear through a member of the bar of this Court.").

18        Dr. Yue's desire to appear pro se to assert Netbula's rights will thus subvert, not advance,

19   the interests of justice and cannot justify his substitution here.  In this regard, the Ninth Circuit's

20   decision in *United States v. High Country Broadcasting Co.*, 3 F.3d 1244 (9th Cir. 1993) (*per*

21   *curiam*), is particularly instructive.  In *High Country*, the defendant's president and sole

22   shareholder sought to intervene, on a *pro se* basis, in an action against the defendant.  *See id.* at

23   1245.  The district court refused to allow the intervention, and the Ninth Circuit affirmed, noting

24   that "[t]o allow a sole shareholder with interests identical to the corporation's to intervene under

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

---

25

26   [5] Under 28 U.S.C. § 1359, the assignment of the sort offered by Netbula in support of its motion – from a company to its only officer – is presumptively collusive and would be disregarded for the purposes of invoking the diversity jurisdiction in federal court, unless the parties to the

27   assignment present a business reason for the assignment that is "sufficiently compelling that the assignment would have been made absent the purpose of gaining a federal forum."  *See Nike, Inc.*

28   *v. Comercial Iberica de Exclusivas Deportivas, S.A.*, 20 F.3d 987, 991-92 (9th Cir. 1994).

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    such circumstances, rather than hire corporate counsel, would eviscerate" the rule requiring

2    business entities to be represented by counsel.  *Id.* (citing, *inter alia*, Fed. R. Civ. Proc. 1, for the

3    proposition that courts shall interpret the rules to "secure the just, speedy, and inexpensive

4    determination of every action"); *see also Jacobs v. Patent Enforcement Fund, Inc.*, 230 F.3d 565,

5    569 (2nd Cir. 2000) (finding that district court abused its discretion in permitting the president,

6    sole officer, and director to intervene on behalf of corporation).

7          The rationale underlying *High Country* has been adopted in cases where, as here, a

8    corporate entity has assigned its rights to an officer of that company in order to circumvent

9    counsel requirements.  *See Jones v. Niagara Frontier Transp. Authority*, 722 F.2d 20, 22-23 (2nd

10   Cir. 1983) (affirming conditional dismissal of entire complaint when company principal

11   attempted to amend complaint to name himself as plaintiff in order to prosecute case *pro se*:  "the

12   federal courts have, in cases governed by federal law, disapproved any circumvention of the rule

13   by the procedural device of an assignment of the corporation's claims to the lay individual");

14   *HomeBingo Network, Inc. v. Cadillac Jack, Inc.*, Case No. 05-0701-WS-B, 2006 U.S. Dist.

15   LEXIS 87502, at *10-*12 (S.D. Ala. Nov. 29, 2006) (denying intervention where "obvious

16   inference raised by . . . sequence of events" was that assignment of patent rights from company to

17   founder was to circumvent counsel requirement).  Furthermore, permitting intervention is this

18   case would also promote abuse of the corporate form.  *See Lattanzio*, 481 F.3d at 140 ("[A] sole

19   member of a limited liability company must bear the burdens that accompany the benefits of the

20   corporate form and may appear in federal court only through a licensed attorney.").

21         There is no reason that Netbula and Dr. Yue should achieve the same result rejected by the

22   Ninth Circuit in *High Country* and other courts by filing a motion to substitute parties under

23   Federal Rule of Civil Procedure 25(c).  Indeed, in *High Country*, the Ninth Circuit assumed that

24   the individual intervenor met the standards for intervention *as a matter of right*, but nevertheless

25   refused to allow intervention where it would subvert the requirement of representation by

26   counsel.  *See High Country,* 3 F.3d at 1245.  In this case, the decision of whether to allow

27   substitution is *discretionary*, to be exercised in the interests of justice.  *See Barker*, 163 F.R.D. at

28   366.  No conceivable definition of "justice" encompasses permitting a party to circumvent federal

law requiring representation only through counsel.

Finally, the circumstances surrounding the Assignment call into question whether a transfer that the Court will recognize as valid – a prerequisite for application of Rule 25(c) – has even occurred. *See id.* at 366 & n.2 ("Whenever a transfer is made solely for the purpose of convenience or trial tactics, the court may ignore the transfer and the transferor remains the real party in interest . . . ."); *Jones*, 722 F.2d at 23 ("It cannot be doubted . . . that an assignment of a claim against another, made solely for the purpose of permitting the assignee – not an attorney – to conduct the litigation in proper person, would be colorable only and, therefore, insufficient to accomplish the purpose." (internal quotation marks omitted)).[6]

**C.    Opening the Door to Allowing Dr. Yue to Appear *Pro Se* in This Action Would Not Facilitate the Conduct of This Litigation**

An order permitting substitution (and thereby opening the door for Dr. Yue to proceed *pro se*) would be especially problematic in this case. Among the rationales underlying the requirement that business entities appear only through counsel is that the professional obligations placed upon attorneys permit the proceedings to maintain the appropriate level of decorum. As explained in *United States ex rel. Schwartz v. TRW Inc.*, 118 F. Supp. 2d 991 (C.D. Cal. 2000),

> [l]awyers are bound to ethical constraints to which non-lawyers may have no knowledge and no obligation. Violation of these fundamental canons may result in serious consequences to the errant attorney. There is no such threat to pro per litigants. . . . An attorney has an obligation which he owes to the court as well as to his client, and he owes a public duty to aid in the administration of justice, to uphold the dignity of the court and respect its authority.

