1  VONNAH M. BRILLET (SBN 226545)
2  **LAW OFFICES OF VONNAH M. BRILLET**
   2777 ALVARADO ST., SUITE E
3  SAN LEANDRO, CA 94577
   Telephone:     (510) 351-5345
4  Facsimile:     (510) 351-5348
   E-Mail:        BrilletLaw@yahoo.com
5
6  Attorneys for Plaintiff
   NETBULA, LLC
7
8                    UNITED STATES DISTRICT COURT
9                   NORTHERN DISTRICT OF CALIFORNIA
10
   NETBULA, LLC., a Delaware limited liability          Case No. C06-07391-MJJ
11 company,
12                                                       **DECLARATION OF DONGXIAO YUE IN**
              Plaintiff,                                 **SUPPORT OF PLAINTIFF'S MOTION**
13                                                       **TO SUBSTITUTE PARTY AS TO THE**
        v.                                               **COPYRIGHT CLAIM**
14
15 STORAGE TECHNOLOGY                                    Date: November 20, 2007
   CORPORATION, et al.,                                  Time: 9:30 a.m.
16                                                       Dept.: Courtroom 11
                                                         Judge: Honorable Martin J. Jenkins
17            Defendants.
18
19 I, DONGXIAO YUE, declare:
20
21 1.      I have personal knowledge of the facts I am about to state and, if called on to do so, I could
22 competently testify to those facts.
23 2.      I submit this declaration in support of Netbula, LLC's Motion to Substitute Party as to the
24 copyright infringement claim.
25 3.      From 1994 to July 1996, as an individual, I had been developing a software technology
26 which I later named and trademarked "PowerRPC". PowerRPC was developed for UNIX,
27 Microsoft Windows NT and Windows 95 platforms.  I also developed software called ONC RPC
28

                                        -1-
YUE DECLARATION IN SUPPORT OF
                                                                                MOTION TO SUBSTITUTE PARTY

1    for Microsoft Windows NT/95, which incorporated most of the program files and modules in

2    PowerRPC.

3    4.      In July 1996, I founded Netbula, LLC, a Delaware Limited Liability Company, to market

4    the aforementioned RPC software that I was developing at the time. Based on the records from the

5    state of Delaware, Netbula, LLC was registered on July 24, 1996.  About two months later,

6    Netbula offered the RPC products for licensing.

7    5.      I did not assign or transfer the copyrights in my earlier works created before July 24, 1996

8    to Netbula, LLC.

9    6.      A couple of months ago, Defense counsel raised an issue about Netbula's copyright

10   ownership. They said that from July 1996 to the publication date on the 1996 copyright was less

11   than two months. Although I did write substantial amount of code after Netbula was established, a

12   lot of code had been written by me before Netbula was formed. Such pre-Netbula code was

13   incorporated in the software that was copied by defendants in the instant case.

14   7.      In August or September 2007, I telephoned the copyright office. I explained the situation

15   and sought advice.

16   8.      On September 26, 2007, Netbula executed a written copyright assignment, transferring all

17   exclusive rights in all Netbula PowerRPC and Netbula ONC RPC created before January 1, 2007

18   back to Dr. Dongxiao Yue -- me. Among the copyright rights I own is the 2004 version of Netbula

19   RPC, which was allegedly infringed by StorageTek, but it is not part of the instant action. In

20   return, I granted Netbula licenses to certain intellectual property rights that I personally own.

21   9.       On October 25, 2007, I emailed Mr. Laurence Pulgram and other attorneys the PDF files

22   for the Motion to Intervene and for Injunctive Relief I filed on October 22, 2007, and sought a

23   confirmation of the receipt of the message. Immediately, I received an auto-response from Mr.

24   Wakefield indicating the PDF files had been delivered.  I then emailed back to all parties, stating:

-2-

1    I received an auto-response from Mr. Wakefield, indicating the
2    email is working. No further confirmation is necessary.

3    10.    Unexpectedly, Mr. Pulgram responded to me with a lengthy email. Mr. Pulgram wrote, in

4    part,

5            In any event, we believe that because you are not a party to the
6            Netbula v. Storage Tek matter, because Netbula has not moved for a
             preliminary injunction, and because your motion is almost a year
7            after the unsuccessful request for a TRO, it is not appropriate to
             require Defendants to respond to such a major request for
8            substantive relief--for a preliminary injunction--until after the
             propriety of your participation in this action is first determined. I
9            would also note that, apart from your reliance on an asserted
             presumption of irreparable harm (which is not applicable here), you
10           have provided no explanation of any injury that you would face
             from delaying the hearing on the PI motion until after your
11           participation in this case has been determined.

12           Accordingly, we request that you stipulate with Defendants that
13           your motion to intervene be heard on November 27 (notwithstanding
             improper service), but that the motion for preliminary injunction be
14           scheduled to be briefed and heard only if you are then permitted to
             intervene or substitute. Please advise by close of business today if
15           you are agreeable to this procedure.

16           I would also note that, as you no doubt anticipated, we oppose your
17           request to intervene and your request to substitute in as a party. We
             also oppose Ms. Brillet's request to withdraw as counsel prior to
18           determination of the long-scheduled summary judgment motion that
             is to be heard on November 27 pursuant to the Court's scheduling
19           order. We do not believe that it is appropriate for Netbula's rights to
             be pursued other than through counsel of record (as required by
20           law), and we do not believe that a purported assignment of rights to
             you personally, a year into the litigation, changes those result. Ms.
21           Brillet remains counsel of record, and her opposition to the summary
             judgment motion on behalf of Netbula is due in the ordinary course.
22

23

24   11.    Subsequently, I exchanged numerous emails with Mr. Pulgram. **Exhibit A** is one such

25   string of email exchanges between Mr. Pulgram and me, with the most recent email at the top.

26   Mr. Pulgram asked me to delay the motion for injunctive relief scheduled for November 27, 2007.

27   I declined to do so. I asked Mr. Pulgram to withdraw Defendants' motion for summary judgment

28

-3-

for being untimely.

