1  VONNAH M. BRILLET (SBN 226545)
   **LAW OFFICES OF VONNAH M. BRILLET**
2  2777 ALVARADO ST., SUITE E
   SAN LEANDRO, CA 94577
3  Telephone:    (510) 351-5345
   Facsimile:    (510) 351-5348
4  E-Mail:       BrilletLaw@yahoo.com
5
   Attorneys for Plaintiff
6  NETBULA, LLC

7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10

   | | |
   |---|---|
   | NETBULA, LLC., a Delaware limited liability company, | Case No. Case No. C06-07391-MJJ |
   | Plaintiff, | **DECLARATION OF DONGXIAO YUE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR SUMMARY ADJUDICATION OF ISSUES RELATING TO LICENSE DEFENSE** |
   | v. | |
   | STORAGE TECHNOLOGY CORPORATION, et al., | Date: December 13, 2007 |
   | Defendants. | Time: 3:00 p.m. |
   | | Dept: Courtroom 11 |
   | | Judge: The Honorable Martin J. Jenkins |

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

-1-

I, DONGXIAO YUE, declare:

1.     I have personal knowledge of the facts I am about to state and, if called on to do so, I could competently testify to those facts.

2.     I submit this declaration in opposition to defendants Storage Technology Corporation ("StorageTek"), Sun Microsystems, Inc. ('SUN"), EMC Corporation ("EMC"), Darden Restaurants, Inc. ("DARDEN") and IBM Corporation ("IBM")'s motion for summary judgment or summary adjudication relating to license issues.

3.     In the following, the attached documents bearing Bates numbers with the "STK" prefix were produced by StorageTek or SUN; documents bearing bates numbers with the "NBS" prefix were produced by Netbula.

4.     On September 19, 2007, Netbula deposed Michael Melnick, who was designated by SUN as an FRCP 30(b)(6) witness. I was present at the deposition, except for a few minutes when a document designated as "HIGHLY-CONFIDENTIAL" by defendants was used as an exhibit. My declaration is partially based on Mr. Melnick's deposition transcript and exhibits. The exhibits bearing "Melnick" labels were the exhibits in Mr. Michael Melnick's deposition.

5.     I have added sequential page numbers to the exhibits attached to my declaration, starting from A0001. In the following, I may use the A0000 page numbers to refer to specific pages in the exhibits.

6.     From 1994 to July 1996, as an individual, I had been developing a software technology which I later named and trademarked as "PowerRPC". PowerRPC was a technology that enabled a program on a computer to execute a command on a remote computer over a network and get results back. PowerRPC was developed for UNIX, Microsoft Windows NT/95 platforms.  I also developed software called ONC RPC for Microsoft Windows NT/95, which incorporated most of the program files and modules in PowerRPC.

7.      Like many people in America, such as those individuals who started from the garages of their homes and created global enterprises, I had hoped to establish a technology business with my PowerRPC software as the starting point.

8.      In July 1996, I founded Netbula, LLC ("Netbula"), a Delaware Limited Liability Company, to market the aforementioned RPC software that I was developing at the time. Based on the records from the state of Delaware, Netbula, LLC was registered on July 24, 1996.  About two months later, Netbula offered its RPC software products for licensing by other companies.

9.      Like most software companies, the existence of my software business depended on receiving a license fee for each copy of its software made or distributed by its customers.

10.     In retrospect, judging from the information I acquired from the recent lawsuits against BindView and StorageTek, my PowerRPC software had been widely distributed, but Netbula did not receive the license fees for the copies distributed.

11.     Over the years, several people worked for Netbula on various projects for extended period of time, such as testing the Netbula RPC products, writing code and documentation for other software, doing marketing and sales work. However, because Netbula did not receive sufficient license revenue, I was unable hire these people as full-time employees. Netbula paid them as consultants. I was the only person who wrote the code for the Netbula RPC software.

12.     I did not assign or transfer the copyrights in my earlier works created before July 24, 1996 to Netbula, LLC. The Netbula RPC software products were derivative works of these earlier unpublished works that I authored.

13.     The Netbula RPC software products were used by other software developers to develop new computer software applications. A software developer must purchase SDK licenses for developing new programs using Netbula RPC software, and it must also purchase distribution licenses for distributing copies of Netbula RPC software components (the "runtime software",

including the "pwrpc32.dll" module), which were necessary for the RPC applications developed with the Netbula SDK to run.

14.     Netbula registered the copyrights for various versions of its RPC software, which incorporated my pre-Netbula works and were derivative works of my pre-Netbula works. Netbula became the owner of the copyrights of these derivative works under the work-for-hire doctrine.

15.     The copyright in the instant action was registered for the PowerRPC software published in 1996. Attached **Exhibit 1** is a true copy of the copyright registration certificate for "NETBULA POWERRPC" published in 1996 with U.S. Registration Number "TX 6-211-063" (registered October 18, 2005).

16.     On September 26, 2007, Netbula executed a written copyright assignment, transferring all exclusive rights in all Netbula PowerRPC and Netbula ONC RPC created before January 1, 2007 back to Dr. Dongxiao Yue -- me. Attached **Exhibit 2** is a true copy of the copyright assignment. The copyright assignment further assigned all related claims to me.

