1  VONNAH M. BRILLET (SBN 226545)
   **LAW OFFICES OF VONNAH M. BRILLET**
2  2777 ALVARADO ST., SUITE E
   SAN LEANDRO, CA 94577
3  Telephone:    (510) 351-5345
   Facsimile:    (510) 351-5348
4  E-Mail:        BrilletLaw@yahoo.com
5
   Attorneys for Plaintiff
6  NETBULA, LLC
7
8              UNITED STATES DISTRICT COURT
9            NORTHERN DISTRICT OF CALIFORNIA
10
   NETBULA, LLC., a Delaware limited liability      Case No. Case No. C06-07391-MJJ
11 company,
                                                    **DECLARATION OF DONGXIAO YUE IN**
12                Plaintiff,                         **OPPOSITION TO DEFENDANTS'**
                                                    **MOTION FOR SUMMARY JUDGMENT**
13      v.                                          **OR SUMMARY ADJUDICATION OF**
                                                    **ISSUES RELATING TO LICENSE**
14                                                  **DEFENSE**
15 STORAGE TECHNOLOGY
   CORPORATION, et al.,                             Date: December 13, 2007
16                                                  Time: 3:00 p.m.
                                                    Dept: Courtroom 11
17                Defendants.                       Judge: The Honorable Martin J. Jenkins
18
19            # EXHIBITS 40-42
20             **Pages A0187 – A0296**
21
22           Exhibit 40:  A0188
23
             Exhibit 41:  A0211
24
25           Exhibit 42:  A0228
26
27
28

A0187

# EXHIBIT 40

# EXHIBIT 40

A0187

A0188

1  LAURENCE F. PULGRAM (CSB NO. 115163)
   *lpulgram@fenwick.com*
2  JEDEDIAH WAKEFIELD (CSB NO. 178058)
   *jwakefield@fenwick.com*
3  LIWEN A. MAH (CSB NO. 239033)
   *lmah@fenwick.com*
4  FENWICK & WEST LLP
   555 California Street, Ste. 1200
5  San Francisco, CA  94104
   Telephone: (415) 875-2300
6  Facsimile:  (415) 281-1350

7  Attorneys for Defendants
   Storage Technology Corporation, Sun Microsystems, Inc.,
8  EMC Corporation, Veritas Software Corporation, and
   Darden Restaurants, Inc.

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11                       SAN FRANCISCO DIVISION

12  | NETBULA, LLC, a Delaware limited liability company, | Case No.  C-06-07391-MJJ |
13  | Plaintiff, | **DEFENDANT AND COUNTERCLAIMANT STORAGE TECHNOLOGY CORPORATION'S RESPONSE TO PLAINTIFF NETBULA, LLC'S AMENDED FIRST SET OF REQUESTS FOR DOCUMENTS AND THINGS (NOS. 1-17)** |
14  | v. | |
15  | STORAGE TECHNOLOGY CORPORATION, a Delaware corporation; SUN MICROSYSTEMS, INC., a Delaware corporation; INTERNATIONAL BUSINESS MACHINES CORPORATION, a New York corporation; EMC CORPORATION, a Massachusetts corporation; VERITAS SOFTWARE CORPORATION, a Delaware corporation; DARDEN RESTAURANTS, INC., a Florida corporation; and DOES 1-100, inclusive, | |
16  | | |
17  | | |
18  | | |
19  | | |
20  | Defendants. | |
21  | SUN MICROSYSTEMS, INC., a Delaware corporation, | |
22  | Counter-Claimant, | |
23  | v. | |
24  | NETBULA, LLC, a Delaware limited liability company, | |
25  | Counterclaim Defendant, | |
26  | and | |
27  | DONGXIAO YUE, an individual, | |
28  | Third-Party Counterclaim Defendant. | |

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

A0188

1  **PROPOUNDING PARTY:** PLAINTIFF NETBULA, LLC

2  **RESPONDING PARTY:**    DEFENDANT STORAGE TECHNOLOGY CORPORATION

3  **SET NUMBER:**    ONE (Nos. 1-17)

4

5       Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, and the minutes of

6  the May 8, 2007 hearing and the Court's subsequent pretrial order—which limited discovery to

7  issues related to the contractual licensing agreements between Plaintiff Netbula, LLC's

8  ("Netbula") and Defendant Storage Technology Corporation ("StorageTek"), and the defense of

9  license (the "Initial Phase")—StorageTek hereby responds to Netbula's Amended First Set of

10  Requests for Production of Documents as follows:

11  <u>**GENERAL OBJECTIONS**</u>

12       StorageTek makes the following General Objections to each of the document requests

13  propounded by Netbula:

14       1.    StorageTek objects to all definitions, instructions and document requests to the

15  extent they seek to impose obligations upon StorageTek that is broader than or inconsistent with

16  the obligations imposed by the Federal Rules of Civil Procedure, the Local Rules of the District

17  Court of the Northern District of California, the minutes of the May 8, 2007 hearing and the

18  Court's pretrial order, and/or applicable case law.

19       2.    StorageTek further objects to all definitions, instructions and document requests to

20  the extent they seek the disclosure of information protected by the attorney-client privilege

21  (including the joint representation and common interest privilege), the litigation privilege, the

22  attorney work-product doctrine, or any other applicable privilege, protection, immunity or

23  restriction on discovery as provided by any applicable law.  StorageTek does not intend to

24  produce such privileged or protected documents or information.  StorageTek's inadvertent

25  disclosure of any such documents or information is not to be deemed a waiver of any privilege or

26  protection, and StorageTek expressly reserves the right to object to the introduction at trial or any

27  other use of such information that may be inadvertently disclosed.

28       3.    Storage Tek further objects to each document request to the extent that they seek

2

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    information that is not within the scope of the Initial Phase of this proceeding.

2         4.    StorageTek further objects to all definitions, instructions and document requests to

3    the extent they are vague, ambiguous, fail to describe the information sought with the required

4    reasonable particularity, or are so unintelligible that StorageTek cannot respond.

5         5.    StorageTek further objects to Netbula's definition of the term "WORK" as vague,

6    ambiguous, overly broad, unduly burdensome, and seeking information not relevant to the Initial

7    Phase, or any claim or defense in this lawsuit. StorageTek will construe this term as limited to

8    employer-directed and compensated labor, the product of which may not be certain.

9         6.    StorageTek further objects to Netbula's definition of the terms "DOCUMENT" or

10   "DOCUMENTS" as vague, ambiguous, overly broad, unduly burdensome, and seeking

11   information not relevant to the Initial Phase, or to any claim or defense in this lawsuit, including

12   without limitation the extent to which drafts are duplicative or redundant.

13        7.    StorageTek further objects to Netbula's definition of the terms "ALL

14   STORAGETEK SOFTWARE" or "ALL STORAGETK SOFTWARE" [sic] as vague,

15   ambiguous, overly broad, unduly burdensome, and seeking information not relevant to the Initial

16   Phase, or any claim or defense in this lawsuit. StorageTek will construe these terms as referring

17   to products marketed under the names "REELs," "Library Attach," "LibAttach," and "LibAttach

18   Integrator's Kit." StorageTek further objects to Netbula's definition of the terms "RELEVANT

19   STORAGETEK SOFTWARE," "RELEVANT STORAGETEK PRODUCTS AND SERVICES,"

20   and "RELEVANT PRODUCTS AND SERVICES" as vague, ambiguous, overly broad, unduly

21   burdensome, and seeking information not relevant to the Initial Phase, or any claim or defense in

22   this lawsuit. StorageTek will construe these terms as referring to products marketed under the

23   names "REELs," "Library Attach," "LibAttach," and "LibAttach Integrator's Kit."

24        8.    StorageTek further objects to Netbula's definitions of "YOU," "YOUR," "SUN,"

25   and "STORAGETEK" as overly broad, burdensome and oppressive. StorageTek will construe

26   these terms consistent with its obligations under Federal Rule of Civil Procedure 34 and

27   applicable case law.

28        9.    StorageTek further objects to Netbula's definitions of "NETBULA POWERRPC

3

1    SOFTWARE," "NETBULA JAVARPC SOFTWARE," and "NETBULA SOFTWARE," as

2    vague, ambiguous, overly broad, burdensome, and seeking information not relevant to the Initial

3    Phase, or any claim or defense in this lawsuit, particularly the reference in those definitions to

4    "software defendants have used in their products." StorageTek will construe these terms as

5    referring to software that is contained in commercially installable versions of products marketed

6    under the names "REELs," "Library Attach," "LibAttach," and "LibAttach Integrator's Kit."

7        10.    StorageTek further objects to Netbula's definitions of "RELEVANT PRODUCTS

8    AND SERVICES" and "RELEVANT THIRD PARTY PRODUCTS AND SERVICES," as

9    vague, ambiguous, overly broad, burdensome, and seeking information not relevant to the Initial

10   Phase, or any claim or defense in this lawsuit.

11       11.    StorageTek further objects to the definition of the terms "CLIENT MACHINE"

12   and "SERVER MACHINE" as vague, ambiguous, overly broad, unduly burdensome, and seeking

13   information not relevant to the Initial Phase, or any claim or defense in this lawsuit. StorageTek

14   further objects to the limitations "normally used by one human user" and "shared by many users,"

15   and "machine that is not a CLIENT MACHINE is a SERVER machine" as inaccurate or

16   misleading.

17       12.    StorageTek further objects to Netbula's definition of the term "SOURCE CODE"

18   as vague, ambiguous, overly broad, unduly burdensome, and seeking information not relevant to

19   the Initial Phase, or any claim or defense in this lawsuit. StorageTek will construe this term as

20   pertaining only to source code for commercially installable versions of products marketed under

21   the names "REELs," "Library Attach," "LibAttach," and "LibAttach Integrator's Kit."

22       13.    StorageTek further objects to Netbula's use of the term "minor revision" as it fails

23   to describe the information sought with the required reasonable particularity. StorageTek will

24   construe "minor revision" as referring to publicly-released revisions of "REELs," "Library

25   Attach," "LibAttach," and "LibAttach Integrator's Kit" bearing a minor version number such as

26   ".1" in a revision called "5.1" for example.

27       14.    StorageTek further objects to all definitions, instructions and document requests to

28   the extent they seek to impose upon StorageTek obligations exceeding the requirements of Rule

4

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    34 of the Federal Rules of Civil Procedure.

2        15.    StorageTek further objects to Instructions 3 and 10 on the grounds that each is

3    oppressive and unduly burdensome to the extent it requires a log for each document created after

4    this action was filed. Unless agreed to the contrary, StorageTek will not log documents created or

5    prepared in anticipation of this litigation after December 4, 2006 by it or its employees, attorneys

6    or agents. StorageTek also will not log documents and other materials protected by the attorney-

7    client privilege (including the joint representation and common interest privilege), the litigation

8    privilege, the attorney work-product doctrine, or any other applicable privilege, protection,

9    immunity or restriction on discovery created on or after December 4, 2006. With the exception of

10   the above categories of documents, StorageTek will provide a log of any documents (responsive

11   to otherwise non-objectionable discovery requests) that are withheld on the grounds of the

12   attorney-client privilege, work product doctrine or any other privilege or immunity.

13       16.    StorageTek further objects to all definitions, instructions and document requests to

14   the extent they purport to require StorageTek to produce documents containing any information

15   received from a third party under a nondisclosure agreement or other confidentiality obligation, or

16   call for the disclosure of information protected by StorageTek's employees' or any third parties'

17   rights of privacy or other confidentiality obligations. StorageTek also objects to producing the

18   contents of any part of any agreement which, by its terms, may not be disclosed.

19       17.    StorageTek objects to all definitions, instructions and document requests to the

20   extent they seek production of documents that contain confidential financial, proprietary, trade

21   secret or other confidential or competitively sensitive business information. Such material shall

22   only be produced subject to the protective order entered in this action.

23       18.    StorageTek objects to all definitions, instructions and document requests to the

24   extent they seek production of documents not limited to a relevant time period.

25       19.    StorageTek objects to all definitions, instructions and document requests to the

26   extent they prematurely seek expert discovery.

27       20.    A representation that StorageTek will produce particular categories or types of

28   documents in response to a request is not a representation that such documents necessarily exist.

5

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

STORAGE TECHNOLOGY'S RESPONSE TO
NETBULA'S FIRST SET OF AMENDED REQUESTS

CASE NO. C-06-07391-MJJ

1  StorageTek will conduct a search of reasonable scope for the categories and types of documents

2  identified in its responses.

3      21.    StorageTek has not yet completed its investigation, collection of information,

4  discovery, or analysis concerning this action. The following responses are based on information

5  known and available to StorageTek at this time. StorageTek reserves the right to modify, change,

6  or supplement its responses and to produce additional evidence at trial, whether consistent or

7  inconsistent with these responses.

8      22.    StorageTek further objects to all definitions, instructions and document requests

9  pending Netbula's agreement as to a format for production of materials in this litigation.

10  StorageTek will not produce documents responsive to these requests until the parties have

11  reached such an agreement. In particular, StorageTek objects to general production of

12  information in native electronic format with original metadata and embedded data as vague,

13  ambiguous, overly broad, burdensome, and seeking information not relevant to the Initial Phase,

14  or any claim or defense in this lawsuit. StorageTek objects to any format or organization of

15  production that is neither agreed upon nor required by Federal Rule of Civil Procedure 34.

16

17              **REQUESTS FOR DOCUMENTS AND THINGS**

18  **REQUEST NO. 1:**

19      All documents CONCERNING YOUR development, testing and distribution of

20  RELEVANT STORAGETEK SOFTWARE on or targeting Microsoft Windows NT operating

21  system before March 2004, including but not limited to project plans, emails among developers,

22  source code revision information, bug list, release notes, end of life notices, training materials and

23  DOCUMENTS CONCERNING licensing terms, sales, marketing, promotion, advertisement,

24  strategy, planning of RELEVANT STORAGETEK SOFTWARE.

25  **RESPONSE TO REQUEST NO. 1:**

26      StorageTek incorporates by reference its General Objections as if fully set forth herein.

27  StorageTek further objects to Netbula's definition of the terms "YOUR," "STORAGETEK,"

28  "RELEVANT STORAGETEK SOFTWARE," "SOURCE CODE," and "DOCUMENTS" as

6

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    vague, ambiguous, overly broad, unduly burdensome, and seeking information not relevant to to

2    the Initial Phase, or any claim or defense in this lawsuit. StorageTek will construe "YOUR" and

3    "STORAGETEK" consistent with its obligations under Federal Rule of Civil Procedure 34 and

4    applicable case law. StorageTek will construe "RELEVANT STORAGETEK SOFTWARE," as

5    referring to products marketed under the names "REELs," "Library Attach," "LibAttach," and

6    "LibAttach Integrator's Kit." StorageTek will construe "SOURCE CODE" as pertaining only to

7    source code for commercially installable versions of relevant StorageTek software. StorageTek

8    will construe "DOCUMENTS" to exclude drafts that are duplicative or redundant. StorageTek

9    specifically objects to "targeting," "revision information," "materials," and "planning" as vague,

10   ambiguous, overly broad, unduly burdensome, and seeking information neither relevant to the

11   Initial Phase or any claim or defense in this lawsuit nor reasonably calculated to lead to the

12   discovery of admissible evidence. StorageTek specifically objects to "project plans, emails among

13   developers, source code revision information, bug list, release notes, end of life notices, training

14   materials and DOCUMENTS CONCERNING licensing terms, sales, marketing, promotion,

15   advertisement, strategy, planning of RELEVANT STORAGETEK SOFTWARE" as overly

16   broad, unduly burdensome, and seeking information neither relevant to the Initial Phase or any

17   claim or defense in this lawsuit nor reasonably calculated to lead to the discovery of admissible

18   evidence. StorageTek also objects to this document request to the extent it seeks production of

19   documents not limited to a relevant time period. In responding to this request, StorageTek will

20   conduct a search of reasonable scope for documents relevant to the time period March 2000

21   through March 2004. Subject to and without waiving the foregoing objections and the General

22   Objections, StorageTek responds as follows:

23          In the Initial Phase, there is no issue about the operating systems used by StorageTek

24   customers or other third parties. Accordingly, documents concerning development, testing and

25   distribution of StorageTek software on or targeting Microsoft Windows NT are irrelevant in this

26   Initial Phase and will not be produced.

27   **REQUEST NO. 2:**

28          All documents CONCERNING YOUR development, testing and distribution of

7

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1 RELEVANT STORAGETEK SOFTWARE on or targeting any version or edition of **Microsoft**

2 **Windows 2000, Windows ME, Windows XP and Windows 2003** before March 2004, including

3 but not limited to project plans, emails among developers, source code revision information, bug

4 list, release notes, end of life notices, training materials and DOCUMENTS CONCERNING

5 licensing terms, sales, marketing, promotion, advertisement, strategy, planning of RELEVANT

6 STORAGETEK SOFTWARE.

7 **RESPONSE TO REQUEST NO. 2:**

8 StorageTek incorporates by reference its General Objections as if fully set forth herein.

9 StorageTek further objects to Netbula's definition of the terms "YOUR," "STORAGETEK,"

10 "RELEVANT STORAGETEK SOFTWARE," "SOURCE CODE," and "DOCUMENTS" as

11 vague, ambiguous, overly broad, unduly burdensome, and seeking information not relevant to to

12 the Initial Phase, or any claim or defense in this lawsuit. StorageTek will construe "YOUR" and

13 "STORAGETEK" consistent with its obligations under Federal Rule of Civil Procedure 34 and

14 applicable case law. StorageTek will construe "RELEVANT STORAGETEK SOFTWARE," as

15 referring to products marketed under the names "REELs," "Library Attach," "LibAttach," and

16 "LibAttach Integrator's Kit." StorageTek will construe "SOURCE CODE" as pertaining only to

17 source code for commercially installable versions of relevant StorageTek software. StorageTek

18 will construe "DOCUMENTS" to exclude drafts that are duplicative or redundant. StorageTek

19 specifically objects to "targeting," "revision information," and "materials" as vague, ambiguous,

20 overly broad, unduly burdensome, and seeking information neither relevant to the Initial Phase or

21 any claim or defense in this lawsuit nor reasonably calculated to lead to the discovery of

22 admissible evidence. StorageTek specifically objects to "project plans, emails among developers,

23 source code revision information, bug list, release notes, end of life notices, training materials and

24 DOCUMENTS CONCERNING licensing terms, sales, marketing, promotion, advertisement,

25 strategy, planning of RELEVANT STORAGETEK SOFTWARE" as overly broad, unduly

26 burdensome, and seeking information neither relevant to the Initial Phase or any claim or defense

27 in this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence.

28 StorageTek also objects to this document request to the extent it seeks production of documents

8

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    not limited to a relevant time period.  In responding to this request, StorageTek will conduct a

2    search of reasonable scope for documents relevant to the time period March 2000 through March

3    2004.  Subject to and without waiving the foregoing objections and the General Objections,

4    StorageTek responds as follows:

5         In the Initial Phase, there is no issue about the operating systems used by StorageTek

6    customers or other third parties. Accordingly, documents concerning development, testing and

7    distribution of StorageTek software on or targeting Microsoft Windows 2000, Windows ME,

8    Windows XP and Windows 2003 are irrelevant in this Initial Phase and will not be produced.

9    **REQUEST NO. 3:**

10        All documents CONCERNING YOUR decision to license Netbula software in 2000,

11   including but not limited to software testing reports, all emails, telephone logs, letters, faxes,

12   instant messages and other correspondence.

