1   LAURENCE F. PULGRAM (CSB NO. 115163)
    *lpulgram@fenwick.com*
2   JEDEDIAH WAKEFIELD (CSB NO. 178058)
    *jwakefield@fenwick.com*
3   ALBERT L. SIEBER (CSB NO. 233482)
    *asieber@fenwick.com*
4   LIWEN A. MAH (CSB NO. 239033)
    *lmah@fenwick.com*
5   FENWICK & WEST LLP
    555 California Street, 12th Floor
6   San Francisco, CA  94104
    Telephone:     (415) 875-2300
7   Facsimile:      (415) 281-1350

8   Attorneys for Defendants
    STORAGE TECHNOLOGY CORPORATION, SUN
9   MICROSYSTEMS, INC., EMC CORPORATION,
    VERITAS SOFTWARE CORPORATION, and
10  DARDEN RESTAURANTS, INC.

11                  UNITED STATES DISTRICT COURT

12                 NORTHERN DISTRICT OF CALIFORNIA

13                     SAN FRANCISCO DIVISION

14

15  NETBULA, LLC, a Delaware limited          Case No. C-06-07391-MJJ
    liability company,
16                                            **DECLARATION OF JEDEDIAH**
                    Plaintiff,                **WAKEFIELD IN SUPPORT OF  REPLY**
17                                            **REGARDING MOTION FOR SUMMARY**
           v.                                 **JUDGMENT OR SUMMARY**
18                                            **ADJUDICATION AS TO LICENSE**
    STORAGE TECHNOLOGY                        **ISSUES**
19  CORPORATION, a Delaware corporation;
    SUN MICROSYSTEMS, INC., a Delaware        Date:      December 13, 2007
20  corporation; INTERNATIONAL                Time:      3:00 P.M.
    BUSINESS MACHINES CORPORATION,            Dept:      Courtroom 11
21  a New York corporation; EMC               Judge:     The Honorable Martin J. Jenkins
    CORPORATION, a Massachusetts
22  corporation; VERITAS SOFTWARE
    CORPORATION, a Delaware corporation;
23  DARDEN RESTAURANTS, INC., a
    Florida corporation; and DOES 1-100,
24  inclusive,

25                  Defendants.

26

27  AND RELATED COUNTERCLAIMS

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

WAKEFIELD DECL. ISO REPLY RE MOTION                    CASE NO. C-06-07391-MJJ
FOR SUMMARY JUDGMENT/ADJUDICATION

1    I, Jedediah Wakefield, declare as follows:

2        1.    I am an attorney admitted to practice before this Court.  I am a partner at the law

3    firm of Fenwick & West LLP, counsel of record for Defendants Storage Technology Corporation

4    ("StorageTek"), EMC Corporation, and Darden Restaurants, Inc. and Defendant and

5    Counterclaimant Sun Microsystems, Inc. ("Sun") in this action.  I have personal knowledge of the

6    matters set forth herein and, if called upon, could and would testify competently thereto.

7        2.    Attached hereto as **Exhibit A** is a true and correct copy of Plaintiff and

8    Counterclaim Defendant Netbula, LLC's Response to Defendant and Counterclaimant Sun

9    Microsystems, Inc.'s First Set of Interrogatories (Nos. 1-17), served by Netbula on July 18, 2007

10   ("Netbula's Response to First Set of Interrogatories").  In Interrogatory No. 4, Sun asked Netbula

11   to "describe each use by each DEFENDANT [Netbula] contend[ed] was outside the scope of the

12   license agreement or terms of use, and the basis for such contention."  *See* Netbula's Response to

13   First Set of Interrogatories at p.8:11-16.  Answering this interrogatory without objection, Netbula

14   made no reference to Sun's acquisition of StorageTek whatsoever, identifying only the platform,

15   prepayment, and site license issues.  *See id.* at pp.8:17-9:9.

16       3.    In Netbula's Opposition to Defendants' Summary Judgment Motion, Netbula

17   quotes a single paragraph from the 30(b)(6) deposition of Netbula as support for Netbula's

18   argument that "the 2004 Agreement was induced by fraud."  Opposition Brief at 24:10-15.

19   However, during that deposition, I sought Netbula's testimony regarding the alleged

20   misrepresentations that form the basis of its fraud claim.  Netbula's counsel of record objected. I

21   then asked whether it was Netbula's position "the fraud claim doesn't go to whether the

22   agreement actually exists," and sought clarification that Netbula would not claim, in opposing

23   summary judgment, that Defendants "don't get the benefit of that contract because there was a

24   fraud."  Netbula Depo. at pp.170:19-171:23. Netbula's counsel then stated that "The fraud claims

25   has nothing to do with whether there was a contract."  *Id.* at p.172:9-12.  After conferring with

26   her client, Netbula's counsel then reiterated Netbula's position that its copyright claims were not

27   based on alleged fraudulent inducement of the 2004 Agreement:  "Plaintiff has not asserted that

28   there – that there is a copyright claim because of the fraud and inducement of the 2004

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   agreement.  That has not been Plaintiff's contention." *Id.* at pp.176:12-177:21.  In reliance on this

2   representation, I refrained from further questioning Netbula on the basis of Netbula's fraud claim.

3   *Id.* at p.178:2-3.  Attached hereto as **Exhibit B** is a true and correct copy of an excerpt from the

4   September 12, 2007 deposition transcript containing that exchange.

5        4.      In its Opposition, Netbula also argues that during Mr. Abramovitz's deposition, he

6   did not know answers to certain questions about licensing of StorageTek's LibAttach or Reel

7   software products.  However, Mr. Abramovitz was not a 30(b)(6) witness on those topics.

8   Following the 30(b)(6) deposition of Sun on September 19, 2007, Netbula's counsel complained

9   that Mr. Melnick had lacked information concerning StorageTek's internal use of the Netbula

10  software.  In a letter dated October 3, 2007, my colleague Laurence Pulgram offered to provide an

11  additional 30(b)(6) witness to testify concerning issues pertaining to use of the SDK by

12  StorageTek engineers.  A true and correct copy Mr. Pulgram's October 3 letter is attached hereto

13  as **Exhibit C**.  Netbula accepted our proposal concerning the additional 30(b)(6) witness, and this

14  agreement was memorialized in an email exchange on October 17 and 18, 2007, a true and

15  correct copy of which is attached hereto as **Exhibit D**.  Thus, Mr. Abramovits was not designated

16  as a 30(b)(6) witness concerning licensing of StorageTek products, or on any topics other than

17  those relating to use by StorageTek engineers of the SDK.

18       I declare under penalty of perjury under the laws of the United States of America that the

19  foregoing is true and correct.

