1  LAURENCE F. PULGRAM (CSB NO. 115163)
   *lpulgram@fenwick.com*
2  JEDEDIAH WAKEFIELD (CSB NO. 178058)
   *jwakefield@fenwick.com*
3  ALBERT L. SIEBER (CSB NO. 233482)
   *asieber@fenwick.com*
4  LIWEN A. MAH (CSB NO. 239033)
   *lmah@fenwick.com*
5  FENWICK & WEST LLP
   555 California Street, Suite 1200
6  San Francisco, CA  94104
   Telephone: (415) 875-2300
7  Facsimile:  (415) 281-1350

8  Attorneys for Defendant and Counter-Claimant
   SUN MICROSYSTEMS, INC. and Defendants
9  EMC CORPORATION, and DARDEN
   RESTAURANTS, INC.

10 **[ADDITIONAL COUNSEL APPEAR ON**
11 **SIGNATURE PAGE]**

12              UNITED STATES DISTRICT COURT

13             NORTHERN DISTRICT OF CALIFORNIA

14               SAN FRANCISCO DIVISION

15

16 NETBULA, LLC, a Delaware limited        Case No.  C-06-07391-MJJ
   liability company,
17                                         **DEFENDANTS' STATEMENT REGARDING**
                   Plaintiff,              **USE OF PLAINTIFF'S DISCOVERY**
18                                         **RESPONSES, DOCUMENTS AND**
                                           **TESTIMONY FROM RELATED CASE**
              v.
19                                         Date:     December 14, 2007
   STORAGE TECHNOLOGY              Time:     2:00 P.M.
20 CORPORATION, a Delaware corporation;    Dept:     Courtroom 11
   SUN MICROSYSTEMS, INC., a Delaware      Judge:    The Honorable Martin J. Jenkins
21 corporation; INTERNATIONAL
   BUSINESS MACHINES
22 CORPORATION, a New York
   corporation; EMC CORPORATION, a
23 Massachusetts corporation; VERITAS
   SOFTWARE CORPORATION, a
24 Delaware corporation; DARDEN
   RESTAURANTS, INC., a Florida
25 corporation; and DOES 1-100, inclusive,

26                   Defendants.

27 AND RELATED COUNTERCLAIMS

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

2      Pursuant to the Court's Order issued December 3, 2007 in the related case of *Netbula LLC*

3  *v. BindView Development Corporation*, C-06-0711-MJJ-WDB, Defendants Sun Microsystems,

4  Inc. ("Sun"), EMC Corporation ("EMC"), Darden Restaurants, Inc. ("Darden") and International

5  Business Machines Corporation ("IBM") (collectively "Defendants") respectfully submit this

6  Report.

7      The Court's December 3, 2007 Order in *Netbula v. BindView Development Corporation,*

8  *Symantec Corp., et al.*, C-06-0711-MJJ-WDB, provided that Netbula and Defendants' counsel

9  shall meet and confer to attempt to identify which information produced in that action shall be

10  designated for use in the StorageTek action, and at what lever of confidentiality.  The Court

11  ordered the counsel to submit a joint report before the case management conference schedule for

12  December 13, 2007 (now scheduled for December 14, 2007).

13      Defendants sought to meet and confer with Plaintiff for purposes of submitting a joint

14  report.  However, Netbula has refused to authorize the filing of a joint report prior to a ruling

15  from the Ninth Circuit on Dongxiao Yue's Emergency Motion to Stay and Petition for Writ of

16  Mandamus.  Declaration of Jedediah Wakefield In Support of Defendants' Statement Regarding

17  Use of Discovery Responses, Documents and Testimony from Related Case, ¶¶ 4-5.

18  Accordingly, only Defendants' position is provided below.

19      **A.      Confidentiality Designations**

20      Netbula has asserted that it seeks higher confidentiality protections for source code and

21  other commercially sensitive materials, based on its allegation that it and Sun Microsystems are

22  direct competitors.  To address this concern, Defendants propose that all materials, testimony and