*Id.* at 995 (emphasis added; internal quotation marks omitted). Dr. Yue, however, has already publicly indicated his disdain for the authority of this Court. On June 11, 2007, Magistrate Judge Chen denied Netbula's Motion for Sanctions Pursuant to Rule 11 and ordered payment to Defendants of $20,000 in attorneys' fees for the costs of responding to that baseless motion. *See Symantec* Docket No. 193. Dr. Yue published the following blog, labeling Judge Chen a "kowtowing dude," about whose conclusions "I personally don't give a damn":

---

[6] Defendants reserve the right to conduct discovery regarding the circumstances of this purported assignment and to make any argument thereupon at all stages of the litigation.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1
2
3
4
5

> Our lawyer was ordered to pay $20,000 to Symantec lawyers so they can study their records on the settlement conference after they told a false story to the court. . . .  Now, this dispute has to go to the Ninth Circuit for sure.  I bet some people will go down in history!  It is sad to hear that loud kowtow sound. Disgusting.  I really don't understand Symantec lawyers.  They could have simply said:  "sorry, we messed something up."  Instead, they wanted to fight.  But the problem here is that there is only one truth.  There is no freaking way that we will let this kind of crap go unchallenged.  *I personally don't give a damn to whatever some kowtowing dude concludes as long as I hold the truth*.

6    *See Symantec* Docket No. 250 [Declaration of Jedediah Wakefield in Support of Defendants'

7    Replies re Motions for Summary Judgment ¶ 7 & Ex. 5 (emphasis added)].

8         There is no reason to believe Dr. Yue's future conduct would be any more respectful of or

9    consonant with appropriate conduct in court.  As discussed below, Dr. Yue's very first filing in

10   his individual capacity attempts to disregard a sensible, on-the-record stipulation by Netbula's

11   counsel permitting use of certain documents produced in the *Symantec* case, a move that makes

12   no sense other than as an effort to increase cost and frustrate discovery.  *See* Section III, *infra*.

13   The Court has ample discretion to deny Netbula's motion for substitution, and should do so here,

14   where substitution would in no way "facilitate the conduct of this case."  *See Luxliner P.L. Export*

15   *Co.*, 13 F.3d at 71-72.

16        **D.    Even if Dr. Yue Did Not Intend to Proceed on a *Pro Se* Basis, the Motion to Substitute Should be Denied**

17

18        Even if represented by counsel, rather than appearing *pro se*, there is no conceivable way

19   in which Dr. Yue's addition as a party will facilitate the conduct of this litigation.  Netbula will

20   remain a party to this litigation, both as a Plaintiff and as a counterclaim defendant.  *See* Motion

21   to Substitute p. 3:1-2 ("Netbula remains as plaintiff as to other claims asserted by Netbula.");

22   Docket No. 17 [Counterclaims of Sun Microsystems, Inc.].  Netbula must be represented by

23   counsel with respect to those claims or face dismissal of its affirmative claims and default

24   judgment on the counterclaims.

25        Nor would denial of the substitution motion affect any of Dr. Yue's substantive rights.  It

26   is the nature of motions made pursuant to Rule 25(c) that, even if granted, "[t]he merits of the

27   case, and the disposition of the property, are still determined *vis-a-vis* the originally named

28   parties."  *See Minn. Mining & Mfg. Co. v. Eco Chem, Inc.*, 757 F.2d 1256, 1263 (Fed. Cir. 1985).

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    Dr. Yue and Netbula are intimately related, with Dr. Yue serving as its sole employee, officer,

2    and principal, serving its development, sales, support and management functions (albeit under

3    various pseudonyms).  *See, e.g.*, *Sun* Docket No. 64 [Declaration of Jedediah Wakefield in

4    Support of Defendants' Motion for Summary Judgment or Summary Adjudication ¶ 3 & Ex. 2

5    (Deposition of Netbula Rule 30(b)(6) Witness (Dongxiao Yue), Sept. 12, 2007, at pp. 91:18-92:8

6    (describing aliases used by Dr. Yue))].  There is no reason to believe that Dr. Yue will not

7    continue to vigorously participate in the prosecution of the copyright claims in Netbula's name, as

8    he has throughout the course of this litigation and the related *Symantec* litigation.  Dr. Yue has

9    pointed to no way in which his interests conflict with Netbula's; Dr. Yue identifies no reason why

10   his interests require separate representation from Netbula.  Accordingly, as in *Barker*, "there are

11   no considerations which weigh in favor of allowing substitution."  *Barker*, 163 F.R.D. at 366.