12.     In an email attached as **Exhibit B**, I asked Mr. Wakefield to inform the Court about StorageTek's own statements about the pre-paid license and license usage count.

13.     On October 31, 2007, I received an email message from Mr. Laurence Pulgram which contained a warning against Netbula's use of Sun StorageTek Legal Department's letter on the prepayment license terms. Attached **Exhibit C** is a copy of Mr. Pulgram's email directly copied to me. Previously, Mr. Pulgram sent an email to Ms. Brillet alleging the document was confidential, which was forwarded to me per Mr. Pulgram's request.

14.     At my deposition on June 28-29, 2007 in the BindView case, defense counsel Jedediah Wakefield spent substantial amount of time questioning me again and again on a blog entry I wrote without showing me the live content of the blog.  Mr. Wakefield's question required me to say whether or not certain judge was a "kowtowing dude." I believed that either way my answer would be inappropriate because the question itself was improper. I declined to answer that question.

15.     On November 3, 2007, I briefly reviewed Defendants' Opposition to Netbula's Motion to Substitution Party as to the copyright claim. I noticed that defense counsel alleged that I labeled an Honorable judge in the Northern District as a "kowtowing dude". I immediately emailed Mr. Pulgram and other attorneys, stating that defendants' allegation is "entirely false." Attached **Exhibit D** is a true copy of my email to Mr. Pulgram and other attorneys regarding this issue.

16.     On October 26, 2007, I informed Mr. Pulgram that I was planning to asserted additional claims against StorageTek and wanted to know if Defendants could stipulate to my substitution in the instant action as to the copyright claim, so I could amend the complaint instead of filing a new lawsuit. Mr. Pulgram informed me that he would confer with his clients and respond to me the next week.

17.    On October 29, 2007, Mr. Pulgram sent me an email declining to stipulate to the

substitution of party along with a long advice. The following is a small portion of his email

message:

> We therefore suggest that you consider the consequences very
> seriously before filing such inappropriate pleadings--and obtain the
> advice of qualified counsel before you do so. Magistrate Judge
> Chen's ruling should have demonstrated that filing unwarranted
> motions is a serious matter and has very real consequences.
>
> I realize, of course, that I cannot keep you from filing with the Court
> whatever it is that you choose to file. It only costs a few hundred
> dollars to commence a lawsuit that could cost thousands to defend,
> and which Sun would seek to recover from you personally
> thereafter.

18.    On October 31, 2007, Mr. Pulgram offered me additional advice, he wrote ,

> If you wish to serve a new summons and complaint on Sun (an
> action that I have recommended against and reiterate can cause you
> personal liability), you will need to follow the appropriate
> procedures for accomplishing service of process.

I declare under penalty of perjury of the laws of the State of California and the federal laws

that forgoing declaration is true and correct to the best of my knowledge. This declaration was

executed in San Leandro, California, on November 5, 2007.

DONGXIAO YUE

Case No. C06-07391-MJJ                                        YUE DECLARATION IN SUPPORT OF
                                                             MOTION TO SUBSTITUTE PARTY

# EXHIBIT A

  

**RE: Re: RE: PDF files for Dongxiao Yue's motion for injunctive relief**

**Sender:**    "Laurence Pulgram" <**LPulgram@Fenwick.com**>

**Recipient:**    <**ydx@netbula.com**>

**Copy to:**    <**brilletlaw@yahoo.com**>, "Jedediah Wakefield" <**JWakefield@Fenwick.com**>,
"Albert Sieber" <**ASieber@Fenwick.com**>, "Liwen Mah" <**LMah@fenwick.com**>,
<**yuedongxiao@gmail.com**>, <**davideiseman@quinnemanuel.com**>

**Time:**    Thu, 25 Oct 2007 17:04:14 -0700

Dear Mr. Yue:

Your claim that a single declaration, filed a few hours after midnight,
precludes consideration of the summary judgment motion that was timely
filed, and that you had been aware was coming for eight months, is
untenable.  The "25 pages" of materials in the declaration consisted of
two pages of text, the two underlying contracts already of record in
this action, two emails produced to Netbula long ago, and blank page
separators.  I cannot imagine that you would claim prejudice, but if you
do, I would be happy to afford you nine additional hours to submit a
declaration.  Sun will not withdraw its motion.

Laurence Pulgram

-----Original Message-----
From: **ydx@netbula.com** [mailto:ydx@netbula.com]
Sent: Thursday, October 25, 2007 2:48 PM
To: Laurence Pulgram
Cc: ydx@netbula.com; brilletlaw@yahoo.com; Jedediah Wakefield; Albert
Sieber; Liwen Mah; yuedongxiao@gmail.com; **davideiseman@quinnemanuel.com**
Subject: Re: Re: RE: PDF files for Dongxiao Yue's motion for injunctive
relief

Dear Mr. Pulgram,

I found it hard to believe that you were asking me to withdraw or delay
a motion for injunctive relief which has already been scheduled by the
court staff. That is simply not something I can do.

However, I do suggest SUN withdraw its untimely motion for summary
judgment. I really don't see how defendants can argue around that
untimeliness -- Mr. Melnick's declaration was quite material to SUN's
motion , it is 25 pages. SUN filed it after a deadline SUN had known for
many months.

Please let me know if SUN stipulate to withdraw its untimely motion for
summary judgment motion. SUN's refusal to withdraw that motion may be my
basis for a motion for sanctions.

Kind regards,

Don Yue

------------------------
"Laurence Pulgram" <**LPulgram@Fenwick.com**>:
Mr. Yue,

So you are refusing the proposed stipulation?

Laurence Pulgram

Sent from my GoodLink synchronized handheld (www.good.com)

  -----Original Message-----
From:      ydx@netbula.com [mailto:ydx@netbula.com]
Sent:      Thursday, October 25, 2007 02:13 PM Pacific Standard Time
To:        Laurence Pulgram
Cc:        ydx@netbula.com; brilletlaw@yahoo.com; Jedediah Wakefield;
Albert Sieber; Liwen Mah; yuedongxiao@gmail.com;
davideiseman@quinnemanuel.com; brilletlaw@yahoo.com;
yuedongxiao@gmail.com
Subject: Re: RE: PDF files for Dongxiao Yue's motion for
injunctive relief

Dear Mr. Pulgram,

Whether my motion to intervene and for injunctive relief was proper is
to be determined by the court. I certainly anticipated your oppositions.