17.     I, representing Netbula, handled the communication between Netbula and defendants Storage Technology Corporation ("StorageTek") and Sun Microsystems, Inc ("SUN") on the licensing and subsequent dispute on the Netbula RPC software.

18.     On January 18, 2000, a StorageTek manager named Don B. Carroll emailed Netbula to inquire about getting a full version of Netbula ONC RPC. Mr. Carroll wrote:

> Is there anyway we can get the full version of ONC RPC for testing and evaluation? We have an existing product that we are tying to replace MKS NutCracker RPC with your product. Our product has far more than 6 RPC functions. We are unable to properly evaluate your product with these limitations.
>
> The product we are working on is for re-sale and not internal use. We are a large company and it would not be wise for us to distribute this software unlicensed. We are willing to sign agreements to this affect.

Attached **Exhibit 3** is a true copy of this email.

19.     On February 7, 2000, Michael Melnick of StorageTek emailed Netbula, inquiring about "the purchase of 8 developer licenses" and "a limited application distribution agreement." Attached **Exhibit 4** is a true copy of this email.

20.     In 2000, Netbula's only way of marketing its RPC software was on its website, which provided price and license information for its products. Netbula's sales records show that from January 2000 to December 2006, Netbula sold RPC distribution licenses in "paks" of different sizes, each pak granted a customer the right to make or distribute certain number of copies of the Netbula runtime software.

21.     In February 2000, the 20-pak, which granted a customer the right to make 20 copies of the runtime software, was priced at $1000. Attached **Exhibit 5**  contains true copies of business records (with confidential information such as credit card numbers redacted) evidencing the $1000 price for the 20-pak. One such record was a purchase order submitted by a customer on February 28, 2000, which showed that a customer made an order for "Netbula ONCRPC for WIN32 Runtime license (for 20 machines runtime) – Platforms: Windows NT workstation V 4.0)", the price was "US $1,000.00".

22.     Netbula's sales records also show that in February 2000, the "limited application distribution license", which granted the right to make 1000 copies of the runtime software, was priced at $5995. Attached **Exhibit 6** (NBS2624-2626, CONFIDENTIAL) is a true copy of a purchase order sent by a customer on February 10, 2000 via fax. This fax was a print out of Netbula's web form at the time, which had the following description of the licensing terms (bold face and italics original):

> **One development license is for one developer to use Netbula RPC (PowerRPC or ONC RPC) to develop client/server applications on one machine running one operating system (each UNIX flavor is a different OS).**
> **A Netbula ONC RPC limited application distribution license is**

**for**

- installing applications developed using Netbula RPC tools and supporting infrastructure (DLLs, portmapper, etc)
- for one operating system
- on up to 1,000 (one thousand) machines for any number of users.
    ***Netbula may request you to conduct an audit to account the number of runtimes installed.***

23.    In February 2000, Netbula responded to Michael Melnick's inquiries; the two sides exchanged several email messages. Netbula gave the following price quote for licenses: (1) "ONC RPC Win32 developer license: $895 per developer per machine", (2) "PowerRPC limited distribution license: $6995 per platform", (3) "ONC RPC Win32 limited distribution license: $5995", and (4) "The limited distribution license is for distributing the DLLs and support programs to 1,000 machines." Attached **Exhibit 7** is a true copy of the string of emails between Netbula and StorageTek which contained the above license information and communications. Although the email did not specify per platform restriction for the ONC RPC Win32 limited distribution license, it was an accidental omission. The platform restrictions were on both PowerRPC and ONC RPC limited distribution licenses, as shown from the web page faxed back by a customer on February 10, 2000 (Exhibit 6).

24.    Per Mr. Melnick's request, Netbula also provided a license agreement template to StorageTek in the email communications referenced above. The license agreement reflected Netbula's license purchase terms described above. Mr. Melnick then made changes to the agreement and sent the modified version back to me on February 23, 2000. Attached **Exhibit 8** (Melnick, Ex.8) is a true copy of the redlined version of the license agreement Mr. Melnick drafted. The texts with solid underline were added by Mr. Melnick[1]. The texts in the boxes on the

---

[1]  At Mr. Melnick's deposition on September 19, 2007, he testified that he and no one else was the person who made the changes. Melnick Depo., pp. 44-50.

right side of the page were those deleted by Mr. Melnick. Mr. Melnick was the only StorageTek

employee who drafted the changes.

25.      After more exchanges of communication, I accepted the proposed changes to the

agreement drafted by Mr. Melnick. Both Mr. Melnick and I signed the final agreement. Attached

**Exhibit 9** is a true copy of the license agreement between Netbula and StorageTek signed on

March 1, 2000 (the "2000 Agreement"). The 2000 Agreement was governed by the laws of

California and "may not be assigned by either party or amended without the written consent of

both parties…" Page A0035.

26.      Among other things (such as provisions on copyright), the 2000 Agreement contained the

following terms (with the portions drafted by Michael Melnick underlined and italicized):

> NETBULA grants STORAGETEK, a non-exclusive, perpetual,
> irrevocable license for use by STORAGETEK's employees,
> consultants and subsidiaries for up to ONE user(s), *for each of
> the licenses purchased*, to use the PowerRPC SDK Product
> under Windows NT and 95/98 platforms; each user can only
> use the software on one computer….