13   **RESPONSE TO REQUEST NO. 3:**

14        StorageTek incorporates by reference its General Objections as if fully set forth herein.

15   StorageTek further objects to Netbula's definition of the terms "YOUR," "NETBULA

16   SOFTWARE," and "DOCUMENTS" as vague, ambiguous, overly broad, burdensome, and

17   seeking information not relevant to the Initial Phase, or any claim or defense in this lawsuit,

18   particularly the reference in the definition of "NETBULA SOFTWARE" to "software defendants

19   have used in their products."  StorageTek will construe "YOUR" consistent with its obligations

20   under Federal Rule of Civil Procedure 34 and applicable case law.  StorageTek will construe

21   "NETBULA SOFTWARE" as referring to software that is contained in commercially installable

22   versions of products marketed under the names "REELs," "Library Attach," "LibAttach," and

23   "LibAttach Integrator's Kit."  StorageTek will construe "DOCUMENTS" to exclude drafts that

24   are duplicative or redundant.  StorageTek also objects to this document request to the extent it

25   seeks production of documents not limited to a relevant time period.  In responding to this

26   request, StorageTek will conduct a search of reasonable scope for documents relevant to the time

27   period 1999 through 2000.  Subject to and without waiving the foregoing objections and the

28   General Objections, StorageTek responds as follows:

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    To the extent such documents are within its possession, custody, or control, StorageTek

2    will produce all relevant non-privileged documents concerning its decision to license Netbula

3    software in 2000. Documents that contain confidential financial, proprietary, trade secret or other

4    confidential or competitively sensitive business information will only be produced subject to the

5    protective order entered in this action.

6    **REQUEST NO. 4:**

7    All documents CONCERNING YOUR decision to license Netbula software in 2004,

8    including but not limited to software testing reports, all emails, telephone logs, letters, faxes,

9    instant messages and other correspondence.

10    **RESPONSE TO REQUEST NO. 4:**

11    StorageTek incorporates by reference its General Objections as if fully set forth herein.

12    StorageTek further objects to Netbula's definition of the terms "YOUR," "NETBULA

13    SOFTWARE," and "DOCUMENTS" as vague, ambiguous, overly broad, burdensome, and

14    seeking information not relevant to the Initial Phase, or any claim or defense in this lawsuit,

15    particularly the reference in the definition of "NETBULA SOFTWARE" to "software defendants

16    have used in their products." StorageTek will construe "YOUR" consistent with its obligations

17    under Federal Rule of Civil Procedure 34 and applicable case law. StorageTek will construe

18    "NETBULA SOFTWARE" as referring to software that is contained in commercially installable

19    versions of products marketed under the names "REELs," "Library Attach," "LibAttach," and

20    "LibAttach Integrator's Kit." StorageTek will construe "DOCUMENTS" to exclude drafts that

21    are duplicative or redundant. StorageTek also objects to this document request to the extent it

22    seeks production of documents not limited to a relevant time period. In responding to this

23    request, StorageTek will conduct a search of reasonable scope for documents relevant to the time

24    period 2003 through 2004. Subject to and without waiving the foregoing objections and the

25    General Objections, StorageTek responds as follows:

26    To the extent such documents are within its possession, custody, or control, StorageTek

27    will produce all relevant non-privileged documents concerning its decision to license Netbula

28    software in 2004. Documents that contain confidential financial, proprietary, trade secret or other

10

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  confidential or competitively sensitive business information will only be produced subject to the

2  protective order entered in this action.

3  **REQUEST NO. 5:**

4       All documents CONCERNING YOUR license of Netbula software in 2000 and 2004,

5  including but not limited to draft versions of license agreements, internal discussions, emails,

6  telephone logs, letters, faxes, instant messages and other correspondence.

7  **RESPONSE TO REQUEST NO. 5:**

8       StorageTek incorporates by reference its General Objections as if fully set forth herein.

9  StorageTek further objects to Netbula's definition of the terms "YOUR," "NETBULA

10  SOFTWARE," and "DOCUMENTS" as vague, ambiguous, overly broad, burdensome, and

11  seeking information not relevant to the Initial Phase, or any claim or defense in this lawsuit,

12  particularly the reference in the definition of "NETBULA SOFTWARE" to "software defendants

13  have used in their products." StorageTek will construe "YOUR" consistent with its obligations

14  under Federal Rule of Civil Procedure 34 and applicable case law. StorageTek will construe

15  "NETBULA SOFTWARE" as referring to software that is contained in commercially installable

16  versions of products marketed under the names "REELs," "Library Attach," "LibAttach," and

17  "LibAttach Integrator's Kit." StorageTek will construe "documents" to exclude drafts that are

18  duplicative or redundant. StorageTek also objects to this document request to the extent it seeks

19  production of documents not limited to a relevant time period. In responding to this request,

20  StorageTek will conduct a search of reasonable scope for documents relevant to the time periods

21  1999 through 2000 and 2003 through 2004. Subject to and without waiving the foregoing

22  objections and the General Objections, StorageTek responds as follows:

23       To the extent such documents are within its possession, custody, or control, StorageTek

24  will produce all relevant non-privileged documents concerning its license of Netbula software in

25  2000 and 2004. Documents that contain confidential financial, proprietary, trade secret or other

26  confidential or competitively sensitive business information will only be produced subject to the

27  protective order entered in this action.

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

STORAGE TECHNOLOGY'S RESPONSE TO
NETBULA'S FIRST SET OF AMENDED REQUESTS

CASE NO. C-06-07391 MJJ

1  **REQUEST NO. 6:**

2      All documents CONCERNING YOUR INTERNAL COMMUNICATIONS

3  CONCERNING NETBULA licensing terms, including but not limited to all emails, telephone

4  logs, letters, faxes, instant messages and other correspondence.

5  **RESPONSE TO REQUEST NO. 6:**

6      StorageTek incorporates by reference its General Objections as if fully set forth herein.

7  StorageTek further objects to Netbula's definition of the terms "YOUR" and "DOCUMENTS" as

8  vague, ambiguous, overly broad, burdensome, and seeking information not relevant to the Initial

9  Phase, or any claim or defense in this lawsuit.  StorageTek will construe "YOUR" consistent with

10  its obligations under Federal Rule of Civil Procedure 34 and applicable case law.  StorageTek

11  will construe "DOCUMENTS" to exclude drafts that are duplicative or redundant.  StorageTek

12  also objects to this document request to the extent it seeks production of documents not limited to

13  a relevant time period.  In responding to this request, StorageTek will conduct a search of

14  reasonable scope for documents relevant to the time period 2000 through 2006.  StorageTek also

15  objects to this document request to the extent that it is duplicative of requests 3-5.  Subject to and

16  without waiving the foregoing objections and the General Objections, StorageTek responds as

17  follows:

18      To the extent such documents are within its possession, custody, or control, StorageTek

19  will produce all relevant non-privileged documents concerning its internal communications

20  concerning Netbula licensing terms.  Documents that contain confidential financial, proprietary,

21  trade secret or other confidential or competitively sensitive business information will only be

22  produced subject to the protective order entered in this action.

23  **REQUEST NO. 7:**

24      All documents CONCERNING YOUR EXTERNAL COMMUNICATIONS

25  CONCERNING NETBULA or NETBULA SOFTWARE before and after the filing of the instant

26  lawsuit, relating to interpretation of the license agreements.

27  **RESPONSE TO REQUEST NO. 7:**

28      StorageTek incorporates by reference its General Objections as if fully set forth herein.

12

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  StorageTek further objects to Netbula's definition of the terms "YOUR," "NETBULA

2  SOFTWARE," and "DOCUMENTS" as vague, ambiguous, overly broad, burdensome, and

3  seeking information not relevant to the Initial Phase, or any claim or defense in this lawsuit,

4  particularly the reference in the definition of "NETBULA SOFTWARE" to "software defendants

5  have used in their products." StorageTek will construe "YOUR" consistent with its obligations

6  under Federal Rule of Civil Procedure 34 and applicable case law. StorageTek will construe

7  "NETBULA SOFTWARE" as referring to software that is contained in commercially installable

8  versions of products marketed under the names "REELs," "Library Attach," "LibAttach," and

9  "LibAttach Integrator's Kit." StorageTek will construe "DOCUMENTS" to exclude drafts that

10  are duplicative or redundant. StorageTek also objects to this document request to the extent it

11  seeks production of documents not limited to a relevant time period. In responding to this

12  request, StorageTek will conduct a search of reasonable scope for documents relevant to the time

13  period July 2005 through December 2006. StorageTek further objects to this request to the extent

14  that it seeks documents that are or should be within Netbula's possession, custody or control.

15  StorageTek will not produce such documents. Subject to and without waiving the foregoing

16  objections and the General Objections, StorageTek responds as follows:

17      To the extent such documents are within its possession, custody, or control, StorageTek

18  will produce all relevant non-privileged documents concerning its external communications

19  concerning interpretation of the Netbula Software license agreements. Documents that contain

20  confidential financial, proprietary, trade secret or other confidential or competitively sensitive

21  business information will only be produced subject to the protective order entered in this action.

22  **REQUEST NO. 8:**

23      Installable copies of all RELEVANT STORAGETEK SOFTWARE for every major and

24  minor, revision from March 2000 to December 2006.

25  **RESPONSE TO REQUEST NO. 8:**

26      StorageTek incorporates by reference its General Objections as if fully set forth herein.

27  StorageTek further objects to Netbula's definition of the terms "RELEVANT STORAGETEK

28  SOFTWARE" as vague, ambiguous, overly broad, burdensome, and seeking information not

13

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   relevant to the Initial Phase, or any claim or defense in this lawsuit. StorageTek will construe

2   "RELEVANT STORAGETEK SOFTWARE," as referring to products marketed under the names

3   "REELs," "Library Attach," "LibAttach," and "LibAttach Integrator's Kit." StorageTek further

4   objects to Netbula's use of the term "minor revision" as it fails to describe the information sought

5   with the required reasonable particularity. StorageTek will construe "minor revision" as referring

6   to publicly-released revisions of "REELs," "Library Attach," "LibAttach," and "LibAttach

7   Integrator's Kit" bearing a minor version number such as ".1" in a revision called "5.1" for

8   example. Subject to and without waiving the foregoing objections and the General Objections,

9   StorageTek responds as follows:

10          On the basis that installable software is not relevant to the Initial Phase, StorageTek will

11  not produce installable copies of each relevant major and minor revision from March 2000 to

12  December 2006 of products marketed under the names "REELs," "Library Attach," "LibAttach,"

13  and "LibAttach Integrator's Kit."

14  **REQUEST NO. 9:**

15          Source code and other documents evidencing the targeting operating system type for each

16  RELEVANT STORAGETEK SOFTWARE for every minor and major revision, including

17  revision control and time information.

18  **RESPONSE TO REQUEST NO. 9:**

19          StorageTek incorporates by reference its General Objections as if fully set forth herein.

20  StorageTek further objects to Netbula's definition of the terms "RELEVANT STORAGETEK

21  SOFTWARE," "SOURCE CODE," and "DOCUMENTS" as vague, ambiguous, overly broad,

22  unduly burdensome, and seeking information not relevant to to the Initial Phase, or any claim or

23  defense in this lawsuit. StorageTek will construe "RELEVANT STORAGETEK SOFTWARE,"

24  as referring to products marketed under the names "REELs," "Library Attach," "LibAttach," and

25  "LibAttach Integrator's Kit." StorageTek will construe "SOURCE CODE" as pertaining only to

26  source code for commercially installable versions of products marketed under the names

27  "REELs," "Library Attach," "LibAttach," and "LibAttach Integrator's Kit." StorageTek will

28  construe "DOCUMENTS" to exclude drafts that are duplicative or redundant. StorageTek further

14

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   objects to Netbula's use of the term "minor revision" as it fails to describe the information sought

2   with the required reasonable particularity.  StorageTek will construe "minor revision" as referring

3   to publicly-released revisions of "REELs," "Library Attach," "LibAttach," and "LibAttach

4   Integrator's Kit" bearing a minor version number such as ".1" in a revision called "5.1" for

5   example.  StorageTek also objects to this document request to the extent it seeks production of

6   source code and documents not limited to a relevant time period.  In responding to this request,

7   StorageTek will conduct a search of reasonable scope for documents relevant to the time period

8   March 2000 to December 2006.  Subject to and without waiving the foregoing objections and the

9   General Objections, StorageTek responds as follows:

10      On the basis that source code is not relevant to the Initial Phase, StorageTek will not

11  produce source code. In the Initial Phase, there is no issue about the operating systems used by

12  StorageTek customers or other third parties. Accordingly, documents evidencing the "targeting

13  operating system type" of StorageTek software are irrelevant in this Initial Phase and will not be

14  produced.

15  **REQUEST NO. 10:**

16      All sales, leases, updates, upgrade records or databases for RELEVANT STORAGETEK

17  SOFTWARE, including date, license type, license fees, target operating system, support

18  contracts, license agreements, service agreements, upgrades, upgrade costs from March 2000 to

19  December 2006.

20  **RESPONSE TO REQUEST NO. 10:**

21      StorageTek incorporates by reference its General Objections as if fully set forth herein.

22  StorageTek further objects to Netbula's definition of the terms "RELEVANT STORAGETEK

23  SOFTWARE" as vague, ambiguous, overly broad, burdensome, and seeking information not

24  relevant to the Initial Phase, or any claim or defense in this lawsuit.  StorageTek will construe

25  "RELEVANT STORAGETEK SOFTWARE," as referring to products marketed under the names

26  "REELs," "Library Attach," "LibAttach," and "LibAttach Integrator's Kit." StorageTek objects

27  to sales, leases, updates, upgrade records or databases including the "target operating system" as

28  being irrelevant to the Initial Phase. Subject to and without waiving the foregoing objections and

15

1    the General Objections, StorageTek responds as follows:

2           To the extent such documents are within its possession, custody, or control, StorageTek

3    will produce all records or databases of sales, leases, updates, and upgrades from March 2000 to

4    December 2006 for products marketed under the names "REELs," "Library Attach," "LibAttach,"

5    and "LibAttach Integrator's Kit," only to the extent that Netbula code was used or included in

6    those products and only to the extent that such documents identify customers, dates, license type,

7    or license terms. Documents that contain confidential financial, proprietary, trade secret or other

8    confidential or competitively sensitive business information will only be produced subject to the

9    protective order entered in this action.

10   **REQUEST NO. 11:**

11          All documents evidencing the identities of programmers, testing engineers and other

12   PERSONS who were involved in the development of RELEVANT STORAGETEK SOFTWARE

13   from March 2000 to December 2006.

14   **RESPONSE TO REQUEST NO. 11:**

15          StorageTek incorporates by reference its General Objections as if fully set forth herein.

16   StorageTek further objects to Netbula's definition of the terms "RELEVANT STORAGETEK

17   SOFTWARE," "DOCUMENTS," and "PERSONS" as vague, ambiguous, overly broad,

18   burdensome, and seeking information not relevant to the Initial Phase, or any claim or defense in

19   this lawsuit. StorageTek will construe "RELEVANT STORAGETEK SOFTWARE," as

20   referring to products marketed under the names "REELs," "Library Attach," "LibAttach," and

21   "LibAttach Integrator's Kit." StorageTek will construe "DOCUMENTS" to exclude drafts that

22   are duplicative or redundant. In responding to this request StorageTek will construe "PERSONS"

23   as referring to individuals who contributed source code to the development of the relevant

24   StorageTek products or who personally performed developmental testing of the relevant

25   StorageTek products. Subject to and without waiving the foregoing objections and the General

26   Objections, StorageTek responds as follows:

27          Storage Tek further refers Plaintiff to StorageTek's Response to Plaintiff's Interrogatory

28   No. 4 in this action. Because further production would be unduly burdensome and duplicative,

16

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    StorageTek will not produce further documents for this request.

2    **REQUEST NO. 12:**

3         All documents supporting DEFENDANT's affirmative defenses.

4    **RESPONSE TO REQUEST NO. 12:**

5         StorageTek incorporates by reference its General Objections as if fully set forth herein.

6    StorageTek further objects to Netbula's definition of the terms "DOCUMENTS" as vague,

7    ambiguous, overly broad, burdensome, and seeking information not relevant to the Initial Phase,

8    or any claim or defense in this lawsuit. StorageTek will construe "DOCUMENTS" to exclude

9    drafts that are duplicative or redundant. Subject to and without waiving the foregoing objections

10   and the General Objections, StorageTek responds as follows:

11        To the extent such documents are within its possession, custody, or control, StorageTek

12   will produce all relevant non-privileged documents supporting its twelfth affirmative defense of

13   license. Documents that contain confidential financial, proprietary, trade secret or other

14   confidential or competitively sensitive business information will only be produced subject to the

15   protective order entered in this action.

16   **REQUEST NO. 13:**

17        All documents concerning the NETBULA SOFTWARE usage reports STORAGETEK

18   presented to NETBULA in 2001, 2002, 2004 and 2005, including but not limited to email

19   communications, usage audit, data extraction, usage reporting, unredacted spreadsheets, final

20   preparation of excel sheet, approval of such reports, etc.

21   **RESPONSE TO REQUEST NO. 13:**

22        StorageTek incorporates by reference its General Objections as if fully set forth herein.

23   StorageTek further objects to Netbula's definition of the terms "DOCUMENTS," "NETBULA

24   SOFTWARE," and "STORAGETEK" as vague, ambiguous, overly broad, burdensome, and

25   seeking information not relevant to the Initial Phase, or any claim or defense in this lawsuit,

26   particularly the reference in the definition of "NETBULA SOFTWARE" to "software defendants

27   have used in their products." StorageTek will construe "DOCUMENTS" to exclude drafts that

28   are duplicative or redundant. StorageTek will construe "NETBULA SOFTWARE" as referring

17

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   to software that is contained in commercially installable versions of products marketed under the

2   names "REELs," "Library Attach," "LibAttach," and "LibAttach Integrator's Kit." StorageTek

3   will construe "STORAGETEK" consistent with its obligations under Federal Rule of Civil

4   Procedure 34 and applicable case law. StorageTek also objects to this document request to the

5   extent it seeks production of documents not limited to a relevant time period. Subject to and

6   without waiving the foregoing objections and the General Objections, StorageTek responds as

7   follows:

8           In the Initial Phase, there is no relevant issue about the amount of usage. Accordingly,

9   documents "concerning the NETBULA SOFTWARE usage reports STORAGETEK presented to

10  NETBULA in 2001, 2002, 2004 and 2005" will not be produced.

11  **REQUEST NO. 14:**

12          All documents CONCERNING Compact Disc production orders for all RELEVANT,

13  STORAGETEK SOFTWARE from March 2000 to December 2006.

14  **RESPONSE TO REQUEST NO. 14:**

15          StorageTek incorporates by reference its General Objections as if fully set forth herein.

16  StorageTek further objects to Netbula's definition of the terms "DOCUMENTS" and

17  "RELEVANT STORAGETEK SOFTWARE" as vague, ambiguous, overly broad, burdensome,

18  and seeking information not relevant to the Initial Phase, or any claim or defense in this lawsuit.

19  StorageTek will construe "DOCUMENTS" to exclude drafts that are duplicative or redundant.

20  StorageTek will construe "RELEVANT STORAGETEK SOFTWARE," as referring to products

21  marketed under the names "REELs," "Library Attach," "LibAttach," and "LibAttach Integrator's

22  Kit." Subject to and without waiving the foregoing objections and the General Objections,

23  StorageTek responds as follows:

24          Compact Disc production orders are not relevant to the Initial Phase, so StorageTek will

25  not produce documents concerning Compact Disc production orders for all RELEVANT,

26  STORAGETEK SOFTWARE from March 2000 to December 2006.

27  **REQUEST NO. 15:**

28          All documents CONCERNING online download records for all RELEVANT

18

1    STORAGETEK SOFTWARE or their updates from March 2000 to December 2006.

2    **RESPONSE TO REQUEST NO. 15:**

3          StorageTek incorporates by reference its General Objections as if fully set forth herein.

4    StorageTek further objects to Netbula's definition of the terms "DOCUMENTS" and

5    "RELEVANT STORAGETEK SOFTWARE" as vague, ambiguous, overly broad, burdensome,

6    and seeking information not relevant to the Initial Phase, or any claim or defense in this lawsuit.