20       Executed on November 20, 2007.

21

22                                        /S/  JEDEDIAH WAKEFIELD

23                                         Jedediah Wakefield

24

25

26

27  25689/00400/LIT/1276565.1

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# EXHIBIT A

1 | VONNAH M. BRILLET (SBN 226545)
2 | LAW OFFICES OF VONNAH M. BRILLET
  | 2777 ALVARADO ST. , SUITE E
3 | SAN LEANDRO, CA 94577
  | Telephone:    (510) 351-5345
4 | Facsimile:    (510) 351-5348
  | E-Mail:    BrilletLaw@yahoo.com
5 |
6 | Attorneys for Plaintiff
  | NETBULA, LLC
7 |
8 | UNITED STATES DISTRICT COURT
9 | NORTHERN DISTRICT OF CALIFORNIA

10 | NETBULA, LLC., a Delaware limited liability company,

Case No. C06-07391-MJJ

11 | Plaintiff,

**PLAINTIFF AND COUNTERCLAIM DEFENDANT NETBULA, LLC'S RESPONSE TO DEFENDANT AND COUNTERCLAIMANT SUN MICROSYSTEMS, INC.'S FIRST SET OF INTERROGATORIES (NOS. 1-17)**

12 | v.

13 |

14 | STORAGE TECHNOLOGY CORPORATION, a Delaware corporation; SUN MICROSYSTEMS Inc., a Delaware corporation; INTERNATIONAL BUSINESS MACHINES CORPORATION, a New York corporation; EMC CORPORATION, a Massachusetts Corporation; VERITAS SOFTWARE CORPORATION, a Delaware corporation; DARDEN RESTAURANTS, INC, a Florida Corporation; and DOES 1-100, inclusive,

Defendants.

1    Pursuant to FRCP Rule 26 and Rule 33, PLAINTIFF and counterclaim defendant responds

2    to SUN MICROSYSTEMS ("SUN"), INC's FIRST SET OF INTERROGATORIES (NOS. 1-17)

3    as follows.

4

5                              **PRELIMINARY STATEMENT**

6        Plaintiff submits the following responses to SUN MICROSYSTEMS ("SUN"), INC's

7    FIRST SET OF INTERROGATORIES (NOS. 1-17) on the basis of information currently

8    available and without prejudice as to the introduction at trial of information or materials

9
     subsequently discovered or omitted through good faith oversight. In submitting these responses,
10
     plaintiff has furnished such information as is presently available at this initial stage of discovery
11
12    and factual investigation.  This may include hearsay and other forms of evidence that are neither

13    reliable nor admissible. Some documents have been lost or purged or never existed.

14        In the following, the phrase "DOCUMENTS THAT ARE AVAILABLE" is defined as

15    documents that still exist, are in plaintiff's possession, control or custody and can be located after

16    a search of reasonable scope.
17
18        In a lot of cases, the information required to answer the interrogatory is in Defendants'

19    possession, in other cases, Plaintiff does not currently have and has not been able to locate the

20    related documents to answer the interrogatories fully. Some of the documents are highly

21    confidential and should only be produced after a protective order is in place. These confidential

22    documents include information about Plaintiff's products and its business. Plaintiff has previously

23    requested, and Defendants SUN and StorageTek agreed to draft, a protective order. Once the
24
     protective order is entered by the Court, Plaintiff will produce all the documents bearing proper
25
26    designation. Plaintiff will also amend its interrogatory answers upon proper labeling and

27    designation of documents.

28

Case No. C06-07391-MJJ                    PLAINTIFF'S RESPONSES TO INTERROGATORIES

Discovery in this matter is continuing, and plaintiff reserves the right to change or supplement these responses as additional information becomes known, should additional discovery request such supplemental responses. Plaintiff declares all source code produced as "CONFIDENTIAL-ATTORNEYS' EYES ONLY" as they contain trade secrets that defendants are seeking. Plaintiff declares all communications with third parties as CONFIDENTIAL.

Plaintiff will answer the interrogatories subject to the following general objections.

1.    Plaintiff objects to all definitions, instructions and interrogatories or document requests to the extent they seek the disclosure of information protected by the attorney-client privilege (including the joint representation and common interest privilege), the litigation privilege, the attorney work-product doctrine, or any other applicable privilege, protection, immunity or restriction on discovery as provided by any applicable law. Plaintiff does not intend to produce such privileged or protected documents or information. Plaintiff's inadvertent disclosure of any such documents or information is not to be deemed a waiver of any privilege or protection, and Plaintiff expressly reserves the right to object to the introduction at trial or any other use of such information that maybe inadvertently disclosed.

2.    Plaintiff further objects to all definitions, instructions and interrogatories to the extent they are vague, ambiguous, fail to describe the information sought with the required reasonable particularity, or are so unintelligible that Plaintiff cannot respond.

3.    Plaintiff further objects to all definitions, instructions and interrogatories to the extent they exceed the limitations set by the Federal Rules of Civil Procedure, including but not limited to FRCP Rule 26 and Rule 33.

4.    Plaintiff further objects to instructions related to the privilege logs as overly broad and seeking to discover privileged information. Plaintiff will only produce information required by FRCP and Federal Rules of Evidence.

Case No. C06-07391-MJJ                                    PLAINTIFF'S RESPONSES TO INTERROGATORIES

**OBJECTIONS TO SUN'S DEFINITIONS**

1.      Objections to Definition 11 (POWERRPC)

Plaintiff objects to definition 12 as overly broad and seeking material irrelevant to the instant action. Plaintiff construes the definition as referring to only the commercially available versions of NETBULA POWERRPC PRODUCTS offered to the public for licensing and allegedly infringed by Defendants and does not include any beta versions or other unpublished versions.

2.      Objections to Definition 12 (ONC RPC)

Plaintiff objects to definition 12 as overly broad and seeking material irrelevant to the instant action. Plaintiff construes the definition as referring to only the commercially available versions of NETBULA ONC RPC PRODUCTS offered to the public for licensing and allegedly infringed by Defendants and does not include any beta versions or other unpublished versions.

3.      Objections to Definition 13 (OTHER NETBULA PRODUCT)

Plaintiff objects to definition 13 as overly broad and seeking material irrelevant to the instant action. Plaintiff construes the definition as referring to only the commercially available versions of NETBULA PRODUCTS offered to the public for licensing and allegedly infringed by Defendants and does not include any beta versions.

4.      Objections to Definition 14 (RELEVANT NETBULA PRODUCTS)

Plaintiff objects to definition 14 as overly broad and seeking material irrelevant to the instant action. Plaintiff construes the definition as referring to only the commercially available versions of NETBULA PRODUCTS offered to the public for licensing and allegedly infringed by Defendants does not include any beta versions.

Case No. C06-07391-MJJ                                     PLAINTIFF'S RESPONSES TO INTERROGATORIES

# RESPONSE TO INTERROGATORIES

## INTERROGATORY NO. 1

Describe in detail all facts CONCERNING any and all agreements, and any and all discussions regarding acquiring rights to use RELEVANT NETBULA PRODUCT, between YOU and each of the DEFENDANTS, including in YOUR response the identification of any documents comprising or reflecting such agreements, the individuals who negotiated or agreed to such agreements, and every term of any such agreements (other than those reflected in an identified writing).