23  discovery responses designated by Netbula as "CONFIDENTIAL" in the BindView case shall be

24  afforded the protections of "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY"

25  material, with the exception of (1) communications with StorageTek or Sun, and (2)

26  communications with third parties, including the Hurewitz firm or the Shepherd Mullin firm,

27  relating to StorageTek or Sun.  Such designations shall be subject to procedures for re- or de-

28  designation pursuant to the Protective Order.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   Defendants further propose that source code be subject to additional protections to be

2   negotiated by the parties, and agree that source code will not be provided to any of the parties'

3   employees, including in-house counsel.

4   **B.    Relevance**

5       1.    **Netbula's "CONFIDENTIAL" and "HIGHLY CONFIDENTIAL-
            ATTORNEYS' EYES ONLY" materials from the BindView case are
6           relevant in this action**

7   Given the significant factual and legal overlap between the BindView action and this case,

8   Defendants contend that the vast majority of documents and discovery responses provided by

9   Netbula in the *BindView* case are relevant and discoverable in this action.[1]  Discovery in the

10  *BindView* case concerned:

11      • Netbula's "PowerRPC and ONC RPC" software itself (e.g., the machine
          readable machine code itself, the source code, and identification of portions
12        authored by Netbula vs. portions authored by Sun or others);

13      • the development history of the software;

14
        • Netbula's pricing, sales and revenue for Netbula software;
15
        • Netbula's license negotiations, terms and practices;
16
        • Netbula's  copyright registrations and efforts to obtain them; and
17
        • Netbula's efforts to enforce its claimed intellectual property rights.
18

19  *See, e.g.,* Exhibit C to Declaration of Jedediah Wakefield In Support of Motion to Intervene and

20  Modify Protective Order, C-06-0711-MJJ-WDB Docket No. 304-2 (Netbula's Notes and Index

21  for Plaintiff's Documents Pages 1-3,672, containing document requests and describing categories

22  of documents produced).

23      a)    **Relevance to non-copyright claims.**  Assuming that summary judgment is

24  granted on the copyright claims, Netbula's claims for breach of the license agreements and for

25  fraud would remain, as well as counterclaims for trademark infringement.  Netbula's licensing

26  _____

27  [1] To be sure, Netbula produced many irrelevant documents in the BindView case, such as SEC
    filings and articles discussing the market for software security products.  However, these
    documents were not designated as CONFIDENTIAL or CONFIDENTIAL—ATTORNEYS'
28  EYES ONLY, and thus are not at issue here.

Fenwick & West LLP
Attorneys At Law
San Francisco

1    history, pricing, sales and revenue are relevant to the fraud claim, in which Netbula asserts that,

2    due to misrepresentations, Netbula agreed to entering into a second license with StorageTek in

3    2004, but charged less than $6000 rather than a supposed "standard" price in 2004 of $18,000 for

4    1000 copies.  The materials already produced in the *Bindview* case refute this claim, showing no

5    such standard price, and should continue to be available in this action.  Furthermore, Plaintiff's

6    contract claim will depend in part on the meaning of the contracts, as to which negotiating history

7    and comparison of terms to other contracts may be relevant.  However, if the copyright claims are

8    dismissed, then the there will not be need for retention of the source code for the current

9    litigation.

10                        **b)        Relevance to copyright claims.**

11            If any portion of Netbula's copyright claim survives summary judgment, or if Dr. Yue's

12    claims in *Yue v. Netbula,* Case No. C07-05850 SI, continue, then all of this discovery in *Bindview*

13    will be well within the scope of permissible discovery on the copyright claims.  The same

14    software products accused of being unlawfully copied in the BindView case (Netbula's RPC

15    products) are at issue here and in *Yue*, and the same development history is at issue, since it

16    pertains to, *inter alia*, originality and authorship of the software.  Netbula's pricing, sales and

17    revenue are highly relevant to damages (which, under copyright law, turns in part on the potential

18    reasonable royalty).  Netbula's license negotiations, terms and practices are also relevant to its

19    damages claims.  For instance, Netbula has suggested that, in the absence of pre-payment for

20    what it calls a "1000-pack," Defendants should be forced to pay an alleged (and much higher) "1-

21    pack" price for each copy made.  Whether Netbula in fact had a standard "1-pack" price, and

22    whether it regularly offered "1-packs" at all, is thus a relevant subject for discovery.