12          On the other hand, the costs of permitting substitution of parties at this late point, even if

13   represented by counsel, would be substantial.  As an initial matter, it would inject a second party-

14   plaintiff into the proceedings, necessarily creating additional pleadings, paper and arguments.

15   Netbula offers no justification for why the Assignment and resulting motion for substitution were

16   timed so late in the *Sun* proceedings.  The requested substitution was first mentioned only after

17   close of discovery.  This tactic prevented Defendants from deposing Netbula and Dr. Yue

18   regarding this purported Assignment.  Indeed, the late effort at substitution would prevent

19   Defendants from knowing, prior to filing dispositive motions, against whom their motions need to

20   be directed.  Thus, the facts would militate against permitting substitution, even assuming,

21   contrary to fact, that Dr. Yue was not attempting to appear *pro se*.  *Barker*, 163 F.R.D. at 366.

22   **II.    THE COURT SHOULD NOT PERMIT WITHDRAWAL OF COUNSEL PRIOR
23           TO DETERMINATION OF THE PENDING DISPOSITIVE MOTIONS, NOR
             PRIOR TO SUCH TIME AS NETBULA HAS DESIGNATED SUBSTITUTE
24           COUNSEL**

25          "The decision to grant or deny counsel's motion to withdraw is committed to the

26   discretion of the trial court."  *Irwin v. Mascott*, Case No. C-97-4737-JL, 2004 U.S. Dist. LEXIS

27   28264, at *3 (N.D. Cal. Dec. 1, 2004) (citing *Washington v. Sherwin Real Estate, Inc.*, 694 F.2d

28   1081, 1087 (7th Cir. 1982), *aff'd*, 2006 U.S. App. LEXIS 18984 (9th Cir. July 27, 2006)).  The

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  factors guiding a court's discretion include "the disruptive impact that counsel's withdrawal

2  would have on the prosecution of the case," as well as "(1) the reasons why withdrawal is sought;

3  (2) the prejudice withdrawal may cause to other litigants, (3) the harm withdrawal might cause to

4  the administration of justice, and (4) the degree to which withdrawal will delay the resolution of

5  the case." *Id.* at *4. Significantly, Netbula has provided no reason to explain counsel's request to

6  withdraw, much less the present timing in the midst of briefing on dispositive motions.

7      In light of these factors, Defendants submit the following:

8      *First,* in no event should withdrawal of counsel be permitted to upset the date for hearing

9  on Defendants' motion for summary judgment, the deadline for which was set by this Court

10  almost six months ago. *See Sun* Docket No. 50 [Minute Entry re Initial Case Management

11  Conference Held May 8, 2007]. Based on its pending request for withdrawal of counsel, Netbula

12  sought a "two week" extension of the due date for its opposition to Defendants' summary

13  judgment motion. However, in the absence of any substitute counsel, withdrawal would require

14  the Court to vacate its hearing until well into December, and probably much later, so that counsel

15  could be engaged. *See Sun* Docket No. 73. For the reasons stated in the opposition to Netbula's

16  motion to extend time, *see Sun* Docket No. 75, as well as the considerations presented in this

17  memorandum, this attempt unilaterally to reconfigure the Court's schedule should be denied.

18  There is no injustice in requiring that Netbula use its counsel for the last 10 months to complete

19  the few remaining tasks for this phase of the case.

20      *Second,* because resolution of the motions to withdraw and substitute will not occur until

21  at least November 20, 2007, Netbula will remain the only plaintiff in this action, and Ms. Brillet

22  will remain counsel of record, until at least that time. There is no reason that Ms. Brillet

23  withdrawal should not be delayed at least one additional week to allow her to appear at a hearing

24  on summary judgment scheduled by the Court months ago.[7]

25      *Third,* assuming that Netbula has not yet designated substitute counsel by the time of

26  hearing on the motion to withdraw, Defendants respectfully request that the Court order that Ms.

27

28  _____

[7] If Netbula designates substitute counsel, Defendants would have no objection to substitute counsel's appearance on any briefs or at oral argument.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   Brillet remain as counsel an additional 21 days following the hearing on Defendants' summary

2   judgment motion (until December 18, 2007).  *See, e.g.*, *Britesmile, Inc. v. Discus Dental, Inc.*,

3   Case No. 02-03220-JSW, 2005 U.S. Dist. LEXIS 30871 (N.D. Cal. Nov. 15, 2005) (delaying

4   withdrawal of counsel for several weeks "or until substitute counsel makes an appearance").

5   Defendants further request that the Court's order require dismissal of Netbula's affirmative

6   claims, and entry of default judgment against it as to Sun's counterclaims, if Netbula fails to

7   designate substitute counsel by the additional time permitted by Court order.  *See, e.g.*, *High*

8   *Country*, 3 F.3d at 1245 (affirming entry of default judgment against corporation that failed to

9   retain counsel as ordered by district court); *Britesmile*, 2005 U.S. Dist. LEXIS 30871, at *2

10   (admonishing LLC that failure to retain substitute counsel may result in entry of judgment against

11   it and dismissal of counterclaims).  During any period in which Netbula is not represented by

12   counsel, neither it nor Dr. Yue should be permitted to submit any documents in this matter or

13   otherwise make an appearance.  *Schueneman v. 1st Credit of Am.*, *LLC*, Case No. 05-04505-

14   MHP, 2007 U.S. Dist. LEXIS 48981, at *24 (N.D. Cal. July 6, 2007) (granting motion for

15   withdrawal of counsel while admonishing LLC left unrepresented by its order that it can only

16   appear through counsel).

17        Simply put, if Netbula and its counsel wish to part company, so be it, but it is Netbula, and

18   its counsel, not Defendants, that must bear the burden—including adherence to the current

19   schedule, replacing counsel in a timely manner, or dismissal and default for lack of

20   representation.

21   **III.    DR. YUE'S MOTION TO INTERVENE AND ENFORCE PROTECTIVE ORDER
            SHOULD BE DENIED IN THE *SYMANTEC* CASE.**
22

23        Dr. Yue's Motion to Intervene and Enforce the Protective Order in the *Symantec* case is

24   both procedurally and substantively meritless.  As to procedure, that Motion should be denied in

25   its entirety under the authority cited in Section I, *supra*.  Netbula, not Dr. Yue, was the Plaintiff of

26   record in the *Symantec* case.  As in the *Sun* case, Dr. Yue's request to appear personally and

27   without counsel is based on the purported Assignment and is an impermissible attempt to

28   circumvent the counsel requirement.

OPPOSITION TO MOTIONS TO SUBSTITUTE,
FOR WITHDRAWAL, INTERVENTION, AND          -15-          CASE NOS.  C-06-0711-MJJ-WDB,
ENFORCE                                                             C-06-07391-MJJ

1    But even if the Court were to reach the merits of Dr. Yue's Motion to Intervene and

2  Enforce the Protective Order, the motion should still be denied, for the reasons explained below.

3         **A.    Dr. Yue's Motion Ignores the Clear Stipulation of Netbula's Counsel**
               **Permitting Use in the *Sun* Case of Previously Produced Materials.**

4

5    Dr. Yue's motion seeks to repudiate the statements by Netbula's counsel on the record

6  that acknowledged the propriety of Defendants' conduct.  The conduct in question consists of use

7  in Netbula's 30(b)(6) deposition in the *Sun* action of five documents that Plaintiff marked as

8  "confidential" in the *Symantec* case—nothing more.  Review of the deposition transcript reflects

9  that that use was within the scope of Netbula's counsel stipulation on the record in that

10 deposition.

11   Early in the deposition, Defendants' counsel introduced as an exhibit a copy of one of the

12 operative agreements that is directly at issue in the *Sun* case – the 2000 Agreement between

13 Netbula and Sun's predecessor in interest, Storage Technology Corporation.  *See Symantec*

14 Docket No. 304 [Declaration of Jedediah Wakefield in Support of Motion to Intervene and

15 Modify Protective Order ("Wakefield Opening Decl.") ¶¶ 5-6].  Defendant introduced a copy that

16 had been produced and designated as "confidential" in the *Symantec* case for the logistical

17 purpose of being able to correlate testimony in the *Sun* case to documents also subject to

18 testimony in *Symantec*.  It would merely confuse the record to use different numbers and versions

19 of the same document across the two cases.  Moreover, there was no justification for Netbula ever

20 having designated this Agreement as confidential in any action, since both Netbula and Dr. Yue

21 had publicly filed that document *not under seal* in the *Sun* action.[8]

22   Netbula's counsel initially objected to its introduction because this particular version had

23 been produced and bates-stamped in the *Symantec* case.  Discussion ensued about the relevancy

24 of certain documents produced in the *Symantec* case to the *Sun* action, and the appropriateness of

25 their use in the deposition.  During a break taken for this purpose, Ms. Brillet conferred with

26 Netbula's representative, Dr. Yue, about use of materials produced in the *Symantec* case. *Id.* ¶ 6

27 ─────────────────────
[8] *See Sun* Docket No. 3 [Declaration of Don Yue in Support of Plaintiff's Application for a
28 Temporary Restraining Order ¶ 4 & Ex. A]; Docket No. 70 [Exhibits A-J re Declaration in
    Support filed by Dongxiao Yue, Ex. B].

OPPOSITION TO MOTIONS TO SUBSTITUTE,
FOR WITHDRAWAL, INTERVENTION, AND            -16-         CASE NOS.  C-06-0711-MJJ-WDB,
ENFORCE                                                            C-06-07391-MJJ

Fenwick & West LLP
Attorneys At Law
San Francisco

1    & Ex. D [Deposition Testimony of Netbula's Rule 30(b)(6) Witness (Dongxiao Yue), Sept. 12,

2    2007 ("Netbula Depo."), at pp. 19:14-26:19 (emphasis added)].  Ms. Brillet then made the

3    following on-the-record statement:

> I have expressed an objection that Plaintiff has to the fact that Defendants are
> using documents that were produced in another case for the Sun case.  With that
> caveat, *I have agreed that the documents that pertain to contract and licensing
> would be allowed to be used in this case*.  I object to the use of any other
> documents because it's my understanding that the judge limited the issues for this
> particular initial phase of discovery to those two issues.

8    *Id.* [Netbula Depo. at pp. 26:19-27:3 (emphasis added)].[9]

9          Relying on this agreement placed on the record – that documents produced in *Symantec*

10   and pertaining to contract and licensing issues could be used, and need not be separately produced

11   in the *Sun* case – the deposition proceeded.  Defendants' counsel examined Dr. Yue, as a 30(b)(6)

12   witness, about five documents first produced in the *Symantec* case.  Two of those documents were

13   the 2000 and 2004 License Agreements with StorageTek, which are the core subject of the *Sun*

14   litigation.  The other three included nothing outside the scope of Netbula's stipulation: they

15   included merely materials that pertained to the contract and licensing issues that make up the

16   Initial Phase of the *Sun* proceeding.

17         Later in the deposition Netbula's counsel objected to questioning about a declaration

18   prepared by Netbula's damages expert in the *Symantec* case (purportedly in response to an

19   interrogatory) which set forth information regarding the history of Netbula's licenses and contract

20   prices.  *See* Motion to Intervene and Enforce p. 14:25-27.  But Dr. Yue's motion fails to tell the

21   whole story about this interchange.  When Netbula's counsel's objected, Defendants' counsel

22   specifically offered to refrain from this inquiry about pricing if Netbula would stipulate that

23   pricing "is not relevant to the existence or scope or validity of or enforceability of the

24   agreements."  *See* Declaration of Jedediah Wakefield in Support of Defendants' Consolidated

25   Opposition to Plaintiff Netbula, LLC's Motions to Substitute Parties and for Withdrawal of

26

27   [9] This stipulation by counsel distinguishes this case from those cited in Dr. Yue's brief.  *See*
     Motion to Intervene and Enforce pp. 10:24-11:8 (quoting and citing *On Command Video Corp. v.*
     *Lodgenet Entertainment Corp.*, 976 F. Supp. 917 (N.D. Cal. 1997); *Eagle Comtronics, Inc. v.*

28   *Arrow Communication Laboratories, Inc.*, 305 F.3d 1303, 1314 (Fed. Cir. 2002)).

OPPOSITION TO MOTIONS TO SUBSTITUTE,
FOR WITHDRAWAL, INTERVENTION, AND          -17-          CASE NOS.  C-06-0711-MJJ-WDB,
ENFORCE                                                               C-06-07391-MJJ

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    Counsel, and to Non-Party Dongxiao Yue's Motion to Intervene and Enforce Protective Order

2    ("Wakefield Opposing Decl.") ¶ 3 & Ex. A [Deposition of Netbula Rule 30(b)(6) Witness

3    (Dongxiao Yue), Sept. 12, 2007 ("Netbula Depo."), at p. 67:19-25].  Netbula's counsel asked to

4    speak to Dr. Yue regarding the proposed stipulation, and she did so during a subsequent break.

5    *Id.*  Thereafter, Netbula refused to agree that pricing information was not relevant in the Initial

6    Phase of the *Sun* case.  *Id.* [Netbula Depo. at pp. 68:1-15, 90:7-20].  Similarly, when questioning

7    on this subject resumed, Defendants again offered Netbula the opportunity to stipulate that

8    pricing of contracts did not matter for the Initial Phase, and again Netbula refused.  *Id.* [Netbula

9    Depo. at pp. 130:23-131:12].

10          Thus, Defendants' use of this document was entirely consistent with Netbula's stipulation

11   that "documents [produced in *Symantec*] that pertain to contract and licensing would be allowed

12   to be used in [the *Sun*] case."  When Netbula's counsel refused to stipulate that pricing was

13   irrelevant, she conceded that the expert declaration and two other documents were in fact relevant

14   to the Initial Phase.  Defendants' use of pricing information did not exceed the scope of use that

15   Plaintiff had stipulated could proceed.[10]

16          Given that Defendants' use occurred only within the scope of Netbula's on-the-record

17   stipulation, Dr. Yue's assertion of a violation of the protective order depends on the position that

18   the stipulation was ineffective.  Dr. Yue tries to repudiate that stipulation by seizing on the

19   requirement that a party's agreement to disclosure of Protected Materials beyond the scope of the

20   Protective Order must be reflected "in writing."  *See Symantec* Docket No. 56 [Protective Order

21   ¶¶ 7.1, 7.2, at pp. 7:28-8:2, 8:28-9:2].  However, Ms. Brillet's "spoken words" were set down on

22   the record by real-time transcription and recorded stenographically in a certified transcript; this is,

23   in fact, a writing.  *See* Fed. R. Evid. 1001 ("'Writings' . . . consist of letters, words, or numbers,

24   or their equivalent, set down by handwriting, typewriting, . . . magnetic impulse, mechanical or

25   electronic recording, or other form of data compilation."); *U.S. ex rel. King v. Hilton*, 503 F.

26

27   ---
     [10] In addition to the agreements and the expert declaration already discussed above, Defendants'
     counsel deposed Netbula on exactly one purchase order and one license agreement from the
28   *Symantec* case.  *See* Wakefield Opposing Decl. ¶ 2 & Ex. A [Netbula Depo. at pp. 138:21-139:14,
     215:1-19].

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    Supp. 303, 312 (D.N.J. 1979) (transcript of testimony is a writing under Fed. R. Evid. 1001).

2    There is particular irony in Dr. Yue's objection that counsel's stipulation on the record is

3    insufficient, given that the very purpose of a writing requirement is to avoid disputes about what

4    the parties agreed.  Here, there is a writing – the statement reflected in the transcript of Netbula's

5    Rule 30(b)(6) deposition, made by Netbula's counsel of record after consultation with and in the

6    presence of Dr. Yue, permitting counsel for the Defendants to proceed with questions regarding

7    documents produced in the *Symantec* litigation.

8         Moreover, even if a transcript were not a "writing," Netbula would be estopped from

9    asserting a breach of the Protective Order, since counsel for the Defendants justifiably relied on

10   Ms. Brillet's agreement to proceed as he did.  *See, e.g.*, *Martinez v. Bally's La., Inc.*, 244 F.3d

11   474, 475-76 (5th Cir. 2001) (statements made by plaintiff's counsel during deposition binding on

12   plaintiff where defendant's counsel relied on such statements in line of questioning); *Barbour v.*

13   *Medlantic Mgmt. Corp.*, 952 F. Supp. 857, 861 n.3 (D.D.C. 1997) (where "[i]n reliance upon the

14   plaintiff's stipulation," defendants refrained from calling witnesses at hearing, plaintiff was

15   estopped from revoking the agreement because "the parties' stipulation controls").

16        By contrast, irrelevant to the analysis are any objections that Dr. Yue himself made in the

17   course of Sun's deposition. *See, e.g.*, Motion to Intervene and Enforce p. 14:7-9 ("Dr. Yue is the

18   principal of Netbula.  During the deposition, he repeatedly and unequivocally raised objections to

19   SUN's use of Protected Material from the *Symantec* case.")  Sun was deposing *Netbula*, the only

20   Plaintiff in this case, and any objections by Netbula could be raised only through counsel.  As

21   discussed above, Netbula's counsel had already (and sensibly) agreed that documents from the

22   *Symantec* litigation could be used in the *Sun* case.

23   **B.    Dr. Yue's Motion Essentially Ignores the Relevant Authority Cited in the**
            **Opening Brief in Support of Modification of the Protective Order to Promote**
24          **Efficiency in Subsequent Litigation**

25        As just demonstrated, Defendants have not violated the Protective Order to this point.

26   Going forward, Defendants' Motion to Modify the Protective Order cited numerous authorities

27   endorsing modifications in exactly this type of case, where allowing access to prior discovery

28   would avoid unnecessary duplication of efforts by both by the Court and the parties.  *See*

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  *generally* Motion to Intervene and Modify Protective Order at pp. 10:15-17:12; *see also Beckman*

2  *Indus. v. International Ins. Co.*, 966 F.2d 470, 475-76 (9th Cir. 1992) ("Ninth Circuit precedent

3  strongly favors disclosure to meet the needs of parties in pending litigation."). Dr. Yue's Motion

4  to Enforce the Protective Order without modification largely ignores these authorities.

5        Instead, in describing a few ways that the *Sun* case and the *Symantec* cases are "different"

6  and "distinct," Dr. Yue's motion misses the overwhelming overlap of the issues. *See* Motion to

7  Intervene and Enforce the Protective Order at pp. 18:11-19:15. For example, he writes that

8  "[t]here is little probative value to use the Yue deposition in *Symantec* for the *SUN* litigation." *Id.*

9  at p. 18:18-20. But this ignores the fact that in the *Symantec* case, Dr. Yue testified at length

10  about the two agreements that are the crux of the *Sun* case, as well as many other issues that are

11  directly relevant to the issues in the *Sun* case. *See* Wakefield Opening Decl. ¶ 5 (describing

12  relevancy of numerous issues facts in *Symantec* for *Sun*).

13        Dr. Yue also attempts to draw a distinction between various versions of Netbula's

14  software, implying that the versions at play in *Symantec* aren't at issue in *Sun*. *See* Motion to

15  Intervene and Enforce the Protective Order at p. 19:2-6. But that distinction is unsupported by

16  the pleadings in either the *Sun* case or the *Symantec* case: both cases alleged infringement of a

17  single copyright, in Netbula's PowerRPC product created in 1996. *Sun* FAC ¶ 21 & Ex. A (basis

18  for Netbula's infringement claim is copyright in PowerRPC, registered as TX 6-211-063);

19  *Symantec* Docket No. 38 [First Amended Complaint ("*Symantec* FAC") ¶ 13 & Ex. A (basis for

20  Netbula's infringement claim is same copyright in PowerRPC, registered as TX 6-211-063)].

21  Where the same copyright registration is relied upon, issues such as copyrightability and

22  originality of the copyright work, validity of registration, and value and fungibility of the

23  copyrighted work will obviously overlap.

24        Likewise, where Netbula claims damages based on failure to pay its purported

25  "customary" pricing, the same history of Netbula's pricing and licensing practices is relevant to

26  determination of a reasonable royalty in both cases. Indeed, Netbula earlier agreed as much in its

27  motion to have the *Sun* and *Symantec* cases related. *See* BindView Docket No. 66 [Administrative

28  Motion to Consider Whether Cases Should Be Related at pp. 2:23-3:8 (common questions of law

1    and fact including the need to determine "a per copy license fee for Netbula's RPC runtime

2    license from the year 2000 to 2006")].

3        Whatever distinctions might exist, Dr. Yue has no answer to the fact that the two cases

4    involve substantial overlap of issues.  Granting the motion to modify would substantially

5    streamline any litigation surviving the pending summary judgment motion in the *Sun* case.  There

6    is no reason to retake all the depositions, reargue production of source code (which took almost

7    eight months for Netbula to deliver) and repeat the motions to compel.  The history of Netbula's

8    prior recalcitrance in discovery only reinforces the wisdom of avoiding the same waste of

9    resources in the *Sun* action.  *See Symantec* Docket No. 303 [Defendants' Motion to Intervene and

10   Modify Protective Order at p. 2:24-3:6 (describing Netbula's discovery conduct in the *Symantec*

11   case)].

12       Finally, there is no cause to allow Netbula to shield its prior discovery responses from use

13   to refute and impeach Netbula's present positions.  Netbula no doubt wants to reformulate its

14   testimony and avoid the admissions and inconsistencies exposed in the *Symantec* case.  For

15   example, Netbula would like to escape the facts compiled and relied upon by its prior expert as to

16   Netbula's pricing during the period relevant to this litigation.  *See* Wakefield Opposing Dec. ¶ 2

17   & Ex. A [Netbula Depo. at pp. 130:9-132:4].  But the fact that testimony in a prior case may be

18   damaging in this one does not render the prior testimony irrelevant.  Just the opposite:  the

19   interests of justice require public access to prior court proceedings.  The availability of prior

20   testimony is all the more necessary where Defendants were induced to refrain from re-examining

21   Dr. Yue on topics that had been the subject of depositions in the *Symantec* case by reliance on the

22   availability of that testimony in the *Sun* proceeding.  Wakefield Opening Decl. ¶ 6.

23       Netbula's stipulation to date has approved of use of the *Symantec* discovery materials only

24   for the Initial Phase of these proceedings—for contract and licensing issues.  As this case

25   continues, those materials should be available as to all issues in this litigation.  For these reasons,

26   Dr. Yue's Motion to Enforce the existing protective order should be denied.

27       **C.    Dr. Yue's Purported Confidentiality Concerns Do Not Change the Result**

28       Dr. Yue's concerns regarding confidentiality as against Sun also do not entitle him to

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    relief, for at least two different reasons.

2         First, even if the Court were to accept the legitimacy of the Assignment from Netbula to

3    Dr. Yue, it not follow that Dr. Yue now has standing to assert confidentiality concerns over

4    documents that remain Netbula's property.  The copyrights purportedly assigned to Dr. Yue

5    consist of a "bundle of rights" limited to those set forth in Section 106 of the Copyright Act.  *See,*

6    *e.g.*, *Effects Associates, Inc. v. Cohen*, 908 F.2d 555, 559 (9th Cir. 1990); 4-13 *Nimmer on*

7    *Copyright,* § 13.03[A][2][b], at 13-62 (rev. 2006) ("The Copyright Act sets forth in Section 106

8    the rights of copyright owners.").  Section 106 does not contain any right to maintain the

9    confidentiality of copyrighted works, much less confidentiality of lawsuits about them.  *See*

10   17 U.S.C. § 106.  Netbula itself has made no motion to enforce the protective order, nor filed any

11   opposition to the requested modification of the protective order (presumably because Netbula is

12   still represented by counsel who knows better).

13        Second, the fact that a party chooses to sue a purported "direct competitor" is not (as

14   Dr. Yue suggests) a basis for denying discovery to the party sued.  *See* Motion to Intervene and

15   Enforce pp. 16:27-17:25.  Rather, it is a reason to create tiered confidentiality designations, as

16   already proposed by Defendants.  *See* Docket No. 305 [Proposed Order re Motion to Intervene

17   and Modify Protective Order]; *see also Beckman*, 966 F.2d at 475 (modifying protective order to

18   allow use in subsequent case, noting that "[I]ntervenors already agreed to use the information in

19   accordance with protective orders in the [subsequent] actions.").

20        Dr. Yue suggests that Defendant Sun Microsystems, Inc. could have already "gained

21   access" to Netbula's confidential information, speculating about "how much Protected Material

22   has been transmitted to SUN, and whether SUN employees (including in-house lawyers) accessed

23   [his] source code or other Protected Material from the *Symantec* case."  *See* Motion to Intervene

24   and Enforce p. 17:16-25.  Dr. Yue has asserted no basis for these charges.  Nor could he.  It is

25   simply and totally inaccurate to suggest that Sun (or any other Defendant) has been provided with

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   any materials marked "confidential" by Netbula in the *Symantec* litigation.[11]  *See* Wakefield

2   Opposing Decl. ¶ 3 (attesting that no confidential materials have been provided to clients).[12]

3           Dr. Yue's speculation therefore is simply baseless.  Any competitively sensitive materials

4   has been and will be treated as Attorneys Eyes Only, as is customary in this jurisdiction.

5   Dr. Yue's unfounded conjecture about what might have occurred disguises what actually

6   occurred – (1) a deposition covering the two StorageTek agreements at issue in the *Sun* case,

7   which had already been submitted not under seal in the *Sun* case, and thus had been

8   misdesignated in any event, *see* Section III.A, *supra*, and (2) after Netbula's counsel's stipulation

9   to the continued use of *Symantec* documents relevant to the contract issues, deposition inquiries

10  about three additional documents, all of which addressed an issue Netbula conceded was relevant

11  to the Initial Phase:  pricing.

12  / / /

13  / / /

14  / / /

15  / / /

16  / / /

17  / / /

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

---

18  [11] Netbula is also wrong when it suggests that IBM has gained access to Netbula's confidential
19  documents. IBM's counsel, David Eiseman, was present at the 30(b)(6) deposition of Netbula.
    Although Netbula's counsel initially raised concerns about IBM's counsel gaining access to
20  documents, it withdrew those concerns upon discussion with opposing counsel and the realization
    that IBM was entitled to these materials in any event. Wakefield Opening Decl. ¶ 2 [Netbula
21  Depo. at p. 29:12-14 ("What I see regardless, either way, then IBM would then propound the
    same discovery that was in the initial case anyway.")]. Again, Netbula's counsel's agreement
22  was crystal clear on this point:

23          MR. WAKEFIELD:  So I want to make sure we don't have a problem with this
                document, a copy of it, being in front of IBM's counsel.
24
            MS. BRILLET:  Well, there will be a protective order in place.  As long as IBM
25              agrees to abide by that protective order pending signature, yes, that's fine.

26          MR. EISEMAN:  We agree.

27  Wakefield Opposing Decl. ¶ 2 & A [Netbula Depo. at pp. 20:24-21:5].

28  [12] The sole exception is any material, such as the StorageTek Agreements, as to which Sun
    already had preexisting access, completely independent of the *Symantec* litigation.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that Netbula's Motion for Substitution of Parties be denied, that Netbula's Motion for Withdrawal of Counsel be granted only on the conditions described above and set forth in Defendants' Proposed Order, and that Dr. Yue's Motion to Intervene and Enforce Protective Order be denied as well.

Dated:   October 30, 2007                    FENWICK & WEST LLP


By:_____ /s/ LAURENCE F. PULGRAM_____
                      Laurence F. Pulgram

Attorneys for STORAGE TECHNOLOGY
CORPORATION, SUN MICROSYSTEMS, INC.,
EMC CORPORATION, and DARDEN
RESTAURANTS, INC.