As for the timeliness of my motion, I believe we should check against
the local rules -- my motion was filed on Oct 22, 2007, 36 days before
the hearing. Timeliness is not an issue here. Your objection seems to be
one on the manner of service. You can certainly raise that in your
opposition, if any.

I noticed that Mr. Melnick's declaration in support of SUN's summary
judgment motion was filed on October 24, 2007. This makes SUN's motion
plainly untimely, and should be subject to Civil Local Rule 1-4. Judge
Jenkins denied Netbula's motion for summary judgment motion for being
untimely in the Netbula v. BindView case. I doubt the Judge will apply
the rule differently to SUN.

There may be difference of opinion on various issues, I believe it would
not be productive for us to argue such matters out of court.

Kind regards,

Don Yue

------------------------
"Laurence Pulgram" :
Mr. Yue,

Your e-mail below was received.

We continue to believe that your entire filing of the Motion to
Intervene and for Preliminary Injunction was untimely.  When you do not
efile (which results in immediate electronic service), you must serve in
accordance with the rules, which requires additional days be added for
any filing other than by hand delivery.  You did not comply.  We
received your entire filing only two days after the due date for hand
service.

In any event, we believe that because you are not a party to the Netbula
v. Storage Tek matter, because Netbula has not moved for a preliminary
injunction, and because your motion is almost a year after the
unsuccessful request for a TRO, it is not appropriate to require
Defendants to respond to such a major request for substantive
relief--for a preliminary injunction--until after the propriety of your
participation in this action is first determined.  I would also note
that, apart from your reliance on an asserted presumption of irreparable
harm (which is not applicable here), you have provided no explanation of
any injury that you would face from delaying the hearing on the PI

motion until after your participation in this case has been determined.
Accordingly, we request that you stipulate with Defendants that your
motion to intervene be heard on November 27 (notwithstanding improper
service), but that the motion for preliminary injunction be scheduled to
be briefed and heard only if you are then permitted to intervene or
substitute. Please advise by close of business today if you are
agreeable to this procedure.

I would also note that, as you no doubt anticipated, we oppose your
request to intervene and your request to substitute in as a party. We
also oppose Ms. Brillet's request to withdraw as counsel prior to
determination of the long-scheduled summary judgment motion that is to
be heard on November 27 pursuant to the Court's scheduling order. We
do not believe that it is appropriate for Netbula's rights to be pursued
other than through counsel of record (as required by law), and we do not
believe that a purported assignment of rights to you personally, a year
into the litigation, changes those result. Ms. Brillet remains counsel
of record, and her opposition to the summary judgment motion on behalf
of Netbula is due in the ordinary course.

The foregoing is without waiver of any rights, including our rights to
assert that the motion for a preliminary injunction is sanctionable.

Please advise whether or not you are agreeable to the stipulation
proposed above for the orderly consideration of the issue of
intervention first, and preliminary injunction only if you thereafter
become a party.

Sincerely,

Laurence Pulgram
Fenwick & West LLP
555 California Street, 12th Fl.
San Francisco, CA 94104
Phone 415-875-2390
Fax 415-281-1350
**lpulgram@fenwick.com**

-----Original Message-----
From: **ydx@netbula.com** [mailto:ydx@netbula.com]
Sent: Thursday, October 25, 2007 11:46 AM
To: **ydx@netbula.com**
Cc: Laurence Pulgram; Jedediah Wakefield; Albert Sieber; Liwen Mah;
yuedongxiao@gmail.com; brilletlaw@yahoo.com; **yuedongxiao@gmail.com**
Subject: Re: PDF files for Dongxiao Yue's motion for injunctive relief

Dear Counsel,

I received an auto-response from Mr. Wakefield, indicating the email is
working. No further confirmation is necessary.

Kind regards,

Don Yue

------------------------
ydx@netbula.com:

Dear Mr. Pulgram, Mr. Wakefield, Mr. Mah and Mr. Sieber,

I just received a forwarded message from Ms. Brillet a few minutes ago
in which Mr. Pulgram allege that I did not serve you the papers I filed
with the court on October 22, 2007.

As shown in the attached certificate of service, I mailed you the copies
of the documents on October 22, 2007 (via priority mail). Also on

October 22, 2007, I emailed MJJPDf@cand.uscourts.gov the PDF files for the documents I filed on that day and I received acknowledgment of the receipt from the court stating the PDFs were "forwarded to the appropriate chambers for processing." Since the case is a e-filing case, service should be done via the ECF system. Additionally, October 22, 2007 was 36 days before the hearing date, I gave defendants more time than the required 35-day lead time.

I also noticed that defendants filed their summary judgment motion at mid-night of October 23, 2007. One of the documents was filed on October 24, 2007, which was 34 days before the hearing date and was untimely. I reserve the right to strike that document as untimely and strike all documents reference that untimely document.

Mr. Pulgram alleged that I did not serve him the documents on October 23, 2007 at the end of Michael Abramovitz deposition. First, I have no obligation to serve defendants multiple times (I don't have extra hard copies anyway). Second, I came to the deposition when it was already finished -- quite unexpectedly, and the defendants were asking me to stipulate to the use of  certain documents marked as CONFIDENTIAL in my deposition -- with the court reporter being held up and the time was about 30 minutes past lunch time. Defendants provided no prior notice for their planned use of the documents -- which was questionable by itself. I was totally unprepared for what defendants were trying to do, my attention was primarily on defendants' last minute request to use of those documents for their summary judgment motions to be filed that night.

After the stipulation on the documents was made and the parties concluded the deposition, I immediately went back to check what those exhibits really were and to check Netbula's TRO papers, which Mr. Pulgram claimed to have included the 2004 agreement. When I came back out, Mr. Pulgram already left.

I emailed all of you the papers for my motion to enforce protective order in the BindView matter on October 16, 2007, but I received no response from any of you, making me wonder whether the email communication channel was working. In any case, my contact information is available on the court docket, you could have simply emailed me or called me.

As a courtesy, I am attaching the PDF documents with this email.

Please respond to confirm yourself receipt of this message. If I do not receive a confirmation by 1:00 pm, I will telephone Mr. Wakefield just to verify if you received this email.

Kind regards,

Don Yue
Intervenor in the Netbula v. StorageTek case

-------------------

Attachment: c06-07391-mjj-yue-motion-for-injunction-cert-of-svc.pdf
Content-type: application/pdf
Content-transfer-encoding: base64
Content-disposition: attachment;
filename="c06-07391-mjj-yue-motion-for-injunction-cert-of-svc.pdf"

Attachment: c06-07391-MJJ-Yue-motion-for-preliminary-injunction.pdf
Content-type: application/pdf
Content-transfer-encoding: base64
Content-disposition: attachment;
filename="c06-07391-MJJ-Yue-motion-for-preliminary-injunction.pdf"

```
Attachment: c06-07391-mjj-Yue-motion-for-preliminary-injunction-decl.pdf
Content-type: application/pdf
Content-transfer-encoding: base64
Content-disposition: attachment;
filename="c06-07391-mjj-Yue-motion-for-preliminary-injunction-decl.pdf"

Attachment:
c06-07391-MJJ-Yue-motion-for-preliminary-injunction-decl-ex-A-J.pdf
Content-type: application/pdf
Content-transfer-encoding: base64
Content-disposition: attachment;
filename="c06-07391-MJJ-Yue-motion-for-preliminary-injunction-decl-ex-A-
J.pdf"

Attachment:
c06-07391-MJJ-Yue-motion-for-preliminary-injunction-decl-ex-K-S.pdf
Content-type: application/pdf
Content-transfer-encoding: base64
Content-disposition: attachment;
filename="c06-07391-MJJ-Yue-motion-for-preliminary-injunction-decl-ex-K-
S.pdf"

Attachment: c06-07391-MJJ-Yue-motion-for-preliminary-injunction-PO.pdf
Content-type: application/pdf
Content-transfer-encoding: base64
Content-disposition: attachment;
filename="c06-07391-MJJ-Yue-motion-for-preliminary-injunction-PO.pdf"
```

-------------------
-------------------------------------------

IRS Circular 230  Disclosure:  To ensure compliance with requirements
imposed by the IRS, we inform you that any U.S. federal tax advice in
this communication (including attachments) is not intended or written by
Fenwick & West LLP to be used, and cannot be used, for the purpose of
(i) avoiding penalties under the Internal Revenue Code or (ii)
promoting, marketing, or recommending to another party any transaction
or matter addressed herein.
-------------------------------------------
ATTENTION:
The information contained in this message may be legally privileged and
confidential.  It is intended to be read only by the individual or
entity to whom it is addressed or by their designee. If the reader of
this message is not the intended recipient, you are on notice that any
distribution of this message, in any form, is strictly prohibited.

If you have received this message in error, please immediately notify
the sender and/or Fenwick & West LLP by telephone at (650) 988-8500 and
delete or destroy any copy of this message.

-------------------

-------------------

# EXHIBIT B



**Dongxiao Yue <yuedongxiao@gmail.com>**

# Re: SUN's motion for summary judgment

1 message

---

**ydx@netbula.com <ydx@netbula.com>**                    **Fri, Oct 26, 2007 at 10:46 AM**
To: Laurence Pulgram <LPulgram@fenwick.com>
Cc: ydx@netbula.com, brilletlaw@yahoo.com, Jedediah Wakefield <JWakefield@fenwick.com>, Albert Sieber
<ASieber@fenwick.com>, Liwen Mah <LMah@fenwick.com>, yuedongxiao@gmail.com,
davideiseman@quinnemanuel.com

Dear Mr. Wakefield, Mr. Pulgram, Mr. Mah and Mr. Sieber,

I did a brief review of your motion for summary judgment in the SUN case, not withstanding the fact that your
motion is procedurally untimely, your motion CONCEALED key facts and admissible evidence pertinent to the
infringement claim.

Regarding whether the 2000 Netbula-StorageTek agreement (2000 Agreement) and the 2004 Netbula-
StorageTek agreement are for pre-paid licenses, you failed to inform the court about the admissions or prior
inconsistent statements by StorageTek.

In the December 16, 2005 letter to Netbula, a StorageTek lawyer named Carmel C. Gill, wrote:

"As you may be aware, both engineering and marketing responsibilities for
the LibAttach software and its predecessor products have changed hands within StorageTek multiple times
over the course of the past five years, which explains the misunderstandings and miscommunications
regarding the Netbula license restrictions. Also, as Mike Melnick informed Netbula back in 2000, StorageTek
systems are set up to track royalties on a going-forward basis, not on a pre-paid basis. Mike Melnick
suggested that the parties enter into a straight royalty-type agreement, but Netbula declined to do so, which,
in part, accounts for the situation today."

Lisa Rady, the Program Manager for LibAttach wrote in March 2004:

"As you can see, we have exceeded the 1,000 distributions that we had right to with Netbula…. I think it is
obvious that engineering has not and did not monitor the distributions on this product."

In response, Mike Melnick wrote:

"The agreement is specific to platform (Win NT and 95/98 platforms) types of Netbula software (PowerRPC
SDK). This concerns me greatly as we have already told them we are no longer shipping it with our product."

In June 2005, Holly Wagner wrote:

"The SAP query I ran this morning shows 2,386 models shipped. This number is low due to the fact that the
query does not have the capability of pulling the client feature quantities that were released in November of
last year."

In response, Mike Melnick wrote:

"The number that Holly has provided and thought it may be low causes quite a problem for you. We have only
made 2 purchases for the rights to distribute a total of 2000 licenses."

The above is just a few examples of admissions by StorageTek.

As you know, StorageTek (Mike Melnick) drafted some key parts of the 2000 Agreement (the payment terms).

The interpretation of the agreement will be construed against the drafter. It is thus important for you, as officers of the Court, to fully inform the court about such admissions and prior inconsistent statements so the Court can properly rely on your representations to make a ruling, that will become the law of the United States. You, as officers of the Court, are duty-bound to tell the whole truth to the Court.

As I indicated in my previous emails, I will move to strike Mike Melnick's declaration which was filed on October 24, 2007 (34 days before hearing date) as untimely, and move to strike any document filed by defendants referencing that declaration.

I suggest you write a letter to Judge Jenkins to inform the Court about your omission of key facts. Your refusal to do so may be served as evidence that you intentionally concealed the above and other facts from the Court.


Kind regards,

Don Yue




-------------------

# EXHIBIT C



**Communications From Dr. Yue**

| | |
|---|---|
| **Sender**: | "Laurence Pulgram" <**LPulgram@Fenwick.com**> |
| **Recipient**: | <**brilletlaw@yahoo.com**> |
| **Copy to**: | <**stacymonahan@quinnemanuel.com**>, <**davideiseman@quinnemanuel.com**>, "Jedediah Wakefield" <**JWakefield@Fenwick.com**>, "Albert Sieber" <**ASieber@Fenwick.com**>, "Liwen Mah" <**LMah@fenwick.com**>, <**ydx@netbula.com**> |
| **Time**: | Wed, 31 Oct 2007 08:47:00 -0700 |

Dear Ms. Brillet,

We are continuing to receive e-mails directly from your client Netbula's principal, apparently with respect to Defendants' pending motion for summary judgment to which Dr. Yue is not a party. We do not intend to address Dr. Yue with respect to such matters, as Netbula is represented by counsel.

However, Dr. Yue's reference below to a December 16, 2005 letter from Sun threatens, for a second time, to breach the express agreement of confidentiality that Sun required before the settlement discussions of which it is a part. His reference to his desire to use extrinsic evidence to interpret the license agreements has also previously been addressed. This suggests that you may not have transmitted to him the attached prior response, as we requested.

Please advise Dr. Yue to stop contacting us directly about matters regarding which he is not individually a party.

Regards,

Laurence Pulgram

-----Original Message-----
From: **ydx@netbula.com** [**mailto:ydx@netbula.com**]
Sent: Tuesday, October 30, 2007 11:49 PM
To: Laurence Pulgram
Cc: ydx@netbula.com; brilletlaw@yahoo.com; stacymonahan@quinnemanuel.com; Jedediah Wakefield; Albert Sieber; Liwen Mah; yuedongxiao@gmail.com; davideiseman@quinnemanuel.com
Subject: Re: RE: Netbula's motion for substitution of party as to the copyright claim

Dear Messrs. Pulgram, Wakefield, Eiseman, Sieber and Mah,

The basic concept of copyright is that it is a personal property, and I am the owner of the property in dispute. I have the right to protect that property.

Anyway, I renew my request to the defense lawyers here, as officers of the court, to tell the whole truth in your representation to the Court -- now that I am involved, I will make sure that the relevant facts are presented to the trier of fact. You should do the same, as you have a duty to the Court. If you do not do it soon, I may have to file an emergency motion for an integrity hearing.

Some of the relevant facts not mentioned in Mr. Wakefield's brief are listed below:

In the December 16, 2005 letter to Netbula, a StorageTek lawyer named Carmel C. Gill, wrote:

"As you may be aware, both engineering and marketing responsibilities for the LibAttach software and its predecessor products have changed hands within StorageTek multiple times over the course of the past five years, which explains the misunderstandings and miscommunications regarding the Netbula license restrictions. Also, as Mike Melnick informed Netbula back in 2000, StorageTek systems are set up to track royalties on a going-forward basis, not on a pre-paid basis. Mike Melnick suggested that the parties enter into a straight royalty-type agreement, but Netbula declined to do so, which, in part, accounts for the situation today."

Lisa Rady, the Program Manager for LibAttach wrote in March 2004:

"As you can see, we have exceeded the 1,000 distributions that we had right to with Netbula…. I think it is obvious that engineering has not and did not monitor the distributions on this product."

In response, Mike Melnick wrote:

"The agreement is specific to platform (Win NT and 95/98 platforms) types of Netbula software (PowerRPC SDK). This concerns me greatly as we have already told them we are no longer shipping it with our product."

In June 2005, Holly Wagner wrote:

"The SAP query I ran this morning shows 2,386 models shipped. This number is low due to the fact that the query does not have the capability of pulling the client feature quantities that were released in November of last year."

In response, Mike Melnick wrote:

"The number that Holly has provided and thought it may be low causes quite a problem for you. We have only made 2 purchases for the rights to distribute a total of 2000 licenses."

The above is just a few examples of admissions by StorageTek.

As you know, StorageTek (Mike Melnick) drafted some key parts of the 2000 Agreement (the payment terms). The interpretation of the agreement will be construed against the drafter. It is thus important for you, as officers of the Court, to fully inform the court about such admissions and prior inconsistent statements so the Court can properly rely on your representations to make a ruling, that will become the law of the United States. You, as officers of the Court, are duty-bound to tell the whole truth to the Court.

As I suggested in my previous emails, you should write a letter to Judge Jenkins to inform the Court about your omission of key facts. Your refusal to do so may be served as evidence that you intentionally concealed the above and other facts from the Court.

Kind regards,

Don Yue


-----------------------
"Laurence Pulgram" <LPulgram@Fenwick.com>:
Dear Mr. Yue,

I am responding to you individually, and copying Netbula's counsel, because I understand that you are threatening to file a new action in your individual capacity, in which you are, and intend to remain, unrepresented by counsel.  If I am incorrect in these assumptions, I request that you and/or Ms. Brillet advise me.

As promised, this is my response to your request for a stipulation that you be allowed to join as a party plaintiff in the Netbula v. StorageTek action.  Sun's position is as follows.

First, we do not believe that you are an appropriate plaintiff to enforce Netbula's copyrights. Our position in this regard will be fully spelled out in our filing on Tuesday opposing your request to be substituted as a plaintiff in the Sun action.  (We have cited a couple of cases in the MAR filed on Friday, but that is just to advise the court of the issue, not to argue it in full).  To the extent that you are not an appropriate plaintiff in

the existing action by Netbula against Sun, you would be equally inappropriate in any new action that you may intend to file as Netbula's assignee.

Second, in the event that the Court disagrees with Sun's position in this regard and concludes that you could be an appropriate plaintiff, in that situation it would be highly inappropriate for you to commence a separate lawsuit about the same subject.  You have already attempted to substitute in the Sun action, and to intervene there.  Commencing a separate lawsuit would unnecessarily proliferate litigation, at least if the claims that you wish to raise are of a subject matter and causes of action duplicative of the existing action.  Sun cannot imagine just what claims it is that you wish to add, and therefore cannot tell you whether or not they must be joined in the present lawsuit (assuming that you are entitled individually to raise such claims at all, which we believe we are not).  Therefore, please advise what those purportedly new claims would be, so I can respond to them.  Indeed, it is customary, before requesting a party's consent to amendment of claims, to provide a copy of the proposed amendments.

Third, before you commence any threatened new action, it is incumbent upon you to wait until Judge Jenkins has ruled on your pending requests for intervention and substitution.  It is wholly inappropriate in such circumstances to commence yet another action after having presented the currently pending motions to Judge Jenkins.  Further, any effort to seek a TRO or other preliminary relief in a second action would be entirely inappropriate, given not only the ruling on the TRO by Judge Zimmerman, but also the fact that you have personally already requested preliminary relief in your now pending motion to intervene in the existing Sun case.
We therefore suggest that you consider the consequences very seriously before filing such inappropriate pleadings--and obtain the advice of qualified counsel before you do so.  Magistrate Judge Chen's ruling should have demonstrated that filing unwarranted motions is a serious matter and has very real consequences.

I realize, of course, that I cannot keep you from filing with the Court whatever it is that you choose to file.  It only costs a few hundred dollars to commence a lawsuit that could cost thousands to defend, and which Sun would seek to recover from you personally thereafter.  I therefore reiterate the importance of your obtaining counsel as to all the consequences before you act.


Sincerely,


Laurence Pulgram

-----Original Message-----
From: **ydx@netbula.com** [**mailto:ydx@netbula.com**]
Sent: Friday, October 26, 2007 11:56 AM
To: Laurence Pulgram
Cc: ydx@netbula.com; brilletlaw@yahoo.com; Jedediah Wakefield; Albert Sieber; Liwen Mah;
yuedongxiao@gmail.com; davideiseman@quinnemanuel.com
Subject: Netbula's motion for substitution of party as to the copyright claim

Dear Mr. Pulgram, Mr. Wakefield, Mr. Mah and Mr. Sieber,

I am writing to seek a stipulation regarding Netbula's substitution of party as to the copyright claim filed in the Nebula v. StorageTek case.
As the copyright owner of the relevant software and related claims, I am about to assert additional claims against StorageTek. This can be done via an amended complaint in the C06-07391-MJJ case, or I can file a new separate infringement action and move to relate/consolidate the new action to the current action.

For judicial economy, I think it's far efficient for you to stipulate to the substitution of party by replacing Dongxiao Yue as the copyright plaintiff in the C06-07391-MJJ case.

If you do not stipulate to the substitution, I will commence the new action next week.

Kind regards,

Don Yue

------------------
--------------------------------------------
IRS Circular 230  Disclosure:  To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice in this communication (including attachments) is not intended or written by Fenwick & West LLP to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.
--------------------------------------------
ATTENTION:
The information contained in this message may be legally privileged and confidential.  It is intended to be read only by the individual or entity to whom it is addressed or by their designee. If the reader of this message is not the intended recipient, you are on notice that any distribution of this message, in any form, is strictly prohibited.

If you have received this message in error, please immediately notify the sender and/or Fenwick & West LLP by telephone at (650) 988-8500 and delete or destroy any copy of this message.

------------------

**View  Save**
**[ 10.48k ]**
( text/plain )

**View  Save**
**[ 5.76k ]**
( text/html )

**View  Save**
**[ 5.04k ]**
( text/plain )

# EXHIBIT D

## Re: Communications From Dr. Yue

From: **ydx@netbula.com**

Sent: Sat 11/03/07 12:19 PM

To: Laurence Pulgram (LPulgram@Fenwick.com)

Cc: brilletlaw@yahoo.com; stacymonahan@quinnemanuel.com; yuedongxiao@hotmail.com; davideiseman@quinnemanuel.com; Jedediah Wakefield (JWakefield@Fenwick.com); Albert Sieber (ASieber@Fenwick.com); Liwen Mah (LMah@fenwick.com); ydx@netbula.com

Dear Mr. Pulgram and Mr. Wakefield,

I just did a cursory review of your opposition to my motion to enforce the protective order and hold Sun defense counsel in willful violation. In your opposition, you alleged that I wrote a blog "labeling Judge [NAME] as a 'kowtowing dude'". Docket No. 313 in the BindView case, pp.11:21-12:5.

Your allegation is entirely false. There was nothing in any of my blog labeling any judge as a "kowtowing dude."

Kowtow is an act performed by an inferior before a local district magistrate. It is a Joe Bloe lawyer that would kowtow to a magistrate. No way a Magistrate Judge would kowtow to a Joe Bloe lawyer.

If you recall, at the Rule 11 hearing, you were pretty much begging for mercy. You implored the Judge to look for mitigating factors. You said a sanction order against an attorney would be registered in the State Bar. The Judge said your failure to look up Netbula's registration date was a possible violation, you said that was only one sentence. You made quite some excuses. You were quite nervous.

Ms. Brillet made the argument that a Rule 11 sanction was for deterrence and preventing future violations. The Judge then asked what your response would be, you were pretty much speechless for quite a while. Mr. Wakefield was dead silent in the whole hearing, as if a single word of his would trigger the Judge's attention. Mr. Wakefield lied in that case management conference statement. He lied and he lied again in subsequent papers. The proof is in the records themselves.

In my deposition in June, Mr. Wakefield kept asking me if the Magistrate Judge was a kowtowing dude. I refused to answer, because that kind of question is inappropriate by itself, answering that question would be also improper. Even though I am not a lawyer, I know enough not to use such inappropriate words on a judge. You are officers of the court, you have a duty to protect the reputation of the judiciary. Yet, you kept putting the "kowtowing dude" words along with the name of the judge, and you put that in public court records for the world to see.

As an Asian, I felt quite proud that there is a first in the Northern District. The Judge is highly regarded by the community. What you are doing is smearing a good image and damaging the judge's reputation. You are also damaging the public's confidence in the judicial system by using those words on a particular judge. You could have redacted the name of the judge in your public filing. Instead, you put the judge's name right there for the world to see.

Why do you keep doing this, even after the BindView matter was settled and I decided not to ask the circuit court to review the question of whether Rule 11 sanctions should be imposed on you? You know there was a good chance that the Ninth Circuit would not be as merciful as the Magistrate. You concluded that the rule 11 motion was untimely, and the judge let you go. Would a three-judge panel agree with you also? I doubt it.

Even if your intention was just to turn the Court against me, you have gone way too far. Previously, when Mr. Wakefield used my blog in court papers, I thought about clarifying the situation. I drafted a letter to Judge Jenkins, but I did not send the letter because I thought it would be improper to waste the judge's time to deal with your obvious attempt to manipulate the court's decision process which should be based on the facts relevant to the case. Now, you are doing it again, you are abusing the system which granted you the opportunity to speak to the court. Now, I have to speak out.

I didn't want to hurt your feelings. But read the following definition from Encyclopaedia Britannica Online and figure out who da kowtowing dude was (http://www.britannica.com/eb/article-9046167/kowtow ):

[[kowtow: also spelled Kotow, Chinese (Wade-Giles) K'o-t'ou, or (Pinyin) Ketou, in traditional China, the act of supplication made by an inferior to his superior by kneeling and knocking his head to the floor. This prostration ceremony was most commonly used in religious worship by commoners who came to make a request of the local district magistrate and by officials and representatives of foreign powers who came into the presence of the emperor. ]]

Now that I decided to get involved, my first task is to keep you honest and make sure the trier of fact has all the information. As much as you try to keep me from participating, you can't stop me from telling the truth.

Sincerely,

Dongxiao Yue


------------------------

"Laurence Pulgram" <LPulgram@Fenwick.com>:

Dear Ms. Brillet,

We are continuing to receive e-mails
directly from your client Netbula's principal, apparently with respect to
Defendants' pending motion for summary judgment to which Dr. Yue is not a
party. We do not intend to address Dr. Yue with respect to such
matters, as Netbula is represented by counsel.

However, Dr.
Yue's reference below to a December 16, 2005 letter from Sun
threatens, for a second time, to breach the express agreement of confidentiality
that Sun required before the settlement discussions of which it is a part.
His reference to his desire to use extrinsic evidence to interpret the
license agreements has also previously been addressed. This suggests that
you may not have transmitted to him the attached prior response, as we
requested.

Please advise Dr. Yue to stop contacting us directly about
matters regarding which he is not individually a
party.

Regards,

Laurence Pulgram

-----Original
Message-----
From: ydx@netbula.com [mailto:ydx@netbula.com]
Sent: Tuesday,
October 30, 2007 11:49 PM
To: Laurence Pulgram
Cc: ydx@netbula.com;
brilletlaw@yahoo.com; stacymonahan@quinnemanuel.com; Jedediah Wakefield;
Albert
Sieber; Liwen Mah; yuedongxiao@gmail.com;
davideiseman@quinnemanuel.com
Subject: Re: RE: Netbula's motion for
substitution of party as to the copyright claim

Dear Messrs. Pulgram,
Wakefield, Eiseman, Sieber and Mah,

The basic concept of copyright is
that it is a personal property, and I am the owner of the property in dispute. I
have the right to protect that property.

Anyway, I renew my request to
the defense lawyers here, as officers of the court, to tell the whole truth in
your representation to the Court -- now that I am involved, I will make sure
that the relevant facts are presented to the trier of fact. You should do the
same, as you have a duty to the Court. If you do not do it soon, I may have to
file an emergency motion for an integrity hearing.

Some of the relevant
facts not mentioned in Mr. Wakefield's brief are listed below:

In the
December 16, 2005 letter to Netbula, a StorageTek lawyer named Carmel C. Gill,
wrote:

"As you may be aware, both engineering and marketing
responsibilities for the LibAttach software and its predecessor products have
changed hands within StorageTek multiple times over the course of the past five
years, which explains the misunderstandings and miscommunications regarding
the
Netbula license restrictions. Also, as Mike Melnick informed Netbula back in
2000, StorageTek systems are set up to track royalties on a going-forward basis,
not on a pre-paid basis. Mike Melnick suggested that the parties enter into a
straight royalty-type agreement, but Netbula declined to do so, which, in part,
accounts for the situation today."

Lisa Rady, the Program Manager for
LibAttach wrote in March 2004:

"As you can see, we have exceeded the
1,000 distributions that we had right to with Netbula.... I think it is obvious
that engineering has not and did not monitor the distributions on this
product."

In response, Mike Melnick wrote:

"The agreement is
specific to platform (Win NT and 95/98 platforms) types of Netbula software
(PowerRPC SDK). This concerns me greatly as we have already told them we are
no
longer shipping it with our product."

In June 2005, Holly Wagner
wrote:

"The SAP query I ran this morning shows 2,386 models shipped. This
number is low due to the fact that the query does not have the capability of
pulling the client feature quantities that were released in November of last
year."

In response, Mike Melnick wrote:

"The number that Holly has
provided and thought it may be low causes quite a problem for you. We have only
made 2 purchases for the rights to distribute a total of 2000
licenses."

The above is just a few examples of admissions by
StorageTek.

As you know, StorageTek (Mike Melnick) drafted some key parts
of the 2000 Agreement (the payment terms). The interpretation of the agreement
will be construed against the drafter. It is thus important for you, as officers
of the Court, to fully inform the court about such admissions and prior
inconsistent statements so the Court can properly rely on your representations
to make a ruling, that will become the law of the United States. You, as
officers of the Court, are duty-bound to tell the whole truth to the
Court.

As I suggested in my previous emails, you should write a letter to
Judge Jenkins to inform the Court about your omission of key facts. Your refusal
to do so may be served as evidence that you intentionally concealed the above
and other facts from the Court.

Kind regards,

Don
Yue

------------------------
"Laurence Pulgram"
<LPulgram@Fenwick.com>:
Dear Mr. Yue,

I am responding to you

individually, and copying Netbula's counsel, because I understand that you are
threatening to file a new action in your individual capacity, in which you are,
and intend to remain, unrepresented by counsel. If I am incorrect in these
assumptions, I request that you and/or Ms. Brillet advise me.

As
promised, this is my response to your request for a stipulation that you be
allowed to join as a party plaintiff in the Netbula v. StorageTek action.
Sun's position is as follows.

First, we do not believe that you are an
appropriate plaintiff to enforce Netbula's copyrights. Our position in this
regard will be fully spelled out in our filing on Tuesday opposing your request
to be substituted as a plaintiff in the Sun action. (We have cited a
couple of cases in the MAR filed on Friday, but that is just to advise the court
of the issue, not to argue it in full). To the extent that you are not an
appropriate plaintiff in the existing action by Netbula against Sun, you would
be equally inappropriate in any new action that you may intend to file as
Netbula's assignee.

Second, in the event that the Court disagrees with
Sun's position in this regard and concludes that you could be an appropriate
plaintiff, in that situation it would be highly inappropriate for you to
commence a separate lawsuit about the same subject. You have already
attempted to substitute in the Sun action, and to intervene there.
Commencing a separate lawsuit would unnecessarily proliferate litigation, at
least if the claims that you wish to raise are of a subject matter and causes of
action duplicative of the existing action. Sun cannot imagine just what
claims it is that you wish to add, and therefore cannot tell you whether or not
they must be joined in the present lawsuit (assuming that you are entitled
individually to raise such claims at all, which we believe we are not).
Therefore, please advise what those purportedly new claims would be, so I can
respond to them. Indeed, it is customary, before requesting a party's
consent to amendment of claims, to provide a copy of the proposed
amendments.

Third, before you commence any threatened new action, it is
incumbent upon you to wait until Judge Jenkins has ruled on your pending
requests for intervention and substitution. It is wholly inappropriate in
such circumstances to commence yet another action after having presented the
currently pending motions to Judge Jenkins. Further, any effort to seek a
TRO or other preliminary relief in a second action would be entirely
inappropriate, given not only the ruling on the TRO by Judge Zimmerman, but
also

the fact that you have personally already requested preliminary relief in your
now pending motion to intervene in the existing Sun case.
We therefore
suggest that you consider the consequences very seriously before filing such
inappropriate pleadings--and obtain the advice of qualified counsel before you
do so. Magistrate Judge Chen's ruling should have demonstrated that filing
unwarranted motions is a serious matter and has very real consequences.

I
realize, of course, that I cannot keep you from filing with the Court whatever
it is that you choose to file. It only costs a few hundred dollars to
commence a lawsuit that could cost thousands to defend, and which Sun would
seek
to recover from you personally thereafter. I therefore reiterate the
importance of your obtaining counsel as to all the consequences before you
act.

Sincerely,

Laurence Pulgram

-----Original
Message-----
From: ydx@netbula.com [mailto:ydx@netbula.com]
Sent: Friday,
October 26, 2007 11:56 AM
To: Laurence Pulgram
Cc: ydx@netbula.com;
brilletlaw@yahoo.com; Jedediah Wakefield; Albert Sieber; Liwen Mah;
yuedongxiao@gmail.com; davideiseman@quinnemanuel.com
Subject: Netbula's
motion for substitution of party as to the copyright claim

Dear Mr.
Pulgram, Mr. Wakefield, Mr. Mah and Mr. Sieber,

I am writing to seek a
stipulation regarding Netbula's substitution of party as to the copyright claim
filed in the Nebula v. StorageTek case.
As the copyright owner of the
relevant software and related claims, I am about to assert additional claims
against StorageTek. This can be done via an amended complaint in the
C06-07391-MJJ case, or I can file a new separate infringement action and move
to

relate/consolidate the new action to the current action.

For judicial
economy, I think it's far efficient for you to stipulate to the substitution of
party by replacing Dongxiao Yue as the copyright plaintiff in the C06-07391-MJJ
case.

If you do not stipulate to the substitution, I will commence the
new action next week.

Kind regards,

Don
Yue

-------------------
-------------------------------------------
IRS
Circular 230 Disclosure: To ensure compliance with requirements
imposed by the IRS, we inform you that any U.S. federal tax advice in this
communication (including attachments) is not intended or written by Fenwick
& West LLP to be used, and cannot be used, for the purpose of (i) avoiding
penalties under the Internal Revenue Code or (ii) promoting, marketing, or
recommending to another party any transaction or matter addressed
herein.
-------------------------------------------
ATTENTION:
The
information contained in this message may be legally privileged and
confidential. It is intended to be read only by the individual or entity
to whom it is addressed or by their designee. If the reader of this message is
not the intended recipient, you are on notice that any distribution of this
message, in any form, is strictly prohibited.

If you have received this
message in error, please immediately notify the sender and/or Fenwick & West
LLP by telephone at (650) 988-8500 and delete or destroy any copy of this
message.

-------------------

Attachment:
Content-Type: text/plain;
charset="us-ascii"

Content-Transfer-Encoding: quoted-printable

Attachment:
Content-Type: text/html;
charset="us-ascii"
Content-Transfer-Encoding: quoted-printable

Attachment:
Content-Type: text/plain;
charset="us-ascii"
Content-Transfer-Encoding: quoted-printable

-------------------