> The license is not transferable *without written permission of
> Nebula*…

> You must treat the software as copyrighted material. You may
> not copy and redistribute the software except as permitted
> under this Agreement.
> …

> Limited Distribution. You agree to maintain reasonable records
> of the number of copies of the Supporting Programs distributed
> hereunder and to pay NETBULA as set forth in Exhibit C for
> such copies. Netbula *may, with reasonable notice, and at times
> that do not interfere with STORAGETEK's business*, request
> STORAGETEK to conduct an internal audit to count the
> number of copies distributed. *However, Netbula may not
> request more than one audit in a twelve (12) month period*.

> …

Payment. You agree to pay NETBULA the amounts set forth in Exhibit C in full payment for the rights and licenses granted herein, *thirty (30) days after receipt of an invoice referencing a valid purchase order number.*

…..

Support is for *SDK Products and Supporting Programs* on the specific platforms only…

EXHIBIT B

NETBULA COMPONENTS PERMITTED TO BE DISTRIBUTED
…
* Pmapsvc.exe        The portmapper service for Windows NT

….

EXHIBIT C

PAYMENT

*STORAGETEK* shall pay NETBULA a one-time fee of *$895 per license* for all rights granted under this Agreement with respect to the SDK Product, and one-time fee of *$5,995* for the right to distribute up to *1000* units of software containing the Supporting Programs, *thirty (30) days after receipt of an invoice referencing a valid purchase order number. NETBULA agrees that future SDK license purchases will be at a mutually agreed to price.* NETBULA agrees to offer *STORAGETEK* additional units of Supporting Program licenses for the limited distribution license, *at the cumulative license purchased prices as provided listed below. Pricing is based on cumulative purchases, not single purchase events. Additional licenses purchased are subject to the terms and conditions of this Agreement.*

27.     The 2000 Agreement was an agreement to offer licenses for StorageTek to purchase. If StorageTek does not make a purchase, no license is granted.

28.     The Netbula software licenses were quantified by the number of copies. Each SDK license permitted use by one user on one computer. If one user used the SDK on two computers, two licenses must be purchased. If two users used the SDK on the same computer, two licenses must

-8-

1    also be purchased. Such licensing condition was standard practice in the software industry.

2    29.    A limited distribution license was for distributing 1000 copies -- 1000 individual runtime

3    licenses purchased in bulk.

4    30.    Each SDK and runtime license purchased under the 2000 Agreement were restricted to

5    Windows NT and 98/95 platforms. The Netbula SDK software was used by StorageTek to develop

6    software products (Software development includes writing code and testing). The Netbula SDK

7    license granted StorageTek right to develop products under Windows NT and 98/95 only.

8    

9    31.    Since 1998 or earlier, when Netbula delivered the RPC software to a customer, it always

10   embedded the customer name and license information into the program itself, making the copy of

11   software a customer received unique to that customer. Also, the SDK and runtime software had

12   different internal marks. For instance, even though both the SDK and the runtime software had a

13   file named "pwrpc32.dll", the pwrpc32.dll" file in the SDK was different from the one in the

14   runtime software and behaved differently. The same applies to other files, such as "pmapsvc.exe".

15   

16   32.    Over the years, Netbula embedded more and more detailed license information into the

17   software itself, and this process was done by me personally. According to the records I examined,

18   since May 1999, I always embedded the following information into the software itself: (1)

19   customer name, (2) license type, (3) license quantity and (4) customer purchase invoice number.

20   When the SDK or runtime software ran, it would print a message with the above information on

21   the computer screen.

22   

23   33.    If a customer requested the software to be delivered on a CD, I would record the

24   customized software on the CD-RW media and create a CD label specific to the customer. The CD

25   label was made from a template which always required the following information: (1) product

26   name, (2) customer name, (3) license type, (4) license quantity and (5) invoice number. I would

27   then affix the CD label on the CD-RW media and ship the CD to the customer.

28   

-9-

YUE DECLARATION OPPOSING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

34.     If a customer made additional license purchases, it would receive new copies of the software with new invoice numbers embedded in them.

35.     Pursuant to the 2000 Agreement, StorageTek issued a purchase order to Netbula for the purchase of eight (8) developer licenses and 1000 runtime licenses. Attached **Exhibit 10** (Melnick, Ex. 10) is a true copy of this purchase order dated March 3, 2000 (the "2000 Purchase Order"). I recorded the requested Netbula RPC software onto a CD-RW media. After the software was recorded, I affixed a label on the CD-RW media with the following information: name of the software, name of licensee ("StorageTek"), invoice number ("1605"), license type and license quantity ("8 Developers 1000 runtime").  The CD was described in an email written by a StorageTek manager named Lisa Rady (See Exhibit 14, A0056):

> I have a CD in my hand called "Netbula ONC RPC for Win32 Development Toolkit", licensed to StorageTek (1605) 8 Developers 1000 runtime. Inside the CD was the Receipt that included the PO number CCOL122576...

Netbula mailed StorageTek the CD and invoiced StorageTek pursuant to the purchase order. The invoice number was 1605. StorageTek later paid invoice 1605 in full.

36.     The 2000 Agreement was a "prepayment" agreement, which simply meant that StorageTek must first purchase the licenses to be redistributed in advance. Under the 2000 Agreement, StorageTek purchased 1000 runtime licenses, and it only had the right to distribute 1000 copies.

37.     On May 1, 2000, a person named Scott Painter emailed Netbula about customizing Netbula's "PowerRPC Portmapper" software; that email was copied to abrammp@louisville.stortek.com which was the email for Mr. Michael Abramovitz. Attached **Exhibit 11** (Melnick Depo., Ex. 15) is a true copy of this email.

38.     Attached **Exhibit 12** (Melnick, Ex. 21) is a true copy of an email message dated June 11, 2001 from a StorageTek developer named Anton Vatcky, whose telephone number indicated that

1  he was in Australia. Mr. Vatcky wrote:

2                  We at StorageTek currently use the NT version of PowerRPC in our
                  product called REELs. We have a license agreement with Netbula
3                  for this specific version.
                  Would it be possible to obtain a copy of the Win2K version of
4                  PowerRPC, to determine if our software will port OK to Win2K.
                  …
5                  A separate licensing agreement would follow up if StorageTek
6                  determines that we will be able to sell our REEL software product
                  for Win2K platforms.

7

8  39.    On June 13, 2001, Netbula emailed Mr. Vatcky a copy of the evaluation version of Netbula

9  PowerRPC for Win2K (Microsoft Windows 2000) (Netbula has a copy of this email sent to Mr.

10  Vatcky and produced it in discovery.) But, StorageTek did not respond to Netbula to sign any

11  agreement for Windows 2000.

12

13  40.    Attached **Exhibit 13** (Melnick, Ex. 18) is a release notes document for StorageTek's

14  Library Attach 1.1 software, the document is dated June 2000. Page 2 (A0050) of the document

15  states "LibAttach 1.1 introduces support for Windows 2000 systems." Page 4 (A0052) of this

16  document indicates that the "pwrpc32.dll" module of Netbula RPC is included in LibAttach 1.1.

17  The release notes for LibAttach 1.2 and 1.3 (not attached here) also show that they contain

18  Netbula RPC software and were developed for Windows 2000.

19

20  41.    Initially, Netbula signed all emails from sales@netbula.com as simply from "Sales". This

21  was the case in Netbula's email communications with StorageTek in 2000. Around 2001 or late

22  2000, I trained a person with first name initials JY on Netbula RPC products. I then decided to

23  have this person handle the inquiries from customers. However, I later realized that customer

24  inquiries on Netbula RPC often had rather involved technical questions that only I could answer as

25  the person who wrote the code. As a result, Netbula decided to change the signature of the

26  sales@netbula.com email box to "John Young", thus creating an alias for the email address

27  sales@netbula.com regardless of who was responding to customer emails and on which subject.

28

-11-

Netbula's online shop was also configured to automatically sign its outgoing emails as from "John Young sales@netbula.com". To the best of my recollection, I personally wrote all the emails originating from sales@netbula.com to StorageTek in the exhibits referenced below. When I wrote the emails originating from sales@netbula.com to StorageTek, I was acting as the contact for sales related questions for Netbula. When Mr. Melnick sent emails or faxes to sales@netbula.com, he sometimes greeted "Sales@Netbula" as "Jon" or "Yang". To the best of my knowledge, Netbula never used these names in its business.

42.    In May 2001, Netbula sent a license usage audit request to StorageTek.

43.    On June 21, 2001, Tracy Gagnon, whose signature identifies her as "Program Manager, Backup & Recovery Software", sent an email to Mr. Melnick with the subject title "Netbula License Report for Audit 06/21 – REELNT Product":

> Enclosed are the Netbula licenses for the REELNT product I am showing to date. I arrived at these numbers by going through the history report from SCH. I am not sure if I have caught all the data points…

Attached **Exhibit 14** (Melnick, Ex. 25) contains a true copy of this email message. A0057.

44.    On June 22, 2001, Michael Melnick responded to Netbula's audit request via email, stating,

> The license agreements requires [*sic*] us to provide the number of licenses distributed… The license count you request is 107, this leaves us the rights to distribute 893…

Attached **Exhibit 15** is a true copy of this email message.

45.    Attached **Exhibit 16** (Melnick, Ex. 26) is a true copy of an email message Michael Melnick sent Netubla on September 9, 2002, stating that StorageTek ceased distributing Netbula RPC. Mr. Melnick wrote:

> Jon, We no longer distribute the runtimes with our products. Our count remains the same as provided to you in June of 01.

46.    Since Netbula's pricing for its RPC products was substantially lower than the price of a

1    similar product of a competitor if purchased in large paks, it gradually increased its prices since

2    2000.

3    47.    Attached **Exhibit 17** is a true copy of an agreement signed between Netbula and a

4    customer in October 2003. This agreement had the following pricing terms (A0070):

> [Customer] has paid NETBULA a one-time fee of $895.00 per
> developer license for all rights granted under this Agreement with
> respect to the NETBULA ONC RPC SDK Product and a one-time
> fee of $7995.00 for the right to distribute up to 1000 units of ONC
> RPC client runtime license. Client runtime License pricing has been
> defined as $680 for 20 licenses or $17,850 for 1000 license. Server
> runtime license pricing has been defined as $800 per unit…

The Customer in the above agreement purchased 1000 Netbula ONC RPC runtime licenses in

May 2002 for $7,995.00. In 2003, the prices for Netbula's RPC products had risen (but were still

below prices of similar products offered by a competitor). The Customer and Netbula re-

negotiated the above license agreement with the new pricing, which was "$680 for 20 licenses or

$17,850 for 1000 license."

48.    On March 2, 2004 at 10:06 AM, Lisa Rady, a program manager in charge of LibAttach

development at StorageTek, sent an email to Michael Melnick, she wrote:

> Hi, Mike, …As you can see, we have exceeded the 1000
> distributions that we had right to, with Netbula… I think it is
> obvious that engineering has not and did not monitor the distribution
> on this product… Could you please contact Netbula and get a
> current quote for the rights to distribute another 1000 runtimes?

Attached **Exhibit 18** (Melnick, Ex. 37) is a true copy of this email message.

49.    On March 2, 2004 at 10:52AM, Lisa Rady emailed Michael Melnick again:

> I have a CD in my hand called "Netbula ONC RPC for Win32
> Development Toolkit", licensed to StorageTek (1605) 8 Developers
> 1000 runtime. Inside the CD was the Receipt that included the PO
> number CCOL122576, your name as the buyer, and a date of
> 3/24/2000…

> Engineering will need to provide what specific platform they require.

-13-

1

2
A0056. Responding to Ms. Rady's email message, Mr. Michael Melnick wrote at 11:21AM:

3
> The agreement is specific to platform (Win NT and 95/98 platforms)
> types of Netbula software (PowerRPC SDK). This concerns me

4
> greatly as we have already told them we are no longer shipping it
> with our product.

5

6
Exhibit 14 (Melnick Depo., Ex. 25) referenced above is a true copy of the sting of email messages.

7
50.    In another string of emails attached as **Exhibit 19** (Melnick, Ex. 39), Lisa Rady wrote in an

8
email sent to "Rooney, Janet L", "Murray, Thomas J", "Schmitt, Terry D" and "Abramovitz,

9
Michael P" on March 2, 2004:

10
> As you can see we have exceeded our 1000 distributions of NetBula,
> so that is one issue…

11
> We need to work on this, and make sure there is a better process in
> place for managing the number of distributions and making sure we

12
> are compliant with our contract with Netbula…

13
> Is there any freeware that is comparable?

14

15
A0075-76. In the same string of emails, Michael P. Abramovitz responded:

16
> Some kind of port mapper must always be present for LibAttach to
> function. NetBula was chosen because it was one of only a handful

17
> of port mappers that ran natively on windows. All other port
> mappers require a UNIX emulation layer (like NuTCracker or some

18
> such)…

19
A0075. Lisa Rady then emailed "Rooney, Janet L" and "Melnick, Michael":

20

21
> Can you respond to Mike Melnick regarding what platform you
> need, for Netbula? … The CD you gave me was for Windows

22
> NT/95/98. Do we need to request a more current windows version?

23
A0075.

24
51.    After the above internal discussion, Mr. Melnick sent an email to Netbula on March 2,

25
2004 at 3:29 PM, stating:

26
> Could you provide me with the StorageTek sales representative or if

27
> possible give me a quote on distributing an additional 1000 units of
> RPC? The platform used will need to be Windows 2003.

28

-14-

Attached **Exhibit 20** (Melnick, Ex.40) is a true copy of this email message. On March 3, 2004,

Netbula replied by email, stating: "The original agreement covers Windows NT/98/95 only".

(Netbula's response was on page STK00000368, exhibit 12 to Yue deposition on September 12,

2007).

52.      Attached **Exhibit 21** (Melnick, Ex. 46) is a true copy of the string of emails produced by

StorageTek. In a document titled "LibAttach 1.2.1" attached to a March 12, 2004 internal

StorageTek email, Lisa Rady wrote the following:

> 3/11/04 …Terry is testing LibAttach with two firewalls, ACSLS and
> ACSLS GA. Michael Abramovitz is available to help on as needed
> basis.
> 3/4/04 It has been determined that we need to purchase a new SDK
> and 1000 more distributions of Netbula…
> …
> 3/4/04 Terry has received one copy of Visual C++. He is still
> waiting to have another copy installed on the stand alone machine…
> …
>
> There is no license key in the product, and it is apparent that the
> software has been copied, uncontrolled, for several years.

A0082-83. This email was sent to Thomas J. Murray (whose email signature identified him as

"Manager, RD&E Software Engineering") and others. Mr. Murray then asked about the status of

the "Netbula PO". After getting answers on the status, Mr. Murray wrote on March 15, 2004:

> We either need to increase the Netbula license or put a stop-ship on
> the LibAttach product, because we have shipped LibAttach copies
> up to the limit of the current Netbula license (Netbula is embedded
> in our LibAttach product.)

A0081.

53.      In March 2004, Netbula and StorageTek negotiated for a second agreement. Netbula

provided the then-current license agreement template with the price of $18,000 for 1000 client

runtime licenses, and $800 for one server runtime license. Michael Melnick then modified the

template and emailed back the word document with drafted changes. Attached **Exhibit 22** is a true

-15-

print out of the word document drafted by Mr. Melnick. The underlined texts were added by Mr.

Melnick, the texts in the boxes on the right side of the page were the ones deleted by Mr. Melnick.

54.    Because StorageTek previously represented that it only used 107 licenses out of the 1000

licenses purchased (thus with 893 licenses wasted) and ceased distributing the product, and

because Mr. Melnick did not inform Netbula that StorageTek had in fact been distributing Netbula

RPC from 2000 to 2004 and had in fact exceeded the purchased license count, Netbula gave

StorageTek a price much lower than the standard pricing at the time.

55.    Mr. Michael Melnick, on behalf of StorageTek, signed the second license agreement (the

"2004 Agreement") on March 17, 2004.

56.    Attached **Exhibit 23** (Melnick, Ex. 48) is a true copy of a fax from StorageTek which

included the executed 2004 Agreement (A0096-103) and a StorageTek purchase order  (A104-105)

dated March 17, 2004 (the "2004 Purchase Order") pursuant to the 2004 Agreement. In the 2004

Purchase Order, StorageTek ordered one (1) developer license and 1000 runtime licenses.

Pursuant to the 2004 Agreement and the 2004 Purchase Order, Netbula delivered the 2004 version

of the RPC software on a CD to StorageTek and invoiced StorageTek for the amount on the

purchase order. Like the CD delivered in 2000, the CD delivered in 2004 was also labeled with

license type and quantity information. StorageTek later paid the invoiced amount in full.

57.    Netbula could not locate a copy of the 2000 software sent to StorageTek, but has found a

backup copy of the RPC software delivered to StorageTek in 2004 . I installed this software and

found that the runtime software files were placed in a folder name "runtime.lic\", under that folder,

there was a file named readme.txt, which had the following content:

```
            File list:

            pwrpc32.dll
            pmapsvc.exe
            portmap.exe
```

1
2
3
4
5
6

        These files are used when deploying RPC
        applications. Do not use the files under the
        oncrpc.sdk/bin/ directory for deployment, they
        will expire after a fixed date and require human
        intervention to get reactivated.

        License is not activated until payment for the
        license is received.

7    58.    I ran the pmapsvc.exe program under the "runtime.lic" folder, it printed out the following

8  message

9
    PowerRPC Portmapper V1.5 Copyright(C) Netbula LLC.
    Licensee: StorageTek, 1000 machine runtime license (s10302)
10

11  See image below,

12

13



14

15  10302 was the Netbula invoice number for the 2004 StorageTek license purchase.

16  59.    The 2000 Purchase Order and the 2004 Purchase Order were the only two license

17  purchases StorageTek made for Netbula software licenses. StorageTek made no other license

18  purchases and had no additional licenses for Netbula software.

19  60.    On October 25, 2004, Michael Abramovitz (using email address

20  abrammp@lousisville.stortek.com) sent an email to Netbula, stating: "We bundle your PowerRPC

21  into several of our products." On the same day, Netbula emailed Mr. Melnick, requesting a license

22  usage report: "As we understand, several StorageTek applications are using Netbula RPC... Could

23  you please do audit of the RPC license usage and fill in the attached audit form?" StorageTek did

24
25  not provide any report for this request.

26  61.    In June 2005, Netbula noticed the news about SUN's planned acquisition of StorageTek.

27  On June 15, 2005, Netbula emailed StorageTek again for an audit of license usage and inquired

28

-17-

about the impending SUN- StorageTek merger. Mr. Melnick responded:

> As for Sun, it should be completed by the end of summer… The only thing that you and I may have to do is for you to allow assignment of the agreement to Sun. The agreements calls [sic] for your approval. I assume you would sallow [sic] this as if you did not the agreement would be terminated.

Attached **Exhibit 24** (Melnick, Ex. 51) is a true copy of this email message.

62.    Attached **Exhibit 25** (Melnick, Ex. 52) is a string of email messages produced by

StorageTek. On June 16, 2005, Mr. Melnick wrote to Thomas Murray:

> Can you give ne an update of how many Netbula RPC licenses we have distributed? We need to make sure we have not exceeded what we have been licensed for.

A0111. On June 16, 2005, Michael P. Abramovitz wrote: "To the best of my memory, we have a

license to redistribute 2000 copies." A0110.

On June 20, 2005, Holly Wagner, a Software Product Planner at StorageTek, emailed Mr.

Michael Melnick, Ms. Lisa Rady, Mr. Michael Abramovitz and others, stating:

> The SAP query I ran this morning shows 2,386 models shipped. This number is low due to the fact that the query does not have the capability of pulling the client feature quantities that were released in November of last year.

A0109. Responding to this email, Mr. Melnick wrote on June 28, 2005:

> The number that Holly has provided and thought it may be low causes quite a problem for you. We have only made 2 purchases for the rights to distribute a total of 2000 licenses.

63.    Michael Melnick then emailed Netbula asking for an unlimited license. He wrote in an

email:

> We would like to get a quote on having an unlimited distribution model. Is this available? Tracking usage is becoming burdensome and we want to ensure we continue to be in compliance.

**Exhibit 26**, p.3. A0115.

-18-

64.     On July 8, 2005, in response to StorageTek's particular request and based on StorageTek's purported usage history, Netbula emailed back with a price quote for an unlimited license with one year of upgrades and fixes. Mr. Melnick immediately rejected the offer and the parties did not proceed further on unlimited license negotiations. *Id*. at p.2. A0114.

65.     On July 8, 2005, Netbula emailed StorageTek again for an audit of the license usage count. Mike Melnick responded,

> There is nothing in the agreement that allows any kind of audit, nor was there one in the previous agreement. We would love to pay you on a royalty "as we use basis" but when this was requested we were reminded that this was not your model and we must prepay.

A0113. Attached **Exhibit 26** (Melnick, Ex. 54) is a true copy of the email exchange.

66.     After some further communication, StorageTek eventually agreed to provide license usage data. In an email dated July 27, 2005, Netbula requested a detailed report with product names and platform information, and stated the following issues,

> 1) Supported platforms-- the original 2000 agreement does not cover the Windows 2000 platform, however, we believe some of the licenses were used on the Win2K platform. Those were not covered by the license agreement.
> The 2004 purchases can't be used to cover usages under the 2000 agreement.
>
> 2) Pricing-- The pricing on the agreement was deeply discounted and based on a pre-paid scheme in blocks of 1000.
> We can not honor the price when the purchases were made after 2 to 3 years of usage. Our other customers are paying $35 per client runtime without a prepayment agreement.
>
> 3) 2004 Agreement--Inconsistency in StorageTek's responses-- we felt that we were misled and were being taken advantage of when signing the 2004 agreement. We were told in 2002 the StorageTek product was terminated and fewer than 200 licenses of the 1000 were used(with 800+ wasted), so when we were contacted in 2004 about Netbula RPC for Windows 2003, we were eager to make it up to you by using the original pricing, even though our pricing model had been changed since 2001. The prices were raised and made

-19-

1

2

3

4

> closer to the offerings of other vendors (our prices are still lower). In 2004, our price for Netbula RPC was $3500 if purchased in blocks of 100, or $18000 if purchased in blocks of 1000. Going forward, we would like to redo an agreement based on our current licensing and pricing models.

5    A0118. Attached **Exhibit 27** (Melnick Depo., Ex. 55) is a true copy of these email exchanges and

6    subsequent exchanges (NBS-1284-94).

7    67.    In Michael Melnick's response to the email above (on page NBS-1289[2]) , he wrote,

8

9

> No disagreement with the [sic] that the original agreement was for (Windows NT/98/95 only).

10    A0128.

11    68.    On July 27, 2005, Michael Melnick sent an email to Lisa Rady and others, he asked:

12

13

14

15    A0135. On July 28, 2005, Michael Abramovitz replied in an email titled "RE: Netbula":

16

17

18

19

20    Attached **Exhibit 28** (STK959, CONFIDENTIAL) is a true copy of this email message.

21    69.    Attached **Exhibit 29** is excerpts from the "Definitive proxy statement relating to merger or

22    acquisition" filed by StorageTek with the SEC on July 27, 2005[3]. According to this SEC document:

23

24

> Under the terms of the Agreement and Plan of Merger dated as of June 2, 2005 among Sun Microsystems, Inc. ("Sun"), Stanford

25

26

27

---

[2] Mr. Melnick responded by inserting his text in the original email, also the messages lost their formatting.

1.  http://www.sec.gov/Archives/edgar/data/94673/000103570405000382/d26147dedefm14a.htm, last accessed October 22, 2007.

28

-20-

Acquisition Corporation, a direct wholly-owned subsidiary of Sun ("Merger Sub"), and Storage Technology Corporation ("StorageTek"), referred to in this proxy statement as the merger agreement, Merger Sub will be merged with and into StorageTek with StorageTek emerging as the surviving corporation and a wholly-owned subsidiary of Sun.

A0139.

70.    According to a press release issued by SUN, it completed its acquisition of StorageTek on August 31, 2005. Attached **Exhibit 30** is a true printout of a SUN web page with the press release. The page was last accessed on October 28, 2007.

71.    After numerous exchanges, StorageTek finally agreed to provide a detailed license report. Attached **Exhibit 31** is a purported PowerRPC runtime usage report made by StorageTek in August 2005 showing that StorageTek made 7455 copies. This is a printout of a large Excel spreadsheet, only the first five pages and the last page are included. As shown on the printout, the StorageTek products that include Netbula PowerRPC runtime code are LibAttach (model code 1191NLC ) or INTGRTRS LIBATTACH (model code 1191NLI). The report also shows that StorageTek copied and distributed PowerRPC on Windows 2000 before it purchased any license for that operating system.

72.    Netbula performed an analysis of the license usage and found what it believed to be inconsistencies. StorageTek then had Maria Woods, its Corporate Counsel, take over the dispute between Netbula and StorageTek. Attached **Exhibit 32** is a string of email exchanges between Don Yue and Maria Woods. According to the email signatures, no later than October 3, 2005, Maria Woods became "Corporate Counsel" for "Sun Microsystems, Inc." with the email address maria.woods@sun.com.

73.    According to a declaration signed by Michael Melnick (Docket No. 12, filed on December 5, 2006), "[o]n or about December 16, 2005, after discussions between Netbula and StorageTek, StorageTek sent Netbula a revised report and a seven-page letter setting forth the bases of this

report." The revised report and the letter referenced in Mr. Melnick's declaration were emailed to me by Carmel Gill, whose signature identified her as from "Sun StorageTek Legal Department." Attached **Exhibit 33** was an exhibit used to support Mr. Melnick's declaration in opposition to Netbula's Temporary Restraining Order ("TRO") application in December 2006. It was my response to Ms. Gill's email, which showed that Ms. Gill emailed me several electronic documents, including "Letter to Don Yue 12-16-05.doc" and "FinalCount-RoyaltyItemsOnly.xls".

74.    The file "FinalCount-RoyaltyItemsOnly.xls" was the report Sun StorageTek emailed me on December 16, 2005, it was a Microsoft Excel spreadsheet. The report showed that StorageTek continued to sell LibAttach software which included Netbula RPC components after it became a subsidiary of Sun Microsystems in August 2005. **Exhibit 34** is the last two pages of the spreadsheet, evidencing the purported license sales after August 31, 2005.

75.    Attached **Exhibit 35** is a true print out of the "Letter to Don Yue 12-16-05.doc" document Sun StorageTek emailed to me. In the letter, Sun StorageTek admitted that it had sold unlimited licenses for LibAttach software containing Netbula code to multiple customers. A0164. Sun StorageTek also stated:

> As you may be aware, both engineering and marketing responsibilities for the LibAttach software and its predecessor products have changed hands within StorageTek multiple times over the course of the past five years... Also, as Mike Melnick informed Netbula back in 2000, StorageTek systems are set up to track royalties on a going-forward basis, not on a pre-paid basis. Mike Melnick suggested that the parties enter into a straight royalty-type agreement, but Netbula declined to do so…

A0163.

76.    During Mr. Melnick's deposition on September 19, 2007, Mr. Laurence Pulgram, defense counsel, claimed that the above letter from Sun StorageTek Legal Department should be confidential and not used as evidence. On about October 30, 2007, Mr. Pulgram warned me again by email that I must not use the letter as evidence to show that Sun StorageTek Legal Department

admitted that the Netbula-StorageTek license agreements were for pre-paid licenses. I responded to Mr. Pulgram by email, stating that since SUN used my response to that letter as part of their evidence in opposing Netbula's application for TRO, it should be fair for me to use that letter for the completeness of the record. Sun StorageTek Legal Department's understanding of the prepayment requirement was in agreement with Mr. Melnick's understanding of the licenses evidenced by his email message dated July 8, 2005 ("we must prepay"). See Exhibit 26. Mr. Melnick was the person who drafted the changes to both the 2000 Agreement and the 2004 Agreement.

77.     Attached **Exhibit 36** is a printout of page 9 of a StorageTek PDF document found on StorageTek's web site. The title of the document is "Florida Contract Price List". It shows that product 1191NLC-SENT is offered for "**UNLIMITED CLIENTS**". The page was accessed by me on November 22, 2006. 1191NLC is the StorageTek product code for LibAttach. Mr. Melnick testified I his deposition that 1191NLC-SENT is for "unlimited clients". See A0406.

78.     Attached **Exhibit 37** is a screen dump of page 11 of a StorageTek PDF document found on StorageTek web site. The title of the document is "StorageTek Price List for New York State Systems and Peripherals Hardware and Software (Storage) Contract". The document indicates that the product 1191NLC-SENT is being offered for "**UNLIMITED CLIENTS**". The screen was printed by me on November 22, 2006.

79.     In December 2006, Netbula filed a lawsuit against StorageTek and SUN, alleging, *inter alia*, infringement of copyrights in the 1996 version of Netbula PowerRPC, with U.S. registration number TX-6-211-063 (registered October 18, 2005).

80.     Attached **Exhibit 38** includes pages from of an assignment of a contract between StorageTek and Commonwealth of Virginia to Sun Microsystems, Inc found at

http://www.vita.virginia.gov/procurement/contracts/docs/abstracts/va-040330-stk.pdf (last

accessed October 22, 2007).  The document is dated May 17, 2007. The original contract was dated May 17, 2004. The contract listed items with model number 1191NLC-0000, which is the StorageTek LibAttach software.

81.    Attached **Exhibit 39** is the two invoices Netbula sent to StorageTek in 2000 and 2004.

82.    Attached **Exhibit 40** is StorageTek's responses to Netbula, LLC's Amended First Set of Requests for Documents and Things (Nos. 1-17).

83.    **Exhibit 41** is StorageTek's answers to Netbula, LLC's  Amended First Set of Interrogatories (Nos. 1-10).

84.    Attached **Exhibit 42** is excerpts of my deposition transcript taken on September 12, 2007.

85.    On September 19, 2007, Netbula deposed Michael Melnick, who was designated by SUN as an FRCP 30(b)(6) witness. Attached **Exhibit 43** is a true copy of the non-confidential portion of Mr. Melnick's deposition transcript.

86.    On October 23, 2007, Netbula deposed Michael P. Abramovitz, who was designated by SUN as an FRCP 30(b)(6) witness. Attached **Exhibit 44** is a true copy of Mr. Abramovitz's deposition transcript.

87.    On page 21 of Mr. Abramovitz's deposition transcript, he was asked about an email message with an attached document. The email and the attached document were about "NetBula License and Support Information".

88.    Attached **Exhibit 45** is a true copy of the transcript of the TRO hearing held before Magistrate Judge Zimmerman on December 5, 2006. I was present at the hearing.

I declare under penalty of perjury of the laws of the State of California and the federal laws that the forgoing declaration is true and correct to the best of my knowledge. This declaration was executed in San Leandro, California, on November 12, 2007.

1

DONGXIAO YUE

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-25-