7    StorageTek will construe "DOCUMENTS" to exclude drafts that are duplicative or redundant.

8    StorageTek will construe "RELEVANT STORAGETEK SOFTWARE," as referring to products

9    marketed under the names "REELs," "Library Attach," "LibAttach," and "LibAttach Integrator's

10   Kit." Subject to and without waiving the foregoing objections and the General Objections,

11   StorageTek responds as follows:

12         In the Initial Phase, there is no relevant issue about the amount of usage. Accordingly,

13   documents "concerning the NETBULA SOFTWARE usage reports STORAGETEK presented to

14   NETBULA in 2001, 2002, 2004 and 2005" will not be produced.

15   **REQUEST NO. 16:**

16         All documents CONCERNING YOUR statement in Cannel C. Gill's December 16, 2005

17   letter that "Mike Melnick suggested that the parties enter into a straight royalty-type agreement,

18   but Netbula declined to do so."

19   **RESPONSE TO REQUEST NO. 16:**

20         StorageTek incorporates by reference its General Objections as if fully set forth herein.

21   StorageTek further objects to Netbula's definition of the terms "DOCUMENTS" and "YOUR" as

22   vague, ambiguous, overly broad, burdensome, and seeking information not relevant to the Initial

23   Phase, or any claim or defense in this lawsuit. StorageTek will construe "DOCUMENTS" to

24   exclude drafts that are duplicative or redundant. StorageTek will construe "YOUR" consistent

25   with its obligations under Federal Rule of Civil Procedure 34 and applicable case law.

26   StorageTek also objects to this document request to the extent it seeks production of documents

27   not limited to a relevant time period. In responding to this request, StorageTek will conduct a

28   search of reasonable scope for documents relevant to the time period immediately surrounding

19

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   December 16, 2005. StorageTek also objects to this request to the extent that it is duplicative of

2   Request Nos. 6 and 7. Subject to and without waiving the foregoing objections and the General

3   Objections, StorageTek responds as follows:

4          To the extent such documents are within its possession, custody, or control, StorageTek

5   will produce all relevant non-privileged documents reflecting communications with Netbula that

6   concern the statement in Cannel C. Gill's December 16, 2005 letter that "Mike Melnick suggested

7   that the parties enter into a straight royalty-type agreement, but Netbula declined to do so."

8   Documents that contain confidential financial, proprietary, trade secret or other confidential or

9   competitively sensitive business information will only be produced subject to the protective order

10  entered in this action.

11  **REQUEST NO. 17:**

12         All documents CONCERNING the licenses or permissions for incorporating into your

13  products the "free, publicly available code" referenced in paragraphs 59, 61 and 94 of YOUR

14  AMENDED ANSWER AND AFFIRMATIVE DEFENSES TO FIRST AMENDED

15  COMPLAINT, including but not limited to the communications with the owner or the author of

16  the "free, publicly available code."

17  **RESPONSE TO REQUEST NO. 17:**

18         StorageTek incorporates by reference its General Objections as if fully set forth herein.

19  StorageTek further objects to Netbula's definition of the terms "DOCUMENTS," "YOUR," and

20  "SOURCE CODE" as vague, ambiguous, overly broad, burdensome, and seeking information not

21  relevant to the Initial Phase, or any claim or defense in this lawsuit. StorageTek will construe

22  "DOCUMENTS" to exclude drafts that are duplicative or redundant or freely and publicly

23  available. StorageTek will construe "YOUR" consistent with its obligations under Federal Rule

24  of Civil Procedure 34 and applicable case law. StorageTek will construe "SOURCE CODE" as

25  pertaining only to source code for commercially installable versions of relevant StorageTek

26  software. StorageTek also objects to this document request to the extent it seeks production of

27  documents not limited to a relevant time period. Subject to and without waiving the foregoing

28  objections and the General Objections, StorageTek responds as follows:

20

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    The licenses or permissions concerning the "free, publicly available code" that replaced

2    Netbula's code are not relevant in the Initial Phase, so StorageTek will not produce documents

3    concerning the licenses or permissions for incorporating into your products the "free, publicly

4    available code."

5

6

7    Dated: July 16, 2007                          FENWICK & WEST LLP

8

9                                                  By: _____

10                                                        Liwen Mah

11                                                 Attorneys for Defendant and Counterclaimant
                                                   Sun Microsystems, Inc. and Defendants
12                                                 Storage Technology Corporation, Sun
                                                   Microsystems, Inc., EMC Corporation, Veritas
13                                                 Software Corporation, and Darden Restaurants,
                                                   Inc.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STORAGE TECHNOLOGY'S RESPONSE TO                    CASE NO. C-06-07391-MJL
NETBULA'S FIRST SET OF AMENDED REQUESTS

A0208

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**PROOF OF SERVICE**

The undersigned declares as follows:

I am a citizen of the United States and employed in San Francisco County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is Fenwick & West LLP, 555 California Street, 12th Floor, San Francisco, CA 94104. On the date set forth below, I served a copy of the following document(s): **DEFENDANT AND COUNTERCLAIMANT STORAGE TECHNOLOGY CORPORATION'S RESPONSE TO PLAINTIFF NETBULA, LLC'S AMENDED FIRST SET OF REQUESTS FOR DOCUMENTS AND THINGS (NOS. 1-17)** on the interested parties in the subject action by placing a true copy thereof as indicated below, addressed as follows:

> Law Offices of Vonnah M. Brillet
> 2777 Alvarado Street, Suite E
> San Leandro, CA 94577
> Email: brilletlaw@yahoo.com

☒ **BY US MAIL:** by placing the document(s) listed above in a sealed envelope for collection and mailing following our ordinary business practices. I am readily familiar with our ordinary business practices for collecting and processing mail for the United States Postal Service, and mail that I place for collection and processing is regularly deposited with the United States Postal Service that same day with postage prepaid.

☐ **BY FACSIMILE:** by causing to be transmitted via facsimile the document(s) listed above to the addressee(s) at the facsimile number(s) set forth above.

☒ **BY E-MAIL:** by causing to be transmitted via e-mail the document(s) listed above to the addressee(s) at the e-mail address(es) listed above.

☐ **BY PERSONAL DELIVERY:** by causing to be personally delivered the document(s) listed above to the addressee(s) at the address(es) set forth above.

I declare under penalty of perjury under the laws of the state of California and the United States of America that the above is true and correct.

Date: July 16, 2007

_____
Liwen Mah

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CASE NO. C-06-07391-MJJ

A0210

# EXHIBIT 41

# EXHIBIT 41

A0210

A0211

LAURENCE F. PULGRAM (CSB NO. 115163)
*lpulgram@fenwick.com*
JEDEDIAH WAKEFIELD (CSB NO. 178058)
*jwakefield@fenwick.com*
LIWEN A. MAH (CSB NO. 239033)
*lmah@fenwick.com*
FENWICK & WEST LLP
555 California Street, Ste. 1200
San Francisco, CA  94104
Telephone: (415) 875-2300
Facsimile:  (415) 281-1350

Attorneys for Defendants
Storage Technology Corporation, Sun Microsystems, Inc.,
EMC Corporation, Veritas Software Corporation, and
Darden Restaurants, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NETBULA, LLC, a Delaware limited liability company,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>STORAGE TECHNOLOGY CORPORATION, a Delaware corporation; SUN MICROSYSTEMS, INC., a Delaware corporation; INTERNATIONAL BUSINESS MACHINES CORPORATION, a New York corporation; EMC CORPORATION, a Massachusetts corporation; VERITAS SOFTWARE CORPORATION, a Delaware corporation; DARDEN RESTAURANTS, INC., a Florida corporation; and DOES 1-100, inclusive,<br><br>　　　　　　Defendants. | Case No.  C-06-07391-MJJ<br><br>**DEFENDANT AND COUNTERCLAIMANT STORAGE TECHNOLOGY CORPORATION'S RESPONSE TO PLAINTIFF NETBULA, LLC'S AMENDED FIRST SET OF INTERROGATORIES (NOS. 1-10)** |
| SUN MICROSYSTEMS, INC., a Delaware corporation,<br><br>　　　　　　Counter-Claimant,<br><br>　　v.<br><br>NETBULA, LLC, a Delaware limited liability company,<br><br>　　　　　　Counterclaim Defendant,<br><br>　　　　　　and<br><br>DONGXIAO YUE, an individual,<br><br>　　　　　　Third-Party Counterclaim Defendant. | |

1

A0211

PROPOUNDING PARTY: PLAINTIFF NETBULA, LLC

RESPONDING PARTY:    DEFENDANT STORAGE TECHNOLOGY CORPORATION

SET NUMBER:    ONE (Nos. 1-10)

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, and the minutes of the May 8, 2007 hearing and the Court's subsequent pretrial order—which limited discovery to issues related to the contractual licensing agreements between Plaintiff Netbula, LLC's ("Netbula") and Defendant Storage Technology Corporation ("StorageTek"), and the defense of license (the "Initial Phase")—StorageTek hereby responds to Plaintiff Netbula LLC's Amended First Set of Interrogatories for Defendant (Nos. 1-10) as follows:

### GENERAL OBJECTIONS

StorageTek makes the following General Objections to each of the interrogatories propounded by Netbula:

1.     StorageTek objects to all definitions, instructions, and interrogatories to the extent they seek to impose obligations upon StorageTek that are broader than or inconsistent with the obligations imposed by the Federal Rules of Civil Procedure, the Local Rules of the District Court of the Northern District of California, the minutes of the May 8, 2007 hearing and the Court's pretrial order, and/or applicable case law.

2.     StorageTek further objects to all definitions, instructions and interrogatories to the extent they seek the disclosure of information protected by the attorney-client privilege (including the joint representation and common interest privilege), the litigation privilege, the attorney work product doctrine, or any other applicable privilege, protection, immunity, or restriction on discovery as provided by any applicable law. StorageTek does not intend to reveal such privileged or protected information. StorageTek's inadvertent disclosure of any such documents or information is not to be deemed a waiver of any privilege or protection, and StorageTek expressly reserves the right to object to the introduction at trial or any other use of such information that may be inadvertently disclosed.

3.     StorageTek further objects to each interrogatories to the extent that they seek

2

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  information that is not within the scope of the Initial Phase of this proceeding.

2      4.      StorageTek further objects to all definitions, instructions and interrogatories to the

3  extent they are vague, ambiguous, fail to describe the information sought with the required

4  reasonable particularity, or are so unintelligible that StorageTek cannot respond.

5      5.      StorageTek further objects to Netbula's definitions of "YOU," "YOUR," "SUN,"

6  and "STORAGETEK" as overly broad, burdensome and oppressive.  StorageTek will construe

7  these terms consistent with its obligations under Federal Rule of Civil Procedure 34 and

8  applicable case law.

9      6.      StorageTek further objects to Netbula's definition of the terms "DOCUMENT" or

10  "DOCUMENTS" as vague, ambiguous, overly broad, unduly burdensome, and seeking

11  information not relevant to the Initial Phase or to any claim or defense in this lawsuit, including

12  without limitation the extent drafts are duplicative or redundant.

13      7.      StorageTek further objects to Netbula's definition of the term "ALL

14  STORAGETEK SOFTWARE" as vague, ambiguous, overly broad, unduly burdensome, and

15  seeking information not relevant to the Initial Phase or any claim or defense in this lawsuit.

16  StorageTek will construe this term as referring to products marketed under the names "REELs,"

17  "Library Attach," "LibAttach," and "LibAttach Integrator's Kit."  StorageTek further objects to

18  Netbula's definition of the terms "RELEVANT STORAGETEK SOFTWARE," "RELEVANT

19  STORAGETEK PRODUCTS AND SERVICES," and "RELEVANT PRODUCTS AND

20  SERVICES"  as vague, ambiguous, overly broad, unduly burdensome, and seeking information

21  not relevant to the Initial Phase or any claim or defense in this lawsuit.  StorageTek will construe

22  these terms as referring to products marketed under the names "REELs," "Library Attach,"

23  "LibAttach," and "LibAttach Integrator's Kit."

24      8.      StorageTek further objects to Netbula's definitions of "NETBULA POWERRPC

25  SOFTWARE," "NETBULA JAVARPC SOFTWARE," and "NETBULA SOFTWARE," as

26  vague, ambiguous, overly broad, burdensome, and seeking information not relevant the Initial

27  Phase or any claim or defense in this lawsuit, particularly the reference in those definitions to

28  "software defendants have used in their products."  StorageTek will construe these terms as

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    referring to software that is contained in commercially installable versions of products marketed

2    under the names "REELs," "Library Attach," "LibAttach," and "LibAttach Integrator's Kit."

3         9.    StorageTek further objects to Netbula's definitions of "RELEVANT PRODUCTS

4    AND SERVICES" and "RELEVANT THIRD PARTY PRODUCTS AND SERVICES," as

5    vague, ambiguous, overly broad, burdensome, and seeking information not relevant to the Initial

6    Phase or any claim or defense in this lawsuit.

7         10.   StorageTek further objects to Netbula's definition of the term "WORK" as vague,

8    ambiguous, overly broad, unduly burdensome, and seeking information not relevant to the Initial

9    Phase, or any claim or defense in this lawsuit. StorageTek will construe this term as limited to

10   employer-directed and compensated labor, the product of which may not be certain.

11        11.   StorageTek further objects to the definition of the terms "CLIENT MACHINE"

12   and "SERVER MACHINE" as vague, ambiguous, overly broad, unduly burdensome, and seeking

13   information not relevant to the Initial Phase, or any claim or defense in this lawsuit.  StorageTek

14   further objects to the limitations "normally used by one human user" and "shared by many users,"

15   and "machine that is not a CLIENT MACHINE is a SERVER machine" as inaccurate or

16   misleading.

17        12.   StorageTek further objects to Netbula's definition of the term "SOURCE CODE"

18   as vague, ambiguous, overly broad, unduly burdensome, and seeking information not relevant to

19   the Initial Phase or any claim or defense in this lawsuit.   StorageTek will construe this term as

20   pertaining only to source code for commercially installable versions of products marketed under

21   the names "REELs," "Library Attach," "LibAttach," and "LibAttach Integrator's Kit."

22        13.   StorageTek further objects to Instruction 9 on the grounds that it is oppressive and

23   unduly burdensome to the extent it requires a log for information created after this action was

24   filed.  Unless subsequently agreed to the contrary, StorageTek will not log information created or

25   prepared in anticipation of this litigation after December 4, 2006 by it or its employees, attorneys

26   or agents.  StorageTek also will not log information protected by the attorney-client privilege

27   (including the joint representation and common interest privilege), the litigation privilege, the

28   attorney work-product doctrine, or any other applicable privilege, protection, immunity or

4

1  restriction on discovery created on or after December 4, 2006. With the exception of the above

2  categories of documents, StorageTek will provide a log of any information (responsive to

3  otherwise non-objectionable discovery requests) that is withheld on the grounds of the attorney-

4  client privilege, work product doctrine or any other privilege or immunity.

5         14.    StorageTek further objects to all definitions, instructions and interrogatories to the

6  extent they purport to require StorageTek to produce any information received from a third party

7  under a nondisclosure agreement or other confidentiality obligation, or call for the disclosure of

8  information protected by StorageTek's employees' or any third parties' rights of privacy or other

9  confidentiality obligations. StorageTek also objects to producing the contents of any part of any

10  agreement which, by its terms, may not be disclosed.

11        15.    StorageTek objects to all definitions, instructions and interrogatories to the extent

12  they seek production of information that contains or comprises confidential financial, proprietary,

13  trade secret or other confidential or competitively sensitive business information. Such material

14  shall only be produced subject to the protective order entered in this action.

15        16.    StorageTek objects to all definitions, instructions and interrogatories to the extent

16  they seek production of documents not limited to a relevant time period.

17        17.    StorageTek objects to all definitions, instructions and interrogatories to the extent

18  they prematurely seek expert discovery.

19        18.    StorageTek has not yet completed its investigation, collection of information,

20  discovery, or analysis concerning this action. The following responses are based on information

21  known and available to StorageTek at this time. StorageTek reserves the right to modify, change,

22  or supplement its responses and to produce additional evidence at trial, whether consistent or

23  inconsistent with these responses.

24                            **INTERROGATORIES**

25  **INTERROGATORY NO. 1:**

26        Describe in detail how YOU reached the decision to use NETBULA SOFTWARE,

27  including but not limited to initial evaluation of NETBULA SOFTWARE and comparison of

28  similar or competing software products. This includes: 1) your evaluation of the "free, open"

5

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   software, benefits for replacing the previously used RPC software (such as "MKS NutCracker

2   RPC" referenced in a January 2000 letter to NETBULA) with NETBULA SOFTWARE, 2) the

3   decision to use NETBULA SOFTWARE in 2000, and 3) the decision to upgrade NETBULA

4   SOFTWARE in 2004.

5   **RESPONSE TO INTERROGATORY NO. 1:**

6          StorageTek incorporates by reference its General Objections as if fully set forth herein.

7   StorageTek specifically objects to the definition of the term "NETBULA SOFTWARE" as overly

8   broad, unduly burdensome, and seeking information neither relevant to the Initial Phase or any

9   claim or defense in this lawsuit nor reasonably calculated to lead to the discovery of admissible

10  evidence.  StorageTek will construe this term as referring only to the products licensed under the

11  names "Power RPC" or "ONC RPC."  StorageTek further objects to this interrogatory as overly

12  broad, unduly burdensome and seeking information neither relevant to the Initial Phase or any

13  claim or defense in this lawsuit nor reasonably calculated to lead to the discovery of admissible

14  evidence, particularly to the extent that it seeks information regarding StorageTek's evaluations

15  of software products.  Subject to and without waiving the foregoing objections, StorageTek

16  responds as follows:

17         In 2000 and 2004, Netbula and StorageTek entered into two, highly similar agreements

18  (the "2000 agreement" and the "2004 agreement") pursuant to which StorageTek was expressly

19  granted the distribution rights that Netbula now claims were violated. After considering various

20  vendors, StorageTek began using Netbula Remote Process Call (RPC) software for Windows NT

21  in 2000.

22         StorageTek is ready to provide additional information, to be designated CONFIDENTIAL

23  or HIGHLY CONFIDENTIAL-ATTORNEY'S EYES ONLY upon entry of a protective order in

24  this case. StorageTek's investigation and discovery are continuing, and StorageTek reserves the

25  right to modify and/or supplement its response to this interrogatory.

26

27  **INTERROGATORY NO. 2:**

28         Describe in detail all YOUR INTERNAL COMMUNICATIONS CONCERNING

6

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  NETBULA or, NETBULA SOFTWARE after YOU received NETBULA's requests for license

2  usage reports in June 2001, September 2002, June 2005 and July 2005, including list of all

3  emails, senders and recipients of emails, and a list of other correspondence.

4  **RESPONSE TO INTERROGATORY NO. 2:**

5       StorageTek incorporates by reference its General Objections as if fully set forth herein.

6  StorageTek specifically objects to this interrogatory to the extent that it seeks information

7  protected by the attorney-client privilege, the attorney work-product doctrine, and other

8  applicable privileges. StorageTek specifically objects to the definition of the term "NETBULA

9  SOFTWARE" as overly broad, unduly burdensome, and seeking information neither relevant to

10  the Initial Phase or any claim or defense in this lawsuit, nor reasonably calculated to lead to the

11  discovery of admissible evidence.  StorageTek will construe this term as referring only to the

12  products licensed under the names "Power RPC" or "ONC RPC."  Subject to and without

13  waiving the foregoing objections, StorageTek responds as follows:

14       In June 2001, Netbula requested a license usage report from StorageTek.  StorageTek

15  consulted its sales group.

16       In September 2002, Netbula requested a license usage report from StorageTek.

17  StorageTek again consulted its sales group.

18       In June 2005, Netbula requested a license usage report from StorageTek.  StorageTek

19  again consulted its sales group. This took somewhat longer than before, largely because of the

20  much longer period for which StorageTek had to collect data.

21       StorageTek is ready to provide additional information, to be designated CONFIDENTIAL

22  or HIGHLY CONFIDENTIAL-ATTORNEY'S EYES ONLY upon entry of a protective order in

23  this case. StorageTek further refers Plaintiff to the documents to be produced by StorageTek and

24  by Netbula in this action, pursuant to Rule 33(d). StorageTek's investigation and discovery are

25  continuing, and StorageTek reserves the right to modify and/or supplement its response to this

26  interrogatory.

27  **INTERROGATORY NO. 3:**

28       For each year from 2000 to 2006, provide the number of copies of RELEVANT

7

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  STORAGETEK SOFTWARE that STORAGETEK licensed to others.

2  **RESPONSE TO INTERROGATORY NO. 3:**

3    StorageTek incorporates by reference its General Objections as if fully set forth herein.

4  StorageTek specifically objects to the definition of the term "RELEVANT STORAGETEK

5  SOFTWARE" as overly broad, unduly burdensome, and seeking information neither relevant to

6  the Initial Phase or any claim or defense in this lawsuit nor reasonably calculated to lead to the

7  discovery of admissible evidence.  StorageTek will construe this term as referring to products

8  marketed under the names "REELs," "Library Attach," "LibAttach," and "LibAttach Integrator's

9  Kit."  StorageTek specifically objects to "copies" as vague, ambiguous, overly broad, unduly

10  burdensome, and seeking information neither relevant to license, defense of license, or any claim

11  or defense in this lawsuit nor reasonably calculated to lead to the discovery of admissible

12  evidence. StorageTek will construe this term as referring to the number of authorized installations

13  for the recipients of the relevant StorageTek software, regardless of the number of copies that

14  StorageTek provided to those recipients. StorageTek further objects to the inclusion of data for

15  2006 as overly broad, unduly burdensome, and seeking information neither relevant the Initial

16  Phase or any claim or defense in this lawsuit nor reasonably calculated to lead to the discovery of

17  admissible evidence, in light of the fact that the last commercial shipment of StorageTek software

18  containing or accompanying Netbula code was on November 30, 2006.  Subject to and without

19  waiving the foregoing objections, StorageTek responds as follows:

20    StorageTek is ready to provide additional information, to be designated CONFIDENTIAL

21  or HIGHLY CONFIDENTIAL-ATTORNEY'S EYES ONLY upon entry of a protective order in

22  this case. StorageTek's investigation and discovery are continuing, and StorageTek reserves the

23  right to modify and/or supplement its response to this interrogatory.

24  **INTERROGATORY NO. 4:**

25    IDENTIFY and give the quantify the number of all STORAGETEK software developers,

26  programmers, project managers and test engineers who copied or used NETBULA SOFTWARE

27  or NETBULA RUNTIME SOFTWARE since 2000.

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

**RESPONSE TO INTERROGATORY NO. 4:**

StorageTek incorporates by reference its General Objections as if fully set forth herein. StorageTek specifically objects to the definition of the terms "NETBULA SOFTWARE" and "NETBULA RUNTIME SOFTWARE" as overly broad, unduly burdensome, and seeking information neither relevant the Initial Phase or any claim or defense in this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence, particularly the reference in those definitions to "software defendants have used in their products." StorageTek will construe these terms as referring to software that is contained in commercially installable versions of products marketed under the names "REELs," "Library Attach," "LibAttach," and "LibAttach Integrator's Kit." StorageTek specifically objects to "software developers, programmers, project managers and test engineers," "copied" and "used" as vague, ambiguous, overly broad, unduly burdensome, and seeking information neither relevant to the Intial Phase or any claim or defense in this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, StorageTek responds as follows:

StorageTek is ready to provide additional information, to be designated CONFIDENTIAL or HIGHLY CONFIDENTIAL-ATTORNEY'S EYES ONLY upon entry of a protective order in this case..

StorageTek's investigation and discovery are continuing, and StorageTek reserves the right to modify and/or supplement its response to this interrogatory.

**INTERROGATORY NO. 5:**

For each of all RELEVANT STORAGETEK SOFTWARE, describe the functionalities of the RELEVANT STORAGETEK SOFTWARE and what operating systems to which they were targeted.

**RESPONSE TO INTERROGATORY NO. 5:**

StorageTek incorporates by reference its General Objections as if fully set forth herein. StorageTek specifically objects to the definition of the term "RELEVANT STORAGETEK SOFTWARE" as overly broad, unduly burdensome, and seeking information neither relevant to license, defense of license, or any claim or defense in this lawsuit nor reasonably calculated to

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

1   lead to the discovery of admissible evidence. StorageTek will construe this term as referring to

2   products marketed under the names "REELs," "Library Attach," "LibAttach," and "LibAttach

3   Integrator's Kit." StorageTek specifically objects to "functionalities" and "targeted" as vague,

4   ambiguous, overly broad, unduly burdensome, and seeking information neither relevant to the

5   Initial Phase or any claim or defense in this lawsuit nor reasonably calculated to lead to the

6   discovery of admissible evidence. Subject to and without waiving the foregoing objections,

7   StorageTek responds as follows:

8        REELs was storage management software. It assisted customers of data storage systems

9   with backup operations and disaster recovery, managing media libraries. REELs users generally

10   used REELs in UNIX , shared-MVS, or Windows NT environments.

11        Library Attach software connects Windows 2000 or Windows NT backup applications

12   and StorageTek Library Manager, ACSLS Manager, or LibraryStation software over a TCP/IP

13   network. These backup applications can then share enterprise tape library resources with UNIX

14   and/or mainframe users. Library Attach Integrator's Kit allows developers to create software

15   with the Library Attach functionality. Library Attach and the Integrator's Kit support Windows

16   NT or Windows 2000 environments.

17   **INTERROGATORY NO. 6:**

18        Describe in detail the different licenses or packages and their product identifiers for

19   RELEVANT STORAGETEK SOFTWARE YOU offered to other PERSONS, including but not

20   limited to detailed description of product identifiers such as 1191NLC, 1191NLC-SENT,

21   1191NLI, 1191NLC-S500.

22   **RESPONSE TO INTERROGATORY NO. 6:**

23        StorageTek incorporates by reference its General Objections as if fully set forth herein.

24   StorageTek specifically objects to the definition of the term "RELEVANT STORAGETEK

25   SOFTWARE" as overly broad, unduly burdensome, and seeking information neither relevant to

26   the Initial Phase or any claim or defense in this lawsuit nor reasonably calculated to lead to the

27   discovery of admissible evidence. StorageTek will construe this term as referring to products

28   marketed under the names "REELs," "Library Attach," "LibAttach," and "LibAttach Integrator's

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    Kit." Subject to and without waiving the foregoing objections, StorageTek responds as follows:

2           StorageTek is ready to provide additional information, to be designated CONFIDENTIAL

3    or HIGHLY CONFIDENTIAL-ATTORNEY'S EYES ONLY upon entry of a protective order in

4    this case. StorageTek's investigation and discovery are continuing, and StorageTek reserves the

5    right to modify and/or supplement its response to this interrogatory.

6    **INTERROGATORY NO. 7:**

7           Describe in detail why Mike Melnick at STORAGETEK attempted to change the Netbula-

8    StorageTek agreements from "pre-paid" to "royalty-type agreement".

9    **RESPONSE TO INTERROGATORY NO. 7:**

10          StorageTek incorporates by reference its General Objections as if fully set forth herein.

11   StorageTek specifically objects to the words "pre-paid" and "royalty-type agreement" as vague

12   and ambiguous, and objects to the interrogatory as mischaracterizing the facts.  StorageTek will

13   not respond to the interrogatory as written.

14          StorageTek would be prepared to respond to a properly framed Interrogatory and is

15   prepared to meet and confer with respect to a means to frame the Interrogatory in an

16   unobjectionable manner.

17   **INTERROGATORY NO. 8:**

18          Describe in detail how STORAGETEK markets or sells the RELEVANT

19   STORAGETEK, SOFTWARE via resellers or distributors or any other PERSONS in U.S. or

20   other countries or regions, including but not limited to how RELEVANT STORAGETEK

21   SOFTWARE is distributed or licensed via third parties, how numbers of copies of software are

22   accounted when they are sold via third parties.

23   **RESPONSE TO INTERROGATORY NO. 8:**

24          StorageTek incorporates by reference its General Objections as if fully set forth herein.

25   StorageTek specifically objects to the definition of the term "RELEVANT STORAGETEK

26   SOFTWARE" as overly broad, unduly burdensome, and seeking information neither relevant to

27   the Initial Phase or any claim or defense in this lawsuit nor reasonably calculated to lead to the

28   discovery of admissible evidence.  StorageTek will construe this term as referring to products

11

STORAGE TECHNOLOGY'S RESPONSE TO
NETBULA'S FIRST SET OF AMENDED                    CASE NO.  C-06-07391-MJL
INTERROGATORIES

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  marketed under the names "REELs," "Library Attach," "LibAttach," and "LibAttach Integrator's

2  Kit." StorageTek specifically objects to "how numbers of copies of software are accounted when

3  they are sold via third parties" as irrelevant to the Initial Phase. Subject to and without waiving

4  the foregoing objections, StorageTek responds as follows:

5         StorageTek sold or sells REELs, Library Attach or LibAttach, and LibAttach Integrator's

6  Kit directly to users. StorageTek also uses distributors and resellers. These include Direct Value

7  Added Resellers ("DVARs"), which often target specific industries, specific applications, or

8  specific types of customers. DVARs may provide customers with highly customized solutions

9  integrating hardware, software, and service. Examples include Datalink, PeakData, Adexis, and

10  MCSI. Another type of distributor in the United States is the Value Added Distributor (VAD),

11  which supports and supplies a variety of Value Added Resellers. Examples of VADs are Avnet,

12  MOCA of Arrow Electronics, and Access Distribution. Authorized StorageTek resellers are

13  known as TCP (TOTAL Channel Program) partners and receive special training and support.

14         In addition, certain third parties may use Library Attach or LibAttach, and/or LibAttach

15  Integrator's Kit to develop their own data management software (for example, Veritas Storage

16  Foundation) or data protection software (for example, Veritas NetBackup, and EMC NetWorker).

17  Customers may then buy that third-party software. StorageTek tracks copies of software sold or

18  distributed to these third parties.

19  StorageTek is ready to provide additional information, to be designated CONFIDENTIAL

20  or HIGHLY CONFIDENTIAL-ATTORNEY'S EYES ONLY upon entry of a protective order in

21  this case. StorageTek's investigation and discovery are continuing, and StorageTek reserves the

22  right to modify and/or supplement its response to this interrogatory.

23  **INTERROGATORY NO. 9:**

24  Describe in detail how YOU obtained the licenses or permissions or the rights for

25  incorporating into your products the "free, publicly available code" referenced in paragraphs 59,

26  61 and 94 of YOUR AMENDED ANSWER AND AFFIRMATIVE DEFENSES TO FIRST

27  AMENDED COMPLAINT.

28

12

STORAGE TECHNOLOGY'S RESPONSE TO
NETBULA'S FIRST SET OF AMENDED
INTERROGATORIES

CASE NO.  C-06-07391 MJJ

**RESPONSE TO INTERROGATORY NO. 9:**

StorageTek incorporates by reference its General Objections as if fully set forth herein. StorageTek specifically objects to the extent that the interrogatory calls for privileged information. Subject to and without waiving the foregoing objections, StorageTek responds as follows:

The free, publicly available code is open-source code with a free license to use, copy, or modify the code, conditioned on the recipient's agreement to adhere to the same terms as the original Sun RPC required. That is, the code is provided for unrestricted use, provided that the user includes proper attribution to Sun on all tape media and as a part of the software program in whole or part. A user may freely copy or modify the code but may license or distribute it only as part of a product or program developed by the user.

**INTERROGATORY NO. 10:**

If YOU did not obtain a license or permission to use the "free, publicly available code" prior to using it in your products, then explain why you did not obtain a license or permission.

**RESPONSE TO INTERROGATORY NO. 10:**

StorageTek incorporates by reference its General Objections as if fully set forth herein. StorageTek specifically objects to "free, publicly available code" as vague, ambiguous, overly broad, unduly burdensome, and seeking information neither relevant to license, defense of license, or any claim or defense in this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence. StorageTek will construe this term as referring to code available free online from a "TACO" file transfer site. In addition, StorageTek specifically objects to the extent that the interrogatory calls for privileged information. Subject to and without waiving the foregoing objections, StorageTek responds as follows:

Since the conditional clause of the interrogatory is not satisfied, no explanation is required by the express terms in the interrogatory.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

1

2    Dated: July 16, 2007                    FENWICK & WEST LLP

3

4                                            By: _____
                                                 Liwen Mah
5
                                             Attorneys for Defendant and Counterclaimant
6                                            Sun Microsystems, Inc. and Defendants
                                             Storage Technology Corporation, Sun
7                                            Microsystems, Inc., EMC Corporation, Veritas
                                             Software Corporation, and Darden Restaurants,
8                                            Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STORAGE TECHNOLOGY'S RESPONSE TO
NETBULA'S FIRST SET OF AMENDED            CASE NO. C-06-07391 MJJ
INTERROGATORIES

1    [Verification to follow]

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CASE NO.  C-06-07391-MJJ

1

## PROOF OF SERVICE

2    The undersigned declares as follows:

3    I am a citizen of the United States and employed in San Francisco County, California.  I

4 am over the age of eighteen years and not a party to the within-entitled action.  My business

5 address is Fenwick & West LLP, 555 California Street, 12th Floor, San Francisco, CA  94104.

6 On the date set forth below, I served a copy of the following document(s):  **DEFENDANT AND**

7 **COUNTERCLAIMANT STORAGE TECHNOLOGY CORPORATION'S RESPONSE TO**

8 **PLAINTIFF NETBULA, LLC'S AMENDED FIRST SET OF INTERROGATORIES**

9 **(NOS. 1-10)** on the interested parties in the subject action by placing a true copy thereof as

10 indicated below, addressed as follows:

11
Law Offices of Vonnah M. Brillet
2777 Alvarado Street, Suite E
12 San Leandro, CA  94577
Email:  brilletlaw@yahoo.com
13

14 ☒ **BY US MAIL:**  by placing the document(s) listed above in a sealed envelope for
collection and mailing following our ordinary business practices.  I am readily familiar
15 with our ordinary business practices for collecting and processing mail for the
United States Postal Service, and mail that I place for collection and processing is
16 regularly deposited with the United States Postal Service that same day with postage
prepaid.
17

18 ☐ **BY FACSIMILE:**  by causing to be transmitted via facsimile the document(s) listed
above to the addressee(s) at the facsimile number(s) set forth above.
19

20 ☒ **BY E-MAIL:**  by causing to be transmitted via e-mail the document(s) listed above to the
addressee(s) at the e-mail address(es) listed above.

21

22 ☐ **BY PERSONAL DELIVERY:**  by causing to be personally delivered the document(s)
listed above to the addressee(s) at the address(es) set forth above.

23    I declare under penalty of perjury under the laws of the state of California and the

24 United States of America that the above is true and correct.

25
Date: July 16 , 2007
26                                    _____
Liwen Mah
27

28    25689/00400/LIT/1268622.4

PROOF OF SERVICE                                    CASE NO.  C-06-07391-MJJ

A0227

# EXHIBIT 42

# EXHIBIT 42

A0227

DONGXIAO YUE
CONFIDENTIAL
09/12/07

Page 1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

NETBULA, LLC, a Delaware
limited liability company,

          Plaintiff,

vs.                                    No. C-06-07391-MJJ

STORAGE TECHNOLOGY CORPORATION, A DELAWARE
CORPORATION; SUN MICROSYSTEMS, INC., A
DELAWARE CORPORATION; INTERNATIONAL BUSINESS
MACHINES CORPORATION, A NEW YORK CORPORATION;
EMC CORPORATION, A MASSACHUSETTS CORPORATION,
VERITAS SOFTWARE CORPORATION, A DELAWARE
CORPORATION; DARDEN RESTAURANTS, INC., A
FLORIDA CORPORATION; AND DOES 1-100,
inclusive,

          Defendants.
_____

AND RELATED COUNTER-CLAIMS.
_____

CONFIDENTIAL TESTIMONY

VIDEOTAPED 30(b)(6) DEPOSITION OF DONGXIAO YUE

San Francisco, California

Wednesday, September 12, 2007

Volume 1

REPORTED BY:
KELLI COMBS
CSR No. 7705

Job No. 3-72940

DONGXIAO YUE                                                    09/12/07
CONFIDENTIAL

Page 2

```
 1                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF CALIFORNIA
 2                      SAN FRANCISCO DIVISION

 3    NETBULA, LLC, a Delaware
      limited liability company,
 4
              Plaintiff,
 5
      vs.                                   No. C-06-07391-MJJ
 6
      STORAGE TECHNOLOGY CORPORATION, A DELAWARE
 7    CORPORATION; SUN MICROSYSTEMS, INC., A
      DELAWARE CORPORATION; INTERNATIONAL BUSINESS
 8    MACHINES CORPORATION, A NEW YORK CORPORATION;
      EMC CORPORATION, A MASSACHUSETTS CORPORATION,
 9    VERITAS SOFTWARE CORPORATION, A DELAWARE
      CORPORATION; DARDEN RESTAURANTS, INC., A
10    FLORIDA CORPORATION; AND DOES 1-100,
      inclusive,
11
              Defendants.
12    _____
      AND RELATED COUNTER-CLAIMS.
13    _____

14

15        Videotaped 30(B)(6) Deposition of DONGXIAO YUE,

16    Volume 1, taken on behalf of Defendants, at Fenwick &

17    West, 555 California Street, 13th Floor, San Francisco,

18    California, beginning at 10:23 a.m., and ending at 7:12

19    p.m. on Wednesday, September 12, 2007, before Kelli

20    Combs, CSR 7705.

21

22

23

24

25
```

DONGXIAO YUE                                    09/12/07
CONFIDENTIAL

Page 3

```
 1    APPEARANCE OF COUNSEL:

 2
      FOR PLAINTIFF:
 3

 4            LAW OFFICES OF VONNAH M. BRILLET
              BY:  VONNAH M. BRILLET, ESQ.
 5            2777 Alvarado Street, Suite E
              San Leandro, California 94577
 6            (510) 351-5345
              brilletlaw@yahoo.com
 7

 8    FOR DEFENDANTS STORAGE TECHNOLOGY CORPORATION, SUN
      MICROSYSTEMS, INC., EMC CORPORATION, VERITAS SOFTWARE
 9    CORPORATION, DARDEN RESTAURANTS, INC.:

10
              FENWICK & WEST, LLP
11            BY:  JEDEDIAH WAKEFIELD, ESQ.
              ALBERT L. SIEBERT, ESQ.
12            555 California Street, 12th Floor
              San Francisco, California 94104
13            (415) 875-2300
              jwakefield@fenwick.com
14

15    FOR IBM CORPORATION:

16
              QUINN, EMANUEL, URQUHART, OLIVER & HEDGES
17            BY:  DAVID EISEMAN, ESQ.
              50 California Street, 22nd Floor
18            San Francisco, California 94111
              (415) 875-6314
19            davideiseman@quinnemanuel.com

20

21        ALSO PRESENT:  Ray Tyler, Videographer

22

23

24

25
```

DONGXIAO YUE
CONFIDENTIAL

09/12/07

Page 4

```
 1                       INDEX

 2    WITNESS                          EXAMINATION

 3    DONGXIAO YUE

 4             BY MR. WAKEFIELD            8

 5

 6                      EXHIBITS

 7    DEFENDANTS'                          PAGE

 8    1   30(b)(6) deposition notice of      10
          Netbula LLC
 9
      2   License agreement entered into     16
10        between Storage Technology and
          Netbula in the year 2000
11
      3   License agreement entered into     18
12        between Storage Technology and
          Netbula in the year 2004
13
      4   Invoice from Netbula to StorageTek 33
14        dated 3/7/00, Bates stamped
          NBS-0000042
15
      5   Invoice from Netbula to StorageTek 40
16        dated 3/18/04, Bates stamped
          NBS-0000147
17
      6   Netbula's Response to Sun          49
18        Microsystems' First Set of
          Interrogatories
19
      7   E-mail exchange and attached       76
20        marked-up draft agreement exchanged
          between Netbula and StorageTek in
21        2000

22    8   E-mail and attached Netbula software 78
          license agreement, bearing Bates
23        Number SDK00000664 through -668

24    9   E-mail exchange and license        83
          agreement sent to StorageTek on
25        February 7th, 2000, bearing Bates
```

Page 5

1              INDEX TO EXHIBITS CONTINUED
2    DEFENDANTS'                                      PAGE
3    10   E-mail sent from Netbula to Michael        90
          Melnick at StorageTek in 2004,
4         bearing Bates Number STK00000378 and
          -379
5
     11   E-mail containing March 2nd, 2004          110
6         E-mail from Mr. Melnick to
          Sales@Netbula.com, bearing Bates
7         number NBS-0000135
8    12   E-mail string between Mr. Yue to Mr.       113
          Melnick, bearing Bates numbers
9         STK00000367 through -369
10   13   Executed agreement from 2004 and           123
          purchase orders, bearing Bates
11        numbers NBS-0000136 through -146
12   14   Declaration of Gregory Kovecses            131
13   15   Netbula Invoice regarding Chordiant        138
          1,000 ONC rpcwin32 client runtime
14        upgrade, bearing Bates number
          NB-0003733
15
     16   Purchase order in connection with         147
16        original 2000 license purchased by
          StorageTek, bearing Bates number
17        NBS-0000023
18   17   E-mail exchange between Mr. Yue and        156
          Mr. Melnick in 2000, bearing Bates
19        numbers STK00000662 and -663
20   18   Screen print of                            160
          Netbula.com/robots.txt
21
     19   E-mail exchange between Netbula and        178
22        Philips, bearing Bates numbers
          NBS-0003066 through -3068
23
     20   E-mail from Sales@Netbula.com to           186
24        Mike Melnick, bearing Bates Number
          STK00000493 and -494
25

DONGXIAO YUE
CONFIDENTIAL

09/12/07

Page 6

1                    INDEX TO EXHIBITS CONTINUED

2    DEFENDANTS'                                          PAGE

3    21   E-mail to Mr. Yue from Mike Melnick,      201
          bearing Bates numbers NBS0001220
4         through -1223

5    22   Document entitled "Netbula vs            212
          StorageTek Case Background" Bates
6         numbered NBS-0001534 through -1537

7    23   License agreement between JD Edwards     214
          and Netbula, bearing Bates numbers
8         NB-0000883 through -890

9    24   E-mail with attachments, bearing         216
          Bates number NBS-0002961,
10        attachments bearing no Bates numbers

11   25   E-mail from PeopleSoft.com with          217
          attachments, Bates number
12        NBS-0002957

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 7

1    San Francisco, California, Wednesday, September 12, 2007

2                10:23 a.m. - 7:12 p.m.

3

4                    DONGXIAO YUE,

5        after having been duly sworn, testified as follows:

6

7

8            THE VIDEOGRAPHER:  Good morning.  Here begins

9    Media Number 1 of the deposition of Don Yue in the

10:22:41   10    matter of Netbula, LLC versus Storage Technology

11    Corporation, Sun Microsystems, Incorporated, et al., in

12    U.S. District Court, Northern District of California,

13    San Francisco Division.  The case number is

14    C-06-07391-MJJ.

10:23:00   15            Today's date is September 12th, 2007.  The

16    current time is 10:23 a.m.  This deposition is taking

17    place at Fenwick & West, 555 California Street,

18    San Francisco, California, and is being taken on behalf

19    of the Defendants.

10:23:17   20            The videographer is Ray Tyler, appearing on

21    behalf of Sarnoff Court Reporters and Legal

22    Technologies.  The court reporter is Kelli Combs, also

23    representing Sarnoff Court Reporters.

24            Would counsel please identify yourselves and

10:23:30   25    state whom you represent.

DONGXIAO YUE
CONFIDENTIAL

09/12/07

Page 8

| 10:23:31 | 1 | MR. WAKEFIELD:  Jed Wakefield on behalf of |
| | 2 | Defendants Storage Technology Corporation, Sun |
| | 3 | Microsystems, EMC Corporation, Veritas Software |
| | 4 | Corporation, and Darden Restaurants. |
| 10:23:46 | 5 | MS. BRILLET:  Vonnah Brillet for Plaintiff |
| | 6 | Netbula, LLC. |
| | 7 | MR. EISEMAN:  David Eiseman for Defendant IBM. |
| | 8 | THE VIDEOGRAPHER:  Would the court reporter |
| | 9 | please swear in the witness. |
| 10:23:54 | 10 | (Deponent sworn.) |
| | 11 | EXAMINATION |
| | 12 | BY MR. WAKEFIELD: |
| | 13 | Q    Good morning, Dr. Yue. |
| | 14 | A    Good morning, Mr. Wakefield. |
| 10:24:08 | 15 | MS. BRILLET:  I do want to make sure we get |
| | 16 | our agreement on the record. |
| | 17 | MR. WAKEFIELD:  Yeah. |
| | 18 | Before we get into the testimony today, |
| | 19 | Miss Brillet requested this morning that in view of an |
| 10:24:21 | 20 | agreement reached yesterday to reschedule the 30(b)(6) |
| | 21 | deposition of Sun Microsystems to the following week, |
| | 22 | that we agree not to -- the Defendants agree not to |
| | 23 | file -- and I assume Plaintiff will also -- Plaintiff |
| | 24 | isn't expecting to file any such motion -- any summary |
| 10:24:40 | 25 | judgment or summary adjudication motions prior to -- |

DONGXIAO YUE                          09/12/07
CONFIDENTIAL

Page 9

10:24:46  1          MS. BRILLET:  October 2nd.

          2          MR. WAKEFIELD:  -- October 2nd of this year.

          3          And did I correctly state our agreement?

          4          MS. BRILLET:  That is correct.

10:24:58  5          MR. WAKEFIELD:  I'm assuming IBM has no

          6     objections to that.

          7          MR. EISEMAN:  No, the agreement is fine by

          8     IBM.

          9     BY MR. WAKEFIELD:

10:25:10  10         Q    Dr. Yue, you have had your deposition taken on

          11    several occasions in the related case of Netbula versus

          12    Symantec, so I won't go into all of the procedures in as

          13    much detail.

          14         But I will remind you that you are under oath

10:25:28  15    and that is the same oath you would give if you were

          16    testifying in a court of law.

          17         Do you understand that?

          18         A    Yes, I do.

          19         Q    If at any time I ask a question that you do

10:25:36  20    not understand, please let me know and I'll attempt to

          21    clarify it.

          22         Okay?

          23         A    Okay.

          24         Q    And if you go ahead and answer, we'll assume

10:25:43  25    you understood the question.

DONGXIAO YUE                                          09/12/07
CONFIDENTIAL

Page 10

10:25:44  1

2              Okay?

3        A    Okay.

4        Q    At some point, you may be presented with an

10:25:48  5   opportunity to review a transcript of your deposition

6   and make corrections or clarifications.  However, if you

7   do that, we'll have an opportunity to comment on that in

8   these proceedings.

9              Do you understand that?

10:26:02 10   A    Yes.

11       Q    Are you under the influence of any medication

12   or are you aware of any other reasons that you cannot

13   give your complete and accurate testimony here today?

14       A    No.

15                   (Defendants' Exhibit 1

16                   previously marked for

17                   identification.)

18  BY MR. WAKEFIELD:

19       Q    You have in front of you Exhibit Number 1,

10:26:19 20  which is the 30(b)(6) deposition notice of Netbula, LLC.

21              Do you see that?

22       A    Yes.

23       Q    And you are the designated witness on behalf

24  of Netbula, LLC on these topics, correct?

10:26:38 25   A    Yes.

DONGXIAO YUE                                    09/12/07
CONFIDENTIAL

Page 11

10:26:39    1        Q    Have you had an opportunity before today to

            2    review Exhibit Number 1?

            3        A    Yes.

            4        Q    What did you do to prepare for your

10:26:48    5    deposition?  I don't want to cover the content of any

            6    conversations with counsel.

            7        A    I reviewed the communications with the

            8    Defendants --

            9        Q    Okay.

10:27:00   10        A    -- and some of the documents to refresh my

           11    memory.

           12        Q    Okay.

           13             Other than communications with Defendants,

           14    what other documents did you review to refresh your

10:27:11   15    memory?

           16        A    I reviewed the license agreements with

           17    Defendants, the -- some of the documents Defendants sent

           18    to Netbula, and all licensing history since year 2000.

           19        Q    Other than the license agreements and

10:27:48   20    documents that Defendants have provided to Netbula and

           21    the licensing history, as well as the communications you

           22    mentioned earlier, did you review any other documents in

           23    preparation for your deposition today?

           24        A    I also reviewed some of the documents we found

10:28:17   25    on the Internet about StorageTek customers and licensing

Page 12

10:28:25  1    of the LibAttach and the Reel software.

2         Q    Okay.

3              Other than the documents you have now

4    described, did you review any other documents in

10:28:42  5    preparation for your deposition today?

6         A    As I understand, the deposition is limited to

7    the license and the contract dispute, so my review of

8    the documents is limited to those relevant topics.

9         Q    Okay.  I understand that that's your position.

10:29:42  10             I just wanted to clarify that there were no

11   other documents that you reviewed in preparation for

12   your deposition today.  I want to make sure I have an

13   understanding of everything you looked at in preparation

14   for today.

10:29:53  15        A    I may have reviewed other documents, but at

16   this point it's -- I didn't -- when I review the

17   documents, I didn't prepare a list of what I reviewed,

18   so it's not entirely possible for me to enumerate every

19   document that I reviewed.

10:30:21  20        Q    Okay.

21             Have you described for me every category of

22   documents that you recall reviewing in preparation for

23   your deposition as you sit here now?

24        A    There are 21 categories, topics, on this

10:31:03  25   deposition list.  I believe I reviewed documents

DONGXIAO YUE                                    09/12/07
CONFIDENTIAL

Page 13

10:31:14   1   sufficient to cover those topics.

           2        Q    Okay.

           3             I just want to know if --

           4             I want to know what you reviewed, that's all.

10:31:24   5             Have you described for me everything you

           6   recall reviewing or is there something else you're not

           7   telling me?

           8        A    As I stated just a moment ago, I didn't

           9   prepare a list of the items as I reviewed the documents.

10:31:36  10   Generally, those are the categories of documents I have

          11   reviewed.  So I cannot be certain that I included

          12   everything in my previous statement.

          13        Q    Okay.

          14             Are you aware of anything that you did review

10:31:53  15   that you left out of your previous statement describing

          16   the documents reviewed for today's deposition?

          17        A    Maybe we should go -- if you want, we can go

          18   over 21 items one by one, and that will refresh my

          19   memory on what documents I reviewed and what I did not

10:32:31  20   review.

          21        Q    Okay.

          22             I just want to --

          23             Before we get into the topics -- and we have a

          24   lot to cover today -- as you sit here now, are there

10:32:39  25   other documents you recall reviewing that you haven't

DONGXIAO YUE
CONFIDENTIAL

Page 14

10:32:42    1    told me about?

2         A    Let me see.

3              For the first topic:  "Features, functions,

4    purposes, uses, limitations, and restrictions on the use

10:33:19    5    or distribution of the relevant Netbula software," I

6    reviewed the documents; I reviewed the software, the

7    features, some of the menus.

8              As for limitations, I reviewed communications

9    with the Defendants and possibly other customers.

10:33:53   10              And relevant Netbula software is -- was

11    defined as PowerRPC, ONC RPC, and other Netbula

12    software.  So for this topic, I reviewed sufficient

13    documents to address this deposition.

14              Second one, licensing of Netbula products,

10:34:30   15    including the ways Netbula has entered into licenses for

16    relevant Netbula software and scope and interpretation

17    of Netbula licenses --

18              MS. BRILLET:  Can I stop this for a moment?

19              MR. WAKEFIELD:  Please.

10:34:52   20              MS. BRILLET:  My concern is that Dr. Yue has

21    not fully understood the question that you have asked.

22              MR. WAKEFIELD:  I think that's right.

23    BY MR. WAKEFIELD:

24         Q    I understand you have stated there could be

10:35:04   25    other documents as you sit here without refreshing your

DONGXIAO YUE
CONFIDENTIAL

09/12/07

Page 15

10:35:07   1    memory, without looking at other materials you might

2    have reviewed.

3             I just wanted to get a sense from you if there

4    are other documents that -- without looking at this

10:35:18   5    30(b)(6) topic or any notes, that you recall reviewing.

6             In other words, if you know of something, "Oh,

7    I looked at this other secret stash of notes or my tape

8    recordings of conversations," or whatever else that

9    you're not telling me about, is there --

10:35:35  10             So my question is this:  Other than the

11    materials that you have described as having reviewed in

12    preparation for your deposition today, as you sit here

13    now, do you recall reviewing other categories of

14    documents?

10:35:49  15        A    The difficulty with your question is you're

16    asking me to recall, and that's a ongoing investigation

17    as a mental process for me.

18             I can only tell you as I answer your previous

19    question on what documents I have reviewed, I did my

10:36:10  20    best to tell you what I recall at that point of time.

21        Q    Okay.

22             So there is nothing else that you specifically

23    recall right now that you're not telling me about,

24    correct?

10:36:25  25        A    Correct.

DONGXIAO YUE                                    09/12/07
CONFIDENTIAL

Page 16

10:36:25   1        Q    Okay.

           2             Dr. Yue, I'm going to hand you Exhibit 2 to

           3   this deposition.  This was previously marked as

           4   Exhibit 83 to your deposition in the related Symantec

10:36:45   5   litigation.

           6                     (Defendants' Exhibit 2

           7                     previously marked for

           8                     identification.)

           9             MS. BRILLET:  Can I see a copy of that

10:36:52  10   document?

          11             MR. WAKEFIELD:  Yes.  One moment.

          12   BY MR. WAKEFIELD:

          13        Q    And, Dr. Yue, this copy has been copied

          14   several times so it's not entirely clear, but I think we

10:37:16  15   can still read it.

          16             Exhibit 2 to your deposition here today,

          17   previously marked as Exhibit 83, is the license

          18   agreement entered into between Storage Technology and

          19   Netbula in the year 2000, correct?

10:37:48  20        A    Yes, it appears to be.

          21        Q    Okay.

          22             And I'd like to get an overview from you of

          23   the uses of the products licensed under this agreement.

          24   This is tying back to Topic Number 1 in your 30(b)(6)

10:38:17  25   deposition notice.

DONGXIAO YUE
CONFIDENTIAL

09/12/07

Page 17

| | | |
|---|---|---|
| 10:38:20 | 1 | And I'd like to start, first of all, with your |
| | 2 | description of what products were licensed to StorageTek |
| | 3 | in 2000. |
| | 4 | A   I can only rely on this agreement, which |
| 10:39:00 | 5 | says -- one of the heading is Netbula ONC SDK and the |
| | 6 | PowerRPC SDK product licenses -- licenses. |
| | 7 | Q   Can you determine from Exhibit 2 what products |
| | 8 | were licensed to StorageTek in 2000? |
| | 9 | A   I believe what's licensed, it's very |
| 10:40:04 | 10 | accurately reflected in this license agreement.  The |
| | 11 | only way for me to state what was licensed is to just |
| | 12 | read the whole license agreement as a whole.  I don't |
| | 13 | see a way to summarize this whole agreement in one |
| | 14 | sentence. |
| 10:40:39 | 15 | Q   I don't want a summary of the whole agreement, |
| | 16 | but can you summarize what products were licensed? |
| | 17 | A   It says here, "Netbula ONC SDK and PowerRPC |
| | 18 | SDK product licenses." |
| | 19 | Q   Does that mean that Storage Technology |
| 10:41:10 | 20 | Corporation received a license to both the ONC RPC SDK |
| | 21 | and the PowerRPC SDK? |
| | 22 | A   We're not sure what StorageTek has received |
| | 23 | back in 2000.  We were unable to find a copy of the |
| | 24 | software that had been delivered to StorageTek. |
| 10:42:15 | 25 | Q   Do you have any record of what was |

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

DONGXIAO YUE
CONFIDENTIAL

09/12/07

Page 18

10:42:16    1    delivered --

2           Other than a copy, do you have any record of

3    what was actually delivered to StorageTek in 2000?

4       A    There were some communications about Netbula

10:42:40    5    ONC RPC.

6       Q    Based on those communications, do you believe

7    that ONC RPC was the product licensed to StorageTek?

8       A    I cannot sure -- cannot be sure.  There were

9    purchase orders from StorageTek that I did review and we

10:43:08   10    did produce, and there was a purchase order for the

11    specific product for the year 2000.

12       Q    Do you recall what product that was?

13       A    I don't without seeing the document.

14       Q    Do you recall what Netbula's invoice in the

10:43:27   15    year 2000 to StorageTek was for?

16       A    I don't.

17       Q    Okay.

18       A    But the document is available.

19       Q    Yes, we'll get to that in just a moment.

10:43:39   20           Why don't we also --

21           Since I premarked it, I will hand you

22    Exhibit 3.

23                      (Defendants' Exhibit 3

24                      previously marked for

10:43:45   25                      identification.)

DONGXIAO YUE
CONFIDENTIAL

09/12/07

Page 19

10:43:46   1    BY MR. WAKEFIELD:

2        Q    Dr. Yue, do you recognize Exhibit 3 to your

3    deposition today?

4        A    This appears to be a document we produced for

10:44:50   5    the Netbula versus Symantec litigation with the NB Bates

6    number starting from -925 and marked as confidential --

7        Q    Okay.

8        A    -- by Netbula, LLC.

9        Q    And is this the same license agreement you

10:45:24  10    produced in this case, but executed by both StorageTek

11    and Netbula?

12        A    We did produce the same license agreement for

13    the StorageTek litigation.

14        Q    Okay.

10:45:46  15        And do you recognize this as the same license

16    agreement that has been produced in the StorageTek

17    litigation?

18        A    I cannot be certain unless I compare the two

19    documents.

10:46:03  20        MR. WAKEFIELD:  Okay.  All right.

21        Well, first of all, we have not formally

22    entered a protective order in this case, but the parties

23    have agreed at this phase of the proceedings that the

24    protective order designations and the requirements of

10:46:29  25    the protective order apply to this matter, except for

DONGXIAO YUE                                      09/12/07
CONFIDENTIAL

10:46:34  1    potential future productions of source code where there

          2    is some issues that IBM has raised.

          3           But are we in agreement with respect to the

          4    documents produced that the protective order from the

10:46:48  5    Symantec litigation applies to documents produced in

          6    this case?

          7           MS. BRILLET:  Parroting our agreement under

          8    redesignation regarding my request for Mr. Yue --

          9    Dr. Yue to be able to see certain documents.

10:47:02 10           MR. WAKEFIELD:  Right.

         11           So to the extent -- and, in fact, that

         12    protective order has provisions to allow for

         13    redesignation and for requests for redesignation.  So

         14    that's what you're referring to?

10:47:12 15           MS. BRILLET:  Yes.

         16           THE WITNESS:  But --

         17           MR. WAKEFIELD:  But I'm -- it's my

         18    understanding IBM -- IBM's counsel has also agreed that

         19    materials produced in this case will be governed by

10:47:27 20    those same restrictions except for the concerns they

         21    have raised about source code.

         22           Is that correct?

         23           MR. EISEMAN:  That is correct.

         24           MR. WAKEFIELD:  So I want to make sure we

10:47:34 25    don't have a problem with this document, a copy of it,

Page 21

10:47:35   1    being in front of IBM's counsel.

         2         MS. BRILLET:  Well, there will be a protective

         3    document in place.  As long as IBM agrees to abide by

         4    that protective order pending signature, yes, that's

10:47:51   5    fine.

         6         MR. EISEMAN:  We agree.

         7    BY MR. WAKEFIELD:

         8         Q    All right.

         9              With that bit of housekeeping out of the way,

10:47:59  10    Dr. Yue, my --

        11              Do you need a moment?

        12         A    Yes.

        13         MS. BRILLET:  Please.

        14         MR. WAKEFIELD:  Okay.

10:48:23  15         MS. BRILLET:  Dr. Yue has raised a concern --

        16    and, in fact, I think it's a valid one -- that it

        17    appears that there will be -- document production from

        18    the Symantec case is going to be used for the deposition

        19    for the Sun case?

10:48:45  20         MR. WAKEFIELD:  We have already had deposition

        21    testimony on some of those exhibits, including

        22    Exhibit 83.

        23              And I would hope that you wouldn't want to

        24    reproduce the entire production and all source code in

10:49:02  25    this case and incur those expenses, since it's the same

DONGXIAO YUE
CONFIDENTIAL

10:49:08  1    counsel and the same protective order.

2         MS. BRILLET:  I just wanted to make -- I just

3    notice -- I see that, too, that you're using the same

4    documents.  So I'm just --

10:49:17  5         MR. WAKEFIELD:  Yeah, I didn't --

6         MS. BRILLET:  -- even though there was another

7    document request for Sun and then now these additional

8    documents are being used from the old request.

9         MR. WAKEFIELD:  Is that a problem?

10:49:30  10        THE WITNESS:  Netbula's position is the cases

11   are different, cover different periods, different

12   claims, and the documents are produced for different

13   purposes.

14        MS. BRILLET:  It seems to put --

10:49:42  15        THE WITNESS:  The Court restricted the -- this

16   phase of the litigation to the contract and licensing

17   dispute.

18        Therefore, in Netbula's view, the

19   confidentiality agreement or court order in the Symantec

10:50:09  20   case still applies, and Netbula's view is it's improper

21   to use the material discovered -- the fruits of

22   discovery in the Symantec case in this matter, because

23   it's, indeed, different.

24        MR. WAKEFIELD:  Is that counsel's position or

10:50:47  25   do you guys want to talk about it?

DONGXIAO YUE
CONFIDENTIAL

09/12/07

Page 23

10:50:49    1         MS. BRILLET:  My concern is -- my concern is

2    that it gives the other Defendants -- it appears to give

3    the other Defendants an advantage, because they are able

4    to use all of these other documents that are produced in

10:51:01    5    the previous case, as opposed to documents that would

6    only have been produced in the Sun matter.

7              Now, if we want to redesignate, you know,

8    whatever documents that they want to do in that case,

9    that's fine.  But otherwise, all the Defendants have an

10:51:17   10    unfair advantage of being able to see all the documents

11    from previous cases that they may not have seen

12    otherwise or may not have requested otherwise.

13         MR. WAKEFIELD:  Well, I think if that's a

14    concern, it should have been raised at the time The

10:51:34   15    Court limited discovery.

16              But you have known since the time of the case

17    management conference, where the proposal to limit

18    discovery in this matter and conduct it in phases was

19    discussed, and you knew full well that the same law firm

10:51:47   20    was representing -- same lawyers were representing the

21    Defendants, save IBM.

22         MS. BRILLET:  That doesn't address my concern.

23         MR. WAKEFIELD:  You can't put toothpaste back

24    in the tube.  I mean, if we know what Dr. Yue said in

10:52:05   25    his deposition, we know what his source code looks like,

DONGXIAO YUE
CONFIDENTIAL

09/12/07

Page 24

| | | |
|---|---|---|
| 10:52:10 | 1 | we cannot erase that information. |
| | 2 | That said -- |
| | 3 | MS. BRILLET:  Are you representing IBM, as |
| | 4 | well? |
| 10:52:16 | 5 | MR. WAKEFIELD:  No. |
| | 6 | MS. BRILLET:  Okay. |
| | 7 | MR. WAKEFIELD:  That said, this is a document |
| | 8 | that is identical to one produced in the case, and so in |
| | 9 | terms of getting through the day, it's not the same |
| 10:52:30 | 10 | agreement? |
| | 11 | MS. BRILLET:  It's not the exact same |
| | 12 | agreement, no.  There are differences between the two |
| | 13 | cases. |
| | 14 | THE WITNESS:  Netbula's view on this is there |
| 10:52:37 | 15 | is a protective order issued by The Court and on the |
| | 16 | protection of the documents in the Netbula versus |
| | 17 | Symantec case, and there was specific requirements for |
| | 18 | releasing documents to the counsel in -- to the BindView |
| | 19 | case, not to the counsel of the Netbula versus Sun |
| 10:53:03 | 20 | Microsystems case. |
| | 21 | MR. WAKEFIELD:  Well, I think -- |
| | 22 | THE WITNESS:  We view this as a violation of |
| | 23 | the protective order. |
| | 24 | MR. WAKEFIELD:  Well, maybe you and your |
| 10:53:14 | 25 | counsel should talk about whether counsel wants -- as an |

09/12/07

Page 25

10:53:19  1    officer of The Court wants to make that allegation in

2    this case.

3            We just clarified that counsel for Netbula,

4    LLC, which is a corporation that can only be represented

10:53:29  5    by an attorney admitted to practice in the state of

6    California, has no objection to counsel for IBM having

7    Exhibit 3 in front of him.

8            And I also think that we'd needlessly kill a

9    lot of trees if we required reproduction of the same

10:53:47  10   materials.

11           The Court wanted to avoid burden on parties by

12   having to engage in new discovery on topics that it

13   might not need to get to in this case.

14           But that doesn't mean that documents that are

10:54:03  15   already in Sun Microsystems' counsel's possession that

16   are relevant cannot be used.

17           MS. BRILLET:  Can we go off record for a

18   moment?

19           MR. WAKEFIELD:  Yeah.

10:54:18  20           MR. EISEMAN:  Before we go off the record, can

21   I also note for the record that I believe that Exhibit 3

22   is virtually identical, absent perhaps a signature, to

23   Docket Number 45 filed in the present case by Netbula on

24   April the 30th, 2007.  So I think the document's already

10:54:39  25   of record in this present case.

DONGXIAO YUE
CONFIDENTIAL

09/12/07

Page 26

10:54:42   1           MS. BRILLET:  I understand what you said, but

         2    by looking at the document, they are not.

         3           So, I mean, if you want -- you can go

         4    paragraph by paragraph, as I did, and they are not.

10:54:53   5    There are some differences between the two documents.

         6           I would like a moment to go off record if you

         7    do not mind.

         8           MR. WAKEFIELD:  Okay.

         9           MS. BRILLET:  So I think we could clarify that

10:55:00  10    if we go off record.

        11           MR. WAKEFIELD:  Okay.

        12           THE VIDEOGRAPHER:  The time is 10:55.  We're

        13    going off the record.

        14                   (Recess taken.)

10:55:05  15           THE VIDEOGRAPHER:  The time is 11:02.  We're

        16    back on the record.

        17           MR. WAKEFIELD:  Okay.  Go ahead, Ms. Brillet.

        18           MS. BRILLET:  Plaintiff's counsel, Vonnah

        19    Brillet, I have expressed an objection that Plaintiff

11:02:59  20    has to the fact that Defendants are using documents that

        21    are produced in another case for the Sun case.

        22           With that caveat, I have agreed that the

        23    documents that pertain to contract and licensing would

        24    be allowed to be used in this case.

11:03:17  25           I object to the use of any other documents,

DONGXIAO YUE
CONFIDENTIAL
09/12/07

Page 27

11:03:18    1    because it's my understanding that the Judge has limited

2    the issues for this particular initial phase of

3    discovery to those two issues.

4            MR. WAKEFIELD:   Okay.   And we are, obviously,

11:03:35    5    cognizant of The Court's order.   We believe all of the

6    questioning we have planned for the day and all of the

7    exhibits we have marked for the day pertain to the scope

8    of discovery at issue in this first phase.

9            There is also the protective order issue,

11:03:53   10    which I think we have resolved with the agreement of all

11    the Defendants in this case that the protective order

12    designations that were applicable in the Symantec case

13    are also applicable here.

14            There may be different additional heightened

11:04:14   15    protections added to source code productions that have

16    been requested by IBM's counsel, which may -- perhaps

17    all the parties will agree to or there will be some

18    negotiation on.   But I have no source code to mark or

19    talk about here today.

11:04:29   20            So I believe with respect to the protective

21    order issue, we're in agreement -- is that right --

22            MS. BRILLET:   Yes.

23            MR. WAKEFIELD:   -- that Mr. Eiseman can see

24    documents designated confidential or highly

11:04:42   25    confidential, outside counsels' eyes only.

Page 28

11:04:45    1         MS. BRILLET:  Unless I have objected that it's

           2    not a document that is related to the contracting or the

           3    license --

           4         MR. WAKEFIELD:  Okay.  So is it your position

11:04:57    5    that -- I don't understand the position.  Is your

           6    position that IBM's counsel cannot today see some

           7    documents if you look at one and decide, "I don't think

           8    this is relevant to the -- to the licensing scope and

           9    interpretation issues that are at issue in this phase of

11:05:19   10    the case"?

          11         MS. BRILLET:  The documents that you have for

          12    him to view today, are these documents that are produced

          13    in the Sun case or are they documents that are produced

          14    in Symantec?

11:05:28   15         MR. WAKEFIELD:  There are an interrogatory

          16    answer that was produced in the Symantec litigation, but

          17    it is relevant to the issues of license formation and

          18    the claims that this is a copyright case, rather than a

          19    contract case, that Plaintiff is asserting and that are

11:05:56   20    the crux of the issue that we're presented with here.

          21         MS. BRILLET:  Right.

          22         Again, I just -- I still have the issue with

          23    IBM seeing the documents that are produced in the

          24    Symantec case.

11:06:07   25         MR. WAKEFIELD:  How do you --

DONGXIAO YUE
CONFIDENTIAL

Page 29

11:06:08   1          MS. BRILLET:  I just want to put that

2     objection on the record.

3          MR. WAKEFIELD:  Well, you have an objection,

4     but, I mean, I can not hand them to him or -- I mean, he

11:06:20   5     has agreed that the same confidentiality designations

6     apply.

7          So if they are attorneys' eyes -- I don't

8     think they are attorneys' eyes only, but perhaps there

9     might be some on pricing information.  Those would not

11:06:35  10     be shared with people within IBM except as permitted by

11     the protective order.

12          MS. BRILLET:  What I see regardless, either

13     way, then IBM would then propound the same discovery

14     that was in the initial case anyway.

11:06:52  15          MR. WAKEFIELD:  That's right.

16          So I think if we get -- if you think there is

17     a topic that I'm getting to that's inappropriate for the

18     scope of discovery, we can address that at the time and

19     you can make objections.

11:07:04  20          I just want to make sure that poor Mr. Eiseman

21     is not going to have to get up and leave the room.

22          Are we in agreement on that?

23          MS. BRILLET:  Yes.

24          MR. WAKEFIELD:  Okay.

11:07:13  25          MR. EISEMAN:  Thank you to all of you for

DONGXIAO YUE
CONFIDENTIAL

09/12/07

Page 30

| | | |
|---|---|---|
| 11:07:14 | 1 | that. |
| | 2 | MR. WAKEFIELD:  Although I'm sure he would |
| | 3 | like to leave the room. |
| | 4 | BY MR. WAKEFIELD: |
| 11:07:22 | 5 | Q    All right.  So let's get to Exhibit 3. |
| | 6 | Dr. Yue, can you determine from Exhibit 3 what |
| | 7 | products are being licensed to StorageTek? |
| | 8 | A    I cannot say more than what's written in this |
| | 9 | agreement, this eight-page agreement. |
| 11:08:03 | 10 | Q    Okay. |
| | 11 | Well, you are the designated witness |
| | 12 | concerning agreements between -- or Topic Number 5: |
| | 13 | "Any and all agreements |
| | 14 | regarding acquiring rights to use |
| 11:08:19 | 15 | relevant Netbula products." |
| | 16 | And my question is very simple:  Do you know |
| | 17 | what products were licensed to StorageTek in either 2000 |
| | 18 | or 2004? |
| | 19 | A    The agreements has a lot of -- the license |
| 11:08:46 | 20 | agreements themselves have specific conditions and terms |
| | 21 | that must be satisfied before they are licensed. |
| | 22 | Q    I understand that. |
| | 23 | A    Therefore, I have to -- it's -- from this |
| | 24 | document alone, it's not possible to determine what |
| 11:09:08 | 25 | exactly was licensed, because license is -- the cost of |

DONGXIAO YUE
CONFIDENTIAL

09/12/07

Page 31

11:09:19    1    license by itself is abstract and the rights granted for

2    license must be specific.  The terms must be clearly

3    laid out.

4         So just by looking at this document, I see

11:09:36    5    several pages of conditions and the restrictions that is

6    relevant to the license grant.

7    Q    So as you sit here now, as the 30(b)(6)

8    witness on behalf of Netbula and with both the 2000 and

9    2004 agreements marked as Exhibit 2 and 3 in front of

11:09:59   10    you, you cannot answer the question what products were

11    licensed to StorageTek, correct?

12    A    These agreements are purchase agreements, and

13    I have to review the purchasing orders, the invoices,

14    and the payment terms and whether the payments were made

11:10:35   15    to determine what kind of licenses were granted to

16    StorageTek or other company.

17    Q    So as you sit here right now, as the 30(b)(6)

18    witness on behalf of Netbula and with both the 2000 and

19    2004 agreements marked as Exhibits 2 and 3 in front of

11:10:59   20    you, you cannot answer the question what products were

21    licensed to StorageTek, correct?

22    A    My answer was by just looking at these two

23    documents alone, I cannot determine the products that

24    has been licensed.  As I stated previously, these are

11:11:21   25    purchase agreements and the licenses are only purchased

DONGXIAO YUE
CONFIDENTIAL

09/12/07

Page 32

11:11:26  1    when StorageTek make a purchase order and make the

2    payment.

3         And we did produce the purchase orders made by

4    StorageTek.  With those documents, I would then be able

11:11:40  5    to determine what products has been licensed and what

6    the specific terms of the license.

7         Q    Okay.

8              Without those other documents, as you sit here

9    now, you can't answer the question of what products were

11:11:53  10   licensed to StorageTek, correct?

11        A    These license agreements are what they are.

12   The terms are clear.  I -- as I said, to -- to determine

13   the exact product license and rights granted from these

14   license agreement, we have to review these agreements,

11:12:52  15   along with the purchase orders and invoices and payment

16   terms.

17        Q    And without those other documents, as you sit

18   here now, you can't tell me what products were licensed

19   to StorageTek, correct?  It's a "yes" or "no."

11:13:46  20        A    The agreement says:  "Netbula ONC RPC SDK and

21   PowerRPC SDK product licenses."

22        Q    So were both products --

23              Is it your testimony that both products were

24   licensed to StorageTek or is it your testimony that

11:14:08  25   without seeing additional documents, you can't determine

DONGXIAO YUE
CONFIDENTIAL

09/12/07

Page 33

11:14:12  1   what products were licensed to StorageTek?

2       A    The license agreement says:  "Netbula grants

3   StorageTek" --

4       Q    Dr. Yue, I can read the agreement myself.  I

11:14:43  5   have a "yes" or "no" question for you.

6            Can you tell me what products were licensed to

7   StorageTek without seeing additional documents?

8       A    My answer was -- and I thought I already

9   answered -- these are purchase agreements, and here I'm

11:15:29 10   referring to one of the phrase in the license agreement.

11   It says:  "For each of the license purchased."

12            Therefore, to determine what license has been

13   purchased, I have to look at the purchase orders.

14       Q    Okay.  Thank you.

11:15:58 15                    (Defendants' Exhibit 4 marked

16                         for identification.)

17   BY MR. WAKEFIELD:

18       Q    Dr. Yue, you have in front of you what has

19   been marked as Exhibit 4, bears the Bates Number NBS-42.

11:16:22 20            Do you recognize this as an invoice from

21   Netbula to StorageTek from the year 2000?

22       A    Yes, I do.

23       Q    Okay.

24            Can you determine from this document what

11:16:33 25   products were licensed to StorageTek in the year 2000?

DONGXIAO YUE                                    09/12/07
CONFIDENTIAL

                                                        Page 34

11:16:47  1      A    Yes.

          2      Q    Okay.

          3           What products were those?

          4      A    It says:  "Netbula ONC RPC win32, One

11:16:57  5  Developer License."

          6      Q    Okay.

          7           And it says quantity 8?

          8      A    Yes.

          9      Q    So does that mean that StorageTek obtained

11:17:07 10  eight one-developer licenses for Netbula ONC RPC win32?

         11      A    One has to read this invoice in conjunction

         12  with the license agreement, and the agreement says:

         13                "For each of the licenses

         14                purchased, to use PowerRPC SDK

11:17:44 15                product under Windows NT and 95, 98

         16                platforms."

         17      Q    You're referring to Exhibit 2?

         18      A    Yes.

         19      Q    So is it your testimony that although the

11:18:01 20  invoice was for ONC RPC, that the license was for

         21  PowerRPC SDK?

         22      A    The license agreement has both ONC RPC SDK and

         23  PowerRPC SDK.

         24      Q    Okay.

11:18:48 25           So what products were licensed to StorageTek

DONGXIAO YUE
CONFIDENTIAL

09/12/07

Page 35

11:18:51  1    in 2000?  Was it PowerRPC, ONC RPC, or both?

2         A    As I stated previously, I -- we need to look

3    at the license agreement, the purchase order, and the

4    invoices to determine the license grant, because these

11:19:33  5    invoices are incomplete in terms of describing the

6    licenses.

7             MR. WAKEFIELD:  Counsel, I just want to note

8    my objection, and I believe that as a -- Netbula had an

9    obligation under this deposition notice to produce a

11:20:03 10    30(b)(6) witness under at least Topic Number 5 who knew

11    what products have been licensed in this case.

12             But we can deal with that at another time.

13             MS. BRILLET:  On the Topic Number 5, it asks

14    for agreements.

11:20:28 15             MR. WAKEFIELD:  "A witness to testify about

16    any and all agreements for use of any relevant Netbula

17    product between you and any of the Defendants."

18             MS. BRILLET:  He's able to testify as to that

19    topic.

11:20:41 20             MR. WAKEFIELD:  But he doesn't know what

21    products were actually licensed.

22             Let me go to another --

23    BY MR. WAKEFIELD:

24        Q    Well, first of all, what is win32?

11:20:58 25        A    Win32 is a standard defined by Microsoft

DONGXIAO YUE
CONFIDENTIAL

09/12/07

Page 36

11:21:07   1    Corporation.

2         Q    Does it defer to 32-bit versions of the

3    Windows operating system?

4         A    As I said, it's a name for a application

11:21:25   5    programming interface defined by Microsoft.  I am not

6    sure whether a 64-bit operating system will use the

7    same -- that's a expert opinion and I cannot give at

8    this point.

9         Q    Okay.

11:21:58  10         You have been identified as a technical expert

11    and have a master's degree in computer science.  You're

12    identified as a technical expert in the other case.

13         But as you sit here now, you don't know if the

14    win32 API defined by Microsoft pertains to 64-bit, as

11:22:23  15    well as 32-bit operating systems; is that right?

16         MS. BRILLET:  I object that the fact that he

17    was designated as an expert in one case has any bearing

18    on this case.

19         THE WITNESS:  I'm not prepared to address that

11:22:49  20    technical issue at this point.  I should be able to.

21    BY MR. WAKEFIELD:

22         Q    Okay.

23         Do you know, is Windows NT a 32-bit version of

24    Windows or is the API for Windows NT 32-bit?

11:23:10  25         A    Can you rephrase that question?

A0264

DONGXIAO YUE                              09/12/07
CONFIDENTIAL

Page 37

11:23:11   1      Q    Yeah, that was a bad question.

           2           Is Windows NT a 32-bit operating system?

           3      A    Not necessarily.  There are Windows NT for

           4    64-bit machines.

11:23:24   5      Q    Okay.

           6           But is there also Windows NT for 32-bit

           7    machines?

           8      A    Yes.

           9      Q    Okay.

11:23:38  10           Were you aware that Microsoft renamed Windows

          11    NT Version 5.0 as Windows 2000?

          12      A    I don't know.

          13      Q    Okay.

          14           Before we leave the invoice, the second item

11:24:21  15    on the invoice, Exhibit 4, is:  "Netbula ONC RPC win32

          16    1,000 machine runtime license."

          17           Do you see that?

          18      A    Yes, I see that.

          19      Q    Do you know what is being referred to by the

11:24:36  20    "Netbula ONC RPC win32 1,000 machine runtime license" in

          21    Exhibit 4?

          22      A    It refers to entry in StorageTek's purchase

          23    order, which we have produced, and I believe it also

          24    refers to the Exhibit C of the year 2000

11:25:22  25    Netbula/StorageTek agreement.

A0264

DONGXIAO YUE
CONFIDENTIAL

Page 38

| | | |
|---|---|---|
| 11:25:30 | 1 | Q    Without looking at purchase orders, as well as |
| | 2 | the agreement, you can't tell what that refers to, the |
| | 3 | reference to "Netbula ONC RPC win32 1,000 machine |
| | 4 | runtime license" in Exhibit 4; is that right? |
| 11:25:44 | 5 | A    As I said, I said this refers to the 1000pak |
| | 6 | or 1,000-unit license in this agreement. |
| | 7 | Q    Okay. |
| | 8 | Is that for the -- |
| | 9 | It refers to the 1000pak unit license in the |
| 11:26:00 | 10 | agreement.  Why don't we go to the -- |
| | 11 | The third item is "Ten-Incident Support" on |
| | 12 | Exhibit 4? |
| | 13 | A    Yes. |
| | 14 | Q    What does that refer to, do you know? |
| 11:26:20 | 15 | A    For that, I have to review the purchase order. |
| | 16 | Q    Okay. |
| | 17 | Is it Netbula's business practice that where |
| | 18 | it has entered into an agreement to provide support, |
| | 19 | that it includes it on an invoice to the customer? |
| 11:26:50 | 20 | A    Could you ask that again? |
| | 21 | Q    Sure. |
| | 22 | Is it Netbula's business practice that where |
| | 23 | it has entered into an agreement to provide support to a |
| | 24 | customer, that it includes a reference to support in an |
| 11:27:04 | 25 | invoice to that customer? |

DONGXIAO YUE
CONFIDENTIAL

09/12/07

Page 39

11:27:20   1        A    I believe that the situation with StorageTek

2    was different.  I believe there are communications

3    between Netbula and StorageTek to arrange for additional

4    support not covered in any standard support that Netbula

11:27:42   5    provide.

6             I -- in my review of the documents, I did see

7    communications between Netbula and StorageTek regarding

8    the support issue, also the pricing.

9        Q    Is it Netbula's business practice that where

11:28:02  10    it has entered into an agreement, ultimately, following

11    whatever communications it has had, to provide support

12    to a customer, that it invoices the customer for that

13    support?

14        A    Could you ask it again?  I got really

11:28:34  15    confused.

16        Q    Yeah.

17             Is it Netbula's business practice that where

18    it has entered into an agreement to provide support to a

19    customer, that it then includes a reference to support

11:28:45  20    in an invoice sent to the customer?

21        A    Normally, I would say the -- in our business

22    is the customer will make a purchase order and include

23    whatever items they want to purchase, and then we

24    invoice them unless there is a specific agreement to say

11:29:38  25    otherwise.

A0267

DONGXIAO YUE
CONFIDENTIAL

Page 40

| | | |
|---|---|---|
| 11:29:39 | 1 | Normally, our customers prefer to have they |
| | 2 | issue the purchase order so there will be a reference on |
| | 3 | the invoice to a purchase order. |
| | 4 | Q    Okay. |
| 11:29:55 | 5 | Is there a reference to the purchase order in |
| | 6 | Exhibit 4?  Is it the Order Number CCOL122576? |
| | 7 | A    I believe so.  That's the invoice -- purchase |
| | 8 | order number. |
| | 9 | MR. WAKEFIELD:  Okay.  Why don't we mark as |
| 11:30:36 | 10 | next 5. |
| | 11 | (Defendants' Exhibit 5 marked |
| | 12 | for identification.) |
| | 13 | BY MR. WAKEFIELD: |
| | 14 | Q    We have marked as Exhibit Number 5 another |
| 11:31:05 | 15 | Netbula invoice. |
| | 16 | Dr. Yue, do you recognize Exhibit 5 as a |
| | 17 | Netbula invoice to Storage Technology Corporation in |
| | 18 | 2004? |
| | 19 | A    Yes, I do. |
| 11:31:17 | 20 | Q    And would this invoice then tie to the 2004 |
| | 21 | document marked as Exhibit 3? |
| | 22 | A    This Invoice Number 10302 would tie to the |
| | 23 | agreement in Exhibit 3 and the Purchase Order Number |
| | 24 | CCOL123554. |
| 11:31:55 | 25 | Q    Okay. |

A0267

DONGXIAO YUE                                              09/12/07
CONFIDENTIAL

Page 41

11:31:57  1              And there is no invoice here for support, is

          2     there, in Exhibit 5?

          3         A    Correct.

          4         Q    Okay.

11:32:33  5              Well, we'll try to dig up the precise purchase

          6     order documents to see if you can remember what products

          7     you licensed to StorageTek, but I'd like to ask about

          8     the ONC RPC SDK and take you back to Exhibit 2.

          9              In Exhibit A to Exhibit 2, page ending in

11:33:10 10     -850, there is a list of components contained in ONC RPC

         11     SDK.

         12              Do you see that?

         13         A    Yes.

         14         Q    And can you briefly explain how the various

11:33:36 15     components of the ONC RPC SDK are used in the intended

         16     use of that product?

         17              So start with rpcgen.  What is rpcgen used

         18     for?

         19         A    Rpcgen.exe is the rpcgen idl compiler, which

11:34:20 20     compile .x files into RPC stubs.

         21         Q    Okay.

         22              And can you --

         23              In layperson's terms, what would a customer

         24     use -- a customer of ONC RPC use the rpcgen.exe program

11:34:40 25     for?

DONGXIAO YUE
CONFIDENTIAL

09/12/07

Page 42

| 11:34:50 | 1 | A | The customer use it in the development of |
| | 2 | software applications -- |
| | 3 | Q | And in the -- |
| | 4 | A | -- for -- |
| 11:34:57 | 5 | Q | Go on. |
| | 6 | A | -- for RPC communication. |
| | 7 | Q | Okay. |
| | 8 | And in the normal and intended use of |
| | 9 | rpcgen.exe, is there code that is generated -- code that |
| 11:35:08 | 10 | is generated by rpcgen.exe? |
| | 11 | A | Could you ask it again? |
| | 12 | Q | Yeah. |
| | 13 | In the normal and intended use of rpcgen.exe, |
| | 14 | is there code that is basically output from rpcgen.exe? |
| 11:35:31 | 15 | A | Yes. |
| | 16 | Q | Okay. |
| | 17 | And a licensee that had the right to use |
| | 18 | rpcgen.exe could then use that code in developing the |
| | 19 | customer's software, correct? |
| 11:35:57 | 20 | A | Yes. |
| | 21 | Q | Okay. |
| | 22 | And could you explain what the portmap.exe |
| | 23 | program is used for? |
| | 24 | A | This program is like directory service.  It's |
| 11:36:18 | 25 | used to register RPC services. |

DONGXIAO YUE
CONFIDENTIAL

09/12/07

Page 43

11:36:26  1       Q    Okay.

         2            Let's skip down to pwrpc32.dll.  This is still

         3       referring to Exhibit 2 and Exhibit A to Exhibit 2 under

         4       the list of what's contained in ONC RPC SDK.

11:36:49  5            What is pwrpc32.dll used for?

         6       A    This is for the developer to -- to use the --

         7       to actually run the application developed with the SDK

         8       in his developer environment.

         9       Q    Okay.

11:37:32 10            And then if the customer wants to distribute

        11       the product developed in the development environment,

        12       the customer needs a distribution license for

        13       pwrpc32.dll; is that right?

        14       A    The customer would be needing a distributable

11:37:58 15       version of the pwrpc32.dll, which is listed in Exhibit B

        16       of this agreement.

        17       Q    And in order to distribute any --

        18            I understand you take the position that there

        19       are different versions of pwrpc32.dll, but am I correct

11:38:17 20       that under your licensing scheme, to distribute any copy

        21       of pwrpc32.dll, the customer has to have a distribution

        22       license, correct?

        23       A    The definition of the distribution license is

        24       defined in the first page to the second page of this

11:38:49 25       agreement.

DONGXIAO YUE                                              09/12/07
CONFIDENTIAL

Page 44

11:38:54    1        Q    So on what --

            2             Under what circumstances can your customers

            3     distribute pwrpc32.dll without a distribution license?

            4        A    The word "distribute" is not clearly defined

11:39:25    5     in your question.

            6        Q    Let's say distribute outside of the customer's

            7     development environment.

            8             If the customer wants to commercialize a

            9     product that it has developed with the ONC RPC SDK and

11:39:47   10     sell it, license it to its customers, does it need a

           11     distribution license to ship the pwrpc32.dll file?

           12        A    In that case, the customer would have to

           13     obtain a license to distribute distributable version of

           14     the pwrpc32.dll, as this license agreement stated that

11:40:23   15     the developer version is only for development only and

           16     it's marked as for development only.

           17        Q    And we've pretty thoroughly covered that topic

           18     in your last deposition and prior depositions.  I don't

           19     want to revisit the issue of the different -- the

11:40:45   20     alleged different versions of pwrpc32.dll; I'm just

           21     trying to get the general framework for this case of how

           22     this product works.

           23             ONC RPC SDK is a product used to develop

           24     software, right?

11:41:00   25        A    Yes.

DONGXIAO YUE
CONFIDENTIAL

Page 45

11:41:01  1       Q    And generally speaking, to then distribute

2    software developed with ONC RPC that contains the

3    distribution version, as you call it, of pwrpc32.dll,

4    the customer needs a license to do that, right?

11:41:19  5       A    Yes.

6       Q    Okay.

7            How are the C header files and import library

8    used by a customer of the ONC RPC SDK?

9       A    They are the necessary human-readable source

11:41:45  10   code that is to be used by the developer in using the

11   SDK.

12       Q    Okay.

13           So let's say you have a customer that wants to

14   use the ONC RPC SDK to develop software and then license

11:42:09  15   that software to its customers.

16           How would that customer use the C header files

17   and the import library?

18       A    The customers don't directly use the C header

19   files and import library normally.  I'm not sure about

11:42:37  20   StorageTek in this case, but normally, customer who only

21   uses the RPC functionality of the end-user application

22   does not need to see header files and import library.

23       Q    Okay.

24           How would the --

11:43:03  25           That was a confusing question.

DONGXIAO YUE
CONFIDENTIAL

09/12/07

Page 46

11:43:04  1          How would the licensee, the company that

2     licensed the ONC RPC from Netbula, use the C header

3     files and the import library in developing a product for

4     subsequent distribution to its customers?

11:43:24  5          A    Could you ask that again?

6          Q    Yeah.

7               How would your customers, Netbula's customers,

8     use the C header files and import library from ONC RPC

9     SDK?

11:43:37 10         A    They use it in development.  They include the

11    header files in their source code.

12         Q    Okay.

13              And do they also include the import library in

14    their source code?

11:43:51 15         A    The import library could be included in the

16    source code using certain directive.  But normally, they

17    are included in the link process of the building of the

18    application.

19         Q    Okay.

11:44:11 20              And is what you have just described the

21    intended use of the C header files and import library

22    that Netbula offers to its customers under its licenses?

23         A    Could you --

24         Q    In other words, the customer is supposed to

11:44:34 25    put the C header files in its source code?  That's how

DONGXIAO YUE
CONFIDENTIAL

Page 47

11:44:36  1  you use them, correct?

2         Your microphone fell off.

3    A    It's on video.  Could you ask that --

4    Q    Yes.

11:44:56  5         The customer, your customer, is supposed to

6    use the C header files in its source code when doing

7    development and using ONC RPC SDK, correct?

8    A    Correct.

9    Q    Okay.

11:45:09 10         And they are supposed to link to the import

11   library with their source code, correct?

12   A    Not with the source code.

13   Q    With the linker; is that what I'm --

14   A    Yes.

11:45:21 15   Q    Can you explain that?

16   A    There are two process -- two -- at least two

17   major steps in developing software application --

18   actually, in building the software application.

19         One step is to compile the human-readable

11:45:36 20  source code into machine-usable object code, and then

21   there is another step to link the object code modules

22   and additional libraries together to produce executable

23   program.

24   Q    Okay.

11:45:59 25   A    The import library is used in the second step.

Page 48

```
11:46:04   1      Q    All right.

           2           And that is the appropriate license use of ONC

           3      RPC SDK, what you have just described?

           4      A    Correct.

11:46:14   5      Q    Okay.

           6           And then if the customer has developed that

           7      product using the SDK and wants to ship it to customers,

           8      the pwrpc32.dll that's licensed for distribution is also

           9      shipped with the product, correct, to the end-user

11:46:38  10      customers?

          11      A    Could you ask that again?

          12      Q    Right.

          13           I guess I'm trying to get at the C header

          14      files are used in the -- the Netbula customer's source

11:46:57  15      code and the import library is used in linking, correct?

          16      A    Yes.

          17      Q    And then the dll is actually shipped to their

          18      customers with their product if they have the

          19      distribution license, right?

11:47:09  20      A    Yes.  The pwrpc32.dll, the distributable

          21      version of that is -- should be shipped along with the

          22      final product --

          23      Q    Okay.

          24      A    -- under the distribution license.

11:47:27  25      Q    All right.
```

Page 49

11:47:33  1        Referring back to the invoice marked as

2    Exhibit 4, the 2000 invoice, the price of $5,995 for a

3    1,000-machine runtime license, that was a standard price

4    for a 1,000-machine runtime license at the time,

11:47:54  5    correct?

6        A    I believe so.

7             MR. WAKEFIELD:  Okay.  This is a good breaking

8    point.  A little early for lunch, but we can break for

9    lunch now or we can take a short break and come back.

11:48:26  10   It's up to you guys.

11            MS. BRILLET:  Let's take a short break and

12   then come back.

13            MR. WAKEFIELD:  Okay.

14            THE VIDEOGRAPHER:  The time is 11:48.  We're

11:48:33  15   going off the record.

16                    (Recess taken.)

17                    (Defendants' Exhibit 6 marked

18                     for identification.)

19            THE VIDEOGRAPHER:  The time is 11:57.  We're

11:57:49  20   back on the record.

21   BY MR. WAKEFIELD:

22       Q    Dr. Yue, you have in front of you now

23   Exhibit 6, which is Netbula's Response to Sun

24   Microsystems' First Set of Interrogatories in this case.

11:58:09  25        Do you recognize this document?

DONGXIAO YUE
CONFIDENTIAL

09/12/07

Page 50

11:58:37    1        A    Yes.  This appears to be a response to

2    Defendant's interrogatories dated July 18th, 2007.

3        Q    Did you verify this?  There is no verification

4    attached to this copy, but do you know if you verified a

11:58:56    5    set of responses -- interrogatory responses?

6        A    I don't recall whether I verified it, but I

7    did review the responses.

8        Q    Okay.

9            You believe they are accurate?

11:59:33    10        A    They are accurate in the extent that when

11    these responses were prepared, it was based on the

12    information available at the time.

13        Q    Are you aware of any new information that has

14    come to light that caused Netbula to change its

11:59:56    15    responses to any particular interrogatories?

16        A    I didn't review this interrogatory response

17    before this deposition, so -- but I can review it right

18    now if you want me to.

19        Q    Well, we'll go into some particular responses,

12:00:20    20    but to your knowledge, is Netbula -- has Netbula

21    identified new information and is Netbula planning to

22    supplement this interrogatory, to your knowledge?

23        A    Yes, I believe so.  As we stated in this

24    response, we did plan to supplement under our continuing

12:00:47    25    obligation.

DONGXIAO YUE
CONFIDENTIAL

09/12/07

Page 51

12:00:48   1       Q    But are you aware of any particular

           2    supplementation planned at this time?

           3       A    I don't.

           4       Q    Okay.

12:00:57   5            By "I don't," you mean you're not aware of

           6    any?  My question was, "Are you aware," and you said, "I

           7    don't."  I just want to -- was that an "I am not"?

           8       A    I already stated I didn't review this -- these

           9    interrogatory answers before I came here.

12:01:17  10       Q    I understand.  I'm just trying to make sure I

          11    understand your answer.

          12            When you said "I don't," if I heard you

          13    correctly --

          14            I said, "Are you aware of any particular

12:01:25  15    supplementation planned at this time?"  And I think your

          16    answer meant to convey that you were not aware of any --

          17       A    I'm not aware of any at this point.

          18       Q    Okay.  Thank you.

          19            So if you could look at the response to

12:01:40  20    Interrogatory Number 1, there is a discussion of some

          21    communications pertaining to the March 2000 agreement

          22    between StorageTek and Netbula.

          23            Do you see that?

          24       A    Yes.

12:02:01  25       Q    Okay.

DONGXIAO YUE
CONFIDENTIAL

09/12/07

Page 52

12:02:02    1          My question is:  Were all of the

2    communications pertaining to the March 2000 agreement --

3    strike that.

4          Were all of the communications leading up to

12:02:17    5    the execution of the March 2000 agreement by E-mail or

6    otherwise in writing?

7    A    I don't recall whether I had a telephone

8    conversation with one of the StorageTek employees or

9    not, but mostly the communications were in E-mail or

12:03:00   10    other writing form.

11    Q    Okay.

12          So as you --

13          When you said, "I don't recall if I had

14    telephone conversations," would anyone else at Netbula

12:03:10   15    have engaged in any telephone conversations with

16    StorageTek in the year 2000?

17    A    No.

18    Q    Okay.

19          That's because you were the only -- you were

12:03:35   20    the only person working at Netbula at the time, right?

21    A    I was the only person that was involved in

22    this licensing discussion with StorageTek.

23    Q    Were there any other employees in the year

24    2000 at Netbula at all --

12:04:19   25          MS. BRILLET:  Objection.

DONGXIAO YUE
CONFIDENTIAL

09/12/07

Page 53

<pre>
12:04:20   1    BY MR. WAKEFIELD:

           2       Q    -- regardless of whether they communicated

           3    with StorageTek?

           4            MS. BRILLET:  Objection.

12:04:40   5            THE WITNESS:  We had other people working for

           6    Netbula, but they are not employee -- they were not

           7    employees.

           8            But I do -- do know that I was the only person

           9    communicated to StorageTek on these licenses in the year

12:05:00  10    2000.

          11    BY MR. WAKEFIELD:

          12       Q    Okay.

          13            Is the same true for communications in 2004 up

          14    to the present?  Were you the only Netbula person who

12:05:14  15    communicated with StorageTek?

          16       A    I believe so.

          17       Q    Okay.

          18            Do you recall --

          19            You said you may have had phone calls.

12:05:33  20            Do you recall any phone calls or other verbal

          21    communications with anyone at StorageTek prior to

          22    execution of the March 2000 agreement?

          23       A    I don't recall.

          24       Q    Okay.

12:05:59  25       A    But I may have made a phone call or other
</pre>

DONGXIAO YUE                                         09/12/07
CONFIDENTIAL

Page 54

12:06:05  1    communications with StorageTek.  I don't remember.

2         Q    Okay.

3              In your interrogatory answer at page 5 -- this

4    is again referring to Exhibit 6 -- starting at line 20

12:06:30  5    of page 5, you say that:

6                   "In March 2000, StorageTek and

7                   Netbula signed a license agreement

8                   for PowerRPC."

9                   Do you see that?

12:06:40 10    A    Yes.

11         Q    But as you sit here now, you don't know if it

12    was PowerRPC or ONC RPC, correct?

13         A    In a lot of cases, Netbula and Netbula's

14    customers don't distinguish between the two products.

12:06:58 15    And in most of the communications with StorageTek, we

16    just refer to Netbula RPC as PowerRPC.

17         Q    At some point, though, didn't you quote

18    different prices to StorageTek for PowerRPC versus ONC

19    RPC?

12:07:27 20              MS. BRILLET:  I object on the topic issue.

21    This is -- I mean, again, I could have it incorrect, but

22    it's still my understanding that it's -- that this phase

23    is just concerning the existence of a contract, of

24    whether there was a contract or license.

12:07:52 25              Is that incorrect?

DONGXIAO YUE
CONFIDENTIAL

09/12/07

Page 55

12:07:55    1          MR. WAKEFIELD:  That may be a slight

2    oversimplification, but I believe that whether there was

3    a contract that allowed for use of a particular product

4    is at issue, and finding out what that product is is

12:08:11    5    pretty important.

6          MS. BRILLET:  But -- and maybe -- I'm sorry,

7    maybe I misunderstood your question.  Could you ask your

8    question again?  I thought it was relating to pricing

9    and not the terms, so maybe I just misunderstood your

12:08:22   10    question.

11          MR. WAKEFIELD:  I'm trying to get to what

12    product was licensed and whether he's referring to -- if

13    PowerRPC had different prices, that may help us answer

14    that question.

12:08:35   15          MS. BRILLET:  Okay.

16          The other concern that I have, my objection is

17    that you called a 30(b)(6) witness and it appears you're

18    asking Mr. Yue as an -- just as a person himself and not

19    a 30(b)(6).

12:08:48   20          I understand in the other case you did both at

21    one time, but in this particular instance, you asked for

22    the 30(b)(6) witness.

23          MR. WAKEFIELD:  I believe everything I've

24    asked for is appropriate under our 30(b)(6) designation,

12:09:03   25    but your objection is certainly noted.

DONGXIAO YUE
CONFIDENTIAL

09/12/07

Page 56

12:09:12    1        So what was my last question?  Oh.

2    BY MR. WAKEFIELD:

3        Q    At some point, Dr. Yue, didn't you quote

4    different prices to StorageTek for PowerRPC versus ONC

12:09:23    5    RPC?

6            MS. BRILLET:  I object.

7            THE WITNESS:  We may have.

8    BY MR. WAKEFIELD:

9        Q    So it's fair to say you don't always use the

12:09:59   10    words "PowerRPC" and "ONC RPC" interchangeably, right?

11        A    We normally make that distinction, but

12    sometimes -- in most situations, it is our customer who

13    use the PowerRPC for all of RPC products.

14        Q    Okay.

12:10:43   15        So a customer may sometimes refer to -- even

16    if they actually are talking about a licensed copy of

17    ONC RPC, for example, they may call it PowerRPC; is that

18    right?

19        A    Yes, because the two products are pretty much

12:11:05   20    the same in terms of they contain mostly identical

21    components and the runtime library is called -- the file

22    name of the runtime library is pwrpc32.dll.  Therefore,

23    the customer will not make the distinction between the

24    IDL Compiler and just use PowerRPC as the name for

12:11:36   25    Netbula RPC.

DONGXIAO YUE
CONFIDENTIAL
09/12/07

Page 57

12:11:37   1        Q    Okay.

           2             And the customer may use the name PowerRPC

           3   when, in fact, the product licensed was ONC RPC,

           4   correct?

12:11:49   5        A    That's possible.  Whether the costs were --

           6   how to, you know, tell what's -- our product is, that's

           7   up to the customer.

           8        Q    Okay.

           9             In Netbula's Answer to Interrogatory Number 1

12:12:04  10   where it says, "In March 2000 StorageTek and Netbula

          11   signed a license agreement for PowerRPC," that might

          12   have been a license agreement for ONC RPC, correct?

          13        A    I can refer to Exhibit 2, which is the year

          14   2000 agreement, and they had both Netbula ONC RPC SDK

12:12:29  15   and PowerRPC SDK product license.

          16        Q    But I thought we've already established that

          17   you can't tell from that document alone which or

          18   whether -- which of those products or whether both of

          19   those products were licensed to StorageTek; isn't that

12:12:46  20   right?

          21        A    This was agreement to license.  The -- whether

          22   the license was purchased was a different issue.  That

          23   was our previous discussion.

          24        Q    Okay.

12:13:00  25             Where you say at line 20 of Interrogatory

DONGXIAO YUE
CONFIDENTIAL

09/12/07

Page 58

12:13:05  1    Number 1 at page 5, "StorageTek and Netbula signed a

2    license agreement for PowerRPC," is it -- are you sure

3    that it's PowerRPC or do you know what product was

4    actually purchased, what license agreement was actually

12:13:24  5    purchased?

6         A    This line was only referring license

7    agreement.  And I would -- can see that the language

8    here is not entirely complete, because this agreement

9    does refer to both ONC RPC and PowerRPC.

12:13:41  10        Q    Okay.

11        A    The agreement was signed for both products

12    under the purchasing terms in this agreement.

13        Q    You then say at line 21:

14             "StorageTek represented that

12:13:53  15             it would use a large number of

16             licenses."

17        Q    Do you see that?

18        A    Yes.

19        Q    Who represented that StorageTek would use a

12:14:02  20    large number of licenses in 2000?

21        A    I believe Mike Melnick was the only person

22    that negotiated the discounts.

23        Q    And as you sit here now, you don't recall any

24    phone conversations with Mr. Melnick in connection with

12:14:51  25    negotiating or executing the March 2000 agreement,

DONGXIAO YUE
CONFIDENTIAL

09/12/07

Page 59

12:14:55  1    correct?

2        A    I vaguely recall I did speak to Mr. Melnick at

3    certain point.

4        Q    Do you recall him representing to you on the

12:15:16  5    phone that StorageTek would use a large number of

6    licenses prior to execution of the March 2000 agreement?

7        A    It was possible.

8        Q    Anything is possible.

9             Do you recall him saying that in 2000, in the

12:15:45 10    year 2000, prior to execution of the StorageTek/Netbula

11    agreement?

12        A    I recall at a certain point StorageTek

13    represented that it would ship a lot of licenses, and

14    therefore, they could negotiate a discount.  I think

12:16:09 15    that was the whole reason or rationale for granting

16    those discounts for additional licenses to be purchased.

17        Q    So do you recall if that alleged

18    representation was verbal or in writing?

19        A    It could be both.

12:16:44 20    Q    Do you recall one way or the other?

21        A    It's more likely to be oral.

22        Q    Do you recall one way or the other if it was

23    oral or in writing?  I'm referring to the alleged

24    representation that StorageTek would use a large number

12:17:27 25    of licenses referred to in your interrogatory answer.

DONGXIAO YUE
CONFIDENTIAL
09/12/07

Page 60

12:18:13   1      A   I have to review the -- I didn't specifically

2   review documents for this allegation.

3      Q   Okay.

4          Did anyone other than you provide the

12:18:26   5   information that was used to answer Interrogatory

6   Number 1?

7      A   No.

8      Q   Okay.

9          And you do not specifically recall any oral

12:18:55  10   conversations with any StorageTek personnel prior to

11   execution of the March 2000 agreement, correct?

12      A   I don't recall the specifics of any oral

13   communication, but I do recall there was such

14   representation being made.

12:19:25  15      Q   Okay.

16          So if you don't recall it specifically being

17   made verbally, then we'd need to look at the documents

18   to see if it's there, right?

19          MS. BRILLET:   Objection to the representation.

12:19:47  20   BY MR. WAKEFIELD:

21      Q   Let me back up.

22          You provided this information to answer

23   Interrogatory Number 1 where Netbula says that

24   StorageTek made a representation.

12:19:53  25          You don't remember it being verbal, right?

DONGXIAO YUE
CONFIDENTIAL                                                    09/12/07

Page 61

```
12:20:06   1        A    It's verbal.

           2        Q    Now it's your testimony it was verbal?

           3        A    Verbal can be both oral and in writing.

           4        Q    Okay.  By "verbal," I mean oral, so let me

12:20:14   5   clarify that.

           6             As you sit here now, you do not have a

           7   recollection of anyone at StorageTek representing to you

           8   orally that StorageTek would use a large number of

           9   licenses, correct?

12:20:35  10        A    My testimony was and is that StorageTek

          11   represented that it would use a large number of

          12   licenses, either orally or in writing.

          13        Q    And you can't remember one way or the other;

          14   is that right?

12:21:07  15        A    I recall there was a negotiation on the

          16   discounts for the additional 1,000 units and there were

          17   reasons behind those discounts.

          18        Q    What were the reasons behind those discounts?

          19        A    It was because of the projected number of

12:21:33  20   licenses to be sold.

          21        Q    Does Netbula offer lower prices for customers

          22   who are using greater numbers of the software or

          23   distributing greater numbers of the software?

          24             MS. BRILLET:  I object to that one; outside

12:21:57  25   the scope of the license issue and the contract claim
```

DONGXIAO YUE
CONFIDENTIAL

09/12/07

Page 62

12:22:00  1  regarding the Defendants in this case.

2       THE WITNESS:  We normally don't provide any

3  discount.  I -- as I recall, the request of discount was

4  requested by StorageTek for specific reasons, being that

12:22:17  5  StorageTek was going to need a large number of licenses.

6  BY MR. WAKEFIELD:

7       Q    The price for the first 1,000 in the year 2000

8  agreement was not a discounted price at all, though,

9  correct?

12:22:42  10       A    Correct.

11       Q    That was a list price?

12       A    Correct.

13       Q    Okay.

14            So when you're referring to the negotiated

12:22:50  15  discount, are you referring to the prices for copies

16  distributed after the first 1,000 were distributed?

17       A    It was referring to additional licenses that

18  StorageTek would purchase.

19       Q    The terms of those additional purchases were

12:23:20  20  negotiated in 2000; is that correct, the 15 percent

21  discount, the 25 percent discount, and so on?

22       A    Could you say that again?

23       Q    Sure.

24            The terms of those additional purchases were

12:23:37  25  negotiated and are reflected in the year 2000 agreement

DONGXIAO YUE
CONFIDENTIAL

09/12/07

Page 63

12:23:42  1    identified as Exhibit 2, correct?

2         A    This is -- this was offered for StorageTek to

3    purchase additional licenses at discounted prices.  It

4    doesn't mean that StorageTek had the license for those

12:24:13  5    additional copies.  It was -- as I stated previously,

6    this is a purchase agreement and has to be done after --

7         Q    So in your Answer to Interrogatory Number 1

8    where you say that StorageTek represented that it used a

9    large number of licenses and negotiated volume discount

12:24:35 10    on license fees, those alleged volume discounts were for

11    licenses that had not occurred; is that right?

12        A    That's correct.  It should say discounts on

13    license fees for purchase -- future purchases of

14    licenses.

12:25:06 15        Q    Okay.

16             But for those future purchases, all Netbula

17    (sic) had to do was pay the specified price to

18    distribute additional copies, right?

19             MS. BRILLET:  Did you say "all Netbula has to

12:25:29 20    do"?

21    BY MR. WAKEFIELD:

22        Q    All StorageTek would have to do is pay the

23    specified price for further distributions, correct?

24        A    StorageTek has to -- in that case, would have

12:25:47 25    to conform to whatever conditions in this agreement.

DONGXIAO YUE
CONFIDENTIAL

09/12/07

Page 64

| | | |
|---|---|---|
| 12:25:51 | 1 | Q    Okay. |
| | 2 | And other than paying the additional specified |
| | 3 | price that was negotiated prior to execution of the 2000 |
| | 4 | agreement, what other conditions did StorageTek have to |
| 12:26:07 | 5 | meet? |
| | 6 | A    I believe it's all covered in this agreement, |
| | 7 | and we can go over -- review this agreement. |
| | 8 | Q    Well, you're the 30(b)(6) witness regarding |
| | 9 | the agreements between StorageTek and Netbula. |
| 12:26:44 | 10 | As you sit here now, can you identify any |
| | 11 | other conditions StorageTek would have to meet to |
| | 12 | distribute further copies other than paying the price or |
| | 13 | any other -- any other restrictions or limitations? |
| | 14 | A    As I stated previously, this is a purchase |
| 12:27:15 | 15 | agreement.  The license is only granted to the copies |
| | 16 | that have been purchased. |
| | 17 | Q    So if they haven't -- |
| | 18 | It's your testimony if they haven't paid, they |
| | 19 | can't distribute the additional copies, correct? |
| 12:27:29 | 20 | A    Yes, of course. |
| | 21 | Q    And once they have paid, they can, correct? |
| | 22 | A    What you said is inaccurate.  There is a -- |
| | 23 | there is a whole condition of referring to purchase |
| | 24 | order, invoices, and payments, you know, that will |
| 12:27:52 | 25 | complete the grant of the license.  Without those -- |

DONGXIAO YUE
CONFIDENTIAL

09/12/07

Page 65

12:28:02   1    those things referenced in this agreement, no license

2    will be granted.

3        Q    So why don't you point out what restrictions

4    you're describing.

12:28:20   5            You're referring to Exhibit 2?

6        A    I believe the license agreement is

7    self-explanatory.  We can -- to read this whole thing as

8    a whole, this is agreement and this is a contract and we

9    have to review this thing as a whole.

12:28:51  10            I cannot take any sentence or paragraph and

11   state that was the condition or restriction.  The whole

12   agreement is there by itself.

13       Q    Okay.

14            StorageTek, under the 2000 agreement, had the

12:29:21  15   right to both develop and distribute applications,

16   correct?

17       A    Could you say that again?

18       Q    StorageTek had the right both to develop and

19   to distribute applications developed with the SDK

12:29:45  20   product, correct?

21       A    You're talking about the year 2000?

22       Q    Uh-huh.  Yes.

23       A    In the year 2000, StorageTek, under this

24   purchase agreement, made a purchase for eight developer

12:30:18  25   licenses and 1,000 runtime licenses, and the terms and

DONGXIAO YUE
CONFIDENTIAL

09/12/07

Page 66

12:30:27  1    conditions are in the agreement, in the purchase order,

2    and in the invoice.

3          StorageTek paid this invoice, complete the

4    transaction, and it was granted rights referenced in the

12:30:44  5    purchase order.

6      Q    Those included certain distribution rights,

7    correct?

8      A    Yes.  Those are in the purchase order.

9      Q    Okay.

12:30:56  10      A    The purchase order number was CCOL122576,

11    which has been produced in our production of documents.

12      Q    In your response to Interrogatory Number 1,

13    you state that the right to develop and distribute was

14    for Windows 95, 98, and Windows NT platforms.

12:31:22  15          Do you see that?  This is referring to

16    Exhibit 6.

17      A    Yes.

18      Q    All right.

19          And if you could turn back to Exhibit 2, could

12:31:35  20    you point out for me where the limitation on

21    distribution to Windows 95, 98, and NT platforms can be

22    found?

23      A    Could you ask the question again?

24      Q    Yeah.

12:33:00  25          Could you point out for me where in Exhibit 2

DONGXIAO YUE
CONFIDENTIAL

09/12/07

Page 67

12:33:02  1    the limitation on distribution to Windows 95, 98, and NT

2    platforms can be found?

3        A    The -- as I read this document, under the

4    distribution license, it -- it -- it didn't specifically

12:33:37  5    list those platforms.

6            But in the SDK license, it specifically

7    limited the development of the application to those

8    platforms.

9            MR. WAKEFIELD:  Okay.  We have to change the

12:33:53  10   tape or disk.

11           THE VIDEOGRAPHER:  The time is 12:34.  We're

12   going off the record, and this will be the completion of

13   Media Number 1.

14                (Lunch recess taken.)

12:34:04  15           THE VIDEOGRAPHER:  Good afternoon.  The time

16   is 1:26 p.m.  We're back on the record.  This will be

17   the beginning of Media Number 2 in the deposition of

18   Dr. Yue.

19           MR. WAKEFIELD:  Counsel, before we go back to

13:26:58  20   questioning, we were talking earlier about some exhibits

21   pertaining to pricing and prices charged.  I think we

22   could avoid that subject if we had a stipulation that

23   price would not be relevant -- the price is not relevant

24   to the existence or scope or validity of or

13:27:19  25   enforceability of the agreements in 2000, 2004.

DONGXIAO YUE
CONFIDENTIAL

Page 175

17:37:18  1    Defendants, cannot assert that license defense because

2    of fraud.  And if so, we need to take discovery about

3    what that fraud was, and we'd be entitled to because it

4    goes to the crux of the issue.

17:37:43  5         But if -- you know, if Plaintiff's position

6    is, "Well, we're also entitled to perhaps fraud damages,

7    but we're not saying that the 2004 agreement is void,"

8    then I think we can move on.

9         MS. BRILLET:  We're not in the area of

17:38:08  10   damages.  Again, the question at this point is the

11   existence of a contract or the license and the terms

12   thereof.  So I'm still not at the fraud part of it in

13   this initial phase --

14        MR. WAKEFIELD:  Well, I guess -- so you're not

17:38:23  15   saying that --

16        MS. BRILLET:  -- of the case.

17        MR. WAKEFIELD:  -- fraud prevented the

18   contract from being formed?

19        THE WITNESS:  Wait.  I think I already --

17:38:32  20        MS. BRILLET:  We're saying that fraud helped

21   to get the terms for the contract and fraud and

22   inducement.

23        THE WITNESS:  I think I have stated we believe

24   that but for the fraud, that the license would not be

17:39:05  25   formed under the terms of the 2004 agreement.

DONGXIAO YUE                                    09/12/07
CONFIDENTIAL

Page 176

17:39:12  1    Therefore, we should be allowed to rescind from that

2    agreement.  That would probably render the agreement

3    void.

4           MS. BRILLET:  But the problem here is there

17:39:25  5    actually -- does the contract exist?  And that's what

6    the Judge said.  Is there a contract, what are the

7    terms.  And so I don't feel that the fraud actually is

8    part of this initial phase.

9           MR. WAKEFIELD:  Okay.  Let me -- can we take a

17:39:40  10   quick break?

11          MS. BRILLET:  Sure.

12          MR. WAKEFIELD:  Why don't you guys talk about

13   it and I'll think about it, too, and hope we won't use

14   the whole evening thinking about what questions we get

17:39:49  15   to ask.

16          THE VIDEOGRAPHER:  The time is 5:40.  We're

17   going off the record and this will be the completion of

18   Media Number 3.

19              (Recess taken.)

17:40:03  20          THE VIDEOGRAPHER:  The time is 5:48.  We're

21   back on the record and this will be the beginning of

22   Media Number 4 in the deposition of Dr. Yue.

23          MR. WAKEFIELD:  Okay.  So, Counsel, can you

24   explain what -- you have asserted the objection to the

17:49:09  25   questions concerning the alleged fraud and relevance to