## RESPONSE TO INTERROGATORY NO. 1

Plaintiff objects to this interrogatory No.1 on the basis that it is overly burdensome as it asks Plaintiff to describe large volumes of communications.

In January 2000, a manager at StorageTek emailed Netbula to request a full version of PowerRPC. The purpose was said to replace another RPC solution called "MKS NutCracker RPC" being used by StorageTek at the time. The email stated: "[t]he product we are working on is for re-sale and not internal use. We are a large company and it would not be wise for us to distribute this software unlicensed. We are willing to sign agreements to this affect."

In March 2000, StorageTek and Netbula signed a license agreement for PowerRPC. StorageTek represented that it would use a large number of licenses, and negotiated volume discount on license fees. The license agreement granted StorageTek the right to develop and distribute Netbula RPC applications for Windows 95, Windows 98 and Windows NT platforms, subject to the "Limited Distribution" clause of the agreement. The agreement required StorageTek to treat the Netbula software as copyrighted material that is protected by copyright laws and international treaties. StorageTek purchased development licenses for eight developers and one block of 1000-copy runtime licenses for installation onto 1000 computers. The agreement further

1    required StorageTek to keep records of its license usage and purchase additional 1000-copy block
2    licenses once it used up the prepaid number of copies.
3            In June 2000, a person named Anton Vatcky from StorageTek sent an email to Netbula
4    inquiring about a PowerRPC license for Windows 2000. Mr. Vatcky knew that StorageTek only
5    had a license for Windows NT and asked for a copy for the Windows 2000 version. He asked in
6    his email: "We at StorageTek currently use the NT version of PowerRPC in our product...Would
7    it be possible to obtain a copy of the Win2K version of PowerRPC,to determine if our software
8    will port OK to Win2K." Mr. Vatcky indicated that a separate license agreement would be signed
9    for Windows 2000. Netbula immediately provided StorageTek a demo version of PowerRPC for
10   Windows 2000. However, StorageTek never returned back to sign a license agreement for
11   Windows 2000.
12
13           In June 2001, Netbula requested a license usage report from StorageTek. Mike Melnick, on
14   behalf of StorageTek, reported usage of 107 copies, with 893 remaining out of the 1000 licenses
15   purchased in year 2000.
16
17           In September 2002, Netbula requested another license usage report from StorageTek. Mr.
18   Melnick, on behalf of StorageTek, stated that the product was being terminated and license usage
19   stayed at 107. Netbula re-confirmed with StorageTek that PowerRPC was no longer used by
20   StorageTek. As a result, Netbula deleted StorageTek from its list of active licensees and stopped
21   requesting license usage reports from StorageTek.
22
23           In March 2004, Mr. Melnick at StorageTek contacted Netbula for an upgraded version of
24   PowerRPC for Windows Server 2003.
25           Shortly after Mr. Melnick contacted Netbula, in March 2004, StorageTek and Netbula
26   signed a new license agreement. The license covered Windows 2000, Windows XP and Windows
27   Server 2003. StorageTek purchased another block of 1000 runtime licenses.
28

-6-

1    In 2004, Netbula's listed price for the 1000-copy "pwrpc32.dll" license was about two

2    times higher than its price in year 2000. However, relying on StorageTek previous statement that

3    they had only consumed 107 licenses out of the 1000 they purchased in year 2000, Netbula

4    believed that StorageTek's runtime license usage would be low. To compensate StorageTek for its

5    previously unused 893 licenses, Netbula gave StorageTek a very low price for the new licenses in

6    the March 2004 license agreement.

7

8    Plaintiff had numerous communications with StorageTek and SUN on license agreements,

9    the vast majority of the communications were in the form of emails or faxes. Plaintiff will produce

10    all DOCUMENTS THAT ARE AVAILABLE related to this interrogatory.

11   **INTERROGATORY NO. 2**

12

13    Describe in detail all COMMUNICATIONS YOU have had with STORAGETEK or SUN

14    CONCERNING the RELEVANT NETBULA PRODUCTS or this dispute prior to YOUR filing

15    of this lawsuit.

16   **RESPONSE TO INTERROGATORY NO. 2**

17    Plaintiff objects to this interrogatory No.2 on the basis that it is overly burdensome as it

18    asks Plaintiff to describe all COMMUNICATIONS Plaintiff have had with STORAGETEK or

19    SUN CONCERNING the RELEVANT NETBULA PRODUCTS or this dispute.

20

21    Plaintiff had numerous communications with StorageTek and SUN CONCERNING the

22    RELEVANT NETBULA PRODUCTS of this dispute prior to YOUR filing of this lawsuit. The

23    vast majority of the communications were in the form of emails, faxes and other correspondence.

24    Plaintiff will produce all DOCUMENTS THAT ARE AVAILABLE related to this interrogatory

25    once a protective order is in place.

26

27

28

Case No. C06-07391-MJJ                    PLAINTIFF'S RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 3**

Describe any facts extrinsic to the language contained in the license agreements described in Paragraphs 32 or 39 of the First Amended Complaint that you contend bears on the construction or interpretation of those agreements.

**RESPONSE TO INTERROGATORY NO. 3**

Plaintiff objects to interrogatory No.3 on the basis that it is vague. Plaintiff had numerous communications with StorageTek on revising the license agreements, the vast majority of the communications were in the form of emails or faxes. Plaintiff will produce all DOCUMENTS THAT ARE AVAILABLE related to this interrogatory.

**INTERROGATORY NO. 4**

For each license agreement described in Paragraphs 32 or 39 and the demo version of PowerRPC described in Paragraph 34 of the First Amended Complaint, describe each use by each DEFENDANT you contend was outside the scope of the license agreement or terms of use, and the basis for such contention.

**RESPONSE TO INTERROGATORY NO. 4**

1)    Defendant StorageTek developed and distributed "LibAttach" and "REEL" products (which are based on PowerRPC) on Windows 2000 before March 2004, without a PowerRPC license (StorageTek knew it did not have a license for Windows 2000).

2)    Defendant StorageTek developed and distributed "LibAttach Integrator's Kit" (which uses PowerRPC) for Windows 2000, knowing that they did not have a PowerRPC license;

3)    Defendants StorageTek and SUN distributed LibAttach (which includes "pwrpc32.dll") under "1191NLC-SENT" product code for unlimited copying by their customers without Netbula's knowledge and authorization and in intentional violation of Netbula's licensing restrictions (Limited Distribution);

4)      Before March 2004, Defendant StorageTek distributed copies of "pwrpc32.dll" in excess of the 1000 copy license purchased in year 2000;

5)      After March 2004, Defendants StorageTek and SUN distributed copies of "pwrpc32.dll" in excess of the 1000-copy license purchased in March 2004.

6)      Defendants IBM, EMC, Veritas, Symantec and Darden Restaurants copied the "LibAttach" and/or "LibAttach Integrator's Kit" software (which are derivative work of PowerRPC and also include "pwrpc32.dll") for unauthorized platforms or without a license and thus directly infringed Netbula's copyright.

**INTERROGATORY NO. 5**

IDENTIFY and describe YOUR earliest use of the term "prepayment license" (i) within the terms of any license agreement for RELEVANT NETBULA PRODUCTS and (ii) while referring to or enforcing any license agreement for RELEVANT NETBULA PRODUCTS.

**RESPONSE TO INTERROGATORY NO. 5**

Plaintiff objects to interrogatory No.5 on the basis that it is not relevant to the instant suit.

The term "prepayment license" or "pre-paid" license was used in communications with StorageTek while referring to or enforcing any license agreement for RELEVANT NETBULA PRODUCTS.

**INTERROGATORY NO. 6**

IDENTIFY and describe all instances when YOU have offered, sold, or distributed, or authorized for sale and distribution, a number of multiple licenses that were not "prepayment licenses," as YOU describe in Paragraph 24 of the First Amended Complaint, or "Limited Distribution Licenses" as YOU describe in Paragraph 3 1 of the First Amended Complaint.

**RESPONSE TO INTERROGATORY NO. 6**

Plaintiff objects to interrogatory No.6 on the basis that it is overly broad and vague.

1    All license agreements for Netbula ONC RPC and POWERRPC are licenses based on

2    purchases. A customer pays a specific amount for the right to make specific number of copies of

3    NETBULA software, such as the "pwrpc32.dll" runtime library.

4    **INTERROGATORY NO. 7**

5

6    Describe in detail all facts CONCERNING YOUR claim that "Netbula gave StorageTek a

7    discounted price for the new licenses in the March 2004 license agreement," as alleged in

8    paragraph 40 of the First Amended Complaint.

9    **RESPONSE TO INTERROGATORY NO. 7**

10    Before March 2004, StorageTek, through Michael Melnick, stated to Netbula that it only

11    used 107 units out of the 1000-copy license it purchased in 2000 and that StorageTek stopped

12    using Netbula RPC. Mr. Melnick at one point indicated that StorageTek paid a higher average

13    price for those 101 units because it did not use up the full quantity allowed, which was 1000.

14    Relying on StorageTek's representations and to compensate StorageTek for the unused licenses it

15    purchased in 2000, Netbula offered StorageTek discounted prices, which were the same as the

16    2000 prices, despite the fact the price for the 1000-pak runtime was about twice as high in 2004.

17    Plaintiff will produce documents for the related communications subject to a protective

18    order.

19

20    **INTERROGATORY NO. 8**

21

22    Describe in detail any differences in content or functionality between the RELEVANT

23    NETBULA PRODUCTS licensed by the agreement described in Paragraph 32 of the First

24    Amended Complaint and the RELEVANT NETBULA PRODUCTS licensed by the agreement

25    described in Paragraph 39 of the First Amended Complaint.

26    **RESPONSE TO INTERROGATORY NO. 8**

27

28    Plaintiff objects to interrogatory No.8 on the basis that it is overly burdensome and vague.

1    The RELEVANT NETBULA PRODUCTS licensed by the year 2000 agreement was only

2  certified for Windows NT/95 and licensed for Windows NT/95. The NETBULA PRODUCTS

3  licensed by the year 2004 agreement was certified and licensed for Windows 2000, Windows XP

4  and Windows 2003.

5    Plaintiff will make a comparison of the content by examining the two versions of the

6

7  software StorageTek received.

8  **INTERROGATORY NO. 9**

9    Describe in detail any differences in content or functionality between the pwrpc32.dll

10  YOU distributed or included with ONC RPC SDK, the pwrpc32.dll YOU distributed or included

11  with POWERRPC SDK, and the pwrpc32.dll YOU distributed or included with OTHER

12  NETBULA PRODUCT, including but not limited to OTHER NETBULA PRODUCT that

13  comprises or is part of the "Runtime Library" described in paragraph 18 of the First Amended

14

15  Complaint.

16  **RESPONSE TO INTERROGATORY NO. 9**

17    Plaintiff objects to this interrogatory No.9 on the basis that it is overly burdensome and

18  vague, as it seeks to discover information unrelated to the instant case. Furthermore, the

19  interrogatory lacks specificity as to time and version number. Plaintiff will construe the

20

21  interrogatory as only referring to the particular versions of Netbula software StorageTek received.

22    Plaintiff will make a comparison of the content by examining the SDK version of

23  "pwrpc32.dll" and the "pwrpc32.dll" software granted for distribution that StorageTek received in

24  2000 and 2004.

25

26

27

28

-11-

**INTERROGATORY NO. 10**

Describe in detail all facts CONCERNING YOUR claim that "Defendant StorageTek fully understood that it only purchased the right to make 1000 copies and also understood that YOUR license grant was a 'prepayment' license."

**RESPONSE TO INTERROGATORY NO. 10**

Plaintiff refers to the emails and documents sent by Michael Melnick, Maria Woods, Carmel Gill, Julie DeCecco and other StorageTek or SUN employees. Defendants used words such as "pre-paid" in describing the Netbula-StorageTek licenses, and sought to change to license agreements to a royalty reporting arrangement. Julie DeCecco authorized to purchase additional licenses in 1000-paks. Plaintiff will produce these emails in its document production and will amend this interrogatory answer with specific references to documents.

**INTERROGATORY NO. 11**

Describe in detail all facts CONCERNING any instance(s) in which any NETBULA customer exceeded the NETBULA license or terms of use, including but not limited to the amount of usage afforded by a "prepayment license" as YOU use that term in paragraph 24 of the First Amended Complaint or use on a platform not permitted by license, and describe all actions YOU took upon learning that limits or restrictions in any NETBULA license were exceeded, including but not limited to settling disputes or establishing a royalty for the excessive usage.

**RESPONSE TO INTERROGATORY NO. 11**

Plaintiff objects to interrogatory No.11 on the basis that it is overly broad and seeking information unrelated to the instant case. Plaintiff construes this interrogatory as limited to NETBULA ONC RPC and NETBULA POWERRPC only.

Plaintiff had identified three instances in which a customer made more copies of Netbula software than the number of licenses purchased. The three customers are BindView Development

1  Corp, SUN/StorageTek and Greenwich Capital Markets, Inc. Detailed information on these three

2  cases are publicly available.

3  **INTERROGATORY NO. 12**

4      Describe **in** detail the ways-including but not limited to click-through agreements, click-

5

6  wrap agreements, shrink-wrap agreements, invoices, signed written agreements, e-mail or other

7  correspondence, and/or verbal agreements-in which YOU have entered into agreements for the

8  sale or licensing of the RELEVANT NETBULA PRODUCTS, including ways in which the terms

9  of such agreements have been communicated to and/or acknowledged or agreed to by customers

10  or licensees, the terms of particular agreements with particular customers or licensees, and the

11  ways in which YOU have recorded such terms.

12  **RESPONSE TO INTERROGATORY NO. 12**

13

14      Plaintiff objects to this interrogatory No.6 on the basis that it is overly broad and

15  burdensome and seeking information unrelated to the instant case, where StorageTek executed a

16  signed license agreement.

17  **INTERROGATORY NO. 13**

18      IDENTIFY each instance in which you have granted licenses for any RELEVANT

19  NETBULA PRODUCTS that were not limited as to platform or operating system.

20  **RESPONSE TO INTERROGATORY NO. 13**

21

22      Plaintiff objects to this interrogatory No.6 on the basis that it is overly broad and seeking

23  information unrelated to the instant case.

24      Plaintiff is unaware of licenses granted by Netbula for any RELEVANT NETBULA

25  PRODUCTS that were not limited as to platform or operating system.

26  **INTERROGATORY NO. 14**

27      IDENTIFY each instance in which you have granted licenses for any RELEVANT

28

-13-

1    NETBULA PRODUCTS that expressly contained limitations as to platform or operating systems.

2    **RESPONSE TO INTERROGATORY NO. 14**

3    Plaintiff objects to interrogatory No.14 on the basis that it is overly broad and seeking

4    information unrelated to the instant case. Plaintiff construes this interrogatory as limited to the

5    licenses for the allegedly infringed software in this action.

6

7    All licenses for any NETBULA ONC RPC and POWERRPC PRODUCTS granted by

8    Plaintiff expressly contained limitations as to platform or operating systems.

9    **INTERROGATORY NO. 15**

10    Describe in detail when, how, or under what circumstances you contend that any

11    NETBULA license agreements with ANY PERSON for any RELEVANT NETBULA PRODUCT

12    (including but not limited to those described in Paragraphs 32 and 39 of the First Amended

13    Complaint) may be terminated, or have in fact been terminated, by NETBULA, including without

14    limitation all COMMUNICATIONS with any PERSON about such potential or actual termination.

15

16    **RESPONSE TO INTERROGATORY NO. 15**

17    Plaintiff objects to this interrogatory No.15 on the basis that it is overly broad and seeking

18    information unrelated to the instant case. Plaintiff construes this interrogatory as limited to the

19    licenses for the allegedly infringed software in this action.

20    Plaintiff terminated its agreements with StorageTek on the basis that StorageTek exceeded

21    the scope of the licenses and infringed Plaintiff's copyright. Plaintiff will produce related

22    communications.

23

24    **INTERROGATORY NO. 16**

25    Identify all PowerRPC generated source code that YOU claim was incorporated into the

26    LibAttach software, as alleged in Paragraph 59 of the First Amended Complaint.

27    **RESPONSE TO INTERROGATORY NO. 16**

28

-14-

1    Plaintiff will fully answer this interrogatory once StorageTek produces its source code for

2  the LibAttach software requested in Plaintiff's document requests.

3  **INTERROGATORY NO. 17**

4    Describe in detail all facts CONCERNING any instance(s) in which any NETBULA

5  customer did not provide what YOU considered a timely or accurate royalty report, and describe

6  all actions YOU took in response, including but not limited to conducting audits, threatening

7

8  litigation, or settling disputes and the terms thereof.

9  **RESPONSE TO INTERROGATORY NO. 17**

10    Plaintiff objects to interrogatory No.17 on the basis that it is overly broad, vague,

11  compounded and seeking information unrelated to the instant case. Plaintiff construes this

12  interrogatory as limited to the actions related the allegedly infringed software in this action. Even

13

14  with this limitation, it is impossible to summarize *all* actions taken by Plaintiff in an interrogatory

15  answer. As with many of the earlier interrogatories, the information sought is

16    Plaintiff will produce all documents concerning communications related to the allegedly

17  infringed software in the instant action.

18

19  Dated:   July 18, 2007                          LAW OFFICES OF VONNAH M. BRILLET

20

21

22                                     By:    VONNAH M. BRILLET

23                                            Attorneys for Plaintiff NETBULA, LLC

24

25

26

27

28

-15-

# CERTIFICATE OF SERVICE

I declare that I am a citizen of the United States, over the age of 18 years, and not a party to the within entitled action. My business address is 2777 Alvarado Street, Suite E, San Leandro, CA 94577.

On July 18, 2007, I served a copy of the foregoing documents described as:

PLAINTIFF AND COUNTERCLAIM DEFENDANT NETBULA, LLC'S RESPONSE TO DEFENDANT AND COUNTERCLAIMANT SUN MICROSYSTEMS, INC.'S FIRST SET OF INTERROGATORIES (NOS. 1-17)

On all interested parties in said cause, by delivering a true copy as follows:

__X__ **(By E-Mail)** By transmitting via email the document(s) listed above to the e-mail address(es) set forth below on this date.

> jwakefield@fenwick.com
> lpulgram@fenwick.com
> asieber@fenwick.com
> davideiseman@quinnemanuel.com
> rachelsmith@quinnemanuel.com

__X__ **(By Mail)** By placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Leandro, California addressed as set forth below.

> Jedediah Wakefield, Esq
> Albert L. Sieber, Esq.
> Laurence F. Pulgram, Esq.
> Fenwick & West, LLP
> 555 California Street, Suite 1200
> San Francisco, CA 94104

> David Eiseman
> Quinn Emanuel Urquhart Oliver & Hedges
> 50 California Street, 22nd Floor
> San Francisco, CA 94111

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on July 18, 2007, at San Leandro, California.

_____
Vonnah M. Brillet

# EXHIBIT B

DONGXIAO YUE                          09/12/07
CONFIDENTIAL

Page 1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

NETBULA, LLC, a Delaware
limited liability company,

        Plaintiff,

vs.                                  No. C-06-07391-MJJ

STORAGE TECHNOLOGY CORPORATION, A DELAWARE
CORPORATION; SUN MICROSYSTEMS, INC., A
DELAWARE CORPORATION; INTERNATIONAL BUSINESS
MACHINES CORPORATION, A NEW YORK CORPORATION;
EMC CORPORATION, A MASSACHUSETTS CORPORATION,
VERITAS SOFTWARE CORPORATION, A DELAWARE
CORPORATION; DARDEN RESTAURANTS, INC., A
FLORIDA CORPORATION; AND DOES 1-100,
inclusive,

        Defendants.

AND RELATED COUNTER-CLAIMS.

CONFIDENTIAL TESTIMONY

VIDEOTAPED 30(b)(6) DEPOSITION OF DONGXIAO YUE

San Francisco, California

Wednesday, September 12, 2007

Volume 1

REPORTED BY:
KELLI COMBS
CSR No. 7705

Job No. 3-72940

DONGXIAO YUE
CONFIDENTIAL

09/12/07

Page 170

| 17:27:51 | 1 | |
| | 2 | |
| | 3 | |
| | 4 | |
| 17:28:05 | 5 | |
| | 6 | |
| | 7 | |
| | 8 | REDACTED |
| | 9 | |
| 17:28:41 | 10 | |
| | 11 | |
| | 12 | |
| | 13 | |
| | 14 | |
| 17:29:49 | 15 | |
| | 16 | |
| | 17 | REDACTED |
| | 18 | |
| | 19 | |
| 17:30:25 | 20 | |
| | 21 | |
| | 22 | Q    What communications do you believe were false |
| | 23 | do you contend caused you to enter into that 2004 |
| | 24 | agreement? |
| 17:30:45 | 25 | MS. BRILLET:  Hold on.  I have an objection. |

DONGXIAO YUE                          09/12/07
CONFIDENTIAL

Page 171

| | | |
|---|---|---|
| 17:30:48 | 1 | The fraud claim is as far as entering into the |
| | 2 | agreement, but it hasn't anything to do with whether an |
| | 3 | agreement actually exists. |
| | 4 | And this was supposed to be the licensing, if |
| 17:30:58 | 5 | there was a license, if there is a contract, and the |
| | 6 | terms thereof.  But the fraud is outside of that.  Fraud |
| | 7 | has to do with inducement into going into the contract, |
| | 8 | not the existence of the contract. |
| | 9 | MR. WAKEFIELD:  Okay. |
| 17:31:15 | 10 | MS. BRILLET:  Therefore, I believe it's |
| | 11 | outside the scope of the deposition. |
| | 12 | MR. WAKEFIELD:  Of this phase of discovery? |
| | 13 | MS. BRILLET:  Definitely. |
| | 14 | MR. WAKEFIELD:  Well, if that's -- if that's |
| 17:31:32 | 15 | Plaintiff's position, that the fraud claim doesn't go to |
| | 16 | whether the agreement actually exists, then I think we |
| | 17 | can move on to a different subject. |
| | 18 | I just want to make sure we're on the same |
| | 19 | page.  I don't want to be moving for summary judgment as |
| 17:32:00 | 20 | to whether or not this is a contract case under |
| | 21 | either -- under any of the agreements we have talked |
| | 22 | about and have Plaintiff say, "Well, you don't get the |
| | 23 | benefit of that contract because there was a fraud." |
| | 24 | So if we're in agreement that that's not |
| 17:32:22 | 25 | Plaintiff's position, then I can move on. |

Page 172

17:32:28  1          MS. BRILLET:  Plaintiff's position is -- well,

2      the position that we have, especially at this point, is

3      that the Judge said that we would go regarding licensing

4      and contract, whether -- the existence of a license or

17:32:39  5      contract and the terms thereof.  And the fraud doesn't

6      touch upon that.

7              MR. WAKEFIELD:  Okay.

8          MS. BRILLET:  Plaintiff's fraud claim does not

9      touch upon that part.  The Plaintiff's fraud claim

17:32:50 10      touches upon the inducement, but not into whether there

11      was a contract and what the terms were.  The fraud has

12      nothing to do with whether there was a contract.

13              MR. WAKEFIELD:  Okay.  So -- but --

14          MS. BRILLET:  I mean, I just stated

17:33:03 15      Plaintiff's position.

16              MR. WAKEFIELD:  But Plaintiff's position is

17      that we're not --

18          MS. BRILLET:  I just stated Plaintiff's

19      position.

17:33:13 20              MR. WAKEFIELD:  But I want to make sure I

21      understand it.

22              That -- you say that touches on inducement,

23      but not as to whether there was a contract and what the

24      terms were.

17:33:25 25              So Plaintiff's position is not -- for purposes

DONGXIAO YUE
CONFIDENTIAL

09/12/07

Page 173

| | | |
|---|---|---|
| 17:33:31 | 1 | of this phase of the case and the -- and the summary |
| | 2 | judgment and/or summary adjudication motions is not that |
| | 3 | there was no contract or the contract wasn't enforceable |
| | 4 | because of fraudulent inducement; is that right? |
| 17:33:55 | 5 | MS. BRILLET: Do you want to speak? |
| | 6 | |
| | 7 | REDACTED |
| | 8 | |
| | 9 | |
| 17:34:21 | 10 | |
| | 11 | MR. WAKEFIELD: So -- in fact, I think, |
| | 12 | specifically, the complaint says it would have been at a |
| | 13 | higher price. |
| | 14 | |
| 17:34:34 | 15 | REDACTED |
| | 16 | |
| | 17 | |
| | 18 | MR. WAKEFIELD: Is -- but is the Plaintiff's |
| | 19 | position that the 2000 -- I need to know if Plaintiff's |
| 17:35:23 | 20 | position is that the 2004 agreement is rescindable as a |
| | 21 | remedy for fraud or if it was never formed because it |
| | 22 | was -- because it was rendered void by virtue of |
| | 23 | fraudulent inducement? |
| | 24 | MS. BRILLET: I think what we're doing right |
| 17:35:53 | 25 | now is trying to figure out whether or not there was a |

DONGXIAO YUE                            09/12/07
CONFIDENTIAL

Page 174

| | | |
|---|---|---|
| 17:35:56 | 1 | contract, and I think that's why the Judge had us go |
| | 2 | through this particular phase. |
| | 3 | MR. WAKEFIELD: Well, I think if -- I mean, I |
| | 4 | don't want to hide the ball. We're going to say this |
| 17:36:09 | 5 | isn't -- we've said it before -- this isn't a copyright |
| | 6 | case, it's a contract case. The remedies under the |
| | 7 | contract, if there are any remedies appropriate here, |
| | 8 | are the only remedies available, and that this is not a |
| | 9 | claim for a use that exceeds the scope of those |
| 17:36:33 | 10 | agreements, but rather, would be a breach of contract, |
| | 11 | if anything, and that contract remedies would be the end |
| | 12 | of the claim. |
| | 13 | Plaintiff has taken the position that there is |
| | 14 | use of the software and claims that arise out of the use |
| 17:36:49 | 15 | of the software that was licensed that Plaintiff |
| | 16 | contends exceeds the scope of the license, and |
| | 17 | therefore, it's more than just a breach, but also |
| | 18 | copyright infringement. That's my understanding of |
| | 19 | Plaintiff's claims. |
| 17:37:04 | 20 | MS. BRILLET: Right. |
| | 21 | MR. WAKEFIELD: What I need to know is |
| | 22 | Plaintiff isn't saying we cannot assert the license |
| | 23 | defense and we cannot assert -- |
| | 24 | MS. BRILLET: "We" as in the Defendants? |
| 17:37:17 | 25 | MR. WAKEFIELD: In other words, that we, the |

DONGXIAO YUE                    09/12/07
CONFIDENTIAL

Page 175

| | | |
|---|---|---|
| 17:37:18 | 1 | Defendants, cannot assert that license defense because |
| | 2 | of fraud.  And if so, we need to take discovery about |
| | 3 | what that fraud was, and we'd be entitled to because it |
| | 4 | goes to the crux of the issue. |
| 17:37:43 | 5 | But if -- you know, if Plaintiff's position |
| | 6 | is, "Well, we're also entitled to perhaps fraud damages, |
| | 7 | but we're not saying that the 2004 agreement is void," |
| | 8 | then I think we can move on. |
| | 9 | MS. BRILLET:  We're not in the area of |
| 17:38:08 | 10 | damages.  Again, the question at this point is the |
| | 11 | existence of a contract or the license and the terms |
| | 12 | thereof.  So I'm still not at the fraud part of it in |
| | 13 | this initial phase -- |
| | 14 | MR. WAKEFIELD:  Well, I guess -- so you're not |
| 17:38:23 | 15 | saying that -- |
| | 16 | MS. BRILLET:  -- of the case. |
| | 17 | MR. WAKEFIELD:  -- fraud prevented the |
| | 18 | contract from being formed? |
| | 19 | REDACTED |
| 17:38:32 | 20 | MS. BRILLET:  We're saying that fraud helped |
| | 21 | to get the terms for the contract and fraud and |
| | 22 | inducement. |
| | 23 | |
| | 24 | REDACTED |
| 17:39:05 | 25 | |

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

DONGXIAO YUE
CONFIDENTIAL                                    09/12/07

Page 176

| | | |
|---|---|---|
| 17:39:12 | 1 | **REDACTED** |

2

3

4            MS. BRILLET:  But the problem here is there

17:39:25    5    actually -- does the contract exist?  And that's what

6    the Judge said.  Is there a contract, what are the

7    terms.  And so I don't feel that the fraud actually is

8    part of this initial phase.

9            MR. WAKEFIELD:  Okay.  Let me -- can we take a

17:39:40   10   quick break?

11           MS. BRILLET:  Sure.

12           MR. WAKEFIELD:  Why don't you guys talk about

13   it and I'll think about it, too, and hope we won't use

14   the whole evening thinking about what questions we get

17:39:49   15   to ask.

16           THE VIDEOGRAPHER:  The time is 5:40.  We're

17   going off the record and this will be the completion of

18   Media Number 3.

19                   (Recess taken.)

17:40:03   20   THE VIDEOGRAPHER:  The time is 5:48.  We're

21   back on the record and this will be the beginning of

22   Media Number 4 in the deposition of Dr. Yue.

23           MR. WAKEFIELD:  Okay.  So, Counsel, can you

24   explain what -- you have asserted the objection to the

17:49:09   25   questions concerning the alleged fraud and relevance to

DONGXIAO YUE
CONFIDENTIAL

09/12/07

Page 177

| | | |
|---|---|---|
| 17:49:14 | 1 | this phase of discovery, and I just want to make sure I |
| | 2 | understand your position. |
| | 3 | MS. BRILLET:  Okay.  Well, I stated it three |
| | 4 | times, but you want to say what you understand and I can |
| 17:49:27 | 5 | restate it. |
| | 6 | MR. WAKEFIELD:  Here is what I need:  You |
| | 7 | know, we're going to assert that the -- because of the |
| | 8 | license agreements in 2000 and the 2004 agreement, |
| | 9 | whether it's viewed as an amendment or otherwise, that |
| 17:49:49 | 10 | there is no copyright claim here. |
| | 11 | And if Plaintiff is going to assert that, in |
| | 12 | fact, there is a copyright claim because of the fraud |
| | 13 | and inducement of the 2004 agreement, then we're |
| | 14 | entitled to explore the fraud claim. |
| 17:50:13 | 15 | MS. BRILLET:  Okay.  Plaintiff has not |
| | 16 | asserted that there -- that there is a copyright claim |
| | 17 | because of the fraud and inducement.  That has not been |
| | 18 | Plaintiff's contentions.  So, again, it's our |
| | 19 | understanding that this would only be -- that this phase |
| 17:50:31 | 20 | is only regarding the contract and license and the |
| | 21 | terms. |
| | 22 | And then if we move on from here, then we move |
| | 23 | on to the other issues of damages or fraud or whatever, |
| | 24 | but at this point in the game, that it is contract and |
| 17:50:46 | 25 | licensing and terms and everything else is after this |

DONGXIAO YUE                    09/12/07
CONFIDENTIAL

Page 178

| | | |
|---|---|---|
| 17:50:50 | 1 | phase. |
| | 2 | MR. WAKEFIELD:  Okay.  I think we can move on |
| | 3 | to a different subject, then. |
| | 4 | MS. BRILLET:  Okay. |
| 17:51:37 | 5 | (Defendants' Exhibit 19 marked |
| | 6 | for identification.) |
| | 7 | |
| | 8 | |
| | 9 | |
| 17:52:22 | 10 | |
| | 11 | REDACTED |
| | 12 | |
| | 13 | |
| | 14 | |
| 17:52:47 | 15 | |
| | 16 | |
| | 17 | |
| | 18 | |
| | 19 | |
| 17:53:17 | 20 | |
| | 21 | |
| | 22 | REDACTED |
| | 23 | |
| | 24 | |
| 17:53:34 | 25 | |

# EXHIBIT C

# FENWICK & WEST LLP

555 CALIFORNIA STREET, 12TH FLOOR   SAN FRANCISCO, CA 94104
TEL 415.875.2300   FAX 415.281.1350   WWW.FENWICK.COM

October 3, 2007

LAURENCE F. PULGRAM

EMAIL LPULGRAM@FENWICK.COM
DIRECT DIAL (415) 875-2390

**VIA E-MAIL AND U.S. MAIL**

Vonnah Brillet
2777 Alvarado Street, Suite E
San Leandro, California  94577

Re:    Netbula, LLC v. Storage Technology Corporation, et al.
       Case No. C06-07391

Dear Ms. Brillet:

I was out of town from September 24 until yesterday, and so respond today to your letter of September 26, 2007, (inaccurately dated September 24 on the cover page), which follows our meet and confer discussion on September 25. To be clear, the meet and confer arose because, at the Rule 30(b)(6) deposition, you took the position that you did not receive a fully prepared witness, and I disagreed, and then requested a meet and confer on this point by my e-mail of September 22, 2006.

On September 25, we went through each of the bullet points in your letter transmitted on September 24. I offered to provide stipulations on the few points that I thought were even arguably relevant, and that Mr. Melnick had not addressed at his deposition. As to many other points, I expressed the view that the point raised in your letter was either irrelevant to the present phase of the litigation, that you had failed ever to inquire to Mr. Melnick about the issue, or both.

I was therefore very surprised to receive your next letter, which took a limited list of bullet points to which I responded on September 25 (a list provided in response to *my* request to meet and confer) and expanded it into an entirely new set of discovery requests that had never previously been asked in either interrogatories or in depositions. We have no intention of starting discovery over at this point. Here is what we are willing to do.

**1. Use of SDK.** Your letter of September 24 raises several issues about the use of the SDK by StorageTek engineers. This includes your questions about Don Carrol, which developers did development work pursuant to the 8 developer licenses, and whether StorageTek developed products using the SDK on machines running Windows 2000. At our meet and confer session, you contended that these questions about potential violation of the SDK license are relevant to your claims of infringement of the distribution license. We do not agree with your contentions. Nonetheless, in order to put this issue behind us, StorageTek and Sun would be prepared to offer a 30(b)(6) witness on these issues, only. Please advise whether you wish to depose such witness. The witness would be a member of the engineering group.

Vonnah Brillet
October 3, 2007
Page 2

**2.  Stipulated Facts.**  You complained that Mr. Melnick was not able to answer certain other questions that you asked and contend are relevant.  Without agreeing to the relevance of these issues, we are agreeable to stipulate to the following facts as undisputed for the purpose of our summary judgment motion, in order to obviate any unnecessary discovery.

a.    StorageTek received the software CDs it ordered from Netbula.

b.    Which group Scott Painter was in and what product he was working on.

c.    Whether there were REELs licenses granted after Feb. 1, 2001.

d.    That LibAttach 1.3 and 1.4 were distributed with the Netbula RPC supporting programs.

e.    That 1191NLC-SENT refers to enterprise (site) licenses, of which StorageTek sold at least two for LibAttach between fall of 2004 and 2005.

f.    That ISV stands for Independent Software Vendor.

g.    That "RB2.5NT" refers to REELS Basic 2.5 NT.

h.    That LibAttach (like Netbula RPC and countless other software products) was "uncontrolled" in the sense that it was distributed without copy controls, such that additional unlicensed copies could in theory have been made by licensees.

i.    The applicable dates for the license.txt files that Sun produced (but about which you did not ask Mr. Melnick).

j.    That a copy of LibAttach is installed at Darden Restaurants.

**3.    Questions Never Asked.**  We are not willing to provide additional information in response to questions that you did not ask at the 30(b)(6) deposition.  For example, you claim that Mr. Melnick could not answer questions about the manner of licensing of StorageTek products, but you did not ask him such questions.  You did not ask him about the form license agreements.  And you did not ask him any follow up questions about the Darden License, after merely asking him to read certain portions of that license into the record.  Indeed, even after Mr. Melnick made it clear that he *did* know what 1191 NLC-SENT intended to refer to, and only did not know what "SENT" was an acronym for, you did not ask him about those licenses.

**4.    Mr. Melnick's Knowledge.**  We strongly disagree with your letter's characterizations of many of Mr. Melnick's answers and knowledge.  Mr. Melnick has been the person principally involved in negotiations with Netbula over the terms of the contracts that are the subject of this phase of the proceedings.  If there is information not known to him on such subjects, it generally is because it does not exist at Sun.  Further, he prepared for his deposition by extensive review of documents and by consulting with persons in other groups.  Your assertion that he provided "wrong" information about the Swedish Tax Board—a subject that you admitted in the meet and confer was irrelevant in any event—is not accurate; Mr. Melnick stated that the Swedish Tax Board was included in the schedule of copies provided by Sun in negotiations, for which all customers were included but not identified by name.  Your assertion

Vonnah Brillet
October 3, 2007
Page 3

that he identified the wrong date for the closing of the Sun/StorageTek merger was also addressed, and shown to be inaccurate, in the meet and confer.

As to the points in your September 26 letter, to the extent that you asked relevant questions at the deposition about those subjects, I believe they are addressed above. If you believe that there is any question that is relevant to this phase that you asked and that is *not* addressed above, please specify the line and page and I will consider how to address it. We are not, however, going to allow you to simply start discovery over at this time, and we do not believe that your list of questions that you now want to ask, but did not ask at the deposition, entitles you to any further discovery.

If you wish to take the deposition of the additional witness described above, please propose dates and times over the next two weeks that you would be available to do so.

Sincerely,

FENWICK & WEST LLP

Laurence F. Pulgram

LFP:rl

# EXHIBIT D

## Jedediah Wakefield

**From:**    Jedediah Wakefield
**Sent:**    Thursday, October 18, 2007 9:08 AM
**To:**    'Vonnah Brillet'
**Subject:** RE: 30(b)(6) Deposition

Correct, October 23rd (I have no idea where February came from).

**From:** Vonnah Brillet [mailto:brilletlaw@yahoo.com]
**Sent:** Thursday, October 18, 2007 9:01 AM
**To:** Jedediah Wakefield
**Subject:** Re: 30(b)(6) Deposition

Dear Jed:

I agree with your email and understand your intention to use OCTOBER 23rd rathern than FEBRUARY 23rd for the date of the deposition.

Thanks,
Vonnah

*Jedediah Wakefield <JWakefield@Fenwick.com> wrote:*

Dear Vonnah:

Earlier this week you contacted me to discuss scheduling of the Defendants' summary judgment motion. I stated that defendants were not willing to stipulate to postpone the summary judgment hearing date, but renewed our proposal to produce a further 30(b)(6) witness concerning the issues pertaining to the StorageTek engineers' use of the SDK, as identified in Mr. Pulgram's October 3 letter to you.

You agreed to that proposal, and stated that you were available on February 23 and that the deposition would not take more than 3 hours.  Today I called to advise you that the witness would be available on the 23rd, and you accepted that date.  You proposed starting at 11:00 a.m.  I need to confirm that the start time works with the witnesses' schedule, and hope to get back to you on that shortly.

Regards,

Jed

*******************************
Jedediah Wakefield
Fenwick & West LLP
555 California Street, 12th Floor
San Francisco, CA 94104
phone: 415.875.2331
fax: 415.281.1350
email: jwakefield@fenwick.com

------------------------------------------
IRS Circular 230  Disclosure:  To ensure compliance with requirements imposed by the IRS, we inform

you that any U.S. federal tax advice in this communication (including attachments) is not intended or written by Fenwick & West LLP to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.
--------------------------------------------

ATTENTION:
The information contained in this message may be legally privileged and confidential.  It is intended to be read only by the individual or entity to whom it is addressed or by their designee. If the reader of this message is not the intended recipient, you are on notice that any distribution of this message, in any form, is strictly prohibited.

If you have received this message in error, please immediately notify the sender and/or Fenwick & West LLP by telephone at (650) 988-8500 and delete or destroy any copy of this message.

_____

Do You Yahoo!?
Tired of spam? Yahoo! Mail has the best spam protection around
http://mail.yahoo.com