23            Netbula's copyright registrations and efforts to obtain them are also relevant to the

24    validity of Netbula's asserted copyrights, particularly in view of Don Yue's new claim that he,

25    and not Netbula, authored the original software in question.  Finally, documents concerning

26    Netbula's efforts to enforce its claimed intellectual property are relevant to the scope of rights

27    claimed here, reasonable royalties, and Dr. Yue's credibility.

28            Netbula has suggested that Defendants should not be permitted to use Netbula discovery

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   responses that Netbula now asserts were incomplete or inaccurate.  There may indeed be false

2   statements in Netbula's discovery responses, and there may be testimony and discovery responses

3   that Netbula now wishes to change, but these prior inconsistent statements by Netbula are highly

4   relevant, for, among other things, impeachment.

5          **2.      The Parties' Interests and Interests of Judicial Economy Will Not Be
               Served by Requiring Re-litigation of the Relevance of Netbula's Prior
6               Discovery**

7          Netbula's Principal, Dr. Yue, has suggested that the parties should be forced to re-review

8   the materials from Netbula's prior discovery responses and document production, to assess their

9   relevance document by document.  Such a process would be time-consuming and burdensome for

10  both sides, and would lead to a repeat of the extensive discovery motions that occupied

11  considerable judicial and party resources in the *BindView* case.  In contrast, no burden results

12  from allowing Defendants to use the documents they already have.  In the typical discovery

13  dispute, a party resisting discovery seeks to avoid the burden and expense of reviewing and

14  producing irrelevant materials.  Here, there is no review and production required for the

15  documents presently at issue, which have already been produced.

16         Further, making documents from the *Bindview* case available for use on an AEO basis in

17  this action does not prejudice Netbula.  Where information is relevant, it should be available to be

18  used.  To the extent that Defendants' counsel retained access to any irrelevant information, it will

19  be inadmissible if Defendants attempt to use it.  With all information already produced, if there

20  are disputes as to relevancy, the sensible time to resolve them is when the information is used, not

21  by entirely rehashing discovery motions on materials already produced.  The heightened

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    confidentiality procedures, discussed above, should fully address any valid concerns Netbula has

2    regarding confidentiality.

3

4                                                  Respectfully,

     Dated:     December 10, 2007                  FENWICK & WEST LLP
5

6                                                  By:_____/S/_____
7                                                             Jedediah Wakefield

8                                                  Attorneys for Defendants
                                                   SUN MICROSYSTEMS, INC.,
9                                                  EMC CORPORATION, and DARDEN
                                                   RESTAURANTS, INC.
10

11   Dated:     December 10, 2007                  QUINN EMANUEL URQUHART OLIVER &
                                                   HEDGES, LLP
12                                                   David Eiseman (CSB NO. 114758)
                                                     davideiseman@quinnemanuel.com
13                                                 50 California Street, 22nd Floor
                                                   San Francisco, CA  94111
14                                                 Telephone: (415) 875-6600
                                                   Facsimile:  (415) 875-6700
15

16                                                 By:_____/S/_____
17                                                             David Eiseman

18                                                 Attorneys for Defendant
                                                   INTERNATIONAL BUSINESS MACHINES
19                                                 CORPORATION

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ATTORNEY ATTESTATION**

Pursuant to General Order 45, I hereby attest that that concurrence in the filing of this document has been obtained from the signatory indicated by a 'conformed' signature (/S/) within this efiled document.

/S/ JEDEDIAH WAKEFIELD
Jedediah Wakefield

25689/00400/LIT/1277066